**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JOHN DOE-1 and JANE DOE-2, Individually and on behalf of all others similarly situated, <br><br>    Plaintiffs, <br><br> vs. <br><br> LEXISNEXIS RISK DATA MANAGEMENT, LLC, RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, <br><br>    Defendants. | Civil Action No. 1:24-cv-04566 <br> Honorable Harvey Bartle, III, U.S.D.J. |

**PLAINTIFFS' OPPOSITION TO LEXISNEXIS'S MOTION TO DISMISS**

*Attorneys for Plaintiffs*

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
1 Boland Dr., Suite 101
West Orange, NJ 07052
rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com

**BOIES SCHILLER FLEXNER LLP**
Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, NY 12207
Tel.: (518) 434-0600
ashaw@bsfllp.com

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

## <u>TABLE OF CONTENTS</u>

PLAINTIFFS' OPPOSITION TO LEXISNEXIS'S MOTION TO DISMISS ............................. 1

RELEVANT ALLEGATIONS ............................................................................................. 2

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ....................................................................................................................... 5

   I.    THIS COURT HAS JURISDICTION OVER LEXISNEXIS. ........................................... 5

   II.   PLAINTIFFS' USE OF "DOE" PLEADINGS IS PROPER AND PROVIDES NO
BASIS FOR DISMISSAL. ................................................................................................ 11

   III.     PLAINTIFFS ASSERT VIABLE AND SUPPORTED CAUSES OF ACTION ......... 16

   IV.     LNRDM'S PREEMPTION ARGUMENTS ARE MERITLESS AND BARRED ...... 24

CONCLUSION………………………………………………………………………………..30

# TABLE OF AUTHORITIES

**Cases**

*Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 2010 WL 1931135 (D.N.J. May 12, 2010) ............................................................................................................................. 28

*Alexander v. Experian*, 2023 WL 8600221 (E.D. Pa. Dec. 12, 2023) ........................................ 11

*Argen v. Att'y Gen. New Jersey*, 2022 WL 3369109 (3d Cir. Aug. 16, 2022) ........................... 11

*Austar Int'l Ltd. v. AustarPharma LLC*, 425 F.Supp.3d 336 (D.N.J. 2019) ............................... 21

*Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354 (3d Cir. 2016) .......................................... 23

*Boone v. T-Mobile USA Inc.*, 2018 WL 588927 (D.N.J. Jan. 29, 2018) ............................... 16, 19

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ..................................................................... 6, 9

*Burnett v. Cnty. of Bergen*, 198 N.J. 408, (2009) ...................................................................... 16

*Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc.*, 2023 WL 8643781 (D.N.J. Dec. 14, 2023)26

*Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141 (3d Cir. 1992) .............................................. 10

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics*, GmBH, 2010 WL 5239238 (D.N.J. Dec. 16, 2010) ............................................................................................................ 21

*Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 1 (1st Cir. 2022) ......................................... 25, 26

*Consumer Data Indus. Ass'n v. Platkin*, 2024 WL 1299256 (D.N.J. Mar. 27, 2024) ...... 25, 26, 28

*Cortez v. Trans Union*, LLC, 617 F.3d 688 (3d Cir. 2010) ........................................................ 18

*Cox v. Simon*, 278 N.J. Super. 419 (App. Div. 1995) ................................................................. 22

*Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997) .................................................... 28

*Daimler AG v. Bauman*, 571 U.S. 117, 135 (2014) ..................................................................... 8

*Danise v. Saxon Mortg. Servs. Inc*, 738 F. App'x 47 (3d Cir. 2018) ......................................... 27

*Davenport v. Farmers Ins. Grp.*, 378 F.3d 839 (8th Cir. 2004) ................................................ 25

*Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505 (D.N.J. 2008) ................................................... 8

*DiGiorgio Corp. v. Mendez and Co, Inc.*, 230 F. Supp. 2d 552 (D.N.J. 2002) ........................... 22

*Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545 (D.N.J. 2006) ................................. 12

*Doe v. Lund's Fisheries, Inc.*, 2020 WL 6749972 (D.N.J. Nov. 17, 2020) ........................... 13, 14

*Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011) ..................................................................... 13, 16

*Doe v. Middlesex County, New Jersey*, 2021 WL 130480 (D.N.J. Jan. 14, 2021) ...................... 12

*Doe v. Oshrin*, 299 F.R.D. 100 (D.N.J. 2014) ............................................................... 12, 13, 15

*Doe v. Rutgers*, 2019 WL 1967021 (D.N.J. Apr. 30, 2019) ....................................................... 13

*Doe v. Trishul Consultancy, LLC*, 2019 WL 4750078 (D.N.J. Sept. 30, 2019) ................... 12, 14

*Dover v. Shoe Show, Inc.*, 2013 WL 1748337 (W.D. Pa. Mar. 19, 2013) ................................... 18

*Fenico v. City of Philadelphia*, 70 F.4th 151 (3d. Cir. 2023) ...................................................... 5

*Fischer v. Fed. Express Corp.*, 42 F.4th 366 (3d Cir. 2022) ....................................................... 10

*Florian Greenhouse, Inc. v. Cardinal IG Corp.*, 11 F. Supp. 2d 521 (D.N.J. 1998) .................. 23

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) ..................................... 9

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ..................................................... 5, 24

*Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241 (3d Cir. 2012) ...................................................... 26

*Galper v. JP Morgan Chase Bank*, 802 F.3d 437 (2d Cir. 2015) ................................. 25

*Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187 (3d Cir. 2009)..................................... 28

*Gould v. Great-W. Life & Annuity Ins. Co.*, 959 F. Supp. 214 (D.N.J. 1997).............................. 29

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998) ..................................................... 11

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (3d Cir. 2017).............. 19

*In re MerckCo., Inc., Sec., Derivative & "Erisa" Litig.*, 2006 WL 8460903 (D.N.J. Jan. 20, 2006)............................................................................................................................................... 2

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399 (3d Cir. 1993) .................. 11

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314 (3d Cir. 2003)............................................................................................................................................. 24, 27

*L.A. v. Hoffman*, No. CIV.A. 14-6895 FLW, 2015 WL 4461852 (D.N.J. July 21, 2015)............ 12

*Lampon-Paz v. Off. of Pers. Mgmt.*, 2016 WL 1337556 (D.N.J. Apr. 4, 2016).......................... 11

*Lenchitz v. Cenlar FSB*, 2024 WL 1052000 (D.N.J. Mar. 11, 2024) ........................................... 22

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993)........................................... 20, 23

*Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127 (3d Cir. 2018)....................................... 5, 24

*Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561 (3d Cir. 2017)............................................. 11

*Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217 (3d Cir. 1992) ......................... 6, 8

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 (3d Cir. 2004) ............................................. 6, 9, 10

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007)............................................... 6, 7

*Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988)....................... 27

*Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739 (1989)........................... 20, 22, 23

*Rainier's Dairies v. Raritan Val. Farms*, 19 N.J. 552 (1955)..................................................... 22

*Reed v. Swatch Grp. (US), Inc.*, 2014 WL 7370031 (D.N.J. Dec. 29, 2014)  .............................. 18

*Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429 (D.N.J. 2021)................................... 6, 8, 9

*Rippon v. Smigel*, 449 N.J. Super. 344 (App. Div. 2017).............................................................. 11

*Shuker v. Smith & Nephew, PLC*, 885 F.3d 760 (3d Cir. 2018) .................................................... 8

*Snider v. Am. Forest Prods., LLC*, 2023 WL 5274396 (D.N.J. August 16, 2023) ...................... 10

*Strike 3 Holdings, LLC v. Doe*, 2020 WL 3567282 (D.N.J. June 30, 2020) ............................... 5

*Taksir v. Vanguard Grp.*, 903 F.3d 95 (3d Cir. 2018) .................................................................... 5

*Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172 (3d Cir. 2006).......................................... 6

*Toys "R" Us, Inc. v. Step Two*, S.A., 318 F.3d 446 (3d Cir. 2003)............................................... 11

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242 (3d Cir. 2016).................................................................................................................................................. 5

