# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

Civil Action No. 1:24-cv-04566
Honorable Harvey Bartle, III, U.S.D.J.

| | |
|---|---|
| JOHN DOE-1 and JANE DOE-2, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LEXISNEXIS RISK DATA MANAGEMENT, LLC, RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,<br><br>Defendants. | **ORAL ARGUMENT REQUESTED** |

## REPLY BRIEF OF DEFENDANT LEXISNEXIS RISK DATA MANAGEMENT, LLC IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

**LOWENSTEIN SANDLER** LLP
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
*Attorneys for Defendant LexisNexis Risk Data Management, LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

REPLY ARGUMENT .............................................................................................1

I.   PLAINTIFFS HAVE FAILED TO ESTABLISH PERSONAL JURISDICTION. ...............................................................................................1

II.  PLAINTIFFS FAILED TO SEEK LEAVE TO PROCEED ANONYMOUSLY AND HAVE FAILED TO DEMONSTRATE GOOD CAUSE TO DO SO, MERITING DISMISSAL. ............................................................................................4

III. THE COMPLAINT FAILS TO PLEAD A VIABLE CLAIM UNDER NEW JERSEY LAW. ................................................................8

    A.   Plaintiffs Do Not State a Claim under the New Jersey Identity Theft Protection Act. ..................................................................8

    B.   Plaintiffs Do Not State a Claim for Tortious Interference. ..................10

IV.  IN ANY EVENT, THE FCRA PREEMPTS THE COMPLAINT'S STATE-LAW CLAIMS CONCERNING CREDIT-REPORT FREEZES. ..................................................................12

CONCLUSION ......................................................................................................14

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
   No. 08-4708, 2010 U.S. Dist. LEXIS 47123 (D.N.J. May 12, 2010) ...............14

*B.L. v. Fetherman*,
   No. 22-3471, 2023 U.S. Dist. LEXIS 21118 (D.N.J. Feb. 8, 2023).................6, 7

*Boone v. T-Mobile USA Inc.*,
   No. 17-378-KM-MAH, 2018 U.S. Dist. LEXIS 14951 (D.N.J. Jan. 26, 2018)...9

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*,
   582 U.S. 255 (2017).............................................................................................2

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)............................................................................................2

*Consumer Data Indus. Ass'n v. Frey*,
   26 F.4th 3 (1st Cir. 2022)..................................................................................13

*Consumer Data Indus. Ass'n v. Platkin*,
   No. 19-19054, 2024 U.S. Dist. LEXIS 54812 (D.N.J. Mar. 27, 2024)
   ...........................................................................................................................13

*Doe v. Hartford Life & Accident Ins. Co.*,
   237 F.R.D. 545 (D.N.J. 2006).............................................................................7

*Doe v. Kan. State Univ.*,
   No. 2:20-cv-02258-HLT-TJJ, 2021 U.S. Dist. LEXIS 4538 (D. Kan. Jan. 11,
   2021) ..................................................................................................................5

*Doe v. Megless*,
   654 F.3d 404 (3d Cir. 2011) ......................................................................4, 5, 6

*Doe v. Middlesex Cnty.*,
   No. 20-8625, 2021 U.S. Dist. LEXIS 7332 (D.N.J. Jan. 14, 2021) ....................7

*Doe v. Oshrin*,
   299 F.R.D. 100 (D.N.J. 2014).............................................................................7

*Doe v. Rowan Univ.*,
　No. 23-20657, 2023 U.S. Dist. LEXIS 181801 (D.N.J. Oct. 10, 2023) ......................................................................................................... 4

*Doe v. Shawnee Holding, Inc.*,
　No. 3:21-cv-01037, 2022 U.S. Dist. LEXIS 46042 (M.D. Pa. Mar. 15, 2022) .... 7

*Doe v. Trishul Consultancy, LLC*,
　No. 18-16468, 2019 U.S. Dist. LEXIS 169051 (D.N.J. Sept. 30, 2019) ......................................................................................................... 7

