## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JOHN DOE-1 and JANE DOE-2,
Individually and on behalf of all others
similarly situated,

        Plaintiffs,

vs.

LexisNexis     RISK     DATA
MANAGEMENT,   LLC,   RICHARD
ROES 1-10, fictitious names of unknown
individuals and ABC COMPANIES 1-10,
fictitious names of unknown entities,

        Defendants.

Civil Action No. 1:24-cv-04566
Honorable Harvey Bartle, III,
U.S.D.J.

## OPPOSITION TO LEXISNEXIS'S AMENDED MOTION TO DISMISS

*Attorneys for Plaintiffs*

PEM LAW LLP
Rajiv D. Parikh
Kathleen Barnett Einhorn
1 Boland Dr., Suite 101
West Orange, NJ 07052
Tel.: (973) 577-5500
rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com

BOIES SCHILLER FLEXNER LLP
Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, NY 12207
Tel.: (518) 434-0600
ashaw@bsfllp.com

MORGAN & MORGAN
John A. Yanchunis (*pro hac vice* to be
filed) 201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................1

RELEVANT ALLEGATIONS ...............................................................................2

I.   THE COMPLAINT DETAILS HOW LEXISNEXIS UNLAWFULLY IMPLEMENTED AND FAILED TO REMOVE SECURITY FREEZES.....2

II.   THE COMPLAINT DETAILS LEXISNEXIS'S UNLAWFUL ACTS.........3

LEGAL STANDARD ..............................................................................................4

ARGUMENT ...........................................................................................................5

I.   PLAINTIFFS ASSERT VIABLE AND SUPPORTED CAUSES OF ACTION. ............................................................................................................5

A.   Plaintiffs assert viable New Jersey Identity Theft Protection Act claims. ......5

    1. Plaintiffs have a private right of action under the ITPA. ...........................5

    2. Plaintiffs state facts establishing the elements of their claims. ..................6

    3. Plaintiffs sufficiently allege LexisNexis's willful violation of the NJITPA…..........................................................................................................8

    4. Plaintiffs allege unauthorized disclosure of their personal information......9

    5. Plaintiffs also allege that they requested removal of the freezes. ..............9

    6. LexisNexis's reading of the ITPA is erroneous. .......................................10

B.   Plaintiffs assert viable interference claims. ..................................................10

    1.  Plaintiffs allege existing and prospective contractual relations. ..............11

    2.  Plaintiffs allege a "[r]easonable expectation of economic advantage." ...12

    3.  Plaintiffs properly alleged malice or lack of justification. ......................13

    4.  Plaintiffs properly alleged loss of prospective relations..........................15

    5.  Plaintiffs also properly allege harm..........................................................16

i

II. LEXISNEXIS'S PREEMPTION ARGUMENTS ARE MERITLESS AND
BARRED. ....................................................................................17

A.  There is no FCRA preemption for any of these claims. ................................17

B.  LexisNexis should be estopped from making this preemption argument. .....20

C.  Traditional preemption principles do not support preemption. ......................22

CONCLUSION ....................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.,*
  2010 WL 1931135 (D.N.J. May 12, 2010) ......................................................... 21

*Arcidiacono v. Am. Exp. Co.,*
  1993 WL 94327 (D.N.J. Mar. 29, 1993) ............................................................ 18

*Austar Int'l Ltd. v. AustarPharma LLC,*
  425 F.Supp.3d 336 (D.N.J. 2019) ....................................................................... 12

*Avaya Inc., RP v. Telecom Labs, Inc.,*
  838 F.3d 354 (3d Cir. 2016) ......................................................................... 14, 15

*Boone v. T-Mobile USA Inc.,*
  2018 WL 588927 (D.N.J. Jan. 29, 2018) ........................................................... 5, 9

*Burnett v. Cnty. of Bergen,*
  198 N.J. 408 (2009) ............................................................................................... 5

*Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc.,*
  2023 WL 8643781 (D.N.J. Dec. 14, 2023) ......................................................... 19

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH,*
  2010 WL 5239238 (D.N.J. Dec. 16, 2010) ......................................................... 12

*Consumer Data Indus. Ass'n v. Frey,*
  26 F.4th 1 (1st Cir. 2022) ............................................................................. 17, 19

*Consumer Data Indus. Ass'n v. Platkin,*
  2024 WL 1299256 (D.N.J. Mar. 27, 2024) .............................................. 17, 19, 22

*Cortez v. Trans Union, LLC,*
  617 F.3d 688 (3d Cir. 2010) ................................................................................. 8

*Cox v. Simon,*
  278 N.J. Super. 419 (App. Div. 1995) ................................................................ 14

*Cushman v. Trans Union Corp.,*
  115 F.3d 220 (3d Cir. 1997)................................................................ 22

*Danise v. Saxon Mortg. Servs. Inc.,*
  738 F. App'x 47 (3d Cir. 2018) .......................................................... 20

*Davenport v. Farmers Ins. Grp.,*
  378 F.3d 839 (8th Cir. 2004)............................................................. 18

*DiGiorgio Corp. v. Mendez and Co, Inc.,*
  230 F. Supp. 2d 552 (D.N.J. 2002) .................................................... 13

*Dover v. Shoe Show, Inc.,*
  2013 WL 1748337 (W.D. Pa. Mar. 19, 2013) ..................................... 8

