## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

Civil Action No. 1:24-cv-04566
Honorable Harvey Bartle, III, U.S.D.J.

| | |
|---|---|
| JOHN DOE-1 and JANE DOE-2, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LEXISNEXIS RISK SOLUTIONS INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,<br><br>Defendants. | **ORAL ARGUMENT REQUESTED** |

## REPLY BRIEF OF DEFENDANT LEXISNEXIS RISK SOLUTIONS INC. IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

**LOWENSTEIN SANDLER** LLP
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
*Attorneys for Defendant LexisNexis Risk Solutions Inc.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

REPLY ARGUMENT .............................................................................................................1

I.     THE COMPLAINT FAILS TO PLEAD A VIABLE CLAIM UNDER NEW JERSEY LAW. ..........................................................................................1

       A.     Plaintiffs Do Not State a Claim Under the New Jersey Identity Theft Protection Act. .................................................................................1

       B.     Plaintiffs Do Not State a Claim for Tortious Interference. ....................3

II.     IN ANY EVENT, THE FCRA PREEMPTS THE COMPLAINT'S STATE-LAW CLAIMS CONCERNING CREDIT-REPORT FREEZES. ........................................................................................5

CONCLUSION .........................................................................................................................7

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
  No. 08-4708, 2010 U.S. Dist. LEXIS 47123 (D.N.J. May 12, 2010) ..................7

*Boone v. T-Mobile USA Inc.*,
  No. 17-378-KM-MAH, 2018 U.S. Dist. LEXIS 14951 (D.N.J. Jan. 26, 2018)...2

*Consumer Data Indus. Ass'n v. Frey*,
  26 F.4th 3 (1st Cir. 2022)......................................................................................6

*Consumer Data Industry Association v. Platkin*,
  No. 19-19054, 2024 U.S. Dist. LEXIS 54812 (D.N.J. Mar. 27, 2024) ................6

*Mills v. Ethicon, Inc.*,
  406 F. Supp. 3d 363 (D.N.J. 2019).......................................................................3

*Read v. Profeta*,
  No. 15-cv-2637 (KM), 2017 U.S. Dist. LEXIS 4451 (D.N.J. Jan. 11, 2017) ......4

**STATUTES**

15 U.S.C. § 1681c-1(i)(2) ........................................................................................4

N.J.S.A. 56:11-31.....................................................................................................2

N.J.S.A. 56:11-38 to -39 ..........................................................................................1

N.J.S.A. 56:11-46...........................................................................................1, 2, 3

Defendant LexisNexis[1] respectfully submits this Reply Brief in further support of its motion to dismiss the Amended Complaint.

## REPLY ARGUMENT

**I.   THE COMPLAINT FAILS TO PLEAD A VIABLE CLAIM UNDER NEW JERSEY LAW.**

**A.   Plaintiffs Do Not State a Claim Under the New Jersey Identity Theft Protection Act.**

Plaintiffs have not stated a cause of action under the New Jersey provisions they have invoked. Their primary obstacle is that the New Jersey Identify Theft Prevention Act ("NJITPA"), even if it applies here, does not create a private cause of action for wrongful imposition of a security freeze. While Plaintiffs claim otherwise, they cite no specific provision in the statute to support that bald assertion. (*See* Pl. Br. at 6 (citing Compl. ¶¶ 21, 23).) The NJITPA creates a private claim for failing to comply with the act, *see* N.J.S.A. 56:11-38 to -39, but, to state the obvious, a plaintiff asserting such a claim must state an underlying violation of the act. Plaintiffs fail to point to any provision of the NJITPA that prohibits the wrongful imposition of a security freeze. While N.J.S.A. 56:11-46(b) requires a consumer reporting agency to implement a security freeze "after receiving a written request from the consumer," nothing in this provision provides for liability if the agency

---

[1]   All abbreviations have the same meaning given in LexisNexis' opening brief.

wrongfully implements a freeze. Unsurprisingly, Plaintiffs have not cited a single NJITPA case indicating liability could attach in such circumstances.

