1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN DOE-1 and JANE DOE-2, Individually and on behalf of all others similarly situated, *Plaintiffs*, | CIVIL ACTION NUMBER: |
| | 1:24-cv-04566-HB |
| vs. | Oral Argument |
| LEXISNEXIS RISK SOLUTIONS, INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, *Defendants.* | Motion to Dismiss |

Mitchell H. Cohen Building & U.S. Courthouse
4th and Cooper Streets
Camden, New Jersey 08101
Tuesday, December 3, 2024
Commencing at 9:31 a.m.

**B E F O R E:**          THE HONORABLE HARVEY BARTLE, III,
                         UNITED STATES DISTRICT JUDGE

**A P P E A R A N C E S:**

BOIES SCHILLER FLEXNER LLP
BY: ADAM R. SHAW, ESQUIRE (*pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, New York 12207
For the Plaintiffs

BOIES SCHILLER FLEXNER LLP
BY:  HSIAO (MARK) C. MAO, ESQUIRE (*pro hac vice*)
     JULIA BRONT, ESQUIRE (*pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, California 94104
For the Plaintiffs

John J. Kurz, Federal Official Court Reporter
John_Kurz@njd.uscourts.gov
(856)576-7094

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

1    **A P P E A R A N C E S:** (Continued)

2    MORGAN & MORGAN
     BY:  RYAN JOSEPH McGEE, ESQUIRE (*pro hac vice*)
3    201 N. Franklin Street, 7th Floor
     Tampa, Florida 33602
4    For the Plaintiffs

5    PEM LAW LLP
     BY:  RAJIV D. PARIKH, ESQUIRE
6    1 Boland Drive, Suite 101
     West Orange, New Jersey 07052
7    For the Plaintiffs

8    LOWENSTEIN SANDLER LLP
     BY:  A. MATTHEW BOXER, ESQUIRE
9        GAVIN J. ROONEY, ESQUIRE
     65 Livingston Avenue
10   Roseland, New Jersey 07068
     For the Defendants

11

12

13   **Also Present:**

14   Larry MacStravic, The Courtroom Deputy

15   Margaret Hart, Judicial Law Clerk

16

17

18

19

20

21

22

23

24

25

1        <u>**INDEX**</u>

2        <u>**ARGUMENT**</u>

3    <u>**ATTORNEYS:**</u>                                        <u>**PAGE**</u>

4    By Mr. Boxer                              6, 33, 46, 52

5    By Mr. Mao                                    16, 48

6    By Ms. Bront                                      37

7    By Mr. Parikh                                 55, 63

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              (PROCEEDINGS held in open court before The Honorable

2    Harvey Bartle, III, United States District Judge, at 9:31 a.m.

3    as follows:)

4              THE COURTROOM DEPUTY:  All rise.

5              THE COURT:  Good morning.  You may be seated.

6              The Court is holding oral argument this morning on

7    the motion of the defendants to dismiss the amended complaint

8    in John Doe-1, et al versus LexisNexis Risk Solutions, Inc.,

9    Civil Action 24-4566.

10             All right.  Who will be arguing for the defendants?

11             MR. BOXER:  I will, Your Honor.  Matthew Boxer from

12   Lowenstein Sandler.

13             THE COURT:  Thank you.  You may proceed.

14             Before we begin, I've read the amended complaint, and

15   nowhere is any mention of the citizenship of LexisNexis Risk

16   Solutions, Inc.  And as this is a diversity case, is there any

17   reason why that wasn't stated?

18             MR. SHAW:  Adam Shaw for the plaintiffs, Your Honor.

19   No.  I think that must be an oversight on our part.  I think

20   we've agreed with them as to their statement of where they're

21   from and that it is a diversity case.

22             THE COURT:  What is the citizenship of LexisNexis

23   Risk Solutions, Inc.?

24             MR. BOXER:  Your Honor, my recollection is that the

25   case was filed initially in state court.  We removed under CAFA

1   grounds because it's a class action.  I think that was the

2   basis for removal.  I know that's not Your Honor's specific

3   question.

4               THE COURT:  That doesn't help me.  You need to set

5   forth the citizenship of the parties.

6               Now, you don't say what the citizenship of the

7   plaintiffs is, but I think we can infer since they were police

8   officers in New Jersey that they're citizens of New Jersey.  Is

9   that correct?

10              MR. SHAW:  Correct.  The individual --

11              THE COURT:  At the time that --

12              MR. SHAW:  The individual plaintiffs, correct.

13              THE COURT:  Yes, two individual plaintiffs.

14              Now, how about the defendant?  It's a corporation, so

15  where is it incorporated?

16              MR. BOXER:  My recollection is Florida, Your Honor.

17              THE COURT:  And how about its principal place of

18  business?

19              (Counsel conferring.)

20              MR. ROONEY:  I do not.

21              MR. MAO:  Counsel, Your Honor, I believe it's New

22  York.  Mark Mao for the plaintiffs.

23              THE COURT:  It's what?

24              MR. MAO:  It should be New York is the headquarters,

25  the corporate headquarters.  I'm just pulling it from their Web

1  page, Your Honor.

2          THE COURT:  Well, yeah, it's pretty important, isn't

3  it?

4          MR. MAO:  Yes, Your Honor.

5          THE COURT:  So is there agreement that it's

6  incorporated in the state of Florida and its principal place of

7  business is in the state of New York?

8          MR. MAO:  I have no dispute with those

9  representations, Your Honor.

10          MR. BOXER:  I have no dispute, Your Honor, either

11  with that.

12          THE COURT:  All right.  Now that we have that

13  important preliminary matter out of the way, you may proceed.

14          MR. BOXER:  Thank you, Your Honor.

15          I know from experience Your Honor has read the

16  briefing in the matter, so I will -- I'll jump right to the

17  heart of the matter on this motion.

18          Your Honor, we submit that the plaintiffs have simply

19  not set forth a viable cause of action either under the New

20  Jersey Identity Theft Prevention Act or under New Jersey common

21  law.  And as a result, because their pleadings are deficient,

22  the amended complaint should be dismissed.

23          I'll begin with remarks about the Identity Theft

24  Prevention Act, and if it pleases the Court, I'll then turn to

25  the common law claim.

1          THE COURT:  All right.

2          MR. BOXER:  Your Honor, the Identity Theft Prevention

3    Act in New Jersey creates a procedure through which a New

4    Jersey resident can request a security freeze on their consumer

5    credit report.  And the Act's legislative findings discuss the

6    importance of combating the crime of identity theft.  And to

7    aid in that fight against identity theft, the Act imposes on

8    reporting agencies the requirement to place a security freeze

9    whenever requested.

10          But critically, Your Honor, nothing in the Act

11   addresses or speaks to a supposedly wrongful or mistaken

12   imposition of a freeze.  The Act simply does not create a cause

13   of action or provide a cause of action for what the plaintiffs

14   have asserted happened here.

15          And, Your Honor, we made this argument we believe

16   very plainly in our opening brief.  And plaintiffs' response,

17   we believe, is telling and it's silenced on the following

18   issue:  Where exactly in the Act is liability established for

19   facts such as those alleged here?  Where does this statute

20   define liability in these circumstances as pled?  We submit,

21   Your Honor, it's simply not there.

22          Moreover, where's the case law that indicates that

23   there could be liability in these circumstances?  There's

24   certainly none cited by the plaintiffs.

25          THE COURT:  Isn't that a rather strained reading of

1   the statute, that a consumer reporting agency could just impose

2   a freeze without the permission of the consumer?

3            MR. BOXER:  No.  We don't believe that is a strained

4   reading at all, because what the statute provides for is making

5   sure that access to somebody's credit information is limited

6   whenever a person, quote, may want it kept private.  That's

7   exactly what LexisNexis did here.  There's no liability under

8   the statute for being too careful.

9            If the New Jersey Legislature wanted to say that

10  there was a problem for being overly conservative, they could

11  have said that somewhere in the statute and they could have

12  explained what the liability for that situation would have

13  looked like and what the parameters and elements of that

14  liability would have looked like, but it doesn't say anything

15  about that.  And that's why I began my remarks by talking about

16  the intention of the statute, which is fighting identity theft.

17  And that is really what underlays all of this.

18            There's no indication that the Legislature found any

19  issue with a notion of a mistaken imposition of a freeze.  And

20  that accords with common sense, because if somebody imposes a

21  freeze and the requester actually decides they don't want the

22  freeze, it's very easy to lift it.

23            And so what the statute does speak to, which is, hey,

24  if somebody says they want a freeze, you have to impose it.

25  That's what the statute says.  It simply doesn't talk about,

1  well, you know, you were too careful here and so you could get

2  sued.

3            THE COURT:  Right.

4            MR. BOXER:  Now, perhaps recognizing this, what we

5  believe to be a dispositive problem, the plaintiffs' briefing

6  and opposition to our motion seems to shift gears a bit from

7  their complaint and it argues that the actual alleged basis for

8  liability is that the plaintiffs tried to remove the freezes

9  once implemented and LexisNexis did not do so.  And so I'll

10  speak to that as well because, again, the statute is the key

11  here.

12            I'll quote from it.  It says, quote:  "A consumer

13  reporting agency shall remove a freeze only in the following

14  cases: where the customer requests it and provides the unique

15  personal identification number or password provided by the

16  agency."

17            THE COURT:  Right.

18            MR. BOXER:  And the letters that are -- the letters

19  to the covered persons here, which are set forth, they're

20  reprinted in their entirety in the amended complaint, they

21  emphasize those statutory requirements and they say, the Named

22  Plaintiffs, if you want to lift the freeze, you just have to

23  contact us and provide your PIN.  And so it's important then

24  what the amended complaint says about this.

25            THE COURT:  Right.

1          MR. BOXER:  The amended complaint does not plead that

2     Plaintiff Jane Doe ever requested removal of the freeze.

3          THE COURT:  Right.

4          MR. BOXER:  And to the contrary, at paragraph 36 it

5     suggests that she never did.  And while the complaint alleges

6     that Plaintiff John Doe attempted to contact LexisNexis to lift

7     its freeze, it does not allege that he ever provided his PIN or

8     his password.

