UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE-1 and JANE DOE-2, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LEXISNEXIS RISK SOLUTIONS INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,<br><br>Defendants. | Civil Action 1:24-cv-04566<br>Hon. Harvey Bartle, III, U.S.D.J. |

**SUPPLEMENTAL BRIEF OF DEFENDANT LEXISNEXIS RISK SOLUTIONS INC. ADDRESSING PREEMPTION**

**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
*Attorneys for Defendant LexisNexis Risk Solutions Inc.*

-i-

## **TABLE OF CONTENTS**

Page

I. SUPPLEMENTAL ARGUMENT ................................................................1

    A. The State and Federal Statutory Frameworks for Security Freezes......1

    B. Federal Preemption Under the FCRA ....................................................3

    C. Preemption of the Amended Complaint's Claims ................................6

II. CONCLUSION.................................................................................................9

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aldrich v. N. Leasing Sys., Inc.*,
   91 N.Y.S.3d 401 (App. Div. 2019)........................................................................4

*Ameri v. Equifax Info.*,
   No. 14-3319, 2015 U.S. Dist. LEXIS 34151 (D.N.J. Mar. 19, 2015)...................4

*Edwards v. Equable Ascent, FNCL, LLC*,
   No. 11-cv-2638, 2012 U.S. Dist. LEXIS 54112 (D.N.J. Apr. 16,
   2012) ......................................................................................................................5

*Eller v. Experian Info. Sols., Inc.*,
   No. 09-cv-00040-WJM-KMT, 2011 U.S. Dist. LEXIS 153981 (D.
   Colo. Dec. 8. 2011).................................................................................................8

*Gottman v. Comcast Corp.*,
   No. 2:17-2648, 2018 U.S. Dist. LEXIS 29756 (E.D. Cal. Feb. 23,
   2018) ..................................................................................................................3, 4

*Hamilton v. DirecTV, Inc.*,
   642 F. Supp. 2d 1304 (M.D. Ala. 2009)................................................................8

*Hines v. Microbilt Corp.*,
   No. 572/2022, 2023 N.Y. Misc. LEXIS 2455 (Sup. Ct. Kings Cty.
   May 16, 2023)....................................................................................................5, 7

*Hutchinson v. Del. Sav. Bank FSB*,
   410 F. Supp. 2d 374 (D.N.J. 2006).........................................................................5

*Madden v. Experian Info. Sols., Inc.*,
   No. 5:12-CV-00162, 2014 U.S. Dist. LEXIS 133597 (W.D.N.C.
   Sept. 23, 2014).......................................................................................................8

*Oneok, Inc. v. Learjet, Inc.*,
   575 U.S. 373 (2015)................................................................................................7

*Pladeck v. Credit Suisse First Fin. Corp.*,
  No. 1:23-cv-20678, 2024 U.S. Dist. LEXIS 196101 (D.N.J. Oct.
  29, 2024) ...................................................................................................................5

*Premium Mortg. Corp. v. Equifax, Inc.*,
  583 F.3d 103 (2d Cir. 2009) .....................................................................................4

*Spencer v. Experian*,
  No. 23-65-H-BMM-KLD, 2024 U.S. Dist. LEXIS 104686 (D.
  Mont. Mar. 14, 2024) ...............................................................................................7

*In re Vehicle Carrier Servs. Antitrust Litig.*,
  846 F.3d 71 (3d Cir. 2017) .......................................................................................7

**Statutes and Regulations**

15 U.S.C. § 1681 .......................................................................................................... 3, 8

15 U.S.C. § 1681a .............................................................................................................2

15 U.S.C. § 1681c-1 ..................................................................................................... 2, 3

15 U.S.C. § 1681t ...................................................................................................  3, 4, 6

N.J.S.A. 56:11-44 to -52 ...................................................................................................1

N.J.S.A. 56:11-46 ......................................................................................................... 2, 3

N.J.A.C. 13:45F-1.3 ..................................................................................................... 2, 7

In response to the Court's December 3, 2024 Order (Dkt. No. 61), LexisNexis respectfully submits this Supplemental Brief regarding FCRA preemption of the state-law claims in the Amended Complaint.[1]

During the December 3 oral argument, Plaintiffs for the first time on this Motion to Dismiss asserted that "there are different types of credit freezes," that the FCRA only addresses "national security freezes," and that "we're not alleging that LexisNexis placed a freeze under that [FCRA] statute." (Dkt. No. 62 ("Tr.") at 23:10, 23:21, 23:24–25.) Plaintiffs asserted that LexisNexis imposed credit freezes "under the New Jersey Mini-FCRA," i.e., the New Jersey Identity Theft Prevention Act, N.J.S.A. 56:11-44 to -52 ("NJITPA"), which results, Plaintiffs claimed, in claims that are not preempted. (*Id.* at 24:13–14.) This Supplemental Brief addresses that argument and, in addition, responds to the Court's question regarding case law addressing FCRA preemption of security freeze claims. (*See id.* at 24:16–23, 35:17–36:6.)

## I.   SUPPLEMENTAL ARGUMENT

### A.   The State and Federal Statutory Frameworks for Security Freezes

Adopted in 2005, the NJITPA tracks the structure and logic of the security freeze provisions of the FCRA. Both statutes require the imposition of a security

---

[1] All abbreviations used in this Supplemental Brief have the same meanings ascribed to them in LexisNexis's opening and reply briefs. (Dkt. Nos. 51-1, 53.)

freeze over a "consumer report" issued by a "consumer reporting agency" when a consumer so requests.  *See* 15 U.S.C. § 1681c-1(i)(2)(A); N.J.S.A. 56:11-46(a).

The FCRA and the NJITPA employ virtually the same definitions of "security freeze," *see* 15 U.S.C. § 1681c-1(i)(1)(C); N.J.A.C. 13:45F-1.3, and "consumer report," *see* 15 U.S.C. § 1681a(d); N.J.A.C. 13:45F-1.3.  Moreover, the NJITPA's implementing rules incorporate and use the FCRA's definition of a national consumer reporting agency.  *See* N.J.A.C. 13:45F-1.3 (defining "consumer reporting agency" as "all consumer reporting agencies that compile or maintain files on consumers on a nationwide basis, as defined by subsection (p) of section 603 of the Fair Credit Reporting Act, 15 U.S.C. § 1681a, incorporated herein by reference").

Thus, operationally, both statutes address the same requests to impose the same kind of security freeze on consumer reports.  Moreover, and perhaps ultimately most important on this Motion to Dismiss, neither statute imposes liability for an alleged wrongful imposition of a security freeze.  While both statutes require the imposition of a freeze when requested by a consumer, *see* 15 U.S.C. § 1681c-1(i)(2)(A); N.J.S.A. 56:11-46(a), they are silent regarding an alleged wrongful imposition of such a freeze.  That makes sense, as a security freeze is a privacy-protective act that may be reversed at any time by the consumer, in whole or in part to undertake a transaction with proper authentication.

That said, the NJITPA clarifies the FCRA's requirements in certain limited ways. For example, the FCRA requires a mechanism "by which the consumer may remove the security freeze" and requires the consumer to provide "proper identification" before the freeze may be lifted. 15 U.S.C. § 1681c-1(i)(2)(B)(ii)(I), (3)(C). The FCRA itself does not define this mechanism or the "proper identification." The NJITPA builds upon these provisions by requiring that New Jersey consumers be provided "with a unique personal identification number" ("PIN") by which consumers can identify themselves and request the lifting of a freeze. N.J.S.A. 56:11-46(c), (d)(2), (g)(1). That PIN is the mechanism by which the consumer may provide "proper identification" to lift the freeze, as required by the FCRA and as implemented by LexisNexis in this case. (*See, e.g.*, Am. Compl. ¶ 22.)

**B.    Federal Preemption Under the FCRA**

The FCRA is a comprehensive regime intended to protect consumer privacy. *See* 15 U.S.C. § 1681(a)(4). While companies like LexisNexis are situated differently under the FCRA than the three major credit bureaus (Experian, TransUnion, and Equifax) and often act under state law, state law may not undermine the central purposes of the FCRA. *See id.* § 1681t(a). That is, state law can fill in operational gaps in the federal regime or introduce additional consumer protections, but it may not operate to defeat federal consumer rights. *See, e.g., Gottman v.*

-3-

*Comcast Corp.*, No. 2:17-2648, 2018 U.S. Dist. LEXIS 29756, at *13 (E.D. Cal. Feb. 23, 2018) ("[A] state may give the consumer more protections than the FCRA as long as the state law is not an obstacle to the execution of the FCRA."); *Aldrich v. N. Leasing Sys., Inc.*, 91 N.Y.S.3d 401, 403 (App. Div. 2019) ("The FCRA does not prevent states from giving consumers more protection than the federal statute affords.").

While the FCRA does not preempt state law in every area relating to consumer reports, FCRA Section 625 does so in two situations: *first*, under Section 625(a), if the state law is "inconsistent" with the FCRA; and *second*, under Section 625(b)(1), if the state law pertains to "any subject matter" of several enumerated FCRA provisions—including, among others, FCRA provisions "relating to security freezes." 15 U.S.C. § 1681t(a), (b)(1)(J).

The express preemption of Section 625(b) "sweeps broadly" and preempts claims arising under state statutory and common law. *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 106 (2d Cir. 2009) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 521 (1992)). Courts in this circuit repeatedly have cited the broad sweep of express preemption when addressing the subsections of Section 625(b)(1). *See Ameri v. Equifax Info.*, No. 14-3319, 2015 U.S. Dist. LEXIS 34151, at *13–14 (D.N.J. Mar. 19, 2015) (dismissing plaintiff's claims as preempted under subsection (F) of Section 625(b)(1) given the "total pre-emption approach" with respect to

FCRA claims); *see also Pladeck v. Credit Suisse First Fin. Corp.*, No. 1:23-cv-20678, 2024 U.S. Dist. LEXIS 196101, at *13–15 (D.N.J. Oct. 29, 2024); *Edwards v. Equable Ascent, FNCL, LLC*, No. 11-cv-2638, 2012 U.S. Dist. LEXIS 54112, at *17–20 (D.N.J. Apr. 16, 2012); *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 384 (D.N.J. 2006).

Our research revealed only one decision that addresses FCRA's preemption of state-law claims arising from security freezes, *Hines v. Microbilt Corp.*, No. 572/2022, 2023 N.Y. Misc. LEXIS 2455 (Sup. Ct. Kings Cty. May 16, 2023). There, the consumer plaintiff asserted New York common law and statutory claims against a national consumer reporting agency (TransUnion) and a reseller of that company's credit information, based on allegations that the two defendants sold the plaintiff's credit information to other parties after the plaintiff directed TransUnion to place a security freeze on his credit report. *Hines*, 2023 N.Y. Misc. LEXIS 2455, at *1–2. The defendants moved to dismiss on several grounds, including that the FCRA preempts these state-law claims relating to security freezes (i.e., the same argument advanced here). *See id.* at *3. The court agreed that the "FCRA indeed pre-empts state law claims" and granted the motion, dismissing the claims against the national consumer reporting agency and those against the reseller of that agency's reports. *Id.* at *3–4.

### C. Preemption of the Amended Complaint's Claims

If a state law were to impose liability for a wrongful or imprecise imposition of a security freeze, it would chill that privacy-protective consumer action that is designed to protect against the dissemination of a person's confidential information. It therefore is of no surprise that the FCRA provides that security-freeze claims are an area that is expressly preempted. *See* 15 U.S.C. § 1681t(b)(1)(J) ("No . . . prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . subsections (i) and (j) of section 1681c-1 [section 605A] of this title relating to security freezes . . . ."). Each of the claims in Plaintiffs' Amended Complaint "relat[es] to security freezes" and is therefore preempted.

The preemptive impacts of the federal law cannot be avoided simply by placing a New Jersey moniker on a freeze, as preemption by definition involves federal supremacy over conflicting state provisions. That result is especially important when the causes of action these Plaintiffs seek to pursue would chill attempts to further privacy and safety interests. In this case, for example, LexisNexis undertook significant action to restrict access to personal information in the interest of public safety.

That LexisNexis is not itself a nationwide consumer reporting agency like the three major credit bureaus does not require a different result. The fact that the NJITPA's definition of consumer reporting agency incorporates the definition of

national consumer reporting agencies under FCRA Section 603(p) demonstrates that point. *See* N.J.A.C. 13:45F-1.3. LexisNexis provides products that are regulated by the FCRA and in those contexts operates as a consumer reporting agency, *see, e.g.*, *Spencer v. Experian*, No. 23-65-H-BMM-KLD, 2024 U.S. Dist. LEXIS 104686, at *11–12 (D. Mont. Mar. 14, 2024), and LexisNexis regularly obtains data from the credit bureaus for some of its products, *see, e.g.*, *National Credit File*, LexisNexis Risk Sols., https://risk.lexisnexis.com/products/national-credit-file (last visited Jan. 6, 2025). It would make little sense to find that Equifax, TransUnion, and Experian are protected from such security-freeze claims while LexisNexis, providing access to the same "consumer credit reports from all three of the major credit bureaus," is not. *Id*. Using similar logic, the court in *Hines* found that the FCRA preempted the state-law claims against both the TransUnion credit bureau *and* the reseller of its reports. *Hines*, 2023 N.Y. Misc. LEXIS 2455, at *3–4.

Even if express preemption under the broadly worded Section 625(b) were not alone sufficient to resolve the question, Section 625(a) conflict preemption applies here. (*See* Opening Br. (Dkt. 51-1) at 22.) Under that doctrine, federal law preempts a state law when, for example, a state law poses an obstacle to full achievement of a federal objective. *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (citation omitted); *see In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 77–78, 82 (3d Cir. 2017).

As noted above, the FCRA does not impose liability for an alleged wrongful imposition of security freezes. While we have separately argued that the NJITPA does not create such liability either, if the Court were to determine otherwise the result would be an inconsistency that would run afoul of federal law. In particular, the FRCA is designed to protect consumer privacy, and implementing a security freeze is one way of doing so. *See, e.g.*, 15 U.S.C. § 1681(a)(4) (reflecting Congressional intent to protect consumer privacy through FCRA). A state law that discouraged the implementation of security freezes by providing for liability for improperly placed freezes would pose an obstacle to full achievement of the federal objective of protecting consumer privacy. Courts have found conflict preemption in other such instances where state laws imposed an inconsistent burden or standard. *See, e.g.*, *Madden v. Experian Info. Sols., Inc.*, No. 5:12-CV-00162, 2014 U.S. Dist. LEXIS 133597, at *15 (W.D.N.C. Sept. 23, 2014) ("[Plaintiff] may not attempt to use state laws like the [North Carolina Debt Collection Act] to create inconsistent standards with the FCRA."); *Eller v. Experian Info. Sols., Inc.*, No. 09-cv-00040-WJM-KMT, 2011 U.S. Dist. LEXIS 153981, at *8 (D. Colo. Dec. 8. 2011) (concluding that state-law willful damages provision was inconsistent with FCRA damages and thus preempted); *Hamilton v. DirecTV, Inc.*, 642 F. Supp. 2d 1304, 1306–07 (M.D. Ala. 2009) (concluding that state-law claim that would grant litigant

equitable relief would "frustrate and conflict" with FCRA).  For this reason too, Plaintiffs' state-law claims would be preempted.

## II.    CONCLUSION

As we explained at the December 3, 2024 hearing, and as a threshold matter, New Jersey state law does not recognize the NJITPA and common-law claims pled in the Amended Complaint.  We respectfully submit that the Court can and should decide the pending Motion to Dismiss on that basis alone.  However, if the Court should discern a basis for liability under state law for these alleged facts as pled, the FCRA would preempt those state-law claims for the reasons stated.

Respectfully submitted,

LOWENSTEIN SANDLER LLP
Attorneys for Defendant LexisNexis Risk Solutions Inc.

By: */s/ A. Matthew Boxer*
    A. Matthew Boxer
    Gavin J. Rooney
    Rasmeet K. Chahil

DATED: January 6, 2025