# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE-1 and JANE DOE-2, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LEXISNEXIS RISK SOLUTIONS INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,<br><br>Defendants. | Civil Action No. 1:24-cv-04566<br><br>Honorable Harvey Bartle, III<br>United States District Judge |

## PLAINTIFFS' RESPONSE TO DEFENDANT LEXISNEXIS RISK SOLUTIONS INC.'S SUPPLEMENTAL BRIEF ADDRESSING PREEMPTION

*Attorneys for Plaintiffs*

PEM LAW LLP
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
1 Boland Dr., Suite 101
West Orange, NJ 07052
Tel.: (973) 577-5500
rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

BOIES SCHILLER FLEXNER LLP
Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, NY 12207
Tel.: (518) 434-0600
ashaw@bsfllp.com

MORGAN & MORGAN, P.A.
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................2

    I.  The FCRA Does Not Seek to Supersede State Statutes; Instead, It Encourages State Supplements and Concurrent Protections. ..........................2

    1.  The FCRA only preempts state laws from regulating national security freezes and conflicting credit freezes. ..........................................................2

    2.  LexisNexis' reading of the FCRA makes its conduct even more reprehensible (and unlawful). ..........................................................................6

    II.  The ITPA builds upon the protections afforded by the FCRA and is not inconsistent with any element of the FCRA. ..................................................7

    III.  Public Policy Does Not Favor a Finding of Preemption. ............................10

CONCLUSION ........................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Aargon Agency, Inc. v. O'Laughlin*,
  70 F.4th 1224 (9th Cir. 2023) ............................................................................................... 4

*Ameri v. Equifax Info.*,
  No. 14-3319, 2015 U.S. Dist. LEXIS 34151 13 (D.N.J. Mar. 19, 2015) ................................ 9

*Consumer Data Indus. Ass'n v. Frey*,
  26 F.4th 1 (1st Cir. 2022) ............................................................................................ 3, 4, 7

*Dan's City Used Cars, Inc. v. Pelkey*,
  569 U.S. 251 (2013) .............................................................................................................. 4

*Edwards v. Equable Ascent, FNCL, LLC*,
  No. 11-cv-2638, 2012 U.S. Dist. LEXIS 54112 17 (D.N.J. Apr. 16, 2012) .............................. 9

*Galper v. JP Morgan Chase Bank, N.A.*,
  802 F.3d 437 (2d Cir. 2015) ................................................................................................... 4

*Hines v. Microbilt Corp.*,
  No. 572/2022, 2023 N.Y. Misc. LEXIS 2455 (Sup. Ct. Kings Cty. May 16, 2023) ................ 10

*Hutchinson v. Del. Sav. Bank FSB*,
  410 F. Supp. 2d 374 (D.N.J. 2006) ......................................................................................... 9

*Pladeck v. Credit Suisse First Fin. Corp.*,
  No. 1:23-cv-20678, 2024 U.S. Dist. LEXIS 196101 13 (D.N.J. Oct. 29, 2024) ....................... 9

**Statutes**

N.J. Stat. § 56:11-45 ................................................................................................................... 9

N.J. Stat. § 56:11-46(c), (g)(2 .................................................................................................... 3

N.J. Stat. Ann. § 56:11-30, 56:11-46, 13:45F-2.1 through 13:45F-2.7 ........................................ 6

**Other Authorities**

15 U.S.C.S. § 1681c-1 ..................................................................................................... passim

15 U.S.C.S. § 1681g ................................................................................................................... 7

15 U.S.C.S. § 1681g(c)(2) ......................................................................................................... 6

15 U.S.C.S. § 1681h(e) ............................................................................................................. 9

15 U.S.C.S. § 1681t(a) ........................................................................................................... 7, 8

15 U.S.C.S. § 1681t(b) ........................................................................................................ 2, 3, 9

15 U.S.C.S. § 1681t(b)(1)(F) ..................................................................................................... 9

15 U.S.C.S. §1681g(a) ............................................................................................................... 7

1681t(b)(1)(E) ............................................................................................................................ 4

1681t(b)(1)(J) ......................................................................................................................... 5, 9

5 U.S.C.S. § 1681t(a) ................................................................................................................ 7

Case 1:24-cv-04566-HB   Document 65   Filed 01/13/25   Page 4 of 18 PageID: 995

# INTRODUCTION

Defendant LexisNexis Risk Solutions Inc.'s ("LexisNexis") supplemental brief is telling in how it could find no authorities for the proposition that the New Jersey Identity Theft Protection Act ("ITPA") – or similar laws of any of the other fifty States or two territories – are preempted by the federal Fair Credit Report Act ("FCRA"). That is because no such state security freeze law supplementing the protections of the FCRA has ever been found to be in conflict with the FCRA. LexisNexis finally admits that it has no authorities to "supplement," after having wasted the Court's and opposing counsel's time and resources on this baseless argument.

And of course, LexisNexis has nothing to present. Defendant cited the ITPA in its actual notification letters, utilized PINs and other procedures unique to the New Jersey statute, and then argued Plaintiffs' Complaint was insufficiently pled due to alleged failure to comply with those ITPA requirements. It raised no issue with the constitutionality of the ITPA at any of those points then.

LexisNexis' failures are regrettable for the purposes of this briefing because, if the Court were to compare a security freeze notice from LexisNexis pursuant to the FCRA, to a security freeze notice pursuant to the ITPA, the notices would be glaringly different. That is because under both the ITPA and FCRA, no provision prevents a consumer reporting agency from imposing a security freeze pursuant to

1

both statutes. They are simply two different kinds of security freezes, each requiring LexisNexis to follow the procedures required under the corresponding statute. This Court is no stranger to FCRA cases, and LexisNexis' silence should be deafening on why it issued an ITPA security freeze notice and not an FCRA one.

Since LexisNexis has neither law nor facts on its side, even when given an additional opportunity to supplement its briefing, the Court should deny its Motion to Dismiss in its entirety. Such a meritless argument should not be given any more attention.

## **ARGUMENT**

**I. The FCRA Does Not Seek to Supersede State Statutes; Instead, It Encourages State Supplements and Concurrent Protections.**

**1. The FCRA only preempts state laws from regulating national security freezes and conflicting credit freezes.**

The pertinent section of the FCRA preemption statute reads, "[n]o requirement or prohibition may be imposed under the laws of any State— (1) with respect to any subject matter *regulated under*— . . . (J) subsections (i) and (j) of section 1681c–1 of this title relating to security freezes." 15 U.S.C.S. § 1681t(b) (emphasis added). 15 U.S.C.S. § 1681c-1 then discusses a very particular type of security freeze, a national security freeze, permissible at the request of the consumer.

Consistent with the FCRA security freeze, all 50 states, as well as the District of Columbia and Puerto Rico, each have their own security freeze statutes for

different purposes, with distinct requirements.[1]  Setting aside LexisNexis' inability to show conflicts between the ITPA and the FCRA, LexisNexis could not even show any of the other 49 states or two territories having passed a security freeze law that conflicts with the FCRA.

Regardless, focusing back on New Jersey's ITPA, it has provisions regarding the amount of time a consumer reporting agency has to notify a consumer of a security freeze being lifted "due to a material misrepresentation of fact by the consumer," and the mechanism to authenticate the consumer's identity for the removal of a security freeze.  N.J. Stat. § 56:11-46(c), (g)(2).  These provisions are not "subject matter" under 15 U.S.C.S. § 1681c-1 of the FCRA because that statute does not touch either of these circumstances.

The preemption statute specifies that states cannot regulate "subject matter regulated *under . . . section 1681c–1 of this title* relating to security freezes"; it does not say they cannot regulate any subject matter relating to security freezes.  15 U.S.C.S. § 1681t(b) (emphasis added).

The First Circuit has read this law in the same logical manner.  *See Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 1, 6 (1st Cir. 2022) (reading FRCA to preempt "all state laws 'relating to information contained in consumer reports,' . . . [was] not

---

[1] https://www.ncsl.org/financial-services/consumer-report-security-freeze-state-laws.

3

the most natural reading of the statute's syntax and structure"); *see also Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1235 (9th Cir. 2023) (offering a similar analysis of "relating" language). Analyzing an analogous provision of the FCRA preemption statute, the *Frey* Court explained that "Section 1681t(b)(1)(E)'s mandate expresses Congress' intent only to preempt those claims that concern subject matter regulated under Section 1681c." *Id.* at 7 (citations omitted). "In *Dan's City Used Cars, Inc.*, the Supreme Court noted that the addition of the words 'with respect to' in the FAAAA 'massively limit[ed] the scope of preemption' ordered by the statute. And while the preemption provision at issue here arises in a different federal statute, there is no basis to conclude that the effect of the language in each provision was not intended to be the same." *Id.* at 8 (citing *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013); *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 446 (2d Cir. 2015) (so noting in applying *Dan's City Used Cars, Inc.'s* reading of the phrase "with respect to," to the same phrase under the FCRA)).

This Court has followed suit, applying the reasoning in *Frey* hold "the 2019 amendment to the NJFCRA is not expressly preempted by the FCRA." *Consumer Data Indus. Ass'n v. Platkin*, Civil Action No. 19-19054 (GC) (TJB), 2024 U.S. Dist. LEXIS 54812, at *23–26, 46–49 (D.N.J. Mar. 27, 2024).

And of course this is a reasonable construction of the FCRA, because given the amount of data collected by companies like LexisNexis, it would essentially be

saying that any privacy law of any state that concurrently covers any type of data collected by consumer reporting agencies would be covered by the FCRA, and therefore preempted. LexisNexis has no authority for such a proposition, even if the Court were to consider that preposterous argument *arguendo*.

That approach can guide the Court here, as the ITPA and FRCA offer different kinds of security freezes, both of which may be exercised by a consumer. 15 U.S.C.S. § 1681c-1(i) has the subheading "*National* security freeze," (emphasis added) and 15 U.S.C.S. § 1681c-1(j) has the subheading "*National* protection for files and credit records of protected consumers." (emphasis added). The fact that both sections enumerated in the preemption statute have the word "National" in their subheadings indicates that they are distinct from a security freeze limited to a specific state (New Jersey) and enacted within the ambit of state law (the ITPA).

Even LexisNexis seems to have read the statute in the same manner. During oral argument, the Court asked LexisNexis' counsel, "[d]oes section 1681t(b)(1)(J) relate to all security freezes, the security freezes that were imposed here?" and counsel responded that his "understanding [wa]s it pertains to security freezes involving a *national* consumer reporting agency." Declaration of Mark Mao, Exhibit A (Dec. 3, 2024 Hearing Transcript) at 33:14–20 (emphasis added).

The Court should likewise read the statute in this natural manner and hold that the ITPA is not preempted. LexisNexis' "supplement" all but concedes such a

5

natural reading.

### 2. LexisNexis' reading of the FCRA makes its conduct even more reprehensible (and unlawful).

The difference between a security freeze under state law as opposed to federal law is particularly meaningful here because LexisNexis ostensibly tried to follow the rules set forth in the ITPA, rather than the FCRA. LexisNexis' letters notifying Plaintiffs of the security freezes specified: "[t]he security freeze is being placed on your file pursuant to the security freeze laws in your state of residence, NJ, specifically, N.J. Stat. Ann. § 56:11-30, 56:11-46, 13:45F-2.1 through 13:45F-2.7, 13:45F-5.1 as of the date of this letter." Compl. at ¶¶ 22, 27. In affirming in crystal-clear terms its reliance on the ITPA, LexisNexis distinguished the credit freeze at issue from the FCRA, thereby raising the issue of "different types of credit freezes" well before the December 3, 2024 oral argument. Def's Supp. Brief at 1.

Conveniently reversing course, LexisNexis now argues that the law it relied on in placing these security freezes is preempted. But if the FCRA preempts every single state's security freeze statute, then LexisNexis's own security freezes of the credit reports of covered persons under Daniel's Law were (1) without a legal basis and (2) failed to follow the then applicable rules for security freezes under the FCRA.

For example, 15 U.S.C.S. § 1681g(c)(2) provides that a "[s]ummary of rights [is] required to be included with agency disclosures," and that a consumer reporting agency must provide the summary of rights to a consumer "with each written

6

disclosure by the agency to the consumer under this section." 15 U.S.C.S. §1681g(a) requires consumer reporting agencies to make disclosures to the consumer upon a consumer's request. Here, LexisNexis is arguing that the nondisclosure notices Plaintiffs sent pursuant to Daniel's Law were requests for LexisNexis to place security freezes on their accounts. This would necessarily trigger an agency disclosure under 15 U.S.C.S. § 1681g of the FCRA, thereby requiring LexisNexis to send each Plaintiff a summary of rights under 15 U.S.C.S. § 1681c-1(i)(5).

Yet, LexisNexis' letters to Plaintiffs did not include this required language. *See* Compl. at ¶¶ 22, 27. Its preemption argument, if credited, therefore leaves LexisNexis without a lawful basis for its freezes (which it expressly stated it placed pursuant to New Jersey law), not to mention liable for its failure to follow the FCRA.

**II. The ITPA builds upon the protections afforded by the FCRA and is not inconsistent with any element of the FCRA.**

The ITPA is also not preempted by 15 U.S.C.S. § 1681t(a) of the FCRA, which "provides that the FCRA may coexist with state law 'except to the extent that those laws are inconsistent with any provision of [the FCRA], and then only to the extent of the inconsistency.'" Def's MTD at 18 (quoting 15 U.S.C.S. § 1681t(a)). This allows for states to enact "more protective" laws than the FCRA. The Fair Credit Reporting Act's Limited Preemption of State Laws, 87 Fed. Reg. 41,042, 41,042 (July 11, 2022); *Consumer Data Indus. Ass'n v. Platkin*, 2024 WL 1299256, at *6 (D.N.J. Mar. 27, 2024).

7

Here, the ITPA contains no provisions that are inconsistent with the FCRA, and LexisNexis points to none. During the December 3, 2024 Hearing, the Court asked about the PINs required under the ITPA and referenced in LexisNexis' letters. Mao Decl., Ex. A at 27:6–28:24.[2] In its Reply to its Motion to Dismiss, LexisNexis argued Plaintiffs' Complaint was insufficiently pleaded based on a lack of detail regarding provision of these PINs. Def's Reply at 2–3. LexisNexis cannot have it both ways—it cannot, on one hand, claim there is a pleading inadequacy under the ITPA, while on the other hand, argue that the statute creating the claimed pleading requirement is preempted.[3]

To the contrary, this requirement under the ITPA is an example demonstrating that the ITPA merely builds upon the FCRA. The ITPA "clarifies the FCRA's requirements in certain limited ways," such as by providing a mechanism by which to remove security freezes, where "[t]he FCRA itself does not define this mechanism." Def's Supp. Brief at 3 (citing 15 U.S.C.S. § 1681c-1(i)(2)(B)(ii)(I), (3)(C); N.J. Stat. § 56:11-46(c), (d)(2), (g)(1)).

Further, 15 U.S.C.S. § 1681t(a) specifically contemplates the coexistence of the FCRA and state statutes "for the prevention or mitigation of identity theft." The

---

[2] LexisNexis also raised PINs during the May 7, 2024 status conference. Mao Decl., Ex. B at 110:1-110:14.

[3] This is exactly the type of doublespeak that counsels in favor of finding LexisNexis "judicially estopped" here. *See* Plaintiffs' Opposition to Motion to Dismiss at 20–22.

New Jersey Identity Theft Protection Act does just that. *See* N.J. Stat. § 56:11-45. If the Court were to accept LexisNexis's interpretation of the preemption statute, virtually all state statutes providing additional protection against identity theft would fall under LexisNexis' broad interpretation of 15 U.S.C.S. § 1681t(b)(1)(J), as they also contain their own security freeze provisions. This approach would contradict the clear legislative intent written in the statute.

Finally, LexisNexis' cases arguing for sweeping preemption are inapposite, as they only discuss two specific, unrelated provisions of the FCRA's statutory preemption framework. *See Ameri v. Equifax Info.*, No. 14-3319, 2015 U.S. Dist. LEXIS 34151, at *13–14 (D.N.J. Mar. 19, 2015) (discussing only 15 U.S.C.S. § 1681t(b)(1)(F), "relating to the responsibilities of persons who furnish information to consumer reporting agencies," and 15 U.S.C.S. § 1681h(e), prohibiting "defamation, invasion of privacy, or negligence [actions] with respect to the reporting of information" to or from consumer reporting agencies); *Pladeck v. Credit Suisse First Fin. Corp.*, No. 1:23-cv-20678, 2024 U.S. Dist. LEXIS 196101, at *13–15 (D.N.J. Oct. 29, 2024) (discussing only 15 U.S.C.S. § 1681t(b)(1)(F)); *Edwards v. Equable Ascent, FNCL, LLC*, No. 11-cv-2638, 2012 U.S. Dist. LEXIS 54112, at *17–20 (D.N.J. Apr. 16, 2012) (discussing only 15 U.S.C.S. § 1681t(b)(1)(F)); *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 384 (D.N.J. 2006) (discussing only 15 U.S.C.S. § 1681t(b)(1)(F) and 15 U.S.C.S. § 1681h(e)).

The one case LexisNexis identified as finding preemption of a state security freeze statute has no relevance to the dispute at issue, as the plaintiff in *Hines v. Microbilt Corp.* did not have his credit report frozen under a competing New York security freeze statute, and the defendant did not cite to any competing New York credit statute. *See Hines v. Microbilt Corp.*, No. 572/2022, 2023 N.Y. Misc. LEXIS 2455, at *3 (Sup. Ct. Kings Cty. May 16, 2023). The causes of action in the matter were for negligence, negligence per se, unjust enrichment, and violations of New York General Business Law § 899 *et seq.* and New York General Business Law § 349 *et seq*, for a security freeze made by defendant apparently pursuant to the FCRA. *Id.* at *2. Here, even LexisNexis tacitly concedes that it issued its initial credit freezes pursuant to the ITPA; so, it is unclear how *Hines* has any relevance whatsoever. The dearth of authorities in LexisNexis' "supplement" is further proof that its Motion to Dismiss should be denied in its entirety.

### III. Public Policy Does Not Favor a Finding of Preemption.

LexisNexis's policy arguments mischaracterize the impact of its conduct and misrepresent the law.

First, contrary to LexisNexis' assertions, the imposition of liability for a consumer reporting agency's enacting security freezes without consumer consent would not chill anything, except for misconduct on the part of consumer reporting agencies. As for retaliatory action by consumer reporting agencies, without any

10

basis in law or fact: that should be chilled.

As LexisNexis itself noted in its letters to Plaintiffs, security freezes can lead to denial of critical consumer services such as healthcare benefits, insurance underwriting, and credit. *See* Compl. ¶¶ 22, 27. LexisNexis distracts from the harm it has caused by touting consumer privacy, but its imposition of unsolicited security freezes has left untold Plaintiffs without access to their credit for months, while LexisNexis continues to profit off of their personal information. *E.g.*, Compl. ¶ 5. If there is any policy concern here, it is to hold agencies like LexisNexis accountable for abusing the freeze process.

Setting aside that companies should be apprehensive about playing games with people's credit reports, LexisNexis cites no case law suggesting that such a potential chilling effect is a valid ground for finding preemption here. This is likely in part because the FCRA expressly allows states to enact laws more protective compared to the FCRA, which inherently opposes any concern about a chilling effect. *See Platkin*, 2024 WL 1299256, at *6.

Thus, if the Court wants to consider any chilling effect here as a matter of policy, that only militates in favor of finding no preemption.

## **CONCLUSION**

11

Plaintiffs respectfully request that the Court find the ITPA is not preempted and deny LexisNexis' Motion to Dismiss.

Dated: January 13, 2025

Respectfully submitted,

**PEM LAW LLP**

By: s/ *Rajiv D. Parikh*

Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Tel: (973) 577-5500
rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

**BOIES SCHILLER FLEXNER LLP**
James Lee (admitted *pro hac vice*)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com

Mark Mao (admitted *pro hac vice*)
Joshua Michelangelo Stein
Beko Reblitz-Richardson
Julia Bront (admitted *pro hac vice*)
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
jstein@bsfllp.com
brichardson@bsfllp.com
jbront@bsfllp.com

12

Adam R. Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, NY 12207
Tel: (518) 434-0600
ashaw@bsfllp.com

Melissa Zonne
Samantha Parrish (admitted *pro hac vice*)
2029 Century Park East, Suite 1520N
Los Angeles, CA 90067
Tel.: (213) 629-9040
sparrish@bsfllp.com

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

(remaining *pro hac vice* motions to be filed)

***Attorneys for Plaintiffs***

13

## CERTIFICATE OF SERVICE

I, Rajiv D. Parikh, hereby certify that on January 13, 2025, I caused the foregoing PLAINTIFFS' RESPONSE TO DEFENDANT LEXISNEXIS RISK SOLUTIONS INC.'S SUPPLEMENTAL BRIEF ADDRESSING PREEMPTION to be electronically served upon all counsel of record via the Court's electronic filing system.

Dated: January 13, 2025

                                                             s/ Rajiv D. Parikh
                                                             Rajiv D. Parikh