*Zungoli v. United Parcel Serv., Inc.*, 2009 WL 1085440 (D.N.J. Apr. 22, 2009)................. 16, 19

**Statutes and Regulations**

15 U.S.C. § 1681t(a) ................................................................................................... 25, 26, 29, 30

N.J.S.A. 56:11-44, *et seq.* ...................................................................................... 16, 17, 18, 19

*Fair Credit Reporting Act's Limited Preemption of State Laws*, 87 Fed. Reg. 41,042 (July 11, 2022) ................................................................................................................. 25

**Restatements**

Restatement (Second) of Torts § 766B cmt. c) ............................................................ 21
Restatement (Second) Torts § 766 ............................................................................... 22

## PRELIMINARY STATEMENT

The Motion to Dismiss ("Motion") filed by LexisNexis Risk Data Management, LLC ("LNRDM") underscores the defiance it has long demonstrated in the face of laws designed to protect the safety and livelihood of those who serve their country and state. That defiance also reeks of contradictions. While telling this Court that Daniel's Law is preempted by the Fair Credit Report Act (FCRA), the LexisNexis-group has told federal regulators *for years* that the FCRA does not apply to the type of information at issue—because that is exactly how it justified the selling of location data before the passage of Daniel's Law. Even if the FCRA does apply (it does not), LNRDM fails to tell this Court that the very provisions it points to in its Motion allow consumers to opt-out of their addresses being sold. Its failure to be forthcoming with this Court is the clearest demonstration that LNRDM (and the LexisNexis group) would not honor any opt-out under Daniel's Law or the FCRA, and any attempt by Covered persons to do so would lead to obfuscation, denial, and even retaliation in the form of freezing a Covered Person's credit.

LNRDM tells this Court that Plaintiffs sued the wrong entity and that there is no jurisdiction. Not so. Public records show that LNRDM owns at a minimum the "Accurint" people-search service intellectual property, which is offered to and used by New Jersey agencies and professionals.[1] On that basis, Plaintiffs sent opt-outs to the LexisNexis group, which ultimately led

---

[1] *See* https://www.lexisnexis.com/en-us/products/accurint-for-legal-professionals.page ["[l]ocate witnesses, associates and relatives quickly and easily, and surface the critical, detailed connections between people, assets and businesses which can enable successful outcomes"]; *infra* at note 8 (showing that LNRDM owns, *inter alia*, the Accurint trademarks); it is also offered to and used by New Jersey agencies and professionals. *See* Egg Township Budget (January 2024) at page 96 (line item expressly for "Accurint" *and listing LNDRM as the Vendor*) https://cms9files.revize.com/eggharbornj/Agendas%20&%20Minutes/Township%20Committee/2024/01-17-2024.pdf; https://ncirc.bja.ojp.gov/sites/g/files/xyckuh326/files/media/document/NJSP_Guide_to_Intelligence_Led_Policing_0.pdf (NJ State Police - Guide to Intelligence (2006)) at page 25 (noting use

to their credit freezes. While Plaintiffs will accept LNRDM's invitation to add LexisNexis Risk

Solutions ("LNRS") and perhaps other LexisNexis entities in the lawsuit as additional defendants,

that decision matters not for the purposes of this Motion. Discovery, which has yet to begin, will

confirm which additional defendants should answer for their part in this retaliation scheme.

LNRDM's suggestion that the New Jersey Identity Theft Prevention Act ("NJITPA") does

not apply is also wrong: the NJITPA expressly provides for a private right of action. Plaintiffs'

allegations establish a claim under the NJITPA, and the factual allegations also establish all

required elements for tortious interference. Indeed, LNRDM has failed to explain how the NJITPA

could not apply when LNRDM, in its correspondence with Plaintiffs, cited to this statute (not the

FCRA, which it now claims preempts the NJITPA) as the basis to freeze Covered Persons' credit.

LNRDM's brazen double-speak must come to an end. The Court should reject LNRDM's

misplaced and often contradictory arguments, and allow Plaintiffs to proceed with this litigation.

## RELEVANT ALLEGATIONS

I.   **THE COMPLAINT DETAILS HOW LNRDM UNLAWFULLY IMPLEMENTED AND FAILED TO REMOVE SECURITY FREEZES.**

Plaintiffs and the putative class members are all individuals who sent Daniel's Law takedown

requests to LexisNexis group who retaliated by "implementing unrequested, unlawful, and harmful

security freezes." Compl. ¶4  (Docket Entry No. 1). [2] "LexisNexis in its own public materials

recognizes the difference between a Daniel's Law request and a request for a credit freeze. They are

---

of Accurint). The Court may consider these and other public records in an exception to the "four corners" doctrine allowing it to take judicial notice of such records. *See In re MerckCo., Inc., Sec., Derivative & "Erisa" Litig.*, 2006 WL 8460903, at *2 (D.N.J. Jan. 20, 2006). Plaintiffs respectfully request that the Court do so here.

[2] The notices should have gone to LNRDM, because Lexis entities share the same Privacy Policy and contact information, located here (https://risk.lexisnexis.com/corporate/privacy-policy), which one can navigate to from the home page of Accurint (https://www.accurint.com/).

two separate requests." Compl. ¶5. Plaintiffs never requested any credit report freeze. Compl. ¶4. Plaintiffs' identities were not stolen, nor did Plaintiffs make reports of the same. Compl. ¶21. Instead, LNRDM "falsely reported" identity theft by freezing Plaintiffs' consumer credit reports. Compl. ¶22. In response, Plaintiffs uploaded personal documents to LNRDM and requested that the security freezes be lifted. Compl. ¶¶6, 28-29. Despite the legal requirement to promptly lift the credit freeze, "LexisNexisstill has not done so." Compl. ¶6. LNRDM has continued to misreport identity theft, even after receiving personal documentation from Plaintiffs including their "full name, address, phone number, social security number, and driver's license number." Compl. ¶27.

## II.     LNRDM OWNS PEOPLE-SEARCH SERVICE "ACCURINT", WHICH IS OFFERED IN NEW JERSEY AND USED TO SEARCH ITS RESIDENTS.

LNRDM is undoubtedly a proper defendant, since LNRDM owns "Accurint" people-search services, which is offered nationally, and not just offered to but used by New Jersey professionals and agencies:[3]



Leverage one of the largest bases of public and proprietary information available on the market today. Accurint® for Legal Professionals gives you access to over 84 billion public records from over 10,000 diverse sources, comprising public, private, regulated, emerging and derived data.

Find vast amounts of linked information in seconds rather than searching for hours or paying an outside investigator to gather information or locate a person. Even fragmentary data can return results.

Draw from our immense identity repository:

- 21.3 billion consumer records
- 11.3 billion name/address combinations
- 637.3 million criminal records
- 330 million unique cell phone numbers
- 6.6 billion vehicle registrations
- 6.5 billion personal property records

Dig deeper into connections between individuals and businesses, including business addresses, phone numbers and possible dates of employment.

---

[3] *See supra* at Note 1; *see also* https://www.lexisnexis.com/en-us/products/accurint-for-legal/quick-locator-searching.page.

The Accurint-mark has been registered to LNRDM since at least 2016.[4] Plaintiffs expected to be removed from Accurint-searches when they sent Daniel's Law takedown requests to LNRDM.  Instead, LNRDM froze their credit.  LNRDM's concession that another LexisNexis entity (LNRS) played a key role in this retaliation does not excuse LNRDM of wrongdoing—both entities must be held to account.  Accordingly, LNRDM is a properly named defendant.

## III.    THE COMPLAINT DETAILS HOW LNRDM WAS INVOLVED WITH AND RESPONSIBILE FOR THESE UNLAWFUL ACTS.

Nevertheless, Plaintiffs detail how they sent written Daniel's Law takedown requests to LNRDM in December 2023 and January 2024. Compl. ¶20. Despite these requests, LNRDM search results continued to display Plaintiffs' New Jersey home addresses, as well as that of their family members. Compl. ¶5. LNRDM responded to the takedown requests by placing security freezes on file for each of the Plaintiffs "pursuant to the security freeze laws in [their] state of residence, NJ, specifically." Compl. ¶¶22, 26. LNRDM then repeatedly contacted Plaintiffs in correspondence over email and mail. Compl. ¶¶20-23, 26-28. This included letters sent by mail to Plaintiffs' New Jersey addresses. Compl. ¶¶ 26, 28, 33. LNRDM, in its letters, instructed Plaintiffs to provide "proper identification" to remove the security freezes placed on their files. Compl. ¶¶22, 26. Plaintiffs repeatedly provided that information but the freezes were never lifted. Compl. ¶¶27, 28, 36.

## IV.    THE COMPLAINT DETAILS WHY PLAINTIFFS FILED ANONYMOUSLY.

There are two named plaintiffs, who have been anonymized for safety reasons.  Compl. ¶¶25, 31. Plaintiff John DOE-1 is a veteran of the United States Marine Corps, has been with the South Plainfield police department for 17 years, and has received numerous threats during his career. Compl. ¶25.  Plaintiff John DOE-1 also alleges concerns about his son, who is currently serving the

---

[4] *See* https://tsdr.uspto.gov/#caseNumber=87173874&caseSearchType=US_APPLICATION&caseTy pe=DEFAULT&searchType=statusSearch.

country as an active-duty Marine. Compl. ¶30.  Plaintiff Jane DOE-2 is a retired New Jersey police officer who "personally received direct threats of violence and death against her and her family members during her tenure as a New Jersey law enforcement officer," including, among others, threats from "a particularly violent criminal." Compl. ¶32.  Plaintiff DOE-2 also suffers from multiple sclerosis, and "unwanted mental and emotional stress" can increase the "risk of relapses, flare-ups, and exacerbations of multiple sclerosis's most debilitating effects." Compl. ¶36.

## LEGAL STANDARD

All "facts alleged in the complaint are accepted as true for purposes of the motion." *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018).  In addition to all factual allegations, courts accept as true "all reasonable inferences that can be drawn from them." *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018). Under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Averments are sufficient when they give notice of the basis for each claim. *Id.* at 212. Further, under Rule 12(b)(6), a motion to dismiss will only be granted if the court finds that the "plaintiff's claims lack facial plausibility." *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d. Cir. 2023). Even if a motion to dismiss is granted, Plaintiffs should be granted leave to amend and cure any perceived deficiencies. *See United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 250 (3d Cir. 2016).

## ARGUMENT

## I.    THIS COURT HAS JURISDICTION OVER LEXISNEXIS.

At this early stage, a "plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes

drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). "At this pre-discovery juncture, [courts] construe any factual disputes in Plaintiffs' favor, and Plaintiffs' burden is relatively light." *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 438 (D.N.J. 2021). Here, Plaintiffs have readily met their burden in terms of establishing jurisdiction.

### A.    Plaintiffs' Allegations Establish Specific Jurisdiction—and LNRDM's Motion Only Adds Further Support.

The Complaint includes facts establishing all of the requirements for exercising specific jurisdiction over LNRDM, including that (1) LNRDM "purposefully directed [its] activities at the forum", (2) the litigation "arise[s] out of or relate[s] to" at least one of those activities, and (3) jurisdiction "comport[s] with fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985) (reversing dismissal where allegations were sufficient to establish specific jurisdiction)).

### 1.    LNRDM purposefully directed its activities at New Jersey.

As a legal matter, "claim-specific contacts" can establish activities directed at the forum for purposes of establishing specific jurisdiction. *O'Connor*, 496 F.3d at 318. "Physical entrance is not required." *Id.* at 317. Contacts can also be "supplied by the terms of [an] agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). "[M]ail and wire communications can constitute purposeful contacts when sent into the forum." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006).

Here, LNRDM purposefully availed itself through the contacts alleged in the Complaint. LNRDM is a commercial data broker who "provides data-brokering and credit-reporting services." Compl. ¶46.   One such service is LNRDM's people-search product named Accurint which is

marketed in New Jersey to legal professionals[5] and public agencies such as police departments,[6] and, according to judicially noticeable evidence, used by both.[7] Accurint website's description of its services is consistent with the Complaint allegations:[8]

> Find vast amounts of linked information in seconds rather than searching for hours or paying an outside investigator to gather information or locate a person. Even fragmentary data can return results.
>
> Draw from our immense identity repository:
>
> - 21.3 billion consumer records
> - 11.3 billion name/address combinations
> - 637.3 million criminal records
> - 330 million unique cell phone numbers
> - 6.6 billion vehicle registrations
> - 6.5 billion personal property records

What is more, LNDRM indisputably owns the "Accurint" mark and not some other entity.[9]

The Complaint then details how Plaintiffs sent takedown requests to LNRDM who in response placed the unlawful credit freezes and carried out extensive communications with Plaintiffs regarding Plaintiffs' efforts to remove those credit freezes (which proved futile). Compl. ¶¶20-23, 26-28, 32-33. To be sure, Accurint is marketed in **New Jersey**, Plaintiffs are residents of **New Jersey** (*id.* ¶¶28, 32), and the communications involving the credit freezes were sent by LNRDM to **New Jersey** (*id.*). This far exceeds what is required to establish specific jurisdiction. *See, e.g.*, *O'Connor*, 496 F.3d at 318 (newsletters mailed to plaintiffs in the forum state as well as

---

[5] *See* https://www.lexisnexis.com/en-us/products/accurint-for-legal-professionals.page.
[6] *See* https://www.police1.com/police-products/investigation/videos/accurint-for-law-enforcement-real-time-phones-lexisnexis-risk-solutions-UVGKnEKuKkF9PDba/ (video showing LexisNexis sales representative marketing to police departments).
[7] *See supra* at Note 1.
[8] *See* https://www.lexisnexis.com/en-us/products/accurint-for-legal/quick-locator-searching.page.
[9] *See* https://tsdr.uspto.gov/#caseNumber=87173874&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (under the "Current Owner(s) Information" tab).

negotiations over phone calls "deliberately reached" the forum state to establish jurisdiction); *Mellon Bank*, 960 F.2d at 1223 (providing personal financial information, negotiations, and correspondence to the forum state was sufficient to establish jurisdiction).

That LNRDM alleges that discovery would prove that these actions were taken by LNRS and not LNRDM is of no moment, especially given this is not an either/or situation. Besides, that would be akin to blaming the axe rather than the person swinging it.  It is therefore unsurprising that if a subsidiary is "merely the agent of a parent corporation," or "if the parent corporation otherwise 'controls' the subsidiary," courts find that "personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018); *see also Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008) (finding the relationship between a parent and subsidiary to be close enough to establish agency). Agency relationships are relevant to specific jurisdiction, and "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). These are issues for discovery, not dismissal. *See, e.g.*, *Rickman*, 538 F. Supp. 3d at 438 (denying motion to dismiss filed by parent company claiming lack of personal jurisdiction). Here, public records already show that at minimum, LNRDM and LNRS—assuming *arguendo* that they are indeed separate legal entities—together market and sell Accurint's people-search product.[10] That is more than sufficient for the Court to exercise jurisdiction over either or both of them in this litigation.

## 2.    Plaintiffs' claims arise out of and are related to these activities.

---

[10] LexisNexis Risk Solutions is an "affiliate," Mot. at 16 , and subsidiary of the parent company, LexisNexis; it has an office located in New Jersey at 300 Connell Drive Suite 1200, Berkeley Heights, NJ 07922. *See*  https://risk.lexisnexis.com/corporate/office-locations#americas.

Specific jurisdiction lies when there is an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359–60 (2021). "Relatedness" is enough. *Rickman*, 538 F. Supp. 3d at 442. "[P]lausibility is all that Plaintiffs need," and alleging unlawful conduct and injuries in the forum state is sufficient. *Id.* at 443. Further, alleging a "sum" of contacts, even if the defendant's contacts are not the proximate cause of plaintiff's injuries, satisfies personal jurisdiction for tortious interference claims. *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 99–100 (3d Cir. 2004).

Here, even setting aside LNRDM marketing of the Accurint services, Plaintiffs assert claims that arise from and relate to LNRDM's activities in New Jersey.  Plaintiffs alleged that LNRDM engaged in an "unlawful campaign to intimidate and retaliate against Plaintiffs" because of requests Plaintiffs sent to LNRDM from New Jersey under New Jersey law. Compl. ¶2. Going further, Plaintiffs sufficiently allege a series of contacts and communications from and in New Jersey, involving injuries in New Jersey. Compl. ¶¶20-23, 26-28, 32-33. Nothing more is required at this early stage to establish specific jurisdiction. *See, e.g.*, *Rickman*, 538 F. Supp. 3d at 442.

### 3.    Jurisdiction comports with fair play and substantial justice.

When weighing this element, courts consider "the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies" alongside the burden to the defendant. *Burger King*, 471 U.S. at 477. Once Plaintiffs have established a prima facie case of jurisdiction, as they have done here, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* "Without such

compelling evidence, [a defendant] cannot avoid the District Court's appropriate jurisdiction." *Miller Yacht Sales*, 384 F.3d at 100.

Here, LNRDM "do[es] not explain what burden, other than inconvenience, will be visited upon them should they be required to litigate in New Jersey." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992). It does not, because none exists. New Jersey, on the other hand, clearly has a significant interest in adjudicating claims based on harm to New Jersey residents arising out of violations of New Jersey law that protects those who protect New Jersey residents.

### 4. LNRDM's Other Arguments Are Similarly Meritless.

LNRDM argues that the Court must look to the "long-arm statute of the state in which it sits," (Mot. at 20), and yet it does not cite any published cases denying specific jurisdiction against corporate defendants for claims brought by plaintiffs residing in New Jersey. *See Carteret*, 954 F.2d at 147 ("New Jersey would permit the exercise of personal jurisdiction over a nonresident defendant who committed a single tortious act, whether negligent or intentional, within New Jersey"). That is because New Jersey's long-arm statute authorizes specific jurisdiction here.

The unpublished decision LNRDM cites involved far fewer contacts, involving "a holding company with no employees." *Snider v. Am. Forest Prods., LLC*, 2023 WL 5274396, at *18 (D.N.J. August 16, 2023). LNRDM has done much more than the holding company in *Snider*: it offered the Accurint service for searches of New Jersey residents, including Covered Persons under Daniel's Law. Compl. ¶¶22, 26, 34. It then responded, through its employees, to Plaintiffs' requests, made repeated communications, and sent mailed letters to Plaintiffs' New Jersey homes. Compl. ¶¶ 26, 28, 33. These factual allegations far exceed the minimum contact standard.

Other decisions cited by LNRDM are likewise inapposite. This is not a lawsuit by opt-in plaintiffs residing in another state. *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 383 (3d Cir. 2022)

(finding original plaintiff alleged sufficient minimum contacts in the forum state). The claims also do not arise out of activities occurring in another state. *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 565 (3d Cir. 2017) (employee suing in New Jersey for claims arising out of activities in Pennsylvania). Neither is this a suit against an international company. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (involving a German defendant).

LNRDM's parent-subsidiary argument at best confuses Third Circuit precedent. LNRDM cites wrong-party (not parent-subsidiary) cases brought against various departments of state and federal government. *See Argen v. Att'y Gen. New Jersey*, 2022 WL 3369109, 3 (3d Cir. Aug. 16, 2022) (claims brought against the state Attorney General and a judge); *Lampon-Paz v. Off. of Pers. Mgmt.*, 2016 WL 1337556, 1 (D.N.J. Apr. 4, 2016) (case brought against wrong federal agency). Here, the public pages of the Accurint service show that LNRDM is the right party, even if it is just one of two parties that should be sued. LNRDM also fails to cite any case finding affiliates to be separate companies for jurisdiction purposes. *Cf. Alexander v. Experian*, 2023 WL 8600221 (E.D. Pa. Dec. 12, 2023) (concerning two separate credit reporting companies).[11]

As Plaintiffs have presented factual allegations with "reasonable particularity" "of the requisite contacts between [the party] and the forum state," Plaintiffs right to conduct jurisdictional discovery "should be sustained" over a dismissal. *Rippon v. Smigel*, 449 N.J. Super. 344, 359 (App. Div. 2017) (citing *Toys "R" Us, Inc. v. Step Two*, S.A., 318 F.3d 446, 456 (3d Cir. 2003)).

## II.    PLAINTIFFS' USE OF "DOE" PLEADINGS IS PROPER AND PROVIDES NO BASIS FOR DISMISSAL.

LNRDM next seeks dismissal on the nebulous basis that Plaintiffs somehow lack a reasonable "fear of severe harm" justifying their decision to proceed anonymously. Mot. at 16.

---

[11] LNRDM can always seek to join another defendant if it thinks it necessary. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 412 (3d Cir. 1993).

These arguments fly in the face of Plaintiffs' factual allegations, detailing their reasons for sending Daniel's Law takedown requests to LNRDM in the first place—as well as their well-founded fear of severe harm if identified in the public record. Plaintiffs respectfully request that the Court reject these arguments and permit them to proceed anonymously.

### A.      Courts often permit the use of "Doe" pleadings.

This District Court has permitted the use of "Doe" pleadings to protect the identity of plaintiffs, and the "decision to allow a plaintiff to proceed anonymously rests within the sound discretion of the court." *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006) (permitting plaintiff to proceed anonymously); *see also Doe v. Oshrin*, 299 F.R.D. 100, 103 (D.N.J. 2014) (same); *Doe v. Trishul Consultancy, LLC*, 2019 WL 4750078, at *4 (D.N.J. Sept. 30, 2019) (same); *Doe v. Middlesex County, New Jersey*, 2021 WL 130480, at *5–6 (D.N.J. Jan. 14, 2021) (same); *L.A. v. Hoffman*, No. CIV.A. 14-6895 FLW, 2015 WL 4461852, at *1 (D.N.J. July 21, 2015) (same, noting disclosure of identities would "result in harassment, loss of employment and housing, possible physical abuse and assault and property damage").

### B.      "Doe" pleadings are appropriate in this case.

Here, the allegations are more than enough to establish a reasonable fear of severe harm. The fear of severe harm is exactly what motivated the Doe plaintiffs and others to seek protection under Daniel's Law, following the tragic death of a federal judge's son and ongoing attacks on judges, prosecutors, law enforcement officers and their families. *See* Compl. ¶¶ 9, 16-18. Plaintiffs detailed how they are current and former law enforcement officers whose names were "anonymized for safety reasons." Compl. ¶¶25, 31. Officer DOE-1 sent LNRDM a Daniel's Law takedown request "to protect himself and his family from threats received during the court of his career . . . ." Compl. ¶25. Officer DOE-2 sent LNRDM a Daniel's Law takedown request because

"she personally received direct threats of violence and death against her and her family" and at one point "the severity of threats received from a particularly violent criminal prompted her to leave her hometown and relocate her family to another part of New Jersey." Compl. ¶32.

LNRDM relies principally on *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011), but that decision provides no basis for publicly identifying Plaintiffs, let alone dismissal. In *Megless*, the Third Circuit discussed a "non-exhaustive" list of factors considered by judges when assessing whether a litigant's "reasonable fear of severe harm outweighs the public's interest in open judicial proceedings." *Id.* at 409. The *Megless* factors in favor of anonymity include:

> (1) the extent to which the identity of litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Id.* (quotation omitted). The court instructed that "each case presents a slightly different list of factors for courts to consider" and this "balancing test" is subject to an abuse of discretion review on appeal. *Id.* at 408-9; *see also Doe v. Rutgers*, 2019 WL 1967021, at *2 (D.N.J. Apr. 30, 2019) (permitting Doe pleading because "[t]he considerations that disfavor Plaintiff's anonymity do not outweigh these factors" favoring anonymity."). These factors strongly support anonymity here.

*First*, Plaintiffs have made "significant efforts" to maintain confidentiality and have not disclosed their identities. *Doe v. Oshrin*, 299 F.R.D. at 103. The fact that Plaintiffs have maintained anonymity thus far in the litigation is enough to satisfy the first factor. *See id.*; *Doe v. Lund's Fisheries, Inc.*, 2020 WL 6749972, at *2 (D.N.J. Nov. 17, 2020) ("Plaintiff's identity is not

disclosed in any of the pleadings, motions, and/or exhibits in this action . . . Therefore, the Court concludes that the first factor weighs in favor of anonymity.").

*Second*, there is a substantial basis for Plaintiffs to fear disclosure. Plaintiffs seek to avoid disclosure based on detailed threats of violence against them and their families. Compl. ¶¶25, 32. This is not "mere embarrassment." *Doe v. Trishul*, 2019 WL 4750078 at *4. While no further justification is needed, it is also relevant that Officer DOE-2 has multiple sclerosis, and mental and emotional stress can trigger risk of relapses, flare-ups, and exacerbations. Compl. ¶¶34, 36.

*Third*, the magnitude of the public interest in maintaining Plaintiffs' identities is clear given the intent of Daniel's Law to protect both judicial and law enforcement officers from threats of violence. Plaintiffs' reasons for anonymity are directly tied to the subject matter of this litigation: the unauthorized public disclosure of personal information. The public has an additional interest in maintaining the litigants' anonymity "when undesirable consequences will flow from revealing the identity of a litigant." *Doe v. Lund's Fisheries, Inc.*, 2020 WL 6749972, at *3. Here, publicly revealing Plaintiffs' identities would only further undermine the rights granted by Daniel's Law.

*Fourth*, there is no public interest in knowing the identity of these plaintiffs. *See id.* at *3 (finding no public interest in ascertaining plaintiff's actual identity). The public can readily follow and understand this litigation without knowing the identities of these individual Plaintiffs. Even if the Court were to find that there is some "general interest in having access to the identity of litigants," this one factor does not override others. *Id.* at *4. A "minimal public interest cannot counterbalance" the other factors. *Trishul*, 2019 WL 4750078, at *5.

*Fifth*, publicizing Plaintiffs' names may preclude them from pursuing these important claims. Plaintiffs need not express an intention to discontinue if they are required to disclose their

identity. Instead, the Court may find "that denying Plaintiff's motion may inhibit Plaintiff's willingness to pursue her claims," and find in favor of anonymity. *Oshrin*, 299 F.R.D. at 104.

*Sixth*, Plaintiffs very clearly are not pursuing these claims for any illegitimate or ulterior motives. They are seeking relief based on LNRDM's unlawful actions, where LNRDM harmed them and others through the unrequested credit freezes. This is proper and valid. As such, the *Megless* factors weigh in favor of maintaining Plaintiffs' anonymity here.

### C.  Plaintiffs will disclose the names to LexisNexis, negating any prejudice.

LNRDM's final argument asserts that LNRDM "is entitled to know Plaintiffs' identities so that it may conduct an appropriate investigation and mount a defense." Mot. at 27. Plaintiffs do not disagree. Yet, LNRDM's desire to know Plaintiffs' identities, at least for the purposes of its Motion, has more to do with theater than any legitimate cause. As LNDRM acknowledges in a footnote, Plaintiffs' counsel offered to disclose Plaintiffs' names to LNDRM under a protective order. Mot. at 27 n.4; *see Strike 3 Holdings, LLC v. Doe*, 2020 WL 3567282, at *11 (D.N.J. June 30, 2020) ("the entry of a limited protective order strikes the right balance of interest and that any concerns about misidentification or privacy exposure are easily assuaged through implementation of an appropriate protective order.").  Notably, even after agreeing to a protective order, LNRDM still would not agree to keep Plaintiffs' identities confidential under that order.

### D.  There is no need for any additional motion practice on this discrete issue.

Absent any real basis to require Plaintiffs to reveal their identities, LNRDM's argument remains form over substance: that Plaintiffs should have moved for an order to show cause before anonymizing themselves.  Should the Court wish, Plaintiffs are willing to proceed with an order to show cause, whether for the sake of formality or so the Court may determine that Plaintiffs' desire to remain anonymous is legitimate and justified.  In any case, the question of how this Court wishes to manage that issue procedurally has no place in a Motion to Dismiss.  Even in *Megless*,

for instance, the district court only dismissed the case after the plaintiff failed to comply with a court order and missed a deadline. *See* 654 F.3d at 407. That is obviously not the case here. Here, there is no such order and Plaintiffs will comply with any and all orders of this Court.

## III.    PLAINTIFFS ASSERT VIABLE AND SUPPORTED CAUSES OF ACTION.

Plaintiffs assert three causes of action, all of which are viable and supported.

### A.    Plaintiffs assert viable New Jersey Identity Theft Protection Act claims.

Plaintiffs' factual allegations establish a violation of the NJITPA which seeks "whenever possible" to avoid giving access to information "an individual may want kept private." *Burnett v. Cnty. of Bergen*, 198 N.J. 408, 436, (2009). "New Jersey courts recognize that citizens have a reasonable expectation and a right to keep identifying information confidential," which is consistent with public policy. *Zungoli v. United Parcel Serv., Inc.*, 2009 WL 1085440, at *5 (D.N.J. Apr. 22, 2009). LNRDM's motion provides no basis to eliminate this  cause of action.

### 1.    Plaintiffs have a private right of action under the ITPA.

The NJITPA amended the New Jersey Fair Credit Reporting Act ("NJFCRA"), N.J.S.A. 56:11–28, *et seq.,* which was enacted in 1997 and contains two liability mechanisms. *See* N.J.S.A. 56:11-38 (assigning liability to "[a]ny person who willfully fails to comply with any requirement imposed under this act"); 56:11-39 (similarly assigning liability to "[a]ny person who is negligent in failing to comply"). These provisions provide a private right of action under the NJFCRA. *See, e.g.*, *Boone v. T-Mobile USA Inc.*, 2018 WL 588927, at *16 (D.N.J. Jan. 29, 2018) (denying motion to dismiss). In *Boone*, the plaintiffs alleged that a hard credit inquiry was made into their accounts under false pretenses without their consent. *Id.* at *8. The court found that those factual allegations were sufficient to state a claim under the NJFCRA. *Id.* at *16.

The NJITPA, N.J.S.A. 56:11-44, *et seq.*, enacted in 2005, expressly amended the 1997 NJFCRA. *See* NJITPA, 2005 N.J. Sess. Law Serv. Ch. 226. The NJITPA assigns liability for

willful and negligent noncompliance under N.J.S.A. 56:11-38 and -39 of the NJFCRA. *See* N.J.S.A. 56:11-50. This has been interpreted as "expressly stat[ing] that violators of its provisions are subject to liability under the NJFCRA." *Reed v. Swatch Grp. (US), Inc.,* 2014 WL 7370031, at *6 n. 2 (D.N.J. Dec. 29, 2014) (dismissing a claim under the federal FACTA and giving the NJFCRA and ITPA as contrasting examples of law that do provide for a private right of action). Therefore, any person who violates the NJITPA is subject to liability under the NJFCRA.

### 2.    Plaintiffs state facts establishing the elements of their claims.

LNRDM violated the NJITPA both by implementing the security freezes and also by refusing to remove the security freezes. Compl. ¶23. The NJITPA only authorizes security freezes when specific conditions are met, and Plaintiffs explain how such conditions were not met: Plaintiffs never requested any freeze. Compl. ¶21. Plaintiffs also detail how they tried unsuccessfully to have LNRDM remove the freezes, which constitutes yet another violation.

The NJITPA mandates consumer reporting agencies to remove freezes on consumer reports whenever requested. N.J.S.A. 56:11-46. "A consumer reporting agency that receives a request from a consumer to temporarily lift a freeze on a consumer report pursuant to subsection d. of this section shall comply with the request no later than three business days after receiving the request." N.J. S.A. 56:11-46(e)). Here, Plaintiffs allege that LNRDM violated the NJITPA not only by implementing the freezes but also violated the NJITPA (N.J.S.A. 56:11-46(e)) by not complying with Plaintiffs' requests to lift the freezes on their reports. Compl. ¶6.

Further, LNRDM, as a consumer reporting agency ("CRA"), was required to "develop procedures involving the use of telephone, fax, the Internet, or other electronic media to receive and process a request from a consumer to temporarily lift a freeze on a consumer report pursuant to subsection d. of this section in an expedited manner . . . with the goal of processing a request within 15 minutes of that request." N.J.S.A. 56:11-46(f). Plaintiffs allege that LNRDM did not lift

17

the illegally placed freezes on Plaintiffs' accounts at all, let alone expeditiously or within 15 minutes. Compl. ¶¶29, 34, 37. Further, CRAs "**shall remove a security freeze within three business days of receiving a request for removal from the consumer**, who provides the following: (1) Proper identification; and (2) The unique personal identification number or password provided by the consumer reporting agency pursuant to subsection c. of this section." N.J.S.A. 56:11-46(j) (emphasis added). LNRDM violated this section by not removing the security freeze after being provided with such personal identification. Compl. ¶¶27, 36.

### 3.    Plaintiffs sufficiently allege LNRDM's willful violation of the NJITPA.

Plaintiffs allege a "willful failure to comply with the Identity Theft Protection Act." Compl. ¶56. Under the similar Fair Credit Reporting Act, such violations are assessed under a "reckless disregard" standard. *Cortez v. Trans Union*, LLC, 617 F.3d 688, 721 (3d Cir. 2010). Meeting that standard requires "specific allegations that the defendants had been informed of [legal] requirements . . . [and] then disregarded [them]." *Reed*, 2014 WL 7370031, at *5.

LNRDM was aware of the relevant legal requirements—it referenced them in its own letters. Compl. ¶¶22, 26, 34; *see Dover v. Shoe Show, Inc.*, 2013 WL 1748337, at *3 (W.D. Pa. Mar. 19, 2013) (plaintiffs sufficiently alleged that defendants were "made aware of its compliance obligations by VISA manuals and guidelines"). LNRDM cited N.J.S.A. 56:11-46 which is part of the NJITPA. Compl. ¶¶22, 26, 34. LNRDM also wrote that "[t]his security freeze will remain in place indefinitely until you decide to temporarily or permanently remove the security freeze." *Id.* This shows awareness (and willful disregard) of legal obligations to remove the freezes.

### 4.    Plaintiffs allege unauthorized disclosure of their personal information.

To initiate a credit freeze, Lexis had to communicate with a third-party using each Plaintiffs' personally identifiable information (PII). Because the freeze was unauthorized, that sharing of PII was unauthorized. This disclosure to third parties, in combination with the wrongful

freezes, constitutes the "unauthorized dissemination of [Plaintiffs'] own private information," which is by itself sufficient to show the injury necessary to survive a motion to dismiss. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 640 (3d Cir. 2017) (finding that individuals can sue for unauthorized disclosure of PII, including home addresses). The Third Circuit noted that the existence of a private right of action and statutory damages for willful violations under the FCRA "clearly illustrates" that unauthorized disclosure causes concrete harm. *Id.* at 639. Plaintiffs' claims here are sufficient as they point to conduct that clearly violates statutory provisions and the statute provides a right of action. *See Boone*, 2018 WL 588927, at *16 (finding claim alleged under the NJFCRA).

### 5.    Plaintiffs also allege that they requested removal of the freezes.

In *Boone*, where plaintiffs "made clear" they did not want a hard inquiry into their credit, but T-Mobile conducted one anyway, the court found that it amounted to a wrongful action by the Agency. 2018 WL 588927 at *17. Plaintiffs likewise properly allege that they made clear they did not want freezes placed on their accounts. *See id.*; Compl. ¶¶29, 34.

Plaintiffs also properly allege that LNRDM retaliated by placing security freezes on their accounts. There is thus "clearly a nexus" between Plaintiffs' Daniel's Law takedown requests and their desire to prevent disclosure of their personal information and LNRDM's decision to place the security freeze in violation of the ITPA. *See Zungoli*, 2009 WL 1085440, at *5.

### 6.    LNRDM's reading of the ITPA is erroneous.

LNRDM argues that "N.J.S.A. 56:11-50 may allow a claim against an agency that refuses to implement a freeze when asked to do so by a consumer, but it does not allow a claim for a purported mistaken imposition of a freeze." Mot. at 30. Yet the NJITPA specifically states the only conditions when security freezes can legally be placed, and those conditions do not apply here.

LNRDM also conflates the wrongful placing of a security freeze with the failure to remove such freeze upon Plaintiffs' request for removal. Plaintiffs properly state a claim under the NJITPA.

B.  **Plaintiffs assert viable interference claims.**

To assert their two contractual interference claims, Plaintiffs must allege, respectively, that (1) they were a party to an existing contractual relationship; (2) the defendant intentionally interfered with that relationship; (3) the interference was undertaken with malice; and (4) Plaintiffs suffered damages resulting from the interference. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993) (concerning interference with contractual relations) and (1) a "reasonable expectation of economic advantage" (2) that "interference was done intentionally and with malice," (3) "facts leading to the conclusion that the interference caused the loss of the prospective gain" and (4) "that the injury caused damage." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 750-2 (1989) (concerning interference with prospective contractual relations).

1.  **Plaintiffs allege existing and prospective contractual relations.**

Plaintiffs allege actual contracts through "existing financial and health arrangements and contracts." Compl. ¶61. LNRDM's wrongly placed credit freezes and stopped them from issuing credit reports to other servicers that rely on credit to grant Plaintiffs financial, health, and insurance contracts. Compl. ¶¶ 22, 26, 34. On the face of the complaint and by way of inference, the Court can find at this stage that such contracts are both existing and prospective, as access to healthcare, insurance, and other services are an essential part of everyday life.

LNRDM "openly acknowledged in their letters of retribution" that their actions "may result in Plaintiffs being denied crucial financial, insurance, and health services" (Compl. ¶4), and stated that "[y]ou should be aware that applying a security freeze to your file may delay, interfere with, or prohibit the timely approval of applications you make for items such as credit, benefits, or insurance underwriting." Compl. ¶2259. Plaintiffs further allege that they have been "unable to

obtain or extend various important financial, insurance, and health services." Compl. ¶24. These allegations support both existing and prospective contractual relations claims.

### 2. Plaintiffs allege a "[r]easonable expectation of economic advantage."

Plaintiffs sufficiently allege a reasonable expectation of economic advantage. *See Printing Mart*, 116 N.J. at 755 . To establish a prospective economic relation, "[i]t is not necessary that the prospective relation be expected to be reduced to a formal, binding contract." *Id.* at 755 (citing Restatement (Second) of Torts § 766B cmt. c)).

For example, Plaintiff DOE-2 alleged fears "for her financial stability and her ability to access credit in case of emergency." Compl. ¶34. Further, she "requires unfettered access to sophisticated and expensive treatments to moderate her medical condition on a daily basis," and this requires unfettered access to credit. Compl. ¶35. "Without searching far, courts have succeeded," *Printing Mart*, 116 N.J. at 753, in finding economic advantage from "publication of a favorable study," *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics*, GmBH, 2010 WL 5239238, at *1 (D.N.J. Dec. 16, 2010) and "a number of business opportunities" *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F.Supp.3d 336, 359 (D.N.J. 2019). For example, *Church* found that a company had a reasonable expectation of economic benefit after being informed a study would be published about them. 2010 WL 5239238, at *3-4. They alleged "ongoing and expected sales" of their product. *Id.* at *4. This established "enough facts to raise a reasonable expectation that discovery will reveal evidence." *Id.*

Plaintiffs here allege both current contracts with financial and health providers and ongoing relationships that "periodically require a credit report pull or updated financial history" that are expected to continue. Compl. ¶24. As Plaintiffs do properly allege actual and expected contracts

with financial, health, and insurance servicers, their reasonable expectation of economic advantage is sufficient to support their interference claims and survive dismissal.

### 3.    Plaintiffs properly alleged malice or lack of justification.

Plaintiffs also allege that placing security freezes and misreporting identity thefts on their accounts was "the intentional doing of a wrongful act without justification or excuse" as they did not request the freezes themselves, and there was no actual identity theft. Compl. ¶23; *Rainier's Dairies v. Raritan Val. Farms*, 19 N.J. 552, 563 (1955) (defining malice under New Jersey law). Intent is satisfied when the actor "knows that the interference is certain or substantially certain to occur as a result of his action." *Lenchitz v. Cenlar FSB*, 2024 WL 1052000 at *7-8 (D.N.J. Mar. 11, 2024) (denying dismissal of tortious interference claim) (citing *DiGiorgio Corp. v. Mendez and Co, Inc.*, 230 F. Supp. 2d 552, 564 (D.N.J. 2002), relying on Restatement (Second) Torts § 766 cmt. j)).

LexisNexis group acknowledged this in their letters to Plaintiffs. Compl. ¶¶22, 26, 34. This action was malicious as it violated the "rules of the game" and the "normal [or] the expected course of practice" of consumer reporting agencies by placing security freezes on their accounts for false reasons and misreporting identity theft. *Printing Mart*, 116 N.J. at 757. "A court may infer malice from the absence of a justification." *Cox v. Simon*, 278 N.J. Super. 419, 433 (App. Div. 1995). Plaintiffs allege that LNRDM ignored their requests to remove the freezes, and did not explain why their documentation was insufficient. Compl. ¶28, 29, 39. This further shows intent.

To confirm LNRDM's malicious intent, which is already well pleaded, one need look no further than LNRDM's statements to this Court. In the first status conference on April 18, 2024, through counsel LNRDM shamelessly claimed that the Plaintiffs and other covered persons, who are dedicated public servants of New Jersey, somehow got what they deserved, and that if having

22

their credit frozen was "not what [they] wanted, well, they should have thought this through before they made the [Daniel's Law] request." 4/18/24 Tr. at 109:16–18.

### 4. Plaintiffs properly alleged loss of prospective relations.

Plaintiffs further demonstrate a "reasonable probability" of prospective contractual relations and economic benefits. *Printing Mart*, 116 N.J. at 759. "[I]f there had been no interference there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 383 (3d Cir. 2016) (citing *Printing Mart*). Plaintiffs need only plead "facts which, in themselves or by the inferences which may be legitimately drawn therefrom," that plaintiffs would have received such benefit. *Id.* Here, it follows from the allegations that if LNRDM had not placed freezes, Plaintiffs would have been able to receive the alleged anticipated economic benefits.

Further, Plaintiffs allege implicit underlying facts that defendant was on notice of current and prospective transactions. *See Florian Greenhouse, Inc. v. Cardinal IG Corp.*, 11 F. Supp. 2d 521, 525 (D.N.J. 1998). Here, it is reasonable to infer that LNRDM knew that plaintiffs "had formed contracts or was in the process of negotiating contracts." *Id.* LNRDM explicitly acknowledged that its actions would impact Plaintiffs prospective contracts and "applications you make for items such as credit, benefits, or insurance underwriting." Compl. ¶59. Plaintiffs' allegations are sufficient to support their interference claims on these grounds as well.

### 5. Plaintiffs also properly allege harm.

"[C]ourts will imply an intent on a defendant's part to harm the plaintiff to whatever extent such harm proximately resulted from defendant's tortious interference." *Lightning Lube, Inc.*, 4 F.3d at 1170 (discussing Restatement (Second) of Torts § 767). In *Lightning Lube*, the Third Circuit held defendants liable for the entirety of the injury to all existing contracts which they interfered with, as well as prospective contracts plaintiffs were likely to attract. *Id.* at 1171. The

court extended liability under a proximate cause theory as defendants had "knowledge of the contracts at issue" and "intent to harm the plaintiff with respect to some of these contracts." *Id.*

Similarly, LNRDM is alleged to have knowledge of existing and prospective contracts and the intent to harm plaintiffs with regard to those contracts. For example, Plaintiff DOE-2 alleges that LNRDM's security freezes jeopardized her "financial stability and her ability to access credit in case of emergency." Compl. ¶34. Plaintiffs are "not required, at this early pleading stage, to go into particulars" about life activity or the nature of limitations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). Plaintiffs' claims are sufficient on this element as well.

## IV.    LNRDM'S PREEMPTION ARGUMENTS ARE MERITLESS AND BARRED.

"Dismissal is appropriate under Rule 12(b)(6) only when 'preemption is manifest in the complaint itself.'" *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130–31 (3d Cir. 2018) (citation omitted) (affirming denial of dismissal based on preemption). There is no preemption here, and certainly no "manifest" preemption. LNRDM's preemption arguments run contrary to the LexisNexis-group's own longstanding positions in both public and legal statements, with LexisNexis attempting to play "fast and loose with the courts" *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003). The information at issue— home addresses and unpublished telephone numbers—is properly subject to regulation under the state laws identified here. There is no preemption and no basis for any dismissal.

### A.    There is no FCRA preemption for any of these claims.

States "retain substantial flexibility to pass laws involving consumer reporting to reflect emerging problems affecting their local economies and citizens" and can enact "more protective" laws as compared to the FCRA. *The Fair Credit Reporting Act's Limited Preemption of State*

*Laws*, 87 Fed. Reg. 41,042, 41,042 (July 11, 2022); *Consumer Data Indus. Ass'n v. Platkin*, 2024 WL 1299256, at *6 (D.N.J. Mar. 27, 2024).

This flexibility was recognized in *Platkin*, where the court found at summary judgment that the FCRA did not preempt an amendment to the NJFCRA requiring disclosure of credit files to be issued in more than ten languages. 2024 WL 1299256 at *28.  This follows the approach taken by numerous circuits, including the First, Second, and Eighth Circuits, finding that the FCRA allows for additional state regulation. *Id.* at *9-10; *see also Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 1, 6 (1st Cir. 2022) (reading FRCA to preempt "all state laws 'relating to information contained in consumer reports,' . . . [was] not the most natural reading of the statute's syntax and structure"); *Galper v. JP Morgan Chase Bank*, 802 F.3d 437, 447 (2d Cir. 2015) (if Congress "intended to preempt claims . . . it could easily have drafted the statute to say that state laws . . . are preempted"); *Davenport v. Farmers Ins. Grp.*, 378 F.3d 839, 845 (8th Cir. 2004) (no preemption).

Section 625(a) provides that the FCRA may coexist with state law "except to the extent that those laws are inconsistent with any provision of [the FCRA], and then only to the extent of the inconsistency." 15 U.S.C. § 1681t(a). Daniel's Law is not in any way inconsistent with the FCRA, nor do Plaintiffs seek to assert claims in this action that in any way undermine or conflict with application of the FCRA. LNRDM's preemption arguments are meritless.

The FCRA's preemption provisions are not implicated in the manner suggested by LNRDM, as nothing in the New Jersey law prevents Consumer Reporting Agencies from providing consumer reports like they always have. *LNRDM points to not a single section of the FCRA that actually states that addresses and phone numbers are part of a "consumer report."* Section 1681t(b)(1)(E) provides that "[n]o requirement or prohibition may be imposed under the

laws of any State . . . with respect to any subject matter regulated under . . . section 1681c . . . relating to information contained in consumer reports." Information is found to be a consumer report if it has "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a(d)(1). Consumer reports are "very precisely defined by statute." *Arcidiacono v. Am. Exp. Co.*, 1993 WL 94327, at *3 (D.N.J. Mar. 29, 1993) (dismissing FCRA, but leaving state claims). FCRA can reasonably be read to include "only" information that bears on these credit factors, and home addresses and telephone numbers do not necessarily bear on any of those characteristics. *See Fuges v. Sw. Fin. Servs., Ltd.,* 707 F.3d 241, 252 (3d Cir. 2012) (finding consumer report "ambiguous" relating to company who had "urged that it is not subject to FCRA at all").

The First Circuit in *Frey* found 15 U.S. Code § 1681t(B)(1)(E) "expresses Congress' intent only to preempt those claims that concern subject matter regulated under [FCRA]." 26 F.4th at 7; *see also Platkin*, 2024 WL 1299256, at *10. "[E]ven where there is an express preemption clause, a court will diligently determine the substance and scope of Congress' displacement of state law." *Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc.,* 2023 WL 8643781, at *8 (D.N.J. Dec. 14, 2023).

Here, there is also no preemption because home addresses and telephone numbers are not subject to the FCRA, and LNRDM has pointed to no section of the FCRA stating that they are part of a consumer report. LNRDM argues that the Section 1681c-1 provision that "no requirement or prohibition may be imposed" expressly preempts the state's limitation against online disclosure of consumer reports. Mot. at 38. That section, however, merely regulates the subject of *identity theft prevention*. Section 1681c-1 does not address the specific issue of online disclosure of home

addresses and unpublished telephone numbers. Congress did not mention and therefore did not manifest an intent to preempt state laws preventing the public disclosure of personal information.

### B.    LNRDM should be estopped from making this preemption argument.

The doctrine of judicial estoppel "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988). A "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." *Krystal Cadillac*, 337 F.3d at 321; *see also Danise v. Saxon Mortg. Servs. Inc*, 738 F. App'x 47, 51 (3d Cir. 2018).

This estoppel doctrine is relevant here because LNRDM has taken inconsistent positions regarding these security freezes.  While LNRDM now says otherwise, the Accurint site specifically disclaims, "[t]he Accurint® services . . . do not constitute "consumer reports," as that term is defined in the FCRA."[12] However, in its correspondence with Plaintiffs, LNRDM claimed the freezes were placed under state law, "pursuant to the security freeze laws in your state of residence, NJ, specifically." Compl. ¶¶22, 26, 34. LNRDM now seeks to change course, contradicting that earlier position and now asserting that the security freezes were somehow mandated under the FCRA. Mot. at 39 ("States May Not Regulate Security Freezes on Consumer Reports."). LNRDM should be estopped from doing so. Having already taken the position that these security freezes were placed under state law, it should not now be permitted to argue federal preemption.

Notably, in a July 2023 letter to the CFPB, the LexisNexis group claimed that addresses and phone numbers were ***not*** subject to FCRA:

> **It is long settled law that a report that is limited to identifying information, such as name, SSN, phone number, and address does not bear on the seven characteristics**

---

[12] *See* https://www.accurint.com/ (at bottom of the home landing page); *see also,* https://secure.accurint.com/app/bps/main (at bottom of sign-in page, stating same).

**enumerated in the definition of a 'consumer report' in the FCRA**. Such information is not considered a consumer report, and the collection and sharing of such information is not regulated by the FCRA . . . Such information is not considered a consumer report, and the collection and sharing of such information is **not regulated by the FCRA**.[13]

Defendant's efforts to convince the Court otherwise, in this litigation, should be rejected.

LexisNexis has even argued that such information is not subject to FCRA in previous litigation **in this district.** *See Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 2010 WL 1931135, at *11 (D.N.J. May 12, 2010) ("Lexis also notes in its brief that information obtained from consumer reporting agencies constituting 'credit header' information is not regulated by the FCRA."). The LexisNexis group has repeatedly represented that this information is not regulated by the FCRA, and Plaintiffs respectfully request that the Court bar this now-contrary argument.

### C.    Traditional preemption principles do not support preemption.

In enacting the FCRA, Congress "sought to preserve the consumer's privacy in the information maintained by consumer reporting agencies." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 191 (3d Cir. 2009). The FCRA "evinces Congress's intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). Here, Daniel's Law does "not stand as an obstacle to the accomplishment and execution of the . . . objectives of Congress in enacting the Federal Act." *Platkin*, 2024 WL 1299256, at *8. LNRDM was not obligated to put a security freeze in place. Moreover, FCRA's identity theft provisions ordering security freezes only apply "upon direct request of the consumer." Plaintiffs did not make such a request. LNRDM can readily comply with Daniel's Law

---

[13] Comment Letter from LexisNexis Risk Solutions to Consumer Financial Protection Bureau, July 16, 2023, https://www.regulations.gov/comment/CFPB-2023-0020-3958 (emphasis added).

without being obligated under federal law to initiate a freeze. LNRDM cannot manufacture a preemption defense based on its own refusal to comply with these separate and distinct laws.

No actual conflict exists against the *removal* of the security freezes once in place. Once Plaintiffs asked to remove those security freezes, LNRDM was obligated to do so. There was no tension with Daniel's Law, which only governs disclosure of specific information. LNRDM cites 1681c-1(i)(3) as imposing "certain requirements for the consumer to lift the freeze" (Mot. at 39), but that provision further states that consumer reporting agencies "shall remove" a security freeze based "upon the direct request of the consumer."  Plaintiffs made direct requests to lift the security freezes placed on their accounts, so LNRDM was obligated under 1681c-1(i)(3) to remove the security freeze. That obligation does not establish any conflict between state and federal law.[14]

Perhaps most importantly, Plaintiffs' Daniel's Law takedown requests are actually consistent with the very FCRA sections that LNRDM cites. Defendant only cites to 15 U.S.C. § 1681b(c)(2)(A), (C)[15] for its conflated position that addresses and phone numbers are part of a consumer (credit) report. However, that section—a section dealing with the sale of information by consumer reporting agencies for "credit or insurance transactions that are not initiated by [the] consumer"—specifically provides that consumers may "elect[] . . . to be excluded from the list." 15 U.S.C. § 1681b(c) ("[a] consumer may elect to have the consumer's name and address excluded from any list provided by a consumer reporting agency under subsection (c)(1)(B) in connection

---

[14] In the unlikely event that the Court finds that the state law claims are preempted, the Court may convert the state law claims into federal claims under the Fair Credit Reporting Act. *Gould v. Great-W. Life & Annuity Ins. Co.*, 959 F. Supp. 214, 219 (D.N.J. 1997).

[15] Again, nothing in this section states that addresses and phone numbers are part of a consumer report.

with a credit or insurance transaction that is not initiated by the consumer").[16] 15 U.S.C. § 1681b(e)(1). Here, if LNRDM (or LNRS or any LexisNexis group entity) truly believed that the FCRA applied, by its own reading of the FCRA, it would have honored the takedown requests under either the FCRA or Daniel's Law, so that Plaintiffs' addresses and telephone information would not be further disclosed. The goals of the FCRA as referenced by LNRDM are not inconsistent with the goals of Daniel's Law, and instead consistent had LNRDM really intended to comply with both State and Federal laws.

Plaintiffs have sufficiently alleged claims under the NJITPA, and dismissal is not warranted.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Lexis's Motion to Dismiss. Alternatively, to the extent the Court grants the Motion, Plaintiffs respectfully request leave to amend and/or jurisdictional discovery to the extent deemed necessary by the Court.

Respectfully submitted,

**PEM LAW LLP**

Dated: July 9, 2024          *s/ Rajiv D. Parikh*

Rajiv D. Parikh
Kathleen Barnett Einhorn
One Boland Dr Suite 101
West Orange, NJ 07052
Tel: (973) 577-5500

---

[16] LNRDM's awareness of this opt-out requirement under the FCRA, comparable to what is required under Daniel's Law, is the likely reason LNRDM did not cite to the FCRA in its initial credit freeze letter and instead proceeded purportedly under the New Jersey ITPA.

**BOIES SCHILLER FLEXNER LLP**
James Lee (admitted *pro hac vice*)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com

Mark Mao (admitted *pro hac vice*)
Joshua Michelangelo Stein
Beko Reblitz-Richardson
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
jstein@bsfllp.com
brichardson@bsfllp.com

Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, NY 12207
Tel.: (518) 434-0600
ashaw@bsfllp.com

Melissa Zonne
Samantha Parrish
2029 Century Park East
Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
mzonne@bsfllp.com
sparrish@bsfllp.com

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

(remaining *pro hac vice* motions to be filed)

*Attorneys for Plaintiffs*