*Dr. G. v. Bell Atl. Mobile Phones, Inc.*,
　No. 89-1967, 1989 U.S. Dist. LEXIS 8066 (E.D. Pa. July 14, 1989) .................. 5

*L.A. v. Hoffman*,
　No. 14-6895, 2015 U.S. Dist. LEXIS 94564 (D.N.J. July 21, 2015) ................... 7

*Marten v. Godwin*,
　499 F.3d 290 (3d Cir. 2007) .................................................................................. 1

*Mills v. Ethicon, Inc.*,
　406 F. Supp. 3d 363 (D.N.J. 2019) .................................................................... 10

*Patterson v. Fed. Bureau of Investigation*,
　893 F.2d 595 (3d Cir. 1990) .................................................................................. 1

*Read v. Profeta*,
　No. 15-cv-2637 (KM), 2017 U.S. Dist. LEXIS 4451 (D.N.J. Jan. 11, 2017) .... 11

*Strike 3 Holdings, LLC, v. Doe*,
　637 F. Supp. 3d 187 (D.N.J. 2022) ...................................................................... 6

*Strike 3 Holdings, LLC v. Doe*,
　No. 21-5178, 2022 U.S. Dist. LEXIS 111135 (E.D. Pa. June 22, 2022) ......................................................................................................... 7

*Time Share Vacation Club v. Atl. Resorts, Ltd.*,
　735 F.2d 61 (3d Cir. 1984) .................................................................................. 1

*Uber Driver Partner Emery v. Uber Techs., Inc.*,
　No. 3:20-cv-05156-FLW-ZNQ, 2021 U.S. Dist. LEXIS 46641 (D.N.J. Mar. 21, 2021) ...................................................................................................... 4

*United States ex rel. Doe v. Janssen Pharm. N.V.*,
    No. CV 16-06997-RGK-RAO, 2018 U.S. Dist. LEXIS 226049 (C.D. Cal. Apr.
    19, 2018) ................................................................................................................5

**STATUTES**

15 U.S.C. § 1681c-1 ..............................................................................................11

15 U.S.C. § 1681t ..................................................................................................12

N.J.S.A. 56:8-166.1 .................................................................................................6

N.J.S.A. 56:11-31 ....................................................................................................9

N.J.S.A. 56:11-38 to -39 .........................................................................................8

N.J.S.A. 56:11-46 ..........................................................................................8, 9, 10

**RULES**

Fed. R. Civ. P. 12(b) ...............................................................................................1

Defendant LNRDM[1] respectfully submits this Reply Brief in further support of its motion to dismiss the Complaint.

## REPLY ARGUMENT

### I. PLAINTIFFS HAVE FAILED TO ESTABLISH PERSONAL JURISDICTION.

Consistent with their sue-first, ask-questions-later approach, Plaintiffs sued the wrong party. This case is about the alleged wrongful imposition of credit-related security freezes. Yet, non-party LNRS, not Defendant LNRDM, maintains credit-related files and imposes security freezes. Rather than simply correct their error by dismissing LNRDM and suing LNRS, Plaintiffs refuse to concede the patent lack of jurisdiction over LNRDM.

Plaintiffs' legal discussion of this issue is misleading. On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing sufficient facts to show that jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007). Where factual allegations are disputed, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Patterson v. Fed. Bureau of Investigation*, 893 F.2d 595, 603–04 (3d Cir. 1990) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 67 (3d Cir. 1984)).

---

[1] All abbreviations have the same meaning given in LNRDM's opening brief.

Plaintiffs' brief confirms that their jurisdictional argument is based on "specific jurisdiction." (Plaintiffs' Opposition Brief ("Pl. Br.") at 6–11.) That is, Plaintiffs are not contending there is "general jurisdiction" in New Jersey courts as against LNRDM. (*See id*.) To establish specific jurisdiction, Plaintiffs must show, based on evidence, that this case arises from activities that LNRDM directed at New Jersey. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

Plaintiffs are unable to do so because LNRDM did not impose security freezes, in this case or ever. Plaintiffs resort to egregious misdirection by contending in response that LNRDM markets the "Accurint" product. (Pl. Br. at 1, 3–4, 6–7.) Accurint, which is a product offered by a LexisNexis affiliate not involved in this litigation, has nothing to do with either credit reporting or security freezes on credit files.[2] Thus, Plaintiffs' assertion that LNRDM "owns" Accurint (while itself wrong) is irrelevant to the conduct at issue in the Complaint. As the Supreme Court held in *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 264–65 (2017), a defendant's sale of unrelated products or services in the forum state does not create jurisdiction over that defendant.

---

[2] As stated on its web page, Accurint offers qualified users a "direct connection to public records to help verify identities, conduct investigations and detect fraud." LexisNexis Risk Sols. Accurint, https://www.accurint.com/ (last visited July 17, 2024). It does not involve credit reporting. It is "a service of LexisNexis Risk Solutions," not LNRDM. *Id.*

Plaintiffs have offered no evidence that LNRDM is responsible for the credit freezes at issue in this case. Unable to rebut the Declaration of Robby Curtis, who affirmed that "LNRDM . . . does not produce credit reports. . . . LNRDM could not and does not implement freezes on individuals' consumer credit reports or other types of credit freezes," Plaintiffs ignore it. (Curtis Decl. ¶ 5.)

Plaintiffs advance a series of patently false and unsupported allegations in an attempt to suggest that LNRDM was somehow involved in implementing the security freezes. None withstand scrutiny. Plaintiffs claim that they "sent takedown requests to LNRDM." (Pl. Br. at 7; *see also id.* at 9.) That is not true. The Complaint itself states that Plaintiffs sent their takedown requests to privacy@lexisnexisrisk.com, which is identified as an email address of LNRS.[3] (Compl. ¶ 20.) Next, Plaintiffs' brief claims that the letters informing individuals of the security freezes came from LNRDM. (Pl. Br. at 10.) Again, that is false—as the Complaint itself pleads, the letters came from "LexisNexis Risk Solutions." (Compl. ¶¶ 22, 26, 34.) Finally, Plaintiffs claim, without any evidence, that LNRDM is a "consumer reporting agency." (Pl. Br. at 17.) But the Curtis Declaration states that "LNRDM is not a credit-reporting agency," (Curtis Decl. ¶ 5), and Plaintiffs have offered no evidence to dispute that fact. In short, while Plaintiffs' brief throws much

---

[3] Lexis Nexis Risk Sols. Verify HCP Portal, https://verifyhcp.lexisnexisrisk.com/verifyhcp/public/privacy (last visited July 17, 2024).

against the wall in the hopes that something will stick, it relies entirely on unverified allegations that are either irrelevant or simply wrong.

Plaintiffs' brief also suggests that jurisdiction exists because LNRS implemented the security freeze at LNRDM's behest in order to "retaliate" against Plaintiffs. (Pl. Br. at 9.) That is rank speculation. Plaintiffs offer no evidence of any such "agency," nor is there even a parent/subsidiary relationship between LNRS and LNRDM (they are, in fact, affiliates under common indirect ownership). LNRS implemented the security freezes in response to Plaintiffs' Daniel's Law requests. Regardless of who its affiliates are, LNRDM is the wrong party here and should be dismissed. (*See, e.g.*, Opening Brief of Defendant LNRDM ("Def. Br.") at 15–16.)

## II. PLAINTIFFS FAILED TO SEEK LEAVE TO PROCEED ANONYMOUSLY AND HAVE FAILED TO DEMONSTRATE GOOD CAUSE TO DO SO, MERITING DISMISSAL.

Plaintiffs engage in further misdirection in seeking to justify their use of "John Doe-1" and "Jane Doe-2" pseudonyms in lieu of actual identities. Plaintiffs fail to acknowledge that ***they***—not LNRDM—carry the burden to secure leave of court, upon good cause shown, to litigate on an anonymous basis. *See Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011); *Doe v. Rowan Univ.*, No. 23-20657, 2023 U.S. Dist. LEXIS 181801, at *1 n.1 (D.N.J. Oct. 10, 2023); *Uber Driver Partner Emery v. Uber Techs., Inc.*, No. 3:20-cv-05156-FLW-ZNQ, 2021 U.S. Dist. LEXIS 46641, at *1 n.1 (D.N.J. Mar. 21, 2021). Indeed, each of the cases Plaintiffs cite, (*see* Pl. Br. at

-4-

12), arose from the plaintiff's filing of a motion seeking such permission to proceed anonymously. Plaintiffs' failure to seek prior court authorization to proceed anonymously itself requires dismissal of their Complaint. *See, e.g.*, *United States ex rel. Doe v. Janssen Pharm. N.V.*, No. CV 16-06997-RGK-RAO, 2018 U.S. Dist. LEXIS 226049, at *7 (C.D. Cal. Apr. 19, 2018) (dismissing anonymously pleaded complaint where plaintiff had not secured authorization to so proceed); *Doe v. Kan. State Univ.*, No. 2:20-cv-02258-HLT-TJJ, 2021 U.S. Dist. LEXIS 4538, at *6 (D. Kan. Jan. 11, 2021) ("Effectively, no case has properly been commenced by Plaintiff because he did not use his real name. For this reason, this case should be dismissed without prejudice." (internal citations omitted)).

While Plaintiffs deride these legal requirements as mere "theater," (Pl. Br. at 15), the law provides a public right to know the identities of plaintiffs.[4] *Dr. G. v. Bell Atl. Mobile Phones, Inc.*, No. 89-1967, 1989 U.S. Dist. LEXIS 8066, at *3 (E.D. Pa. July 14, 1989). "Identifying the parties to the proceeding is an important dimension of publicness," and "[a] plaintiff's use of a pseudonym 'runs afoul of the public's common law right of access to judicial proceedings.'" *Megless*, 654 F.3d at 408 (citations omitted). "The publicness of proceedings is an essential quality of

---

[4] While Plaintiffs promised weeks ago to disclose their names to LNRDM on a confidential basis, they have yet to do so or take steps to raise the issue with the Court. So their current promise to make such disclosure rings hollow from our perspective. In addition, while disclosing the names to counsel would address some of the deficiencies identified herein, it does not satisfy the Third Circuit's requirements regarding public proceedings.

judicial proceedings." *B.L. v. Fetherman*, No. 22-3471, 2023 U.S. Dist. LEXIS 21118, at *17 (D.N.J. Feb. 8, 2023).[5]

Even if Plaintiffs' opposition to this motion could be procedurally accepted as the required request to proceed anonymously, Plaintiffs have failed to demonstrate the substantively required "good cause." *Megless* requires a plaintiff to establish, through evidence, a reasonable "fear of severe harm." 654 F.3d at 408. Plaintiffs, however, offer no such declarations or other support. *See Strike 3 Holdings, LLC, v. Doe*, 637 F. Supp. 3d 187, 197 (D.N.J. 2022) ("Merely stating that [one's] reputation would be irreparably tarnished and future employment prospects *may* be lost—without any evidence or even a proffer to support either conclusory statement—does not meet the threshold for anonymity."). The unsworn assertions in the Complaint are far too vague and conclusory to suffice. In paragraph 25, counsel asserts Plaintiff John Doe-1 in the past has been subject to "threats," but provides no detail (such as the timing or context of the threats). Similarly, we are told that Plaintiff Jane Doe-2 is a retired officer who previously received threats of violence. (Compl. ¶¶ 31-32.) In neither case does the Complaint explain why or how either Plaintiff would be exposed to a severe risk of harm if their names appeared in the caption of this

---

[5] Plaintiffs mistakenly claim that "publicly revealing Plaintiffs' identities would only further undermine the rights granted by Daniel's Law." (Pl. Br. at 14.) Daniel's Law addresses only the disclosure of a covered person's home address and unpublished home telephone number. *See* N.J.S.A. 56:8-166.1. It does not exempt an individual who chooses to file a lawsuit from having to disclose his or her identity.

Complaint. There is no claim, for example, that their status as law enforcement officers is otherwise unknown.

Unlike lawsuits involving child pornography or sexual assault, as in the cases Plaintiffs cite in their Brief,[6] being connected to an allegedly erroneous security freeze does not expose Plaintiffs to embarrassment or retribution. Plaintiffs have not argued otherwise, and they point to no analogous cases where anonymous litigation was permitted. Simply put, the Complaint's "broad, vague, and conclusory allegations of harm . . . are . . . insufficient to overcome the presumption of public access." *Strike 3 Holdings, LLC v. Doe*, No. 21-5178, 2022 U.S. Dist. LEXIS 111135, at *5 (E.D. Pa. June 22, 2022); *see B.L.*, 2023 U.S. Dist. LEXIS 21118, at *14, *20 (D.N.J. Feb. 8, 2023) (denying motion to proceed by pseudonym where plaintiff "refer[red] only to some vague possibility of physical harm" and did not provide "any reasonable basis for his fear"); *Doe v. Shawnee Holding, Inc.*, No. 3:21-cv-01037, 2022 U.S. Dist. LEXIS 46042, at *6, *13 (M.D. Pa. Mar. 15, 2022) (denying motion to proceed anonymously where "plaintiffs have articulated no specific threats or any particular basis for their concerns"). Accordingly, the Complaint should be dismissed.

---

[6] *See Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 547 (D.N.J. 2006) (mental illness); *Doe v. Oshrin*, 299 F.R.D. 100, 101 (D.N.J. 2014) (child pornography); *Doe v. Trishul Consultancy, LLC*, No. 18-16468, 2019 U.S. Dist. LEXIS 169051, at *3 (D.N.J. Sept. 30, 2019) (sexual assault and harassment); *Doe v. Middlesex Cnty.*, No. 20-8625, 2021 U.S. Dist. LEXIS 7332, at *4 (D.N.J. Jan. 14, 2021) (constitutional violations); *L.A. v. Hoffman*, No. 14-6895, 2015 U.S. Dist. LEXIS 94564, at *1 (D.N.J. July 21, 2015) (Megan's Law).

## III. THE COMPLAINT FAILS TO PLEAD A VIABLE CLAIM UNDER NEW JERSEY LAW.

### A. Plaintiffs Do Not State a Claim Under the New Jersey Identity Theft Protection Act.

Even if they could establish jurisdiction and satisfy Third Circuit law regarding anonymous complaints, Plaintiffs have not stated a cause of action under the New Jersey provisions they have invoked. Their primary obstacle is that the New Jersey Identify Theft Prevention Act ("NJITPA"), even if it applies here, does not create a private cause of action for wrongful imposition of a security freeze. While Plaintiffs claim otherwise, they cite no specific provision in the statute to support that bald assertion. (*See* Pl. Br. at 16–17 (citing Compl. ¶¶ 21, 23).) The NJITPA creates a private claim for failing to comply with the act, *see* N.J.S.A. 56:11-38 to -39, but, to state the obvious, a plaintiff asserting such a claim must state an underlying violation of the act. Plaintiffs fail to point to any provision of the NJITPA that prohibits the wrongful imposition of a security freeze. While N.J.S.A. 56:11-46(b) requires a consumer reporting agency to implement a security freeze "after receiving a written request from the consumer," nothing in this provision provides for liability if the agency wrongfully implements a freeze. Unsurprisingly, Plaintiffs have not cited a single NJITPA case indicating liability could attach in such circumstances.

The sole case Plaintiffs cite, *Boone v. T-Mobile USA Inc.*, No. 17-378-KM-MAH, 2018 U.S. Dist. LEXIS 14951 (D.N.J. Jan. 26, 2018), involved securing a credit report without the plaintiff's consent, in clear violation of a specific NJITPA provision, N.J.S.A. 56:11-31. *Boone*, 2018 U.S. Dist. LEXIS 14951, at *40. Here, there is no equivalent NJITPA provision regarding wrongful freezes. Plaintiffs' allegation that "Plaintiffs never requested any freeze," (Pl. Br. at 17), simply does not state a NJITPA claim.

Plaintiffs' brief further asserts that LNRDM violated the NJITPA by failing to lift security freezes upon request. (*Id.*) However, Plaintiffs have failed to plead (and, evidently, cannot plead) the facts necessary to demonstrate a violation of any potentially applicable provision. The NJITPA requires a credit reporting agency to "remove a security freeze within three business days of receiving a request for removal from the consumer, who provides the following: (1) [p]roper identification; and (2) [t]he ***unique personal identification number*** or password provided by the consumer reporting agency pursuant to subsection c. of this section." N.J.S.A. 56:11-46(j) (emphasis added). The Complaint acknowledges that each Plaintiff received a "Personal Identification Number (PIN)" in the letter confirming the security freeze. (Compl. ¶ 34.) However, while the Complaint alleges that John Doe-1 provided his name and address when asking that the freeze be lifted, it does not plead that John Doe-1 provided his PIN. (*Id.* ¶ 27.) Moreover, the Complaint

does not allege that Jane Doe-2 requested to remove her security freeze at all. If a Plaintiff did not ask to lift the freeze (as in the case of Jane Doe-2), or failed to provide the PIN required by statute to avoid fraudulent conduct (as in the case of John Doe-1), there is no stated violation of N.J.S.A. 56:11-46.

Perhaps recognizing their NJITPA claim cannot succeed, Plaintiffs' brief suggests a separate ground for liability not pled in the Complaint—that is, when implementing the security freeze, LNRDM supposedly shared personal information with third parties in violation of the FCRA. (Pl. Br. at 18–19.) Aside from being simply incorrect (Plaintiffs do not seem to understand how a security freeze works), this claim is not pled in the Complaint, which does not set forth any FCRA claim. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 387 (D.N.J. 2019).

### B. Plaintiffs Do Not State a Claim for Tortious Interference.

The Complaint's common law claims fare no better. First and foremost, Plaintiffs simply ignore the caselaw holding that a plaintiff cannot plead a tortious interference claim without identifying the contract supposedly lost. (*See* Def. Br. at 22–26.) Instead of remedying this deficiency, Plaintiffs urge the Court to disregard the caselaw and "infer" that such contracts exist because they are "an essential part of everyday life." (Pl. Br. at 20.) But the issue is not whether such contracts are

commonplace; instead, the issue is which *particular* contract the plaintiff allegedly lost due to the defendant's interference.  If Plaintiffs actually lost any contracts (a dubious proposition),[7] they must be identified and pled in the Complaint.

    Plaintiffs similarly suggest that vague and conclusory references can satisfy their obligation to plead prospective economic opportunities.  (*See* Pl. Br. at 21–22.)  But an "actual" opportunity must be identified, and the failure to do so requires dismissal.  *E.g.*, *Read v. Profeta*, No. 15-cv-2637 (KM), 2017 U.S. Dist. LEXIS 4451, at *17–18 (D.N.J. Jan. 11, 2017).  Plaintiffs provide no factual allegations regarding specific opportunities that they supposedly lost due to any credit freezes.

    In addition, Plaintiffs have not sufficiently alleged the "malice" required to support a tortious interference claim.  Non-party LNRS simply did what Plaintiffs asked (or what it believed was being asked) and ceased disclosing the covered persons' home addresses and telephone numbers via dissemination of a credit file.  (*See* Def. Br. at 8.)  The mechanism for ceasing the release of information in a credit report is a security freeze.  *See* 15 U.S.C. § 1681c-1(i)(2).  If Plaintiffs did not want any action taken as to FCRA-governed data, they should either have so stated in their requests (they did not) or they should not have sent their requests to credit-reporting entities.  Nothing in the facts as pled suggests malice of any kind.

---

[7] Any issue with the credit freezes could have been quickly addressed by asking to remove the freeze (as many consumers do to permit specific transactions) or by the prospective vendor simply obtaining credit-related information from another agency.

## IV. IN ANY EVENT, THE FCRA PREEMPTS THE COMPLAINT'S STATE-LAW CLAIMS CONCERNING CREDIT-REPORT FREEZES.

Even if one were to assume Plaintiffs had stated viable state-law claims, any such claims would be preempted by federal law. Rather than address the actual merits of Defendant's preemption argument (*i.e.*, that Section 625(b) of the FCRA expressly preempts state-law "requirements" regarding the "subject matter" of security freezes on credit reports), Plaintiffs miscast the issue as whether the FCRA preempts Daniel's Law itself. There is no argument in this case that the FCRA preempts Daniel's Law. Plaintiffs repeatedly assert that "home addresses and telephone numbers are not subject to FCRA" and may be regulated by state law, and therefore, "[t]here is no preemption." (Pl. Br. at 24, 26.)[8] This is just another exercise in misdirection. Unlike the "Atlas" cases before this Court, this Complaint asserts state-law claims arising from *security freezes on credit files*. It alleges that LNRDM "set into motion a campaign to freeze credit reports," (Compl. ¶ 2), and the Complaint's counts each allege that Defendant imposed freezes without authorization. The issue, therefore, is whether claims involving the implementation and lifting of security freezes on credit reports are expressly preempted by FCRA Section 625(b). The answer to that question is, plainly, yes.

---

[8] *See also* Pl. Br. at 25 ("Daniel's Law is not in any way inconsistent with the FCRA."); *id*. (asserting that "LNRDM points to not a single section of the FCRA that actually states that addresses and phone numbers are part of a 'consumer report'" (emphasis omitted)).

-12-

To suggest a different result, Plaintiffs cite cases addressing preemption in situations where the preemptive FCRA provision was silent as to the issue addressed by state law. For example, in *Consumer Data Industry Association v. Platkin*, No. 19-19054, 2024 U.S. Dist. LEXIS 54812, at *28, *45 (D.N.J. Mar. 27, 2024), Judge Castner held that a New Jersey statute requiring agencies to provide credit file disclosures in different languages did not run afoul of a preemptive FCRA provision requiring agencies to provide "all information in the consumer's file at the time of the request" because the FCRA was silent with respect to the language requirement. Notably, the District Court observed that a different outcome would be compelled if the FCRA provision "addressed the language file disclosures should be made in, [because] that would largely end the analysis." *Id.* at *46; *see also Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 3, 10–11 (1st Cir. 2022) (remanding to District Court to consider extent to which preemptive FCRA provisions addressed what may or may not be disclosed regarding consumer's medical debts, which would, in turn, determine whether they preempted state law prohibiting disclosure of such debts). Unlike *Platkin* and *Frey*, this case does not involve an attempt by a state to regulate an area for which the preemptive FCRA provision is silent.

Plaintiffs' estoppel argument, (Pl. Br. at 27–28), is yet another attempt at misdirection. Plaintiffs cite therein several public statements regarding the Accurint product; however, as explained earlier, Accurint is **not** a credit-reporting product,

and Accurint has ***nothing*** to do with the security freezes at issue in this Complaint. Certain LexisNexis-affiliated companies offer products, like Accurint, that do not involve credit reports. That unsurprising fact does nothing to divest the FCRA of effect over those products and services that do involve credit reporting. *See generally Adams v. LexisNexis Risk & Info. Analytics Grp., Inc*., No. 08-4708, 2010 U.S. Dist. LEXIS 47123 (D.N.J. May 12, 2010) (addressing Accurint product).

## CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss should be granted.

Respectfully submitted,

LOWENSTEIN SANDLER LLP
Attorneys for Defendant LexisNexis Risk Data Management, LLC

By: /s/ A. Matthew Boxer
    A. Matthew Boxer

DATED: July 19, 2024