*Fenico v. City of Philadelphia,*
  70 F.4th 151 (3d. Cir. 2023)................................................................ 4

*Florian Greenhouse, Inc. v. Cardinal IG Corp.,*
  11 F. Supp. 2d 521 (D.N.J. 1998) ..................................................... 15

*Fowler v. UPMC Shadyside,*
  578 F.3d 203 (3d Cir. 2009)........................................................... 4, 16

*Fuges v. Sw. Fin. Servs., Ltd.,*
  707 F.3d 241 (3d Cir. 2012)............................................................... 19

*Galper v. JP Morgan Chase Bank,*
  802 F.3d 437 (2d Cir. 2015)............................................................... 17

*Gelman v. State Farm Mut. Auto. Ins. Co.,*
  583 F.3d 187 (3d Cir. 2009)............................................................... 22

*Gould v. Great-W. Life & Annuity Ins. Co.,*
  959 F. Supp. 214 (D.N.J. 1997) ........................................................ 23

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.,*
  846 F.3d 625 (3d Cir. 2017)................................................................. 9

iv

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
    337 F.3d 314 (3d Cir. 2003)........................................................... 16, 20

*Lenchitz v. Cenlar FSB*,
    2024 WL 1052000 (D.N.J. Mar. 11, 2024)....................................... 13

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993)...................................................... 10, 15, 16

*Lupian v. Joseph Cory Holdings LLC*,
    905 F.3d 127 (3d Cir. 2018)........................................................... 4, 16

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
    848 F.2d 414 (3d Cir. 1988)............................................................... 20

*Printing Mart-Morristown v. Sharp Elecs. Corp.*,
    116 N.J. 739 (1989)............................................................... 11, 12, 14

*Rainier's Dairies v. Raritan Val. Farms*,
    19 N.J. 552 (1955).............................................................................. 13

*Reed v. Swatch Grp. (US), Inc.*,
    2014 WL 7370031 (D.N.J. Dec. 29, 2014)...................................... 6, 8

*Taksir v. Vanguard Grp.*,
    903 F.3d 95 (3d Cir. 2018)................................................................. 4

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*,
    839 F.3d 242 (3d Cir. 2016)............................................................... 4

*Zungoli v. United Parcel Serv., Inc.*,
    2009 WL 1085440 (D.N.J. Apr. 22, 2009) ...................................... 5, 10

## **Statutes**

15 U.S.C. § 1681a(d)(1)........................................................................ 18

15 U.S.C. § 1681b(c) ............................................................................ 24

15 U.S.C. § 1681b(c)(2)(A), (C) .................................................................. 23

15 U.S.C. § 1681b(e)(1) ............................................................................... 24

15 U.S.C. § 1681(c) ..................................................................................... 18

15 U.S.C. § 1681c-1 ..................................................................................... 19

15 U.S.C. § 1681c-1(i)(3) ............................................................................ 23

15 U.S.C. § 1681t(b)(1)(E) .................................................................... 18, 19

15 U.S.C. § 1681t(a) .................................................................................... 18

N.J. S.A. 56:11-46(e) ..................................................................................... 7

N.J.S.A. 56:11–28 .......................................................................................... 5

N.J.S.A. 56:11-38 ....................................................................................... 5, 6

N.J.S.A. 56:11-44 ........................................................................................... 6

N.J.S.A. 56:11-50 ..................................................................................... 6, 10

N.J.S.A. 56:11-46 ....................................................................................... 6, 8

N.J.S.A. 56:11-46(f) ....................................................................................... 7

N.J.S.A. 56:11-46(j) ....................................................................................... 7

## Regulations

*The Fair Credit Reporting Act's Limited Preemption of State Laws*
87 Fed. Reg. 41,042 (July 11, 2022) ...................................................... 17

## Other Authorities

Restatement (Second) of Torts § 766 cmt.j ............................................. 13

Restatement (Second) of Torts § 766B cmt.c ........................................................ 12

Restatement (Second) of Torts § 767 ..................................................................... 15

## PRELIMINARY STATEMENT

The Motion to Dismiss ("Motion") filed by LexisNexis Risk Solutions, Inc. ("LexisNexis") underscores the defiance it has long demonstrated in the face of laws designed to protect the safety and livelihood of those who serve their country and state.  That defiance also reeks of contradictions.  While telling this Court that Daniel's Law is preempted by the Fair Credit Report Act ("FCRA"), the LexisNexis group has told federal regulators *for years* that the FCRA does not apply to the type of information at issue—because that is exactly how it justified the selling of location data before the passage of Daniel's Law. Even if the FCRA does apply (it does not), LexisNexis fails to tell this Court that the very provisions it points to in its Motion allow consumers to opt-out of their addresses being sold. Its failure to be forthcoming with this Court is the clearest demonstration that LexisNexis (and the LexisNexis group) would not honor any opt-out under Daniel's Law or the FCRA, and any attempt by Covered persons to do so would lead to obfuscation, denial, and even retaliation in the form of freezing a Covered Person's credit.

LexisNexis's suggestion that the New Jersey Identity Theft Prevention Act ("NJITPA") does not apply is also wrong: the NJITPA expressly provides for a private right of action. Plaintiffs' allegations establish a claim under the NJITPA, and the factual allegations also establish all required elements for tortious interference. Indeed, LexisNexis has failed to explain how the NJITPA could not

1

apply when LexisNexis, in its correspondence with Plaintiffs, cited to this statute (not the FCRA, which it now claims preempts the NJITPA) as the basis to freeze Covered Persons' credit.

LexisNexis's brazen double-speak must come to an end. The Court should reject LexisNexis's misplaced and often contradictory arguments, and allow Plaintiffs to proceed with this litigation.

## RELEVANT ALLEGATIONS

### I.    THE COMPLAINT DETAILS HOW LEXISNEXIS UNLAWFULLY IMPLEMENTED AND FAILED TO REMOVE SECURITY FREEZES.

Plaintiffs and the putative class members are all individuals who sent Daniel's Law takedown requests to   LexisNexis group who retaliated by "implementing unrequested, unlawful, and harmful security freezes." Compl. ¶4  (Docket Entry No. 1). "[LexisNexis] in its own public materials recognizes the difference between a Daniel's Law  request and a request for a credit freeze. They are two separate requests." Compl. ¶5. Plaintiffs never requested any credit report freeze. Compl. ¶4. Plaintiffs' identities were not stolen, nor did Plaintiffs make reports of the same. Compl. ¶21. Instead, LexisNexis "falsely reported" identity theft by freezing Plaintiffs' consumer credit reports. Compl. ¶22. In response, Plaintiffs uploaded personal documents to LexisNexis and requested that the security freezes be lifted. Compl. ¶¶6, 28-29. Despite the legal requirement to promptly lift the credit freeze,

"[LexisNexis] still has not done so." Compl. ¶6. LexisNexis has continued to misreport identity theft, even after receiving personal documentation from Plaintiffs including their "full name, address, phone number, social security number, and driver's license number." Compl. ¶27.

## II.    THE COMPLAINT DETAILS LEXISNEXIS'S UNLAWFUL ACTS.

Nevertheless, Plaintiffs detail how they sent written Daniel's Law takedown requests to LexisNexis in December 2023 and January 2024. Compl. ¶20. Despite these requests, LexisNexis search results continued to display Plaintiffs' New Jersey home addresses, as well as that of their family members. Compl. ¶5. LexisNexis responded to the takedown requests by placing security freezes on file for each of the Plaintiffs "pursuant to the security freeze laws in [their] state of residence, NJ, specifically." Compl. ¶¶22, 26. LexisNexis then repeatedly contacted Plaintiffs in correspondence over email and mail. Compl. ¶¶20-23, 26-28. This included letters sent by mail to Plaintiffs' New Jersey addresses. Compl. ¶¶ 26, 28, 33. LexisNexis, in its letters, instructed Plaintiffs to provide "proper identification" to remove the security freezes placed on their files. Compl. ¶¶22, 26. Plaintiffs repeatedly provided that information but the freezes were never lifted. Compl. ¶¶27, 28, 36.

## **LEGAL STANDARD**

All "facts alleged in the complaint are accepted as true for purposes of the motion." *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018). In addition to all factual allegations, courts accept as true "all reasonable inferences that can be drawn from them." *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018). Under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Averments are sufficient when they give notice of the basis for each claim. *Id.* at 212. Further, under Rule 12(b)(6), a motion to dismiss will only be granted if the court finds that the "plaintiff's claims lack facial plausibility." *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d. Cir. 2023). Even if a motion to dismiss is granted, Plaintiffs should be granted leave to amend and cure any perceived deficiencies. *See United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 250 (3d Cir. 2016).

<u>**ARGUMENT**</u>

**I.    PLAINTIFFS ASSERT VIABLE AND SUPPORTED CAUSES OF ACTION.**

Plaintiffs assert three causes of action, all of which are viable and supported.

**A.    Plaintiffs assert viable New Jersey Identity Theft Protection Act claims.**

Plaintiffs' factual allegations establish a violation of the NJITPA which seeks "whenever possible" to avoid giving access to information "an individual may want kept private." *Burnett v. Cnty. of Bergen*, 198 N.J. 408, 436 (2009). "New Jersey courts recognize that citizens have a reasonable expectation and a right to keep identifying information confidential," which is consistent with public policy. *Zungoli v. United Parcel Serv., Inc.*, 2009 WL 1085440, at *5 (D.N.J. Apr. 22, 2009). LexisNexis's motion provides no basis to eliminate this cause of action.

**1.    Plaintiffs have a private right of action under the ITPA.**

The NJITPA amended the New Jersey Fair Credit Reporting Act ("NJFCRA"), N.J.S.A. 56:11–28, *et seq.*, which was enacted in 1997 and contains two liability mechanisms. *See* N.J.S.A. 56:11-38 (assigning liability to "[a]ny person who willfully fails to comply with any requirement imposed under this act"); 56:11-39 (similarly assigning liability to "[a]ny person who is negligent in failing to comply"). These provisions provide a private right of action under the NJFCRA. *See, e.g.*, *Boone v. T-Mobile USA Inc.*, 2018 WL 588927, at *16 (D.N.J. Jan. 29, 2018) (denying motion to dismiss). In *Boone*, the plaintiffs alleged that a hard credit

inquiry was made into their accounts under false pretenses without their consent. *Id.* at *8. The court found that those factual allegations were sufficient to state a claim under the NJFCRA. *Id.* at *16.

The NJITPA, N.J.S.A. 56:11-44, *et seq.*, enacted in 2005, expressly amended the 1997 NJFCRA. *See* NJITPA, 2005 N.J. Sess. Law Serv. Ch. 226. The NJITPA assigns liability for willful and negligent noncompliance under N.J.S.A. 56:11-38 and -39 of the NJFCRA. *See* N.J.S.A. 56:11-50. This has been interpreted as "expressly stat[ing] that violators of its provisions are subject to liability under the NJFCRA." *Reed v. Swatch Grp. (US), Inc.,* 2014 WL 7370031, at *6 n. 2 (D.N.J. Dec. 29, 2014) (dismissing a claim under the federal FACTA and giving the NJFCRA and ITPA as contrasting examples of law that do provide for a private right of action). Therefore, any person who violates the NJITPA is subject to liability under the NJFCRA.

### 2.    Plaintiffs state facts establishing the elements of their claims.

LexisNexis violated the NJITPA both by implementing the security freezes and also by refusing to remove the security freezes. Compl. ¶23. The NJITPA only authorizes security freezes when specific conditions are met, and Plaintiffs explain how such conditions were not met: Plaintiffs never requested any freeze. Compl. ¶21. Plaintiffs also detail how they tried unsuccessfully to have LexisNexis remove the freezes, which constitutes yet another violation.

The NJITPA mandates consumer reporting agencies to remove freezes on consumer reports whenever requested. N.J.S.A. 56:11-46. "A consumer reporting agency that receives a request from a consumer to temporarily lift a freeze on a consumer report pursuant to subsection d. of this section shall comply with the request no later than three business days after receiving the request." N.J. S.A. 56:11-46(e)). Here, Plaintiffs allege that LexisNexis violated the NJITPA not only by implementing the freezes but also violated the NJITPA (N.J.S.A. 56:11-46(e)) by not complying with Plaintiffs' requests to lift the freezes on their reports. Compl. ¶6.

Further, LexisNexis, as a consumer reporting agency ("CRA"), was required to "develop procedures involving the use of telephone, fax, the Internet, or other electronic media to receive and process a request from a consumer to temporarily lift a freeze on a consumer report pursuant to subsection d. of this section in an expedited manner . . . with the goal of processing a request within 15 minutes of that request." N.J.S.A. 56:11-46(f). Plaintiffs allege that LexisNexis did not lift the illegally placed freezes on Plaintiffs' accounts at all, let alone expeditiously or within 15 minutes. Compl. ¶¶29, 34, 37. Further, CRAs "**shall remove a security freeze within three business days of receiving a request for removal from the consumer**, who provides the following: (1) Proper identification; and (2) The unique personal identification number or password provided by the consumer reporting agency pursuant to subsection c. of this section." N.J.S.A. 56:11-46(j) (emphasis

added). LexisNexis violated this section by not removing the security freeze after being provided with such personal identification. Compl. ¶¶27, 36.

### 3. Plaintiffs sufficiently allege LexisNexis's willful violation of the NJITPA.

Plaintiffs allege a "willful failure to comply with the Identity Theft Protection Act." Compl. ¶56. Under the similar Fair Credit Reporting Act, such violations are assessed under a "reckless disregard" standard. *Cortez v. Trans Union*, LLC, 617 F.3d 688, 721 (3d Cir. 2010). Meeting that standard requires "specific allegations that the defendants had been informed of [legal] requirements . . . [and] then disregarded [them]." *Reed*, 2014 WL 7370031, at *5.

LexisNexis was aware of the relevant legal requirements—it referenced them in its own letters. Compl. ¶¶22, 26, 34; *see Dover v. Shoe Show, Inc.*, 2013 WL 1748337, at *3 (W.D. Pa. Mar. 19, 2013) (plaintiffs sufficiently alleged that defendants were "made aware of its compliance obligations by VISA manuals and guidelines"). LexisNexis cited N.J.S.A. 56:11-46 which is part of the NJITPA. Compl. ¶¶22, 26, 34. LexisNexis also wrote that "[t]his security freeze will remain in place indefinitely until you decide to temporarily or permanently remove the security freeze." *Id.* This shows awareness (and willful disregard) of legal obligations to remove the freezes.

### 4. Plaintiffs allege unauthorized disclosure of their personal information.

To initiate a credit freeze, LexisNexis had to communicate with a third-party using each Plaintiffs' personally identifiable information (PII). Because the freeze was unauthorized, that sharing of PII was unauthorized. This disclosure to third parties, in combination with the wrongful freezes, constitutes the "unauthorized dissemination of [Plaintiffs'] own private information," which is by itself sufficient to show the injury necessary to survive a motion to dismiss. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 640 (3d Cir. 2017) (finding that individuals can sue for unauthorized disclosure of PII, including home addresses). The Third Circuit noted that the existence of a private right of action and statutory damages for willful violations under the FCRA "clearly illustrates" that unauthorized disclosure causes concrete harm. *Id.* at 639. Plaintiffs' claims here are sufficient as they point to conduct that clearly violates statutory provisions and the statute provides a right of action. *See Boone*, 2018 WL 588927, at *16 (finding claim alleged under the NJFCRA).

### 5. Plaintiffs also allege that they requested removal of the freezes.

In *Boone*, where plaintiffs "made clear" they did not want a hard inquiry into their credit, but T-Mobile conducted one anyway, the court found that it amounted to a wrongful action by the Agency. 2018 WL 588927 at *17. Plaintiffs likewise

9

properly allege that they made clear they did not want freezes placed on their accounts. *See id.*; Compl. ¶¶29, 34.

Plaintiffs also properly allege that LexisNexis retaliated by placing security freezes on their accounts. There is thus "clearly a nexus" between Plaintiffs' Daniel's Law takedown requests and their desire to prevent disclosure of their personal information and LexisNexis's decision to place the security freeze in violation of the ITPA. *See Zungoli*, 2009 WL 1085440, at *5.

### 6. LexisNexis's reading of the ITPA is erroneous.

LexisNexis argues that "N.J.S.A. 56:11-50 may allow a claim against an agency that refuses to implement a freeze when asked to do so by a consumer, but it does not allow a claim for a purported mistaken imposition of a freeze." Mot. at 30. Yet the NJITPA specifically states the only conditions when security freezes can legally be placed, and those conditions do not apply here. LexisNexis also conflates the wrongful placing of a security freeze with the failure to remove such freeze upon Plaintiffs' request for removal. Plaintiffs properly state a claim under the NJITPA.

### B. Plaintiffs assert viable interference claims.

To assert their two contractual interference claims, Plaintiffs must allege, respectively, that (1) they were a party to an existing contractual relationship; (2) the defendant intentionally interfered with that relationship; (3) the interference was undertaken with malice; and (4) Plaintiffs suffered damages resulting from the

interference (*see Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993) (concerning interference with contractual relations)); and (1) a "reasonable expectation of economic advantage" (2) that "interference was done intentionally and with malice," (3) "facts leading to the conclusion that the interference caused the loss of the prospective gain" and (4) "that the injury caused damage." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 750-2 (1989) (concerning interference with prospective contractual relations).

### 1.   Plaintiffs allege existing and prospective contractual relations.

Plaintiffs allege actual contracts through "existing financial and health arrangements and contracts." Compl. ¶61. LexisNexis wrongly placed credit freezes and stopped them from issuing credit reports to other servicers that rely on credit to grant Plaintiffs financial, health, and insurance contracts. Compl. ¶¶ 22, 26, 34. On the face of the complaint and by way of inference, the Court can find at this stage that such contracts are both existing and prospective, as access to healthcare, insurance, and other services are an essential part of everyday life.

LexisNexis "openly acknowledged in their letters of retribution" that their actions "may result in Plaintiffs being denied crucial financial, insurance, and health services" (Compl. ¶4), and stated that "[y]ou should be aware that applying a security freeze to your file may delay, interfere with, or prohibit the timely approval of applications you make for items such as credit, benefits, or insurance

11

underwriting." Compl. ¶22. Plaintiffs further allege that they have been "unable to obtain or extend various important financial, insurance, and health services." Compl. ¶24. These allegations support both existing and prospective contractual relations claims.

### 2. Plaintiffs allege a "[r]easonable expectation of economic advantage."

Plaintiffs sufficiently allege a reasonable expectation of economic advantage. *See Printing Mart*, 116 N.J. at 755 . To establish a prospective economic relation, "[i]t is not necessary that the prospective relation be expected to be reduced to a formal, binding contract." *Id.* at 755 (citing Restatement (Second) of Torts § 766B cmt. c).

For example, Plaintiff DOE-2 alleged fears "for her financial stability and her ability to access credit in case of emergency." Compl. ¶34. Further, she "requires unfettered access to sophisticated and expensive treatments to moderate her medical condition on a daily basis," and this requires unfettered access to credit. Compl. ¶35. "Without searching far, courts have succeeded," *Printing Mart*, 116 N.J. at 753, in finding economic advantage from "publication of a favorable study," *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics*, *GmBH*, 2010 WL 5239238, at *1 (D.N.J. Dec. 16, 2010) and "a number of business opportunities" *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F.Supp.3d 336, 359 (D.N.J. 2019). For example, *Church* found that a company had a reasonable expectation of economic benefit after

being informed a study would be published about them. 2010 WL 5239238, at *3-4. They alleged "ongoing and expected sales" of their product. *Id.* at *4. This established "enough facts to raise a reasonable expectation that discovery will reveal evidence." *Id.*

Plaintiffs here allege both current contracts with financial and health providers and ongoing relationships that "periodically require a credit report pull or updated financial history" that are expected to continue. Compl. ¶24. As Plaintiffs do properly allege actual and expected contracts with financial, health, and insurance servicers, their reasonable expectation of economic advantage is sufficient to support their interference claims and survive dismissal.

### 3. Plaintiffs properly alleged malice or lack of justification.

Plaintiffs also allege that placing security freezes and misreporting identity thefts on their accounts was "the intentional doing of a wrongful act without justification or excuse" as they did not request the freezes themselves, and there was no actual identity theft. Compl. ¶23; *Rainier's Dairies v. Raritan Val. Farms*, 19 N.J. 552, 563 (1955) (defining malice under New Jersey law). Intent is satisfied when the actor "knows that the interference is certain or substantially certain to occur as a result of his action." *Lenchitz v. Cenlar FSB*, 2024 WL 1052000 at *7-8 (D.N.J. Mar. 11, 2024) (denying dismissal of tortious interference claim) (citing *DiGiorgio Corp. v. Mendez and Co, Inc.*, 230 F. Supp. 2d 552, 564 (D.N.J. 2002), relying on

Restatement (Second) Torts § 766 cmt. j)).

LexisNexis group acknowledged this in their letters to Plaintiffs. Compl. ¶¶22, 26, 34. This action was malicious as it violated the "rules of the game" and the "normal [or] the expected course of practice" of consumer reporting agencies by placing security freezes on their accounts for false reasons and misreporting identity theft. *Printing Mart*, 116 N.J. at 757. "A court may infer malice from the absence of a justification." *Cox v. Simon*, 278 N.J. Super. 419, 433 (App. Div. 1995). Plaintiffs allege that LexisNexis ignored their requests to remove the freezes, and did not explain why their documentation was insufficient. Compl. ¶28, 29, 39. This further shows intent.

To confirm LexisNexis's malicious intent, which is already well pleaded, one need look no further than LexisNexis's statements to this Court. In the first status conference on April 18, 2024, through counsel, LexisNexis shamelessly claimed that the Plaintiffs and other covered persons, who are dedicated public servants of New Jersey, somehow got what they deserved, and that if having their credit frozen was "not what [they] wanted, well, they should have thought this through before they made the [Daniel's Law] request." 4/18/24 Tr. at 109:16–18.

**4.    Plaintiffs properly alleged loss of prospective relations.**

Plaintiffs further demonstrate a "reasonable probability" of prospective contractual relations and economic benefits. *Printing Mart*, 116 N.J. at 759. "[I]f there had been no interference there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 383 (3d Cir. 2016) (citing *Printing Mart*). Plaintiffs need only plead "facts which, in themselves or by the inferences which may be legitimately drawn therefrom," that plaintiffs would have received such benefit. *Id.* Here, it follows from the allegations that if LexisNexis had not placed freezes, Plaintiffs would have been able to receive the alleged anticipated economic benefits.

Further, Plaintiffs allege implicit underlying facts that defendant was on notice of current and prospective transactions. *See Florian Greenhouse, Inc. v. Cardinal IG Corp.*, 11 F. Supp. 2d 521, 525 (D.N.J. 1998). Here, it is reasonable to infer that LexisNexis knew that plaintiffs "had formed contracts or was in the process of negotiating contracts." *Id.* LexisNexis explicitly acknowledged that its actions would impact Plaintiffs prospective contracts and "applications you make for items such as credit, benefits, or insurance underwriting." Compl. ¶59. Plaintiffs' allegations are sufficient to support their interference claims on these grounds as well.

### 5.    Plaintiffs also properly allege harm.

"[C]ourts will imply an intent on a defendant's part to harm the plaintiff to whatever extent such harm proximately resulted from defendant's tortious interference." *Lightning Lube, Inc.*, 4 F.3d at 1170 (discussing Restatement (Second) of Torts § 767). In *Lightning Lube*, the Third Circuit held defendants liable for the entirety of the injury to all existing contracts which they interfered with, as well as prospective contracts plaintiffs were likely to attract. *Id.* at 1171. The court extended liability under a proximate cause theory as defendants had "knowledge of the contracts at issue" and "intent to harm the plaintiff with respect to some of these contracts." *Id.*

Similarly, LexisNexis is alleged to have knowledge of existing and prospective contracts and the intent to harm plaintiffs with regard to those contracts. For example, Plaintiff DOE-2 alleges that LexisNexis's security freezes jeopardized her "financial stability and her ability to access credit in case of emergency." Compl. ¶34. Plaintiffs are "not required, at this early pleading stage, to go into particulars" about life activity or the nature of limitations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). Plaintiffs' claims are sufficient on this element as well.

## II.    LEXISNEXIS'S PREEMPTION ARGUMENTS ARE MERITLESS AND BARRED.

"Dismissal is appropriate under Rule 12(b)(6) only when 'preemption is manifest in the complaint itself.'" *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130–31 (3d Cir. 2018) (citation omitted) (affirming denial of dismissal based on preemption). There is no preemption here, and certainly no "manifest" preemption. LexisNexis's preemption arguments run contrary to the LexisNexis-group's own longstanding positions in both public and legal statements, with LexisNexis attempting to play "fast and loose with the courts." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003). The information at issue—home addresses and unpublished telephone numbers—is properly subject to regulation under the state laws identified here. There is no preemption and no basis for any dismissal.

### A. There is no FCRA preemption for any of these claims.

States "retain substantial flexibility to pass laws involving consumer reporting to reflect emerging problems affecting their local economies and citizens" and can enact "more protective" laws as compared to the FCRA. *The Fair Credit Reporting Act's Limited Preemption of State Laws*, 87 Fed. Reg. 41,042, 41,042 (July 11, 2022); *Consumer Data Indus. Ass'n v. Platkin*, 2024 WL 1299256, at *6 (D.N.J. Mar. 27, 2024).

17

This flexibility was recognized in *Platkin*, where the court found at summary judgment  that the FCRA did not preempt an amendment to the NJFCRA requiring disclosure of credit files to be issued in more than ten languages. 2024 WL 1299256 at *28.  This follows the approach taken by numerous circuits, including the First, Second, and Eighth Circuits, finding that the FCRA allows for additional state regulation. *Id.* at *9-10; *see also Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 1, 6 (1st Cir. 2022) (reading FRCA to preempt "all state laws 'relating to information contained in consumer reports,' . . . [was] not the most natural reading of the statute's syntax and structure"); *Galper v. JP Morgan Chase Bank*, 802 F.3d 437, 447 (2d Cir. 2015) (if Congress "intended to preempt claims . . . it could easily have drafted the statute to say that state laws . . . are preempted"); *Davenport v. Farmers Ins. Grp.*, 378 F.3d 839, 845 (8th Cir. 2004) (no preemption).

Section 625(a) provides that the FCRA may coexist with state law "except to the extent that those laws are inconsistent with any provision of [the FCRA], and then only to the extent of the inconsistency." 15 U.S.C. § 1681t(a). Daniel's Law is not in any way inconsistent with the FCRA, nor do Plaintiffs seek to assert claims in this action that in any way undermine or conflict with application of the FCRA. LexisNexis's preemption arguments are meritless.

The FCRA's preemption provisions are not implicated in the manner suggested by LexisNexis, as nothing in the New Jersey law prevents Consumer

Reporting Agencies from providing consumer reports like they always have. *LexisNexis points to not a single section of the FCRA that actually states that addresses and phone numbers are part of a "consumer report."* Section 1681t(b)(1)(E) provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681c . . . relating to information contained in consumer reports." Information is found to be a consumer report if it has "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a(d)(1). Consumer reports are "very precisely defined by statute." *Arcidiacono v. Am. Exp. Co.*, 1993 WL 94327, at *3 (D.N.J. Mar. 29, 1993) (dismissing FCRA, but leaving state claims). FCRA can reasonably be read to include "only" information that bears on these credit factors, and home addresses and telephone numbers do not necessarily bear on any of those characteristics. *See Fuges v. Sw. Fin. Servs., Ltd.,* 707 F.3d 241, 252 (3d Cir. 2012) (finding consumer report "ambiguous" relating to company who had "urged that it is not subject to FCRA at all").

The First Circuit in *Frey* found 15 U.S. Code § 1681t(B)(1)(E) "expresses Congress' intent only to preempt those claims that concern subject matter regulated under [FCRA]." 26 F.4th at 7; *see also Platkin*, 2024 WL 1299256, at *10. "[E]ven where there is an express preemption clause, a court will diligently determine the

19

substance and scope of Congress' displacement of state law." *Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc.,* 2023 WL 8643781, at *8 (D.N.J. Dec. 14, 2023).

Here, there is also no preemption because home addresses and telephone numbers are not subject to the FCRA, and LexisNexis has pointed to no section of the FCRA stating that they are part of a consumer report. LexisNexis argues that the Section 1681c-1 provision that "no requirement or prohibition may be imposed" expressly preempts the state's limitation against online disclosure of consumer reports. Mot. at 38. That section, however, merely regulates the subject of *identity theft prevention*. Section 1681c-1 does not address the specific issue of online disclosure of home addresses and unpublished telephone numbers. Congress did not mention and therefore did not manifest an intent to preempt state laws preventing the public disclosure of personal information.

## B. LexisNexis should be estopped from making this preemption argument.

The doctrine of judicial estoppel "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988). A "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." *Krystal Cadillac*, 337 F.3d at 321; *see also Danise v. Saxon Mortg. Servs. Inc*, 738 F. App'x 47, 51 (3d Cir. 2018).

This estoppel doctrine is relevant here because LexisNexis has taken inconsistent positions regarding these security freezes. While LexisNexis now says otherwise, the relevant Accurint site owned by LexisNexis specifically disclaims, "[t]he Accurint® services . . . do not constitute "consumer reports," as that term is defined in the FCRA."[1] However, in its correspondence with Plaintiffs, LexisNexis claimed the freezes were placed under state law, "pursuant to the security freeze laws in your state of residence, NJ, specifically." Compl. ¶¶22, 26, 34. LexisNexis now seeks to change course, contradicting that earlier position and now asserting that the security freezes were somehow mandated under the FCRA. Mot. at 39 ("States May Not Regulate Security Freezes on Consumer Reports."). LexisNexis should be estopped from doing so. Having already taken the position that these security freezes were placed under state law, it should not now be permitted to argue federal preemption.

Notably, in a July 2023 letter to the CFPB, the LexisNexis group claimed that addresses and phone numbers were **not** subject to FCRA:

> **It is long settled law that a report that is limited to identifying information, such as name, SSN, phone number, and address does not bear on the seven characteristics enumerated in the definition of a 'consumer report' in the FCRA**. Such information is not considered a consumer report, and the collection and sharing of such information is not regulated by the FCRA . . . Such information is not considered a consumer

---

[1] *See* https://www.accurint.com/ (at bottom of the home landing page); *see also,* https://secure.accurint.com/app/bps/main (at bottom of sign-in page, stating same); *see id.* at bottom ("Copyright © 2024 LexisNexis Risk Solutions").

21

report, and the collection and sharing of such information is **not regulated by the FCRA**.[2]

Defendant's efforts to convince the Court otherwise, in this litigation, should be rejected.

LexisNexis has even argued that such information is not subject to FCRA in previous litigation **in this district.** *See Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 2010 WL 1931135, at *11 (D.N.J. May 12, 2010) ("Lexis also notes in its brief that information obtained from consumer reporting agencies constituting 'credit header' information is not regulated by the FCRA."). The LexisNexis group has repeatedly represented that this information is not regulated by the FCRA, and Plaintiffs respectfully request that the Court bar this now-contrary argument.

### C.    Traditional preemption principles do not support preemption.

In enacting the FCRA, Congress "sought to preserve the consumer's privacy in the information maintained by consumer reporting agencies." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 191 (3d Cir. 2009). The FCRA "evinces Congress's intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

---

[2] Comment Letter from LexisNexis Risk Solutions to Consumer Financial Protection Bureau, July 16, 2023, https://www.regulations.gov/comment/CFPB-2023-0020-3958 (emphasis added).

Here, Daniel's Law does "not stand as an obstacle to the accomplishment and execution of the . . . objectives of Congress in enacting the Federal Act." *Platkin*, 2024 WL 1299256, at *8. LexisNexis was not obligated to put a security freeze in place. Moreover, FCRA's identity theft provisions ordering security freezes only apply "upon direct request of the consumer." Plaintiffs did not make such a request. LexisNexis can readily comply with Daniel's Law without being obligated under federal law to initiate a freeze. LexisNexis cannot manufacture a preemption defense based on its own refusal to comply with these separate and distinct laws.

No actual conflict exists against the *removal* of the security freezes once in place. Once Plaintiffs asked to remove those security freezes, LexisNexis was obligated to do so. There was no tension with Daniel's Law, which only governs disclosure of specific information. LexisNexis cites 1681c-1(i)(3) as imposing "certain requirements for the consumer to lift the freeze" (Mot. at 39), but that provision further states that consumer reporting agencies "shall remove" a security freeze based "upon the direct request of the consumer." Plaintiffs made direct requests to lift the security freezes placed on their accounts, so LexisNexis was obligated under 1681c-1(i)(3) to remove the security freeze. That obligation does not establish any conflict between state and federal law.[3]

---

[3] In the unlikely event that the Court finds that the state law claims are preempted, the Court may convert the state law claims into federal claims under the Fair Credit

Perhaps most importantly, Plaintiffs' Daniel's Law takedown requests are actually consistent with the very FCRA sections that LexisNexis cites. Defendant only cites to 15 U.S.C. § 1681b(c)(2)(A), (C)[4] for its conflated position that addresses and phone numbers are part of a consumer (credit) report. However, that section—a section dealing with the sale of information by consumer reporting agencies for "credit or insurance transactions that are not initiated by [the] consumer"—specifically provides that consumers may "elect[] . . . to be excluded from the list." 15 U.S.C. § 1681b(c) ("[a] consumer may elect to have the consumer's name and address excluded from any list provided by a consumer reporting agency under subsection (c)(1)(B) in connection with a credit or insurance transaction that is not initiated by the consumer");[5] 15 U.S.C. § 1681b(e)(1). Here, if LexisNexis (or LNRS or any LexisNexis group entity) truly believed that the FCRA applied, by its own reading of the FCRA, it would have honored the takedown requests under either the FCRA or Daniel's Law, so that Plaintiffs' addresses and telephone information would not be further disclosed. The goals of the FCRA as

---

Reporting Act. *Gould v. Great-W. Life & Annuity Ins. Co.*, 959 F. Supp. 214, 219 (D.N.J. 1997).

[4] Again, nothing in this section states that addresses and phone numbers are part of a consumer report.

[5] LexisNexis's awareness of this opt-out requirement under the FCRA, comparable to what is required under Daniel's Law, is the likely reason LexisNexis did not cite to the FCRA in its initial credit freeze letter and instead proceeded purportedly under the New Jersey ITPA.

referenced by LexisNexis are not inconsistent with the goals of Daniel's Law, and instead consistent had LexisNexis really intended to comply with both State and Federal laws.

Plaintiffs have sufficiently alleged claims under the NJITPA, and dismissal is not warranted.

## **CONCLUSION**

Plaintiffs respectfully request that the Court deny LexisNexis's Motion to Dismiss.

Respectfully submitted,

By: **PEM LAW LLP**

Dated: October 21, 2024

*Rajiv D. Parikh*
Rajiv D. Parikh
Kathleen Barnett Einhorn
1 Boland Dr Suite 101
West Orange, NJ 07052
Tel: (973) 577-5500
*Attorneys for Plaintiffs*

**BOIES SCHILLER FLEXNER LLP**
James Lee (admitted *pro hac vice*)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com

Mark Mao (admitted *pro hac vice*)
Joshua Michelangelo Stein
Beko Reblitz-Richardson
44 Montgomery St., 41st Floor

25

San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
jstein@bsfllp.com
brichardson@bsfllp.com

Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, NY 12207
Tel.: (518) 434-0600
ashaw@bsfllp.com

Melissa Zonne
Samantha Parrish
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
mzonne@bsfllp.com
sparrish@bsfllp.com

**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com
(remaining *pro hac vice* motions to be
 filed