The sole case Plaintiffs cite, *Boone v. T-Mobile USA Inc.*, No. 17-378-KM-MAH, 2018 U.S. Dist. LEXIS 14951 (D.N.J. Jan. 26, 2018), involved securing a credit report without the plaintiff's consent, in clear violation of a specific NJITPA provision, N.J.S.A. 56:11-31. *Boone*, 2018 U.S. Dist. LEXIS 14951, at *40. Here, there is no equivalent NJITPA provision regarding wrongful freezes. Plaintiffs' allegation that "Plaintiffs never requested any freeze," (Pl. Br. at 6), simply does not state a NJITPA claim.

Plaintiffs' brief further asserts that LexisNexis violated the NJITPA by failing to lift security freezes upon request. (*Id.*) However, Plaintiffs have failed to plead (and, evidently, cannot plead) the facts necessary to demonstrate a violation of any potentially applicable provision. The NJITPA requires a credit reporting agency to "remove a security freeze within three business days of receiving a request for removal from the consumer, who provides the following: (1) [p]roper identification; and (2) [t]he ***unique personal identification number*** or password provided by the consumer reporting agency pursuant to subsection c. of this section." N.J.S.A. 56:11-46(j) (emphasis added). The Complaint acknowledges that each Plaintiff received a "Personal Identification Number (PIN)" in the letter confirming the security freeze. (Compl. ¶ 34.) However, while the Complaint alleges that John

Doe-1 provided his name and address when asking that the freeze be lifted, it does not plead that John Doe-1 provided his PIN. (*Id.* ¶ 27.) Moreover, the Complaint does not allege that Jane Doe-2 requested to remove her security freeze at all. If a Plaintiff did not ask to lift the freeze (as in the case of Jane Doe-2), or failed to provide the PIN required by statute to avoid fraudulent conduct (as in the case of John Doe-1), there is no stated violation of N.J.S.A. 56:11-46.

Perhaps recognizing their NJITPA claim cannot succeed, Plaintiffs' brief suggests a separate ground for liability not pled in the Complaint—that is, when implementing the security freeze, LexisNexis supposedly shared personal information with third parties in violation of the FCRA. (Pl. Br. at 9.) Aside from being simply incorrect (Plaintiffs do not seem to understand how a security freeze works), this claim is not pled in the Complaint, which does not set forth any FCRA claim. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 387 (D.N.J. 2019).

    **B.**    **Plaintiffs Do Not State a Claim for Tortious Interference.**

The Complaint's common law claims fare no better. First and foremost, Plaintiffs simply ignore the caselaw holding that a plaintiff cannot plead a tortious interference claim without identifying the contract supposedly lost. (*See* Def. Br. at 13–14.) Instead of remedying this deficiency, Plaintiffs urge the Court to disregard

the caselaw and "infer" that such contracts exist because they are "an essential part of everyday life." (Pl. Br. at 11.) But the issue is not whether such contracts are commonplace; instead, the issue is which *particular* contract the plaintiff allegedly lost due to the defendant's interference. If Plaintiffs actually lost any contracts (a dubious proposition),[2] they must be identified and pled in the Complaint.

Plaintiffs similarly suggest that vague and conclusory references can satisfy their obligation to plead prospective economic opportunities. (*See* Pl. Br. at 12–13.) But an "actual" opportunity must be identified, and the failure to do so requires dismissal. *E.g.*, *Read v. Profeta*, No. 15-cv-2637 (KM), 2017 U.S. Dist. LEXIS 4451, at *17–18 (D.N.J. Jan. 11, 2017). Plaintiffs provide no factual allegations regarding specific opportunities that they supposedly lost due to any credit freezes.

In addition, Plaintiffs have not sufficiently alleged the "malice" required to support a tortious interference claim. LexisNexis simply did what Plaintiffs asked (or what it believed was being asked) and ceased disclosing the covered persons' home addresses and telephone numbers via dissemination of a credit file. (*See* Def. Br. at 7.) The mechanism for ceasing the release of information in a credit report is a security freeze. *See* 15 U.S.C. § 1681c-1(i)(2). If Plaintiffs did not want any action taken as to FCRA-governed data, they should either have so stated in their requests

---

[2] Any issue with the credit freezes could have been quickly addressed by asking to remove the freeze (as many consumers do to permit specific transactions) or by the prospective vendor simply obtaining credit-related information from another agency.

(they did not) or they should not have sent their requests to credit-reporting entities. Nothing in the facts as pled suggests malice of any kind.

## II. IN ANY EVENT, THE FCRA PREEMPTS THE COMPLAINT'S STATE-LAW CLAIMS CONCERNING CREDIT-REPORT FREEZES.

Even if one were to assume Plaintiffs had stated viable state-law claims, any such claims would be preempted by federal law. Rather than address the actual merits of Defendant's preemption argument (*i.e.*, that Section 625(b) of the FCRA expressly preempts state-law "requirements" regarding the "subject matter" of security freezes on credit reports), Plaintiffs miscast the issue as whether the FCRA preempts Daniel's Law itself. There is no argument in this case that the FCRA preempts Daniel's Law. Plaintiffs repeatedly assert that "home addresses and telephone numbers are not subject to the FCRA" and may be regulated by state law, and therefore, "[t]here is no preemption." (Pl. Br. at 17, 20.)[3] This is just another exercise in misdirection. Unlike the "Atlas" cases before this Court, this Complaint asserts state-law claims arising from *security freezes on credit files*. It alleges that LexisNexis "set into motion a campaign to freeze credit reports," (Compl. ¶ 2), and the Complaint's counts each allege that Defendant imposed freezes without authorization. The issue, therefore, is whether claims involving the implementation

---

[3] *See also* Pl. Br. at 18 ("Daniel's Law is not in any way inconsistent with the FCRA."); *id.* at 19 (asserting that "LexisNexis points to not a single section of the FCRA that actually states that addresses and phone numbers are part of a 'consumer report'" (emphasis omitted)).

and lifting of security freezes on credit reports are expressly preempted by FCRA Section 625(b). The answer to that question is, plainly, yes.

To suggest a different result, Plaintiffs cite cases addressing preemption in situations where the preemptive FCRA provision was silent as to the issue addressed by state law. For example, in *Consumer Data Industry Association v. Platkin*, No. 19-19054, 2024 U.S. Dist. LEXIS 54812, at *28, *45 (D.N.J. Mar. 27, 2024), Judge Castner held that a New Jersey statute requiring agencies to provide credit file disclosures in different languages did not run afoul of a preemptive FCRA provision requiring agencies to provide "all information in the consumer's file at the time of the request" because the FCRA was silent with respect to the language requirement. Notably, the District Court observed that a different outcome would be compelled if the FCRA provision "addressed the language file disclosures should be made in, [because] that would largely end the analysis." *Id.* at *46; *see also Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 3, 10–11 (1st Cir. 2022) (remanding to District Court to consider extent to which preemptive FCRA provisions addressed what may or may not be disclosed regarding consumer's medical debts, which would, in turn, determine whether they preempted state law prohibiting disclosure of such debts). Unlike *Platkin* and *Frey*, this case does not involve an attempt by a state to regulate an area for which the preemptive FCRA provision is silent.

Plaintiffs' estoppel argument, (Pl. Br. at 20–22), is yet another attempt at misdirection. Plaintiffs cite therein several public statements regarding the Accurint product; however, Accurint is ***not*** a credit-reporting product, and Accurint has ***nothing*** to do with the security freezes at issue in this Complaint. Certain LexisNexis-affiliated companies offer products, like Accurint, that do not involve credit reports. That unsurprising fact does nothing to divest the FCRA of effect over those products and services that do involve credit reporting. *See generally Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 08-4708, 2010 U.S. Dist. LEXIS 47123 (D.N.J. May 12, 2010) (addressing Accurint product).

## CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss should be granted.

Respectfully submitted,

LOWENSTEIN SANDLER LLP
Attorneys for Defendant LexisNexis Risk Solutions Inc.

By: /s/ A. Matthew Boxer
A. Matthew Boxer

DATED: October 28, 2024