9          THE COURT:  Right.

10          MR. BOXER:  Without that pleading, there's no valid

11     claim for liability.

12          LexisNexis, Your Honor, has lifted thousands of

13     security freezes as requested, but there are legal requirements

14     as to when a freeze may be lifted.  My client is abiding by

15     those requirements.  And so even as alleged in the complaint,

16     we believe there's no liability under the Act itself.

17          And so with that, Your Honor, I'll turn to the common

18     law claims.

19          THE COURT:  Sure.

20          MR. BOXER:  The other count in the amended complaint

21     alleges interference with contractual relations under New

22     Jersey common law.  And there are several elements to that

23     claim, and we go into them in some detail in our briefing.  We

24     believe plaintiffs have failed to satisfy their obligations

25     with respect to any of them.  But I'll highlight two of them

1    here this morning.

2              First, Your Honor, if a plaintiff is going to allege

3    interference with contractual relations, they have to plead

4    facts sufficient to show what the contract is that was

5    interfered with, or at least if not a contract, at least a

6    specific contract opportunity that was interfered with, and

7    then of course they have to show from there or plead from there

8    that a defendant induced breach of that contract or otherwise

9    interfered.

10             But either way, an actual contract or contract

11   opportunity must be identified.  Failure to do so itself

12   mandates dismissal under the case law, under Rule 12(b)(6).

13   There are a series of cases cited in our brief that say that.

14   Frankly, again and again the case law says that a 12(b)(6)

15   motion is a proper time to dismiss if a contract -- if the

16   specific contract that is alleged to have been interfered with

17   is not pled.

18             And, again, we respectfully submit that lines up with

19   common sense.  If my client is going to be required to defend

20   itself on the merits in this case, we believe we're entitled to

21   know what contract we supposedly interfered with and deprived

22   the plaintiffs of, you know.  And, again, the silence of the

23   plaintiffs' response brief --

24             THE COURT:  Well, isn't it -- actually the pleading

25   must say that your client knew of the contract, too.  It isn't

1    just identifying the contract.  Isn't there another step there

2    also?

3           MR. BOXER:  Absolutely, Your Honor.  I was focusing

4    for purposes of the present discussion on identifying the

5    contract, but Your Honor is absolutely correct.  There also has

6    to be knowledge of that contract.  And the word that the case

7    law uses is that the interference has to be done with "malice."

8           THE COURT:  Right.

9           MR. BOXER:  And so it's really like knowledge-plus.

10           THE COURT:  Right.

11           MR. BOXER:  None of that is set forth here.

12           I'll mention one more element here that we think is

13    plain that has not been satisfied, and that is for there to be

14    liability under this common law cause of action in New Jersey,

15    the plaintiff has to have suffered actual harm.  There has to

16    be loss of a contract, monetary impact.  I'll quote from one

17    case:  "Economic damages are a substantive element of a

18    tortious interference claim.  How the plaintiff was harmed must

19    be pled."

20           And the plaintiffs, again, they've identified no such

21    damages.  Maybe they're attempting to avoid setting forth any

22    facts because that might indicate to them or indicate to the

23    Court that individual issues may predominate here which they

24    are concerned may be an issue under Rule 23 in terms of class

25    action status down the road, or maybe there's just not actually

1    any contracts that these plaintiffs actually lost.  Either way,

2    it's certainly not proper, we submit that, as the plaintiffs

3    seem to suggest, the Court should simply assume that there are

4    contracts that are interfered with and were lost.  Without the

5    required elements being adequately pled and properly pled,

6    there can be no liability.

7        Unless Your Honor has other questions, I'll close

8    simply by saying our brief also makes a preemption argument.

9        THE COURT:  Yeah.  I'd like to hear about that.

10       MR. BOXER:  Okay.  You know, I will start off by

11   noting, Your Honor, that that analysis is a more complicated

12   one, admittedly, and one that we respectfully submit the Court

13   need not necessarily reach.  You know, we believe it's plain

14   that in terms of just even plaintiffs getting out of the

15   starting gate, they have not stated a claim under New Jersey

16   law.  But with Your Honor's note, I'll say a few things about

17   the FCRA argument.

18       I know Your Honor has written on decisions on this

19   issue in the past.  I know Your Honor is aware of the nature of

20   the statute.  The Fair Credit Reporting Act sets forth a

21   comprehensive federal scheme regulating consumer credit

22   reports.  My client, LexisNexis, they obtained credit

23   information from, for example, the three major credit bureaus.

24       THE COURT:  Right.

25       MR. BOXER:  For example, TransUnion, and Equifax, my

1    client obtains that information from the major credit bureaus,

2    and they have relationships with certain vendors through which

3    my client provides that relationship to them.  That information

4    from the credit bureaus is subject to and is governed by the

5    FCRA.

6         Now, the FCRA does not preempt state law in every

7    area.  We're not claiming that it does preempt state law in

8    every area relating to consumer reports, but it does contain an

9    express preemption provision relating to certain areas, and one

10   of those express areas is security freezes.  Those areas are

11   preempted.

12        As we understand the response from the plaintiffs on

13   this issue, they seem to respond by saying there's a LexisNexis

14   product called Accurint, which is not an FCRA product.  It's

15   not a consumer reporting product.  No one is saying that it is.

16   And so for them to point to previous statements from my client

17   or my client's counsel saying Accurint is not governed by the

18   FCRA, yeah, we're -- we're consistent with that.

19        The security freezes have nothing to do with

20   Accurint.  Accurint is a database that, for example, private

21   investigators may use to pull address information or other data

22   about an individual.

23        THE COURT:  Well, let's assume you're correct, that

24   under the Fair Credit Reporting Act, and it does seem that you

25   cannot have a state law relating to security freezes, and this

1    case is about security freezes, the complaint talks about a

2    security freeze.  So if you're correct, then there's express

3    preemption here.  And then the question is, then plaintiff

4    would be able to amend the complaint to bring an action under

5    the Fair Credit Reporting Act.

6                MR. BOXER:  Well, we don't believe they have a cause

7    of action under the Fair --

8                THE COURT:  Well, but we haven't briefed that.  Maybe

9    that's down the road.  So if they amended their complaint and

10   dropped the claim under the New Jersey statute and under the

11   common law because the preemption isn't related to state

12   statutes, it's related to all state law, you can't circumvent

13   the federal statute by claiming there's a common law right.  So

14   that you would win on this round and then there would be an

15   amended complaint, leave to amend, bring it under the Fair

16   Credit Reporting Act, and then you'd have a right to move to

17   dismiss if you think there's no cause of action stated.

18               MR. BOXER:  I certainly understand Your Honor's

19   point.  And if Your Honor provides leave to amend, they -- in

20   their papers I haven't seen that they've actually asked for

21   that or explained what the viable cause of action would be

22   under another claim.

23               THE COURT:  Right.

24               MR. BOXER:  You know, the operative facts are set

25   forth in the complaint.  As I say, we -- you know, where

1   there's information that's at issue from a nationwide credit

2   reporting agency such as the information we get, LexisNexis

3   gets from TransUnion and others, we do believe that that

4   information is governed by the FCRA.

5           THE COURT:  Yeah.  And I can't sit here and say that

6   I've reviewed it in detail for purposes of this case, that is,

7   except for the preemption provision.  So it would be a little

8   premature for me to make a ruling on all the other provisions

9   of the Fair Credit Reporting Act.

10          MR. BOXER:  No; I certainly understand that, Your

11  Honor.  The thrust of our argument today is simply that this

12  complaint as it's pled does not plead a viable cause of action.

13          THE COURT:  Right.  Yeah.  I understand what you're

14  saying.

15          All right.  Thank you very much.

16          MR. BOXER:  Thank you.

17          THE COURT:  I'll hear from you.

18          MR. MAO:  Good morning.

19          THE COURT:  Good morning.

20          MR. MAO:  Your Honor, Mark Mao, from Boies Schiller

21  Flexner for the plaintiffs.

22          THE COURT:  Yes.

23          MR. MAO:  I just want to point out, Your Honor, if

24  you don't mind, I'd like to allow my colleague, Julia Bront, to

25  argue the portion on contractual interference or prospective

1    relationships.

2              THE COURT:  Sure.  I just granted her pro hac vice

3    motion.

4              MR. MAO:  Oh, yes.  Sorry.  That was corrected as of

5    yesterday morning, and I'm sure she'll ask for the --

6              THE COURT:  No.  I signed something.

7              MR. MAO:  Oh, this morning?  Oh, okay.

8              THE COURT:  I don't know what's on the docket.  But

9    she may argue.

10             MR. MAO:  Right.

11             So, Your Honor, on the motion filed by LexisNexis, I

12   think what's important is actually to look at first the

13   requests actually sent in by the covered persons that are the

14   plaintiffs in this case.

15             THE COURT:  Right.

16             MR. MAO:  LexisNexis's responses to those requests

17   and what they actually cite to and in the statutory language

18   which expressly requires that in order for LexisNexis to do

19   what they stated in their response letters that provided for

20   the credit freezes, they actually needed to comply with the

21   requirements of New Jersey law.  And the statute expressly says

22   that failure to comply with that allows the plaintiffs to

23   basically file their counts and their causes of action.  None

24   of those things are addressed by defendant's briefings, and I'd

25   like to cover each of --

1          THE COURT:  Well, what statutory -- the statute does

2     allow a consumer to request a freeze.

3          MR. MAO:  Sure.

4          THE COURT:  We all understand that, correct?

5          MR. MAO:  Yes.  And if you look at the complaint at

6     paragraphs 20 and 21 where the plaintiff -- where we provided

7     examples of what the plaintiffs actually sent in, plaintiffs

8     did not request a credit freeze and instead requested opt-outs

9     under Daniel's Law.

10          THE COURT:  Yeah.  But what the defendant is saying

11     is that if a consumer requests a freeze and the consumer

12     reporting agency does not impose the freeze, then there's

13     liability, correct?

14          MR. MAO:  Well, that's what they're claiming.

15          THE COURT:  No.  I'm just -- that's step one, right?

16     In other words, if I'm a consumer and I write to say freeze my

17     credit report and it doesn't do that, then there's liability;

18     isn't that correct?

19          MR. MAO:  That's one of the ways by which you can

20     exercise your rights.

21          THE COURT:  Right, okay.  And it's stated explicitly

22     in the statute.

23          MR. MAO:  Yes.

24          THE COURT:  All right.  Now, you're saying the

25     reverse; that if a reporting agency or a defendant freezes the

1    credit report when it's not requested, there's also liability,

2    correct?

3         MR. MAO:  Yes, under the language of the statute.

4         THE COURT:  Now, tell me what specific section of the

5    statute you rely on for that proposition.

6         MR. MAO:  Happy to do that, Your Honor.

7         That would be Title 56, section 11-50.  And I'll read

8    from that section.  I believe the original statute had it under

9    as section 9, even though now it's codified as 11-50.  But it

10   says under subsection (a), "Any person who woefully fails to

11   comply with the requirements of section 4 through 9 of this

12   amendatory and supplementary act shall be liable to a consumer

13   as provided."

14        THE COURT:  Right.  So what has the consumer

15   reporting agency failed to do?

16        MR. MAO:  Yes.

17        So, Your Honor, then we go to the original section 5

18   of the statute, which is now codified as Title 56, 11-46.  So

19   five chapters before, technically four.

20        Under subsection (5) -- subsection (a), it says, "A

21   consumer may elect to place a security freeze on his consumer

22   report" by the following steps.  And this is the language in

23   which LexisNexis in their credit freeze letters sent to the

24   covered persons in response to the request to opt out under

25   Daniel's Law.

```
 1              THE COURT:  Okay.

 2              MR. MAO:  And they cited no cases which prohibits

 3    consumers from filing claims under the exceptions for false

 4    credit freezes citing to 11-46, probably because no consumer

 5    reporting agency was ever crazy enough to do that, especially

 6    of this magnitude.  But setting that aside, their criticism of

 7    saying that we have no case law allowing for this, they also

 8    have no case law providing that it's not allowed under this

 9    when the CRA, insofar as they're acting as CRA in this

10    instance, falsely cites to a section, okay, and a statutory

11    scheme which requires strict compliance with the requirements

12    of that statute, and under false pretenses then goes on to

13    place credit freezes on all of the covered persons making

14    requests under different sections of New Jersey statute, where

15    11-50 specifically says that any person who woefully fails to

16    comply with the requirements of section 4 through 9 shall be

17    liable to the consumer.  That is verbatim out of the statute.

18    And that's exactly what they did.

19              They cited to a section in which they failed to

20    comply and, therefore, they're liable to the consumer.  And

21    they have no case law saying that that's not permissible, to

22    the contrary.

23              THE COURT:  All right.

24              MR. MAO:  As to the -- I just wanted to address real

25    quickly the preemption argument, Your Honor, okay.  All 50
```

1    states, plus two territories, have their own state-meaning FCRA

2    regulations which allow for credit freezes.

3            As one of the largest consumer reporting agencies in

4    the country, LexisNexis well knows that.  And I will cite to

5    two examples.

6            THE COURT:  All right.  Well, whatever the states do,

7    the question is if Congress has decided there's express

8    preemption, it doesn't matter what all the states and the two

9    territories have done, correct?  I mean, that doesn't prove

10   that there's no express preemption.

11           MR. MAO:  Right.  But, Your Honor, that's not the

12   language in which they're citing to, and that's not what that

13   section provides.

14           So, first of all, they cited to two sections.  One

15   was 625 of the FCRA under the regulations, I believe.  And then

16   the second one which they cite to is Title 15, U.S.C., 1681.

17   1681c-1, I believe.

18           THE COURT:  Well, it's c dash 1?

19           MR. MAO:  Oh, sorry.  It looks like it's under T, but

20   under their brief, they cited the c-1.

21           THE COURT:  The statute is 15 U.S.C., section 1681t.

22   That's the preemption section.

23           MR. MAO:  Right.

24           THE COURT:  And then there's A, which is the general

25   provision, which says there is no preemption except... and then

1     the exceptions are under (b) that they cite.

2               MR. MAO:  Correct.

3               THE COURT:  And they cite (b)(1)(J).  It says

4     subsections (i) and (j) of section 1681c-1 of this title

5     relating to security freeze.  There's total preemption.

6               MR. MAO:  Right.  And, Your Honor, if you pull up

7     1681c-1, that section relates to those specific type of credit

8     freezes under the FCRA.  But there is concurrent jurisdiction,

9     as we all know, under the FCRA for state laws which do not

10    conflict with that.  These are two separate types of credit

11    freezes, which is why all 50 states, plus two territories, have

12    their own additional state --

13              THE COURT:  I know.  But your complaint, the amended

14    complaint talks about security freezes.  And you're claiming

15    that the defendant improperly imposed a security freeze, aren't

16    you?

17              MR. MAO:  Improperly imposed a security freeze under

18    the New Jersey statute, which is different from the credit

19    freeze.

20              THE COURT:  No, no, but you -- then you're reading

21    out of the statute the express preemption.

22              MR. MAO:  Your Honor, all 50 states, including

23    Pennsylvania, New York, New Jersey, California, they all have

24    companion credit freeze statutes.  If what defendant, which I

25    am sure they've argued contrary in other cases --

1          THE COURT:  Look at section B how it starts.  No

2    requirement or prohibition may be imposed under the laws of any

3    state with respect to any subject matter regulated under

4    Subsection (I) and (J) of section 1681c-1 of this title

5    relating to security freezes.

6          MR. MAO:  Right.

7          THE COURT:  And it says no state law, whether you're

8    talking about statutory or common law.  I mean --

9          MR. MAO:  And, Your Honor, what I'm trying to

10   describe is that there are different types of credit freezes.

11   And that statute is referring to the specific --

12         THE COURT:  Well, where does the express preemption

13   language talk about types of security freezes?

14         MR. MAO:  I believe, Your Honor, under the language

15   you're referring to there, because it's citing to subsections

16   (i) and (j) of that subsection.

17         THE COURT:  Okay.  Well, tell me about (i) and (j).

18         MR. MAO:  Right.  So if we go to 1681c-1.

19         THE COURT:  Right.

20         MR. MAO:  We go to (i) and (j).  If you look at (i),

21   okay, these are national security freezes of a specific type

22   and a specific nature.

23         THE COURT:  Okay.

24         MR. MAO:  Okay.  And we're not alleging that

25   LexisNexis placed a freeze under that section.

```
1              THE COURT:  Okay.

2              MR. MAO:  The very nature of the letters in which

3    they sent to the covered persons says to the contrary.  And in

4    a way, this is a little bit of a chicken and an egg problem,

5    Your Honor.  If this is nationally preempted, why did

6    LexisNexis cite to the statute in the first place as the basis

7    to place the credit freeze?

8              And note, Your Honor, if you look at the letters in

9    which they sent to the covered persons, none of those letters

10   cite to the FCRA concurrent with that as the basis for the

11   credit freeze.

12             THE COURT:  Okay.

13             MR. MAO:  Instead, they said that we're freezing your

14   credit under the New Jersey Mini-FCRA.  And just as a little

15   bit of a prelude --

16             THE COURT:  Are there any cases that discuss this

17   express preemption provision of the federal Fair Credit

18   Reporting Act?

19             MR. MAO:  Not for the New Jersey statute, Your Honor.

20             THE COURT:  Is there any at all?

21             MR. MAO:  For other states we can -- if --

22             THE COURT:  There are federal cases that deal with

23   that?

24             MR. MAO:  I could not find any on that challenge.

25             THE COURT:  Okay.
```

1          MR. MAO:  But we can look harder, Your Honor, if you

2     want supplemental briefing on this from both sides.  I'm happy

3     to entertain that with LexisNexis counsel.

4          THE COURT:  All right.

5          MR. MAO:  But, Your Honor, I mean, Pennsylvania, for

6     example, under 72, general statute 2503 has its own version.

7     New York general business law, 380-T is another type of credit

8     freeze in which New York allows.  California, 1785.11-2 is

9     another type of credit freeze.  And all 50 states, plus two

10    territories, all have their versions of state credit freezes

11    which they allowed, including to minors and their parents who

12    may request it on behalf of them.

13         And all I'm simply saying, Your Honor, is when you

14    look at the regime for FCRA in which we know there is

15    concurrent jurisdiction, okay, and jurisprudence for both

16    states and nationally, the type of credit freeze in which

17    they're talking about and which they're arguing there is

18    preemption, when you look at the statute, relates to the

19    specific scheme in which the FCRA, the federal FCRA was meant

20    to cover.

21         However, here, they themselves in their initial

22    moving and response to the covered persons request under a

23    completely different regime.  They themselves cited to the New

24    Jersey credit freeze as the basis for their freezing of the

25    credit.  And we have not made a claim under FCRA.

1     Now, insofar as they may be handing a victory to us

2  under a different cause of action, Your Honor, we agree, we can

3  certainly entertain that, but that's not what's in front of the

4  Court.  When you look at the letters in which they sent to the

5  covered persons, not only do they enumerate the state statute

6  as the basis for their freeze and not the federal statute, they

7  also within that same letter specified exactly both the

8  contracts and the prospective relationships in which they claim

9  now that they are not aware of.  And I'll just read from the

10  complaint.

11     When you look at the response in which they provided

12  back to the consumers, and this is at paragraph 22, and we also

13  have that at two other places, one including paragraph 34.

14     THE COURT:  Right.

15     MR. MAO:  Okay.  They said -- this is verbatim from

16  the letter -- "this freeze is being placed on your file

17  pursuant to the security freeze laws in your state of

18  residence, New Jersey," citing a New Jersey statute.  No

19  citation there to the federal FCRA, okay.

20     And it says here that it may interfere -- it -- the

21  language they use in the paragraph above, you should be aware,

22  okay, that your file may be delayed, interfered with, or

23  prohibit the timely approval for applications you make for

24  items such as credit, benefits, or insurance underwriting,

25  okay.

```
 1          Again, I'm reading what the defendants provided in
 2  response to the opt-outs requested by the covered persons, the
 3  class members in this case.
 4          I will let my colleague cover the other sections on
 5  that, but --
 6          THE COURT:  Well, let's talk about the freeze.
 7          MR. MAO:  Sure.
 8          THE COURT:  The differences.  Under New Jersey law,
 9  the consumer must supply a PIN number, in other words, to
10  remove the freeze.  And that, I assume, is to make sure that
11  it's the actual consumer who's asking to have the freeze lifted
12  as opposed to some imposter.
13          Now, the federal statute does not require a PIN
14  number.  Is that your understanding, too?  The Fair Credit
15  Reporting Act doesn't require a PIN number.  I think it -- I
16  haven't studied it in great detail, but I don't think it does.
17  The consumer simply has to make a request to lift the freeze.
18  And I don't know what form the request has to take, but it
19  doesn't include a PIN number.
20          MR. MAO:  The different states have different forms
21  of verification.
22          THE COURT:  Right.
23          MR. MAO:  Right.
24          THE COURT:  But I'm talking about New Jersey
25  requires -- the consumer reporting agency provides a PIN
```

1    number, you have to use that PIN number in response.  Now, I

2    don't think the federal statute does require a PIN number.

3         So what about subsection (a) which is the general --

4    the first paragraph of the preemption section of the Fair

5    Credit Reporting Act, which says there is no preemption except

6    to the extent that these laws are inconsistent with any

7    provisions of this subchapter, and then only to the extent of

8    the inconsistency.

9         Is there an inconsistency if the New Jersey statute

10    requires a PIN number and the federal statute does not, putting

11    aside the freeze issue?

12         MR. MAO:  So I would say no, Your Honor, because the

13    way I read the federal statute is that the requirements for

14    verification from my recollection, you've caught me a little

15    bit, an issue that I haven't, you know, looked at exactly --

16         THE COURT:  Right.

17         MR. MAO:  -- but my recollection on the federal FCRA

18    statute is that the verification requirements are looser.

19         THE COURT:  In the federal, yes, apparently so.

20         MR. MAO:  Yes.  That I tend to agree.  But that's not

21    inconsistent, because the precedent under FCRA is that states

22    may impose stricter requirements for FCRA, FCRA-like things,

23    that is more stringent than what the federal requirements are.

24    The conflict is when it's looser --

25         THE COURT:  But here, the interesting question is

1    when we talk about inconsistency, the federal law may permit

2    more stringent requirements, but more stringent for whom?  To

3    protect the consumer or make it easier for the consumer or --

4    now, a PIN number, it seems to me it can be argued that it

5    protects both the consumer and the credit reporting agency.  It

6    isn't just the benefit of one.  I can see the consumers

7    protected in that some imposter doesn't try to remove the

8    freeze.  It also protects the credit reporting agency so that

9    it knows that it's the real McCoy, so to speak, who's making

10    the request.

11            MR. MAO:  We tend to agree with that analysis, Your

12    Honor.  But what's very important here, which is that the

13    defendants have done a reframing, a complete reframing of the

14    plaintiffs' arguments.  While that may be something that, you

15    know, we can consider for a trial for the procedures, the

16    plaintiffs are the master of the pleadings.  And here our

17    argument is that there are two separate violations here, okay.

18    First, there is an improper violation of 11-46 by the initial

19    freezing, right?

20            THE COURT:  Right.

21            MR. MAO:  And defendants have instead said that,

22    well, that argument is really the same as their arguments of

23    failure to remove under subsection (J).

24            THE COURT:  You know, what's interesting though, if

25    you look at your amended complaint, when you get to talk about

1    Count 1 on page 29, you never make any reference to the failure
2    to lift the freeze.
3            MR. MAO:  Sorry, Your Honor.  Paragraph?
4            THE COURT:  Page 29.
5            MR. MAO:  Thirty-nine?
6            THE COURT:  Page 29 of the plaintiffs' complaint.
7            MR. MAO:  Oh, page 29, yes.
8            THE COURT:  You never make any mention, specific
9    mention of the failure to remove the freeze.
10           MR. MAO:  That is because, Your Honor, when you look
11   at Count 1, it's really about how -- I mean, it says, 11-46
12   only permits defendants to place credit freezes upon a request
13   by the consumer.
14           THE COURT:  Right.
15           MR. MAO:  Right.  And no provisions of the ITPA
16   authorize defendants to place a freeze in response to Daniel's
17   Law requests.  And we cite to exactly the sections in which I
18   was analyzing for Your Honor, which is 11-50 and --
19           THE COURT:  Well, you don't state that specifically.
20   You have some of the language earlier, but you don't -- you
21   don't set it forth here specifically.  All right.
22           MR. MAO:  But -- right.  So we think that it's not
23   only permissible under the express language of the statute,
24   defendants have not been able to cite to anything that shows to
25   the contrary.  We believe that it satisfies it.

```
 1              And on the preemption argument, Your Honor, I just
 2    beseech you to consider the fact that none of the 50 states and
 3    two territories I can find have their state Mini-FCRA credit
 4    freeze things being preempted.  I certainly invite defendants
 5    to respond to that and show you authority to the contrary.  If
 6    you look at their brief --
 7              THE COURT:  Just to make it clear --
 8              MR. MAO:  Yes.
 9              THE COURT:  -- I take it because of the way the
10    complaint is written that John Doe-1 did not use the PIN number
11    in making requests to remove the freeze.
12              MR. MAO:  I don't actually know, Your Honor, to be
13    honest, because when I wrote the complaint, and I was the one
14    that wrote that, what was on my mind was really a violation
15    under 11-46A, which is a failure to comply with the
16    requirements of what was permissible to place a freeze on.
17              THE COURT:  I want to ask you also about Count 3 for
18    declaratory relief.  That's not a cause of action, is it?
19    Declaratory relief is a form of relief like damages or
20    injunctive relief.  You can't have a separate claim for relief.
21    It just seems to me odd that you have a count here for
22    declaratory relief.  You could have had a count for damages or
23    a count for injunctive relief.
24              MR. MAO:  My -- my more limited practice in New
25    Jersey, Your Honor, is I believe that we can.
```

1          THE COURT:  Really?

2          MR. MAO:  But, you know, on federal --

3          THE COURT:  I never heard of any state where --

4          MR. MAO:  So admittedly, Your Honor, we are from

5    California, and that's a fairly routine thing we do for

6    declaratory relief.

7          THE COURT:  It's a separate -- I mean, you can ask --

8    there is right to declaratory relief, of course.

9          MR. MAO:  Yeah.

10          THE COURT:  But this, I don't know how to handle

11    that.  It's like having a count -- okay, a count for injunctive

12    relief.  That's -- what does that mean?

13          MR. MAO:  So ironically, that is the context in which

14    that generally arises, at least in the states I practice more

15    often, Your Honor, which is that declaratory --

16          THE COURT:  Well, maybe somebody can illuminate on

17    that subject.

18          MR. MAO:  Sure.  My understanding is that --

19          THE COURT:  There must be some New Jersey

20    practitioners here, I hope.

21          MR. MAO:  Raj.

22          MR. SHAW:  Well, Your Honor, I think it's certainly a

23    form of relief that's stated in the complaint.  Whether it's as

24    a different cause of action or not I don't think impacts the

25    viability --

```
 1              THE COURT:  It is a cause of action?

 2              MR. SHAW:  Well, I mean, you can have a separate

 3     cause of action.  It's only a declaratory judgment action,

 4     right?  So it could be a separate cause of action.  But in this

 5     case it is the relief that we're seeking as well, but it can

 6     exist independently.

 7              MR. MAO:  I believe the requirements for the count,

 8     Your Honor, is that there's a live controversy that, you know,

 9     requires an equitable declaration from the Court.

10              THE COURT:  All right.  Just before we hear from

11     plaintiffs' counsel on the common law, I want to ask defense

12     counsel to talk about the express preemption section and the

13     comments that have been made by Mr. Mao.

14              Does section 1681t(b)(1)(J) relate to all security

15     freezes, the security freezes that were imposed here?  Does the

16     Fair Credit Reporting Act limit what was meant by "security

17     freeze"?

18              MR. BOXER:  Your Honor, my understanding is it

19     pertains to security freezes involving a national consumer

20     reporting agency.  All freezes by a national consumer reporting

21     agency.  And in this case, because the information -- the

22     reason we have a preemption argument is because the credit

23     information that we were providing was from the three major

24     credit bureaus.

25              THE COURT:  Okay.  Well, where is that stated in your
```

```
 1   papers?
 2          MR. BOXER:  It said -- where is it stated in our
 3   papers?
 4          THE COURT:  Yeah.
 5          MR. BOXER:  I -- I don't know that it's specifically
 6   stated.  And, you know, going back to where I began my remarks
 7   today, I noted, admittedly, like the preemption piece is more
 8   complicated and that's why we came here this morning relying
 9   primarily on the failure to set forth a claim.
10          THE COURT:  Well, the fact that it's more complicated
11   doesn't mean we just ignore it.  I mean, first -- I mean, if
12   there's federal preemption here, then there's federal
13   preemption.  Doesn't the Court have an obligation to enforce
14   the federal preemption?
15          Now, you know, if it really is more limited, that's
16   one thing, and then I have to deal with the statute.
17          MR. BOXER:  The -- I, respectfully submit, Your
18   Honor, Your Honor could tackle this one of two different ways.
19   I believe based on my experience, it would be certainly
20   appropriate for Your Honor to rule saying I've looked at these
21   two -- these causes of action as pled under New Jersey law.
22   There hasn't been a proper claim stated under New Jersey law.
23          THE COURT:  Right, I understand.  But I still have to
24   deal with the preemption.  In other words, even assuming a
25   claim is stated under New Jersey law, let's assume, then I have
```

1    to go to the preemption issue, don't I?

2         And the question is, which does the Court have to

3    deal with first?  In other words, do you have to deal with

4    preemption first and then if there's no preemption, you know,

5    you can argue which comes first in terms of -- for example, if

6    we were dealing with subject matter jurisdiction, that of

7    course has to be dealt with before you deal with any other

8    issue.

9         MR. BOXER:  Your Honor, we believe that an analysis

10   of the claims that are pled would come first.  I believe there

11   are a couple ways Your Honor could tackle it.

12        THE COURT:  All I'm asking is, I know you're saying,

13   and you may be right, you may be wrong about whether there are

14   claims under New Jersey law, but if I conclude otherwise, then

15   there's step two, correct?

16        MR. BOXER:  Correct.

17        THE COURT:  All right.  So I want to be able --

18   that's why I'm here today.  And it seems to me that the parties

19   have raised some issues about express preemption that I'm not

20   sure has been fully briefed here.  And I think it's important

21   that, in other words, that be done to aid the Court in

22   grappling with that.

23        Now, there may be -- I don't know if there are any

24   cases under that section of the Fair Credit Reporting Act or

25   not.  I have to study the language and whether what's stated

1   there is encompassed within the claims here and the amended

2   complaint.

3          So I think what we'll -- what we could do is we need

4   to have some additional briefing.  And since you're the moving

5   party, I'll give you ten days to brief -- provide a

6   supplemental brief.

7          MR. BOXER:  Your Honor, I -- if Your Honor --

8   obviously if Your Honor would like to see further briefing, we

9   would certainly submit it.

10          I will note from our perspective, the matter is

11  briefed.  There is express -- both express preemption as we

12  read it and there's conflict preemption potentially as well.

13  We understood that the argument from the plaintiff was that

14  Accurint is not an FCRA product.  And, again, this case is not

15  about Accurint.  It's about security freezes.  So, I mean,

16  those are the issues that were briefed, and we do believe that

17  the security freeze provision and the larger statutory scheme

18  in the FCRA would preclude state law liability in these

19  circumstances.

20          THE COURT:  Okay.  All right.  Well, we'll talk about

21  this at the end of the argument.

22          MR. BOXER:  If --

23          THE COURT:  All right.  We'll hear from counsel on

24  the common law claims.

25          Good morning.

1          MS. BRONT:  Good morning, Your Honor, Julia Bront

2     with Boise Schiller Flexner.  I'd like to speak to the two

3     intentional interference torts.

4          Plaintiffs have sufficiently pleaded both intentional

5     interference with contractual relations and intentional

6     interference with prospective economic advantage, and these two

7     are different torts.  Though some of their elements overlap,

8     it's important to talk about those distinctions, so I'm going

9     to focus on that right now.

10          First, I'd like to highlight the language from our

11     complaint that specifically does address the contracts.  In

12     paragraph 24 the complaint reads:  "Plaintiffs have been unable

13     to obtain or extend various important financial, insurance and

14     health services," and discusses how some of these are services

15     that plaintiffs need to access their credit for.

16          Later in paragraph 35, Jane Doe-2 --

17          THE COURT:  Just a minute.  Let me get to paragraph

18     35 here.

19          MS. BRONT:  Sorry, Your Honor.

20          THE COURT:  All right.  I've got it.

21          MS. BRONT:  Jane Doe-2 describes how she has multiple

22     sclerosis for which she needs daily expensive medications for

23     which she requires unfettered access to credit on an ongoing

24     basis.  Both of these allegations are contractual relations.

25     And I will walk through the case law to show you how this is

1    sufficient at the motion-to-dismiss stage, starting with the

2    intentional interference claim for contractual relations.

3         I'm going to highlight two cases that defendants rely

4    on on page 13 of their motion to dismiss.  First, we have *Read*

5    *v. Profeta*, which defendants cite for the allegation that you

6    need to identify a specific contract.  However, this omits

7    crucial context of the case law.  The case says that the

8    allegations in the cross-complaint there were insufficient

9    because they merely recited the cause of action's elements

10   without any additional facts, and the court said that you need

11   to identify the contract or at least generally describe it.

12   Because the point of this allegation is to put the defendant on

13   notice of the basis for the claim, and that is the standard in

14   the Third Circuit for this type of pleading.

15         Plaintiffs have done this, and we know that we have

16   done this because defendants were already on notice that these

17   types of contracts were at issue when they sent every single

18   plaintiff a letter that plaintiffs cite on paragraph 34.

19         THE COURT:  Right.  Let me see it here.  All right.

20   I've got it.

21         MS. BRONT:  Which would be the whole page, which

22   specifically warns every single plaintiff that due to the

23   security freeze, there may be delays, interference, or complete

24   prohibition of acceptance of applications for -- applications

25   for credit, insurance underwriting, those types of things.

1           Now, defendant is a sophisticated national credit

2    reporting agency.  They are aware that all of these things

3    require contracts in this day and age and that consumers rely

4    on credit reports in order to make these contracts.

5           THE COURT:  But doesn't it have to be more than that?

6    Doesn't the defendant have to know that there's a specific

7    contract it is interfering with?

8           MS. BRONT:  Not --

9           THE COURT:  I mean, that's the normal situation,

10   isn't it?

11          MS. BRONT:  In the --

12          THE COURT:  Plaintiff has a contract with a third

13   party and the defendant knows about it and interferes with that

14   contract, now that's a far cry from what's being said here.

15   It's just simply saying, well, people in life make contracts

16   every day.  You go to the grocery store and you buy food.  I

17   guess that's a contract, isn't it?  The store agrees to supply

18   you with, you know, a dozen bananas and you're going to pay for

19   the bananas.  So that certainly can't be enough for a tortious

20   interference with contract, can it?  I mean, otherwise, my

21   word.

22          MS. BRONT:  Well --

23          THE COURT:  Any time you make a deal with somebody

24   and the other side doesn't know about it and you're going to be

25   able to claim tortious interference?

```
 1            MS. BRONT:  Well, Your Honor, first of all, we --
 2            THE COURT:  My word, there would be no limit to it.
 3            MS. BRONT:  Your Honor, first of all, this is a
 4   notice-pleading court, right?  We only just alleged a claim
 5   that is plausible on its face under Twombly.  And under Third
 6   Circuit case law, another case that actually defendants also
 7   rely on, specifies that that standard is not what is required
 8   at the motion-to-dismiss stage.
 9            Under Crosscountry Mortgage v. American Neighborhood
10   Mortgage Acceptance, which defendants also cite on page 13 of
11   their motion to dismiss, the court specifically says:  Although
12   in order to ultimately make out a claim for tortious
13   interference with contract, there needs to be knowledge of the
14   contract and an allegation of a specific contract.  To survive
15   a motion to dismiss, the complaint need only allege sufficient
16   facts to suggest that the defendant knew or should have known
17   of the contracts.
18            THE COURT:  Known of the contract.
19            MS. BRONT:  Should have known of the contracts, not
20   even just known of the contracts.
21            THE COURT:  But that's known of a specific -- it's a
22   specific contract, not that you -- the credit reporting agency
23   has general knowledge that people make contracts every day of
24   the week.  As I say, going to the grocery store, you're making
25   a contract.  I mean, obviously people go to the grocery store.
```

```
1    You got to have food.  So it has to be more specific than that,
2    doesn't it?
3              MS. BRONT:  Well, Your Honor, hand in hand with the
4    requirement under Read v. Profeta to just generally describe
5    that contract, that is what plaintiffs have done.  Jane Doe
6    described the contract of her acquiring her medication using
7    credit.  And, again, defendant's status as a national credit
8    reporting agency --
9              THE COURT:  You're saying that LexisNexis knew that
10   she had a medical condition?
11             MS. BRONT:  At the bare minimum, they knew from the
12   complaint, but, yes, they did because --
13             THE COURT:  No, no, no, no.  It's not --
14             MS. BRONT:  Oh, I understand your question.
15             THE COURT:  It's not they knew from the complaint.
16             MS. BRONT:  Yes.
17             THE COURT:  At the time of the freeze, did they know
18   about Jane Doe's medical condition?
19             MS. BRONT:  Your Honor, they would have or should
20   have known about it --
21             THE COURT:  No.
22             MS. BRONT:  -- because credit reports are issued for
23   these purposes.
24             THE COURT:  No, no, I don't think it's "should have
25   known."  It's "did they know."  This is not a "should have
```

```
1   known" tort.
2            MS. BRONT:  The language of the case does
3   specifically say at the motion to dismiss "should have known"
4   would be sufficient.  But either way, I believe it is satisfied
5   because the health insurance companies would be pulling credit
6   reports to access her credit.  They would have received this.
7   And it is a reasonable inference that, therefore, it was for a
8   contract for health insurance.  And case law in the Third
9   Circuit states that all reasonable inferences that can be drawn
10  from the factual allegations in the complaint must be accepted
11  at the motion-to-dismiss stage.
12           THE COURT:  All right.
13           MS. BRONT:  I'll move next to intentional
14  interference with prospective economic advantage.  There --
15           THE COURT:  Well, now, you don't plead that tort, do
16  you?
17           MS. BRONT:  We do.
18           THE COURT:  Where is it?
19           MS. BRONT:  It has different names.
20           THE COURT:  Where is it?  You're talking about a
21  future contract, correct?
22           MS. BRONT:  Yes, with prospective relations,
23  prospective contractual relations.  Every case has a different
24  name for it.
25           THE COURT:  Well, we've got to look at -- I mean, a
```

1    lot of torts out there.  So we have to look at what you

2    pleaded.  And you go to Count 2 is intentional interference

3    with contractual or prospective relations.

4              MS. BRONT:  Yes.  It is the intentional interference

5    with prospective --

6              THE COURT:  In other words, they're the torts you're

7    claiming?

8              MS. BRONT:  Sorry?

9              THE COURT:  They're the torts that you're claiming --

10             MS. BRONT:  Yes, Your Honor.

11             THE COURT:  -- have been committed here.

12             MS. BRONT:  So the intentional interference with

13   prospective relations claim, those two same cases also address

14   the standard for this tort, and *Read v. Profeta* identifies a

15   trend in this district towards not requiring strictly that

16   plaintiffs identify a specific lost business opportunity in

17   pleading.  And then *Crosscountry Mortgage* says that to plead

18   economic advantage, there is no need to identify a precise

19   advantage.  Some probability of an economic advantage or future

20   contractual relationship is sufficient.

21             Plaintiffs have clearly pled that there is a future

22   economic relationship, because that is the entire purpose of

23   interacting with defendant.  You pull credit reports so that

24   you can make future economic relationships.

25             Next I'll address defendant's arguments on damages.

1    The complaint sufficiently alleges damages as a result of

2    defendant's interference.  First of all, this is about credit

3    reports and credit.  Any action causes financial harm.  And

4    like the language we read before, plaintiffs described having

5    difficulty accessing medical, credit, insurance, and other

6    services as a result of the lack of access to their credit.

7    They don't need to specifically enumerate how much they would

8    have spent at this stage.  It's just the complaint.  This is

9    sufficient allegations to --

10          THE COURT:  Well, what type of damages are we talking

11   about here?  These -- just give me an example.

12          MS. BRONT:  Uh-huh.

13          THE COURT:  What damages would Jane Doe be seeking?

14          MS. BRONT:  Damages for Jane Doe could include having

15   to pay out of pocket for her medication because her insurance

16   was rejected.  It could also include emotional damages for

17   being very ill, stressed, and unable to acquire the medication

18   that she needs without a huge hassle, or the hours that John

19   Doe spent --

20          THE COURT:  Are emotional damages appropriate for a

21   tort like this?

22          MS. BRONT:  I believe so, Your Honor.

23          THE COURT:  All right.

24          MS. BRONT:  And finally, it could include also the

25   time and stress that many of the -- like John Doe explained of

1   having to try to fight to have these improper credit freezes

2   removed and the effort that they put in.  And as a credit

3   reporting agency, defendant had to know that these would be the

4   results of a security freeze, and of course they did.  They

5   sent, again, the letter to plaintiffs informing them that they

6   wouldn't be able to access their credit and, therefore,

7   wouldn't be able to access things like their health insurance.

8         Finally, I'll briefly run through the intent and

9   malice elements.  The definition for intent, for the purpose of

10   both torts, is that intent is satisfied when the defendant

11   knows interference is certain or substantially certain to occur

12   as a result of the defendant's action.  This is under *Lenchitz*

13   *v. Cenlar FSB* in this Court.

14         And here, as a credit reporting agency, defendant

15   obviously knew that a credit freeze would lead to the inability

16   of plaintiffs to obtain future contracts or any ongoing

17   contracts that require constant credit.  Defendants didn't

18   challenge this.  They simply challenged the potential -- the

19   fact that -- the argument about the first element, whether the

20   contracts were sufficiently alleged.

21         Finally, the complaint sufficiently alleges that

22   defendants acted with malice.  Malice has a unique definition

23   under these two torts.

24         Under *Cox v. Simon* in New Jersey Appellate Court,

25   malice is defined as whenever a defendant acts without

1    justification or excuse.  It doesn't require any sort of intent

2    to cause trouble or to be mean or malevolent.  Here, plaintiffs

3    sent defendant takedown notices.  Those takedown notices are in

4    the complaint, and they specifically request that their home

5    addresses and phone numbers not be publicly disclosed or

6    redisclosed on the Internet or otherwise.

7              Instead of doing that, defendants instituted a credit

8    freeze which they then informed plaintiffs would cause them all

9    sorts of problems with accessing their credit in the future.

10   There's no justification for not simply taking down their

11   addresses and phone numbers from Lexis services such as

12   Accurint, for instance, which still posts many of plaintiffs'

13   addresses and phone numbers even today.  Instead, they acted

14   out of retaliation and instituted a credit freeze.  There's no

15   justification for that.

16             THE COURT:  All right.  Thank you.

17             MS. BRONT:  Thank you, Your Honor.

18             THE COURT:  Defense wish to respond?

19             MR. BOXER:  If I may, Your Honor.

20             THE COURT:  You may.

21             MR. BOXER:  Your Honor, in responding, I'd like to

22   start with opposing counsel's pointing to Your Honor of the

23   statutory provision.  Your Honor asked counsel a very specific

24   question and said for the New Jersey Identity Theft Prevention

25   Act, what's the provision that applies here that enables

1    liability, and I think counsel's answer is telling, because he

2    pointed to N.J.S.A. 56:11-50.  That statute says there is

3    liability when a, quote, requirement under the statute has been

4    violated.

5              THE COURT:  Right.

6              MR. BOXER:  And so that then brings us to, well,

7    what's the requirement here that was violated?  When Your Honor

8    asked counsel that question, he pointed to N.J.S.A. 56:11-46,

9    but all that provision says is that a consumer may elect to

10    have a security freeze placed.

11              THE COURT:  Right.

12              MR. BOXER:  And so there is nowhere that says it is a

13    requirement for an entity like my client to do X, Y and Z in

14    the way that has been alleged in this complaint.  And so as to

15    the statute, we believe no claim has been set forth.

16              As to the common law claims, the cases -- again, the

17    cases cited by opposing counsel I think are telling.  The *Read*

18    *vs. Profeta* case the Court dismissed on a 12(b)(6) motion

19    because the contract had not been identified.  In the

20    *Crosscountry Mortgage* case that was mentioned, that case is

21    easily distinguishable.  There were specific loans that were

22    enumerated in the complaint that were identified.

23              THE COURT:  Right.

24              MR. BOXER:  Again, I think if we look at the

25    provisions of the complaint, the paragraphs of the complaint

1    that counsel pointed to, if anything, I think it highlights the

2    argument that my side has made here.  If we look, for example,

3    counsel pointed to paragraph 24 of the complaint says, as a

4    result of the defendant's actions, plaintiffs have been unable

5    to obtain or extend various important financial, insurance, and

6    health services.

7              I mean, we might as well just say "contract."  That's

8    pretty much everything.  That is not, we respectfully submit,

9    the detail that is required.

10             I'd also note, Your Honor, Your Honor asked about the

11   damages that are required, and economic damages are a required

12   element.

13             THE COURT:  Right.

14             MR. BOXER:  Economic damages, that's in the *Canfield*

15   case.

16             Those are my replies, Your Honor.  Thank you.

17             THE COURT:  All right.  Thank you very much.

18             Anything further from plaintiffs?

19             MR. MAO:  Just quickly, Your Honor.

20             THE COURT:  Sure.

21             MR. MAO:  Your Honor, I'll just address quickly each

22   of defendant's points.

23             So, first of all, on the ITPA, going back to the

24   statute at 11-46, which was the former Subsection 5, we're

25   talking about the requirements of that statute.  It

1   specifically says under subsection (a), when the consumer

2   actually elects to place a security freeze, because it

3   enumerates the type of requests in which the consumer would

4   actually make in order to place a security freeze.

5         None of those enumerated elections for a credit

6   freeze was actually met here.  And defendants can cite to none

7   because they can't proffer any examples of such a request by

8   the plaintiffs other than their request for opt-out under

9   Daniel's Law, which when you look at what's pled in the

10  complaint, none of the language as part of the opt-out issued

11  by the consumers actually says anything about a credit freeze

12  or refers to the credit freeze act under the ITPA at all.  And,

13  therefore, we believe that that meets the requirements under

14  11-50, which requires strict compliance with the election

15  process under 11-46 for the placement of a security freeze on a

16  consumer report.

17        That section literally says this is the procedure by

18  which a consumer does that.  That was not met, and that was not

19  requested by the consumers, and, therefore, we believe that we

20  met 11-50.

21        Now, on to the second count, which, as my colleague

22  had pointed out, both specifies existing contracts and also

23  prospective contractual relations.  We believe that if you just

24  look at the letters that were issued by LexisNexis, it

25  enumerates what those actual and prospective contracts would

1    be.

2              THE COURT:  Did you say that you -- what, the letter

3    itself that you sent?

4              MR. MAO:  No.  The letter in which LexisNexis sent.

5              THE COURT:  Yeah.

6              MR. MAO:  Right.

7              THE COURT:  Where does it do that?

8              MR. MAO:  Second paragraph of their letter, Your

9    Honor.  The second paragraph of their letter specifically

10   enumerates the type -- in fact, they use the word

11   "interference."

12             You should -- third sentence, second paragraph:  "You

13   should be aware that applying for a credit freeze to your file

14   may delay, interfere with" --

15             THE COURT:  Well, sure, it says "may."  But it

16   doesn't say it will.  And it doesn't reference any specific

17   contract.  You would agree with that?

18             MR. MAO:  Oh, no, Your Honor.  In fact, if you keep

19   going down, it says the timely approval of applications you

20   make for items such as credit, benefits or insurance

21   underwriting, those are their enumerations, not ours.

22             THE COURT:  All right.

23             MR. MAO:  Under notice pleading requirements, I

24   believe we've more than met that.  They knew exactly what they

25   were doing because that's exactly the type of retaliatory

1    conduct in which they sent a letter when they said this is a

2    credit freeze request and not a Daniel's Law opt-out request.

3    We believe that whether it be for a count under contractual

4    relations or for prospective relations we've met that.

5           And, Your Honor, if you look at the briefing, we talk

6    about telling, as opposing counsel keeps saying, what is

7    telling about their briefing is they don't address

8    prospective -- interference with prospective relations at all

9    in their briefing.  They said nothing about how we failed to

10    meet the requirements of that, okay, because they know.  In

11    their own letter they point to what those prospective relations

12    would be.

13           And, in fact, a large number of these covered persons

14    to this day still are trying to deal with credit freeze issues.

15    And also the telling thing is LexisNexis has said nothing about

16    the false reporting of a credit freeze and how that may

17    actually affect a covered person.  Because the pretense in

18    which it was carried out here saying that there was a credit

19    freeze is that there was an identity theft suffered by these

20    covered persons.  What identity theft have they actually

21    pointed to as part of their opposition?  There is no identity

22    theft.  So why would there be a credit freeze on people who are

23    reluctant just to have their addresses and telephone numbers

24    not disclosed illegally?

25           We don't see how anybody with a straight face under

1    the second count can say that this was done without intention.

2    This was clearly intentional.  Daniel's Law opt-out was met

3    with a response for security/credit freeze because of credit

4    theft?  They can't point to no theft of any identity as a

5    result of Daniel's Law.

6            And then lastly, Your Honor, on the issue of

7    preemption, just to help you wrap up, we're happy to have

8    supplemental shootout, you know, on the supplemental briefing.

9    We actually believe that what's telling is their inability to

10   come up with any authorities or citation showing that any of

11   the 50 laws of the states or territories, two territories, have

12   actually been preempted as opposed to the concurrent

13   jurisdiction with FCRA.

14           You know, if you have any other procedural issues,

15   Your Honor, I think my colleague, Adam Shaw, or Mr. Parikh will

16   answer it.

17           THE COURT:  Anything further?  Anyone else wish to

18   say anything?

19           MR. BOXER:  If I may, Your Honor.

20           THE COURT:  You may.

21           MR. BOXER:  There were a couple allegations there I'd

22   love to quickly respond to.

23           THE COURT:  Go ahead, while we're here.

24           MR. BOXER:  For the Court's indulgence.

25           I would like to speak to the notion of I think as

1    counsel said, LexisNexis was being retaliatory by implementing

2    the freezes, and I think it's worth putting on the record what

3    the reality is here.

4           The plaintiffs approached my client and said they

5    didn't want their name -- didn't want their personal

6    information disclosed to a third party.  That's the request.

7           One of the things -- one of the services my client

8    provides, as I mentioned earlier, is it provides credit-related

9    information to third parties.  From a practical and statutory

10   standpoint, a freeze is the only mechanism that is available to

11   not provide a vendor with the -- with that identifying

12   information.  It would be nonsensical and not possible from a

13   technology perspective to send credit information on someone

14   without including who the person is so that the vendor can

15   identify --

16          THE COURT:  Yeah.  Let's look at that.  I think

17   paragraph 20 is an example.

18          MR. BOXER:  Paragraph 20 of the complaint.

19          THE COURT:  Of the complaint, the amended complaint,

20   yeah.

21          Now, my understanding is that both John Doe and Jane

22   Doe sent the same letter, except it's blacked out in the

23   complaint.  So what each of the plaintiffs requested is not to

24   disclose the following protected information, the name.  So I

25   assume it was whatever John Doe or Jane Doe's actual name was

1    and their home address.

2            It didn't say anything about telephone numbers there,

3    but just the name and home address.

4            MR. BOXER:  In this case, that's correct, yeah.

5            THE COURT:  Yeah.  Well, both of those, right?  Is it

6    different for -- are they both the same except for the name and

7    address?

8            MR. MAO:  Not the name, Your Honor.

9            THE COURT:  Well, the name would be different and the

10   address is going to be different.

11           MR. BOXER:  Yeah.

12           MR. SHAW:  They didn't ask to take down --

13           THE COURT:  But what I'm saying is the type of

14   information that was requested to be deleted or taken down was

15   the name --

16           MR. SHAW:  I'm sorry, not the names.  The only thing

17   that was asked to be taken down is the home address or the

18   unlisted phone number.  Right here the name is blacked out for

19   these purposes, but the name is not being asked to be taken

20   down.

21           MR. MAO:  Yeah.  The name is there, Your Honor, to

22   identify the person and the address.

23           THE COURT:  But it says --

24           MR. SHAW:  The reason it's blacked out is --

25           THE COURT:  Do you have the actual letters?  May I

1    have copies?  Obviously I'm not going to print their names.

2    I'd like to see the actual copies of the actual letters that

3    were sent.

4            MR. MAO:  We can submit that.

5            THE COURT:  I assume you have those.

6            MR. BOXER:  Yes.

7            THE COURT:  The defense.

8            MR. BOXER:  We do.

9            THE COURT:  So I'd like to see exactly what -- but

10    if -- you say make available the following protected

11    information.  So isn't the consumer requesting that the name

12    and home address be deleted?

13            MR. PARIKH:  Yes, Your Honor.  So these -- the

14    letters that we're talking about are the letters that are

15    pasted in the Daniel's Law complaints.  So it is an email form

16    that in this case was sent to LexisNexis that said my name is

17    Raj Parikh, I'm a covered person under Daniel's Law, please,

18    you know, accept this as a request for nondisclosure of my home

19    address which is, you know, 123 Main Street in Essex County,

20    New Jersey.

21            THE COURT:  Well, look at paragraph 20, just so I

22    understand this.  This is the letter that was submitted to

23    LexisNexis.  A letter?  Communication I'll call it.  It was

24    probably done by email.  That's the way things are done these

25    days, correct?  So it was an email; is that correct?

1           MR. PARIKH:  That's correct, Your Honor.

2           THE COURT:  And it was sent to LexisNexis, and "to

3     whom it may concern," and after the colon, the following

4     protected information.  It says "colon."

5           So wasn't the consumer, the plaintiff, asking

6     LexisNexis to remove the name and home address?  Isn't that

7     what the letter says?  That we not disclose or redisclose on

8     the Internet or otherwise make available the following

9     protected information...

10          Then it has the name and address.

11          MR. PARIKH:  And, Your Honor, it's pursuant to

12    Daniel's Law.  And Daniel's Law requires for the person

13    essentially to identify who they are to have just that

14    information requested.

15          So when the request is made here, where it talks

16    about pursuant to -- this is the second line of the email --

17    pursuant to the Act and section 3 of New Jersey Public Law

18    2015, Chapter 226.

19          THE COURT:  Yeah.

20          MR. PARIKH:  Which is codified as C56:8-166.1, "I

21    hereby request that you not disclose the protected

22    information."  The only information --

23          THE COURT:  No.  No.  You forgot a very important

24    word.  The "following" protected information.  Following means

25    what follows, what follows the colon.

```
 1           MR. PARIKH:  That is -- I agree with Your Honor that
 2    that is correct, that it means what follows the colon.  But the
 3    only information protected under the law that's written here is
 4    the covered persons' home address.  And --
 5           THE COURT:  All right.  So -- but that's not what it
 6    says.  In other words, now LexisNexis gets this information,
 7    and it says delete my name and home address.  Now, isn't it
 8    reasonable for LexisNexis to say, all right, Jane Doe doesn't
 9    want her name and home address disclosed?  So that if a
10    creditor comes to LexisNexis and asks for information on Jane
11    Doe, let's assume that's her real name, LexisNexis can't
12    provide that, can't provide the home address, and, therefore,
13    can't provide any information.
14           I mean, how can you -- in other words, if they come
15    in and ask for Jane Doe, delete my name and my home address, so
16    what is LexisNexis supposed to do if the creditor comes in and
17    asks for information about Jane Doe?  Is the agency going to
18    say, okay, here's all the information about Jane Doe, but guess
19    what, we won't put her name -- we won't give you her name, but
20    this has to be her credit information?  They're not going to
21    give my credit information or your credit information if you
22    ask for the information about Jane Doe.
23           Now, isn't that part of the problem here?
24           MR. MAO:  So --
25           THE COURT:  Looking -- I mean, focusing on it, I mean
```

```
 1   I have read it, but now that it's -- I'm sort of looking at
 2   this thing, isn't that what's -- isn't that part of the
 3   difficulty here?
 4             MR. PARIKH:  I don't think it's part of the
 5   difficulty, Your Honor.  And this gets a little far afield
 6   because it gets into some factual --
 7             THE COURT:  Well, I don't think it's far afield.  I
 8   think we need to talk about it.
 9             MR. PARIKH:  Absolutely, Your Honor.  And so when you
10   talk about what occurred here, specifically LexisNexis, first
11   they did nothing.  They didn't pull the information.  So we
12   talked about Accurint, for example, which is their non-FCRA
13   product.  You could go on Accurint today and still get covered
14   persons' phone numbers.
15             THE COURT:  No, no, wait a minute.  I think we're
16   conflating the Daniel's Law issue with this issue.  Now,
17   there's a separate case against an affiliate of this company, I
18   assume.  There's a LexisNexis case, and we're dealing with
19   that.  I've already dealt with that on the constitutional
20   issue.  But this is a separate case.  So they did what was
21   requested, didn't they, here?
22             In other words, maybe they didn't do it in the
23   Daniel's Law case, the information was still available.  But
24   this is a different case.  This is a different defendant.
25             MR. PARIKH:  So I think the fundamental question,
```

1    Your Honor, is that this email is not and should not be

2    interpreted as a request for a credit freeze.  That is the

3    issue here, is that from the plaintiffs' perspective and the

4    putative class's perspective, Lexis did this as a retaliatory

5    action.

6              THE COURT:  No, no.  But how -- let me ask, if you

7    get this letter, LexisNexis gets the letter, how can they

8    possibly remove the name and home address without imposing a

9    credit freeze?  How can you do that?  And this is the consumer

10   writing.  This isn't LexisNexis writing the letter.  Your

11   client says remove my name and home address.

12             MR. PARIKH:  So --

13             THE COURT:  And so they do it.  So that, in effect,

14   means that they're not going to be able to give out any other

15   information about Jane Doe.

16             MR. PARIKH:  So, Your Honor, the way that -- and I'll

17   answer Your Honor's question.  I just want to give some

18   context.  Lexis has on its website very specific pages related

19   to different types of requests that consumers can make to Lexis

20   to have their information removed.  There is now a specific

21   portal and a page regarding Daniel's Law requests, there's

22   specific pages with respect to security freezes and credit

23   freezes.  And so I do believe -- and this is to answer Your

24   Honor's questions directly -- there are ways for credit

25   agencies to provide credit information to other entities that

```
 1    are requesting it without providing a home address.

 2              I understand what Your Honor's point is with respect

 3    to the name, and there are other ways around that as well.

 4    There's nothing here about a Social Security number, other

 5    methods of identifying somebody uniquely.

 6              So if I, Your Honor, would go to purchase a vehicle,

 7    which many of these police officers have tried to do, or I'll

 8    actually even use a more simple example.  If I try to switch my

 9    cell phone service from Verizon to T-Mobile --

10              THE COURT:  Right.

11              MR. PARIKH:  -- and I go fill out all the forms at

12    T-Mobile and they then seek to verify my information and they

13    use a Lexis product, the end person is providing all of that

14    information to Lexis and saying please tell us if this is a

15    real person.  Lexis does not need to disclose any of that

16    information in order to respond.

17              And what has happened here in these very cases is

18    Lexis has said that person doesn't exist, and as a result those

19    police officers can't even switch their cell phone service.

20    And this is all a result of them trying to effectuate their

21    privacy rights under Daniel's Law, and that is what this class

22    action case is about.

23              THE COURT:  Maybe this issue isn't ripe for a motion

24    to dismiss.  Maybe it's down the road, but the point is it

25    is -- I mean, I can see on the surface the problem that
```

1    LexisNexis would face if an individual says remove my name.

2    And that's what it said.  And what if it hadn't removed the

3    name and then the consumer comes back and says I told you to

4    remove my name and you're giving out all kinds of information

5    about me.  I mean, aren't they -- aren't they sort of between a

6    rock and a hard place on this?

7            MR. MAO:  So they're not, Your Honor, as evidenced by

8    their own letter.  And here's why, okay, in terms of the data,

9    the anchoring data parameter for most credit reports is

10   actually the Social Security number or some other

11   identification number there.  You can simply pull a credit

12   report using a Social Security number.

13           THE COURT:  Yeah.  But come on, look --

14           MR. MAO:  So let me, Your Honor --

15           THE COURT:  No.  No.

16           MR. MAO:  Let me explain.

17           THE COURT:  Just a minute.

18           If I write to somebody and say don't disclose my name

19   and address, so, okay, I didn't say Social Security number.  So

20   it happens that the creditor has my Social Security number.

21   And so then they disclose all my information based on my Social

22   Security number when I've told them to remove my name and

23   address.

24           I mean, you can understand what could happen there.

25   I mean, somebody brings a lawsuit and says, well, look, I told

|   |   |
|---|---|
| 1 | you not to disclose my name and address, but ha-ha, you didn't |
| 2 | say "Social Security number," so somebody had my Social |
| 3 | Security number and, therefore, I'm going to disclose all the |
| 4 | information in the world about me because they're not going to |
| 5 | give my name, oh, yeah, I mean, you can understand -- you can |
| 6 | understand what kind of a pickle that the credit reporting |
| 7 | agency would be in. |
| 8 | MR. MAO:  So, Your Honor -- |
| 9 | THE COURT:  If they did that. |
| 10 | MR. MAO:  So, Your Honor, respectfully, let's take a |
| 11 | step back, look at the facts.  There's no way that that |
| 12 | actually happened. |
| 13 | THE COURT:  I'm trying to as you pleaded it. |
| 14 | MR. MAO:  I know, Your Honor.  But as we pled -- |
| 15 | well, in terms of whether something is a credit report or not, |
| 16 | that's not germane to our complaint.  They may say it is.  But |
| 17 | if you look at pages 21 to 22 of our opposition, we pointed |
| 18 | out -- I mean, we were talking about addresses and phone |
| 19 | numbers.  But LexisNexis themselves say the name, Social |
| 20 | Security number, phone number and addresses do not bear on the |
| 21 | seven characteristics enumerated in the definition of a |
| 22 | consumer report in the FCRA.  These are their own words to |
| 23 | congressional and U.S. authorities. |
| 24 | THE COURT:  Right. |
| 25 | MR. MAO:  So now we're not talking about consumer |

 1    reports.

 2            THE COURT:  I'm not -- look, people make all kinds of

 3    statements in other contexts.  We're talking about this case,

 4    you know.

 5            MR. PARIKH:  Mark.

 6            Judge, can I just point out one other thing to answer

 7    your question directly.

 8            If you look at the definitions under N.J.S.A.

 9    56:11-30 of these specific terms, a security freeze is defined

10    as --

11            THE COURT:  Okay.  This is under the statute, what a

12    security freeze is.

13            MR. PARIKH:  Yes, I'm sorry, Your Honor.  I said it

14    very quickly.  It is N.J.S.A. 56:11-30.

15            THE COURT:  Yeah.

16            MR. PARIKH:  And security freeze is defined as -- it

17    means a notice placed in a consumer's consumer report at the

18    request of the consumer and subject to certain exceptions that

19    prohibits the consumer reporting agency from releasing the

20    report or any information from it without the express

21    authorization of the consumer, but does not prevent a consumer

22    reporting agency from advising a third party that a security

23    freeze is in effect with respect to the consumer report.

24            And when we look at the definition of consumer

25    report, which is also in that section, and it's a very long

```
 1   definition so I won't read it, but it talks about that it
 2   relates to a consumer's creditworthiness, credit standing,
 3   credit capacity, character, general reputation, et cetera.
 4        And so when we talk about a security freeze, the
 5   person's name isn't part of a security freeze.  There is
 6   nothing under the law that would mean that Lexis couldn't
 7   disclose the existence of someone's report by their name
 8   because that person requested a security freeze.
 9        THE COURT:  But they couldn't disclose the report.
10   They can say a report exists, according to what you told me.
11        MR. PARIKH:  They could disclose the person's name,
12   because there's nothing within this law that says if I go to a
13   consumer reporting agency, I say don't disclose my name to
14   anyone, there's no obligation for them to do that.  That is not
15   what a security freeze is.  Security freeze says you can't tell
16   somebody about my creditworthiness.  You can tell them, sorry,
17   we can't respond about Mr. Parikh because he has a security
18   freeze.
19        THE COURT:  But what -- all right.  But I'd like to
20   see the actual unredacted -- do you have those available here?
21        MR. PARIKH:  I don't have a copy of them with me,
22   Your Honor, but --
23        THE COURT:  Well, I'm assuming defense has it also,
24   so there's no secret about it, just that you don't want it to
25   be made public.
```

1           MR. PARIKH:  Absolutely, Your Honor.

2           THE COURT:  So why don't you send those to me

3     promptly.

4           MR. PARIKH:  We will, Your Honor.

5           THE COURT:  And then I would like to have further

6     briefing on the preemption issue, particularly on

7     1681t(b)(1)(J), and if defense counsel could maybe within ten

8     days, by December 13th.  And then you want ten days thereafter?

9     Do you need that much time?

10          MR. MAO:  Sorry.  I was writing.

11          THE COURT:  We're running into Christmas week.

12          MR. MAO:  13th is fine, Your Honor.

13          THE COURT:  No.  They're going to do the 13th,

14    because they're the moving party.  So they're going to go

15    first.  So then you want to -- I think you probably want to

16    respond to what they say.  So do you want to do it by the --

17          MR. BOXER:  Can I make a request, Your Honor?

18          THE COURT:  Yeah.

19          MR. BOXER:  I don't know the schedules of the

20    opposing counsel here.  I know on our end, we've got a lot of

21    vacation time and the like.  I know Your Honor's not asking for

22    much here, but I wonder if maybe the two sides would be

23    agreeable to just kind of tabling this till January and

24    submitting then.

25          THE COURT:  No, no, no, earlier.  We need to get this

1    moving, because I did postpone the oral argument now to

2    accommodate you.

3              MR. BOXER:  At their request.

4              THE COURT:  Well, whoever.  But the point is, I don't

5    want this to drag on and on and on.  I mean, we are in the

6    Christmas season and so forth and I'm willing to accommodate.

7    What date do you suggest?

8              MR. BOXER:  Well, our ask would be like end of the

9    first week of January, like January 7th.  If that's not

10   acceptable, we'll make it work.

11             THE COURT:  I mean --

12             MR. MAO:  We'll make it work, Your Honor.  I'll work

13   through Christmas for this.

14             THE COURT:  Well, we'll make it -- if you want to do

15   it -- all right.  What date do you want in January?  I'll

16   accommodate you.

17             MR. BOXER:  I don't have a calendar in front of me.

18             THE COURT:  I don't want to hear anybody's --

19             MR. BOXER:  First week in January.

20             MR. MAO:  I don't think we need more than ten days to

21   respond to their brief, Your Honor.

22             MR. PARIKH:  January 3rd or January 10th.

23             THE COURT:  That gives you -- my word, that's a whole

24   month.

25             MR. BOXER:  January 5th?

1               (Counsel conferring.)

2               MR. BOXER:  January 6th, Your Honor.

3               THE COURT:  All right.  Let's make it by -- all

4    right.

5               MR. MAO:  Just on the preemption issue, right?

6               THE COURT:  Yeah.  Make it -- all right.  Let's get

7    it in -- let's get it in by 4:00 on the 6th of January, all

8    right?

9               MR. BOXER:  Thank you, Your Honor.

10              THE COURT:  Let's not wait until 6:00 or 7:00 to get

11   it filed.

12              MR. BOXER:  I understand.

13              THE COURT:  When do you want?  How much time do you

14   want to respond?

15              MR. SHAW:  One week.  One week seems fair to us, Your

16   Honor.  The 13th.

17              THE COURT:  Okay.  January 13th, it's a weekday.  All

18   right.

19              MR. SHAW:  Yeah, it is.

20              THE COURT:  On preemption.  And then you'll get to me

21   promptly the letters.

22              MR. SHAW:  Yes.

23              MR. PARIKH:  Your Honor, I'll have that FedExed to

24   your chambers today for delivery.

25              THE COURT:  Okay.  Is there anything further we need

1    to talk about today?

2              MR. BOXER:  No, Your Honor.

3              THE COURT:  Thank you very much for coming.

4              MR. PARIKH:  Thank you, Your Honor.

5              MR. MAO:  Thank you, Your Honor.

6              MS. BRONT:  Thank you, Your Honor.

7              THE COURTROOM DEPUTY:  All rise.

8              THE COURT:  Hope everyone has a Merry Christmas and

9    happy holidays.

10             (Proceedings concluded at 11:03 a.m.)

11        - - - - - - - - - - - - - - - - - - - -
           **FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**
12        - - - - - - - - - - - - - - - - - - - -

13        I certify that the foregoing is a correct transcript

14   from the record of proceedings in the above-entitled matter.

15

16

17   /S/John J. Kurz, RDR-RMR-CRR-CRC          December 9, 2024

18   Court Reporter/Transcriber

19

20

21

22

23

24

25