## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE-1 and JANE DOE-2, Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LEXISNEXIS RISK SOLUTIONS, INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, <br><br> Defendants. | Civil Action No. 1:24-cv-04566 <br> Honorable Harvey Bartle, III, U.S.D.J. |

---

## PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

---

*Attorneys for Plaintiffs*

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
1 Boland Dr., Suite 101
West Orange, New Jersey 07052
Telephone: 973-577-5500
Email:rparikh@pemlawfirm.com
        keinhorn@pemlawfirm.com
        jmerejo@pemlawfirm.com

**BOIES SCHILLER FLEXNER LLP**
Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

Mark C. Mao (admitted *pro hac vice*)
Julia Bront (admitted *pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, California 94104
Telephone: (415) 293-6800
Email: mmao@bsfllp.com
        jbront@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE Second Street, Suite 2800

Miami, Florida 33131
Telephone: (305) 357-8434
Email: jlee@bsfllp.com

Eric Palmer (admitted *pro hac vice*)
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 377-4250
Email: epalmer@bsfllp.com

**MORGAN & MORGAN, P.A.**
Ryan J. McGee (admitted *pro hac vice*)
John A. Yanchunis (admitted *pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Email: rmcgee@forthepeople.com
        jyanchunis@forthepeople.com

## INTRODUCTION

1.      Daniel's Law[1] was passed unanimously by the New Jersey Legislature to provide judges, prosecutors, and law enforcement officers—and their families—with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers. This right was intended to allow these public servants to better protect themselves and their family members against a wide range of harassment and threats, including threats of physical violence and death. Recognizing the severity of the risks involved in public service, the New Jersey Legislature also provided these individuals with meaningful ways for them to enforce their rights against uncooperative profit- seeking data brokers such as LexisNexis Risk Solutions, Inc. ("LexisNexis"). Plaintiffs are some of the over 18,000 "covered persons" who exercised their legal right under New Jersey's Daniel's Law to request that LexisNexis and other commercial data brokers no longer disclose or otherwise make available their home addresses or unpublished home telephone numbers.

2.      Instead of fully complying with those requests, LexisNexis chose to engage in an unlawful campaign to intimidate and retaliate against Plaintiffs and other members of the alleged class. Rather than fully comply with Daniel's Law, as required, LexisNexis set into motion a campaign to freeze the credit reports of Plaintiffs and others, doing so in retaliation for the efforts by Plaintiffs and others to exercise their rights under Daniel's Law.

3.      The unlawful actions by LexisNexis are putting the lives and safety of these thousands of public servants at risk. The news is filled with horrific stories of law enforcement officers and judges—and their family members—being threatened, harassed, hunted down, injured, and killed by those with perceived grievances. Daniel's Law allows active and retired law

---

[1] P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1.1, N.J.S.A. 47:1B-1, N.J.S.A 56:8-166.1, and N.J.S.A. 2C:20-31.1.

enforcement officers, prosecutors, child protective investigators in the Division of Child Protection and Permanency, and judges—and their eligible family members—to protect their home addresses and unpublished home telephone numbers from disclosure by data brokers like LexisNexis, who regularly profit from the selling and furnishing of that information to customers willing to pay. The law is clear, and Defendants are very clearly not in compliance with the law.

4.      Rather than complying with Daniel's Law to safeguard those who faithfully protect others, LexisNexis retaliated against Plaintiffs and others by implementing unrequested, unlawful, and harmful "security freezes" (also referred to as credit freezes). Plaintiffs never requested a credit report freeze—indeed, none of those words appear in the written notices sent to LexisNexis (hereinafter, "Daniel's Law Request"). Nevertheless, LexisNexis responded to these Daniel's Law Requests by unilaterally —freezing Plaintiffs' credit reports. LexisNexis openly acknowledged in their letters of retribution that this credit freeze may result in Plaintiffs being denied crucial financial, insurance, and health services.

5.      LexisNexis's response to these Daniel's Law Requests should never have been a close call, and never should have triggered any credit freezes. In its own publicly available materials, LexisNexis explicitly distinguishes between a Daniel's Law Request and a request for a credit freeze. They are two distinct types of requests governed by different laws. Plaintiffs' experience highlights the reality that a credit freeze does not constitute compliance with Daniel's Law: Plaintiffs sent requests to LexisNexis under Daniel's Law, and LexisNexis responded by freezing their credit while ***continuing to publish and make available information with their names and home addresses, as well as comprehensive reports on other family members (including minor children as young as 13 years old) living at the same address, within which additional protected information about the Plaintiffs was unlawfully disclosed***. The following

images are from a search performed on a LexisNexis "people search" product, using the last name of Officer John-Doe 1 and his city (and state) of residence as search criteria, ***after*** LexisNexis froze his credit file, and ***after*** the compliance period set by Daniel's Law had expired:



LexisNexis/Accurint search results for Officer DOE-1's last name and the city where he lives.

The first search result is DOE-1's (under 18) minor child. LexisNexis sells a "comprehensive report" about this child, including the child's full name, home address, and other sensitive personal information.



LexisNexis's "comprehensive report" on Officer DOE-1's minor child - retrieved <u>after</u> Daniel's Law request and <u>after</u> security freeze.

LexisNexis report includes detailed information regarding DOE-1's minor child.



LexisNexis report includes <u>name and home address</u> for DOE-1 and his wife, in violation of Daniel's Law and despite a credit freeze.

Numerous similar cases documented, involving children as young as 13 years old – whose parents are prosecutors and law enforcement officers.

Instead of complying with Daniel's Law, LexisNexis doubled down with its unlawful actions.

6.    Plaintiffs are bringing this lawsuit now because they have been unable to otherwise obtain relief from these unlawful freezes. They and others requested that LexisNexis remove the credit freezes. Although the law requires that a credit freeze be promptly removed upon request, LexisNexis still has not done so. Instead, LexisNexis has engaged in a prolonged effort to thwart Plaintiffs' efforts to remove these credit freezes. Plaintiffs believe this is part of an unlawful effort by LexisNexis and others to punish and deter attempts to seek compliance with Daniel's Law, resulting in substantial and ongoing harm to Plaintiffs and others. Defendants' purposeful retribution and terrorization of our prosecutors and law enforcement officers—and their families—

should not be tolerated. Plaintiffs, on behalf of themselves and others similarly situated, respectfully seek relief from this Court.

7.      Upon receiving Plaintiffs' requests that Defendants comply with Daniel's Law, Defendants placed security freezes on Plaintiffs' consumer credit reports.  In so doing, Defendants initially cited to N.J.S.A. 56:11-44, et seq., otherwise known as the New Jersey Identity Theft Protection Act. ("NJITPA").  Plaintiffs challenged the security freezes under that statute.

8.      More recently, LexisNexis claimed that its security freezes were actually done pursuant to the Fair Credit Reporting Act ("FCRA")—notwithstanding LexisNexis's express reliance on the NJITPA in the letters informing Plaintiffs of the freezes.

9.      On January 27, 2025, this Court held that certain provisions of the FCRA preempted and therefore displaced New Jersey law with regard to the freezes at issue, and it directed the Plaintiffs to amend their complaint by stating a FCRA claim.

10.     Consistent with the Court's order, Plaintiffs are filing their Second Amended Complaint and asserting claims for violations of the FCRA.

## **BACKGROUND**

### **Passage of Daniel's Law in New Jersey**

11.     In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect them. By the time his mother, a Judge, came to the door to check on what happened, the killer was gone. But her husband was critically wounded, and Daniel tragically died from the gunshot.

12.     During the investigation, the perpetrator was found to have certain political and

personal grievances against the Judge and went to her home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

13.    Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[2] the same kind of data-broker services operated by Defendants in this case.

**New Jersey Passes Daniel's Law in 2020**

14.    In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1, et seq. and N.J.S.A 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

15.    Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade,

---

[2] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

16. Daniel's Law was amended in 2023, as P.L. 2023, c. 113. The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023. As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:[3]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
>> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
>>
>> (2) punitive damages upon proof of willful or reckless disregard of the law;
>>
>> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
>>
>> (4) any other preliminary and equitable relief as the court determines to be appropriate.
>
> d. For the purposes of this section:
>
>> …"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making

---

[3] https://legiscan.com/NJ/bill/S3125/2022

available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

17.    Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[4]

18.    The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers.  It allowed federal judges to redact their personal information displayed on federal government internet sites.

19.    The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[5] and it was signed by President Biden.[6]

**Violence Against Police Officers and Judges Has Not Stopped**

20.    Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[7]

---

[4] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[5] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[6] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.
[7] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com), https://www.forbes.com/sites/jemimamcevoy/2020/09/18/shooters-open-fire-onhome-of-new-jersey-police-officers-in-targeted-attack-chief-says/?sh=764b12434e09.

21.    More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[8]  The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[9]

22.    Thus, the need for covered persons to receive the benefit of Daniel's Law's protections without fear of financial reprisal from data brokers who also act as consumer reporting agencies is both urgent and immediately apparent.

**<u>Plaintiffs And Other Members Of The Class Sent Daniel's Law Requests; Defendants Responded by Retaliating</u>**

23.    Plaintiffs are members and family members of various law enforcement agencies, unions, and organizations of the State of New Jersey, including the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local I05, and the New Jersey State Troopers Fraternal Association, among others. The goal of these agencies, unions, and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

24.    In December 2023 and January 2024, Plaintiffs and other members of the class— all individuals covered by Daniel's Law—sent LexisNexis written requests under the statute, expressly requesting that LexisNexis stop making available for public sale and disclosure Plaintiffs' protected information. These Daniel's Law requests specifically stated:

---

[8] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN, https://www.cnn.com/2023/l0/20/us/maryland-judge-killing-investigation-andrew-wilkinson/index.html.

[9] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN, https://www.cnn.com/2022/06/04/us/wisconsin-judge-killed-targeted-attack/index.html.

## Data Subject Request - Redaction/nondisclosure Request

**To**          privacy@lexisnexisrisk.com
**From**        ███████████████████████████████████████
**Date**        ███████████████████████

LexisNexis
January 2, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: ██████████████████████████████

Home Address: ████████████████████████████████████

Sincerely,
████████████████████████████

25.    Nothing in any of the Daniel's Law correspondences sent by Plaintiffs to LexisNexis (or any other company) requested a credit freeze. No such words even appeared in the correspondences. And none of these Daniel's Law correspondences reported an identity theft.

26.    Instead of complying with Daniel's Law, Defendants proceeded to retaliate against Plaintiffs and others, with intent, design, and malice. Specifically, Defendants proceeded to freeze Plaintiffs' consumer credit reports, and, by citing <u>N.J.S.A.</u> 56:11-4, LexisNexis falsely implied to Plaintiffs that the freeze was based on concerns relating to identity theft.



**LexisNexis®**

LexisNexis® Consumer Center

Consumer Number: ▮▮▮▮

Case Number ▮▮▮▮

Dear ▮▮▮▮

RE: Security Freeze Confirmation

Thank you for your request to place a security freeze on your file with LexisNexis Risk Solutions, ("LexisNexis") as provided by law in your state of residence. This letter is to confirm that a security freeze has been placed on your file.

Security freezes will be placed based on your state of residency and the customers use case. Based on this information, LexisNexis may not release your report(s) or score(s) derived for those use cases. You should be aware that applying a security freeze to your file may delay, interfere with, or prohibit the timely approval of applications you make for items such as credit, benefits, or insurance underwriting. WARNING TO PERSONS SEEKING A CREDIT FREEZE AS PERMITTED BY THE CREDIT REPORT PROTECTION ACT: YOU MAY BE DENIED CREDIT AS A RESULT OF A FREEZE PLACED ON YOUR CREDIT FILE. A security freeze does not apply to certain users of consumer reports, including those with whom you already have an existing account. These users request your file for the purpose of reviewing that account.

This security freeze is being placed on your file pursuant to the security freeze laws in your state of residence, NJ, specifically, N.J. Stat. Ann. § 56:11-30, 56:11-46, 13:45F-2.1 through 13:45F-2.7, 13:45F-5.1 as of the date of this letter If your state of residence changes, please notify LexisNexis at the number below and request an update to the applicability of your security freeze. This security freeze will remain in place indefinitely until you decide to temporarily or permanently remove the security freeze. Below you will find a unique Personal Identification Number(PIN) that you will need in the event that you choose to temporarily or permanently remove the security freeze.

Should you wish to remove your security freeze, you must contact us and provide proper identification and your PIN number.

Please note that LexisNexis does not charge for security freezes.

If you have any further questions, you may contact the LexisNexis Consumer Center via email at consumer.documents@LexisNexisRisk.com or by phone at 800-456-1244. The LexisNexis Consumer Center's hours of operation are Monday – Friday from 8:00 A.M. to 7:00 P.M. Eastern Time. In an effort to protect your privacy and deliver prompt service, please have your Consumer Number (located at the top of this letter) accessible when you call our support number.

LexisNexis Consumer Center
Attn: Security Freeze
P.O. Box 105108
Atlanta, GA 30348-5108

Total Pages  1 of 6                          Page 1

27.     Daniel's Law did not permit LexisNexis or others to respond by freezing Plaintiffs' credit, and Plaintiffs did not report an identity theft pursuant N.J.S.A. 56:11-44, et seq.[10]

28.     As demonstrated by the contents of the written letters, LexisNexis knew that its retaliation would damage Plaintiffs by disrupting their lives.  Still, Defendants proceeded to injure and disparage Plaintiffs anyways.

29.     More recently, LexisNexis claimed that they engaged in the conduct at issue pursuant to the FCRA.  However, Plaintiffs have never received any of the notices or procedural requirements necessitated by the FCRA, even if LexisNexis was actually freezing credit pursuant to the FCRA (which it was not).

30.     As a result of Defendants' actions, Plaintiffs have been unable to obtain or extend various important financial, insurance, and health services, including those that periodically require a credit report pull or updated financial history. The need for Daniel's Law "covered persons" to receive the critical protections that the law was enacted to provide without fear of financial reprisal from data brokers is urgent and immediately apparent.

**THE PARTIES**

**Plaintiff Representatives, Officers JOHN DOE-1 and JANE DOE-2**

31.     Plaintiff JOHN DOE-1, whose name has been anonymized for safety reasons, is a decorated 17-year veteran of the South Plainfield police department and a former United States Marine. Seeking to protect himself and his family from threats received during the course of his career, on January 2, 2024, Officer DOE- I sent a Daniel's Law request to LexisNexis, requesting

---

[10] N.J.S.A. 56:11-44, et seq. is entitled "(the) Identity Theft Prevention Act."  N.J.S.A. 56:11-44, effective 2006 as L. 2005, c. 226, Section 1.

the nondisclosure of his home address and unpublished home telephone number. Officer DOE-1 did not request any security freeze.  Plaintiff JOHN DOE-1 is a resident of New Jersey.

32.    On January 17, 2024, LexisNexis replied to Officer DOE-1 via email and acknowledged his request and replied that it had been processed. In that same email, LexisNexis stated that a security freeze "will be placed on your file." Officer DOE-1 then received a physical letter in the mail from LexisNexis, stating that a security freeze had been placed on his file, and that an identity theft had been reported under N.J.S.A. 56:11-44, et seq:



33.    Following that, Officer DOE-I called the phone number provided by LexisNexis and asked for help. On the phone, the LexisNexis call-center representative confirmed that a security freeze had been placed on his file. In attempting to have the freeze removed, Officer DOE-I was asked to provide his full name, address, phone number, social security number, and driver's

license number. He provided all of this information. He was then told by the LexisNexis representative that this information was insufficient to authenticate his identity.

34.    Officer DOE-1 uploaded three documents to the LexisNexis portal: a business letter addressed to him (showing his name and home address), his active New Jersey driver's license, and a recent bank statement showing his full name and home address. Two weeks later, Officer DOE-I received another physical letter in the mail from LexisNexis stating that it had rejected his identity documents as insufficient and refused to remove the security freeze on his account.

35.    On February 17, 2024, Officer DOE-I sent LexisNexis a written request to remove the security freeze, from the same email address he had used to send the Daniel's Law requests and including the same personal information contained in those initial requests. LexisNexis did not remove the credit freeze, nor have they - despite weeks passing - even responded to his email.

36.    Officer DOE-I feels that he has exhausted his options, and that LexisNexis is operating in bad faith, punishing him for exercising his rights under Daniel's Law. He is further concerned because his son - a 19-year old active duty marine - also sent in a Daniel's Law request to LexisNexis, wanting to help protect himself and his parents from reprisals. LexisNexis sent his son the same physical letter stating they had placed a security freeze on his credit file and reported an identity theft, but it was received after his son had already departed for his first duty station, where he has precious little free time to navigate the maze of challenging - and in some cases, seemingly insurmountable - requirements that LexisNexis has put in place

37.    Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a retired veteran New Jersey police officer, suffering from multiple sclerosis.  Plaintiff JANE DOE-2 is a resident of New Jersey.

38.    On January 1, 2024, Officer DOE-2 sent a Daniel's Law request to LexisNexis, requesting the nondisclosure of her home address and unpublished home telephone numbers. She sought to enforce her rights under Daniel's Law because she personally received direct threats of violence and death against her and her family members during her tenure as a New Jersey law enforcement officer. At one point in her career, the severity of threats received from a particularly violent criminal prompted her to leave her hometown and relocate her family to another part of New Jersey. Officer DOE-2 did not request any security freeze from LexisNexis.

39.    On January 19, 2024, LexisNexis replied to Officer DOE-2 via email and acknowledged her Daniel's Law request and replied that it had been processed. In that same email, LexisNexis stated that a security freeze "will be placed on your file." Officer DOE-2 then received a physical letter in the mail from LexisNexis, stating that a security freeze had been placed on his file, and that an identity theft had been reported under <u>N.J.S.A.</u> 56:11-44, <u>et seq</u>., similar to the letter sent to Officer DOE-I:

40.    As LexisNexis did with Officer DOE-1, LexisNexis froze Officer DOE-2's credit report. This immediately caused Officer DOE-2 to fear for her financial stability and her ability to access credit in case of emergency, a fear confirmed by LexisNexis's own credit freeze letter to her:

**LexisNexis**

LexisNexis® Consumer Center

Consumer Number: ████████

Case Number: ████████

Dear ████████

RE: Security Freeze Confirmation

Thank you for your request to place a security freeze on your file with LexisNexis Risk Solutions, ("LexisNexis") as provided by law in your state of residence. This letter is to confirm that a security freeze has been placed on your file.

Security freezes will be placed based on your state of residency and the customers use case. Based on this information, LexisNexis may not release your report(s) or score(s) derived for those use cases. You should be aware that applying a security freeze to your file may delay, interfere with, or prohibit the timely approval of applications you make for items such as credit, benefits, or insurance underwriting. WARNING TO PERSONS SEEKING A CREDIT FREEZE AS PERMITTED BY THE CREDIT REPORT PROTECTION ACT: YOU MAY BE DENIED CREDIT AS A RESULT OF A FREEZE PLACED ON YOUR CREDIT FILE. A security freeze does not apply to certain users of consumer reports, including those with whom you already have an existing account. These users request your file for the purpose of reviewing that account.

This security freeze is being placed on your file pursuant to the security freeze laws in your state of residence, NJ, specifically, N.J. Stat. Ann. § 56:11-30, 56:11-46, 13:45F-2.1 through 13:45F-2.7, 13:45F-5.1 as of the date of this letter.If your state of residence changes, please notify LexisNexis at the number below and request an update to the applicability of your security freeze.This security freeze will remain in place indefinitely until you decide to temporarily or permanently remove the security freeze.Below you will find a unique Personal Identification Number(PIN) that you will need in the event that you choose to temporarily or permanently remove the security freeze.

Should you wish to remove your security freeze, you must contact us and provide proper identification and your PIN number.

Please note that LexisNexis does not charge for security freezes.

If you have any further questions, you may contact the LexisNexis Consumer Center via email at consumer.documents@LexisNexisRisk.com or by phone at 800-456-1244. The LexisNexis Consumer Center's hours of operation are Monday – Friday from 8:00 A.M. to 7:00 P.M. Eastern Time. In an effort to protect your privacy and deliver prompt service, please have your Consumer Number (located at the top of this letter) accessible when you call our support number.

LexisNexis Consumer Center
Attn: Security Freeze
P.O. Box 105108
Atlanta, GA 30348-5108

Total Pages  1  of  6                          Page 1

As with Officer DOE-1, Officer DOE-2 did not request a credit freeze on her consumer credit report or report any identity theft.

41.     Due to her multiple sclerosis, Officer DOE-2 requires unfettered access to sophisticated and expensive treatments to moderate her medical condition on a daily basis. To maintain unfettered access to these treatments, Officer DOE-2 requires equally unfettered access to credit on an ongoing basis. Defendants knew that their freezing of credit can cause such havoc on the lives of Plaintiffs and others, as demonstrated by the contents of the credit freeze response letters from Defendants.

42.     Also due to her multiple sclerosis, Officer DOE-2 has a limited capacity to deal with unwarranted mental and emotional stress. Mental and emotional stress increases Officer DOE-2's risk of relapses, flare-ups, and exacerbations of multiple sclerosis's most debilitating effects. Officer DOE-2 spent hours helping another "covered person" remove their own unwanted credit freeze, by responding to LexisNexis' unremitting requests for additional verification - including a trip to the local library to use a high-grade scanner after LexisNexis rejected clear photographs of identity documents taken from their phones. Given her serious medical condition, Officer DOE-2 feels that the stress of having to repeat that process in an attempt to unfreeze her own credit file - especially when there is no guarantee of success - would have an immediate and detrimental impact on her health.

43.     Thousands of other similarly situated individuals have sent correspondences directly to LexisNexis demanding that LexisNexis remove the unlawful and unauthorized security freeze. Further, hundreds of Plaintiffs called LexisNexis directly, including LexisNexis's call center, requesting that LexisNexis remove the illegal freeze.

44.    To date, Defendants continue their attempts to undermine Daniel's Law and chill the exercise of its critical privacy rights, by insisting on the credit freeze and misreporting an identity theft, for anyone who sent them a Daniel's Law request.

45.    Defendants intend to keep some of the unauthorized security freezes in place to coerce Plaintiffs into abandoning their claims for redress under Daniel's Law. And to date, Plaintiffs are not aware of Defendants correcting their disparaging statements regarding how Plaintiffs allegedly suffered identity thefts—if that damage can ever be repaired at all.

**Plaintiffs Meet Rule 23's Requirements for Certification as a Class**[11]

46.    Plaintiffs JOHN DOE-1 and JANE DOE-2 seek to represent the following class of "covered persons" under New Jersey's Daniel's Law:

a.    Persons who submitted a written Daniel's Law request to cease the disclosure of their home address or unpublished home telephone number, upon whom Defendants thereafter imposed a credit freeze.

47.    The proposed class consists of at least 18,000 members each; accordingly, the class is so numerous that joinder is impracticable.

48.    Questions of law or fact are common to the class. Common legal questions include:

a.    Why LexisNexis purported to convert requests for compliance with Daniel's Law into requests for imposition of a security freeze on Plaintiffs' accounts;

b.    Whether LexisNexis's conduct was motivated by a desire to retaliate against Plaintiffs exercising their rights under Daniel's Law;

---

[11] This matter originated in New Jersey state court and, accordingly, New Jersey Rules of Civil Procedure governed that complaint at the time of filing. Rule 4:32 mirrors Rule 23 of the Federal Rules of Civil Procedure concerning class actions.

      c.     Whether LexisNexis acted willfully with respect to its various violations of the FCRA; and

      d.     Whether LexisNexis acted negligently with respect to its various violations of the FCRA.

49.     The claims or defenses of the representative parties are typical of the claims or defenses of the class in that:

      a.     All the representative parties are "covered persons" under Daniel's Law, N.J.S.A. 56:8-166.1(d);

      b.     All were subjected to Defendants' unauthorized credit freezes in retaliation for their efforts to bring Defendants into compliance with Daniel's Law; and

      c.     All are exposed to the same harm of obstructed access to credit.

50.     The representative parties will fairly and adequately protect the interests of the class because their interests are aligned in that the harm caused by Defendants' actions. Additionally, the representative parties have retained counsel with substantial experience litigating class actions.

51.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because without a class action most class members would find the cost of litigating their claims to be prohibitively high and they would accordingly be left with no effective remedy at law or equity and would continue to incur damages. A class action is also superior because it will conserve the resources of both the courts and the litigants while promoting consistency in the adjudication of the class's claims.

52.     Defendants have also acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

53.     Plaintiffs may seek partial certification under Rule 23(c)(4) in that questions of law and fact common to the lass exist as to all class members.  Such a partial certification would be an alternative to certification under Rule 23(b)(3).

**Defendants, ROES, and ABC Companies**

54.     Defendant LexisNexis Risk Solutions, Inc. is an entity that provides data-brokering and credit-reporting services and is an entity involved in the violations described in this Complaint. LexisNexis Risk Solutions, Inc., is a corporation with its principal place of business located at 1000 Alderman Drive, Alpharetta, Georgia.

55.     Defendants Richard ROES 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts to conceal the specific entities involved in and jointly responsible for Defendants' actions.

56.     Plaintiffs are informed, and on that basis allege, that some of these ROES and ABC Companies may be data-industry, advertisement-industry, and other interest-based/self-regulatory organizations, who are mobilizing and coordinating their members to continue harming and exacting retribution on the judges, prosecutors, and law enforcement officers seeking protections under Daniel's Law. Such concerted efforts may include punishing "covered persons" for sending further nondisclosure requests, including by perpetuating credit freezes and reporting instances of "identity theft" that were never requested or reported by the persons themselves.

57.     These ROES and ABC Companies may also include other consumer reporting agencies, who also know that Plaintiffs never requested a credit freeze or reported an identity theft, but whom nevertheless are perpetuating a fraud and intimidation campaign to further industry

financial interests, instead of the very important safety of the public servants of this State and their families.

## JURISDICTION AND VENUE

58.     This Court has jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq., as ordered by the Court, and 28 U.S.C. § 1331, because the claim arises under federal law.

59.     This Court also has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendants.  Plaintiffs both are residents of New Jersey and therefore diverse from Defendant LexisNexis Risk Solutions, Inc., which has its principal place of business in Georgia.

60.     Venue is proper pursuant to 28 U.S.C. § 1391, in that Bergen County is the county in which one or more of the parties reside and/or conduct business.  In addition, many of the events giving rise to this action occurred in this County.

## CLAIMS AGAINST DEFENDANTS

## COUNT ONE

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT ("FCRA"), 15 U.S.C. § 1681c-1(i)(2)(A)

61.     The allegations of the Complaint set forth above in paragraphs 1 through 60. are included herein as if set forth at length.

Failing to Comply with FCRA Procedural and Notice Requirements

62.     Despite initially informing Plaintiffs that LexisNexis was implementing a security freeze based on certain provisions of New Jersey law, LexisNexis has since taken the position that

the FCRA is the only basis on which a security freeze can be imposed on a consumer's credit file, and LexisNexis has further represented in filings and argument with this Court that it placed the freezes pursuant to the FCRA, and not the NJITPA, notwithstanding its own statements in the letters informing Plaintiffs of the security freeze on their respective accounts. Thus, despite placing the credit freezes in January 2024, LexisNexis has not provided appropriate notice under the FCRA (if that is indeed the statute under which they acted) because more than five (5) days have passed since the imposition of those credit freezes. *See* 15 U.S.C.§ 1681c-1(i)(2)(B)(i).

63.    Section 1681c-1(i)(2)(A)(i) of the FCRA requires that:

> Upon receiving a direct request from a consumer that a consumer reporting agency place a security freeze, and upon receiving proper identification from the consumer, the consumer reporting agency shall, free of charge, place the security freeze not later than . . . in the case of a request that is by toll-free telephone or secure electronic means, 1 business day after receiving the request directly from the consumer."

64.    Section 1681c-1(i)(2)(A)(i) of the FCRA sets forth the conditions under which a Consumer Reporting Agency may place a security freeze on a consumer's account. Notably, section 1681c-1(i)(2)(A)(i) requires that the consumer submit a "direct request" to "place a security freeze" before a Consumer Reporting Agency may act.

65.    None of the Plaintiffs ever sent such a request, pursuant to the FCRA or otherwise.

66.    However, it is clear from a plain review of the takedown requests sent by Plaintiffs (and Class members) that these were not requests for security freezes, but rather a Daniel's Law request not to disclose discrete bits of information: home addresses and phone numbers. The takedown requests did not mention the words "credit," "freeze," "security," or other terms that could be construed as a "direct request" to place a "security freeze."

67.    By placing a credit freeze on Plaintiffs accounts without a direct request, LexisNexis willfully violated the FCRA.

68.     Moreover, even if the nondisclosure requests were somehow deemed requests for a security freeze, LexisNexis willfully violated the FCRA by:

    a.  Failing to inform Plaintiffs within 5 business days of placing the security freeze of the imposition of a freeze under 1681c-1 of the FCRA, <u>see</u> 15 U.S.C.§ 1681c-1(i)(2)(B)(i);

    b.  Failing to inform Plaintiffs within 5 business days after placing the security freezes of their rights under section 1681m(d)(1)(D);

    c.  Failing to provide the summary of rights required under section 1681g;

    d.  Relying on the security freezes in circumstances covered by the exceptions contained in section 1681c-1(i)(4), including citing the security freeze to avoid its obligation to make a consumer report; for use of information in connection with the underwriting of insurance; for use of information in connection with background screening purposes; and for use of information for assessing, verifying, or authenticating Plaintiffs' identities for purposes other than granting of credit, or for investigating or preventing actual or potential fraud.

<u>Willful Violations</u>

69.     Section 1681n of the FRCA states that any person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer for: (1) any actual damages sustained by the consumer as a result of the failure or damages not less than $100 and not more than $1000; (2) such amount of punitive damages as the court may allow; and (3) the costs of any successful action to enforce liability under Section 1681n as well as reasonable attorney's fees as determined by the court.

<u>Negligent Violations</u>

70.    In the alternative, by its above-described wrongful actions, inaction and omissions, want of ordinary care, and the resulting failure to comply with the requirements of the Fair Credit Reporting Act, LexisNexis negligently violated the FCRA and is liable to Plaintiffs for actual damages sustained by Plaintiffs, as well as the costs of this action and reasonable attorney's fees.

71.    As a result of LexisNexis's negligent conduct (in addition or as an alternative to what was willful), Plaintiffs have suffered actual damages.

72.    Section 1681o of the FCRA provides that any person who negligently fails to comply with any requirement of the FCRA is liable to any consumer for any actual damages as well as the costs of an action under the FCRA and reasonable attorney's fees.

## **PRAYER**

**WHEREFORE**, Plaintiffs request that the Court certify a Class pursuant to Fed. R. Civ. P. 23(b)(3) or, in the alternative, 23(c)(4).

**FURTHER**, Plaintiffs request that Judgment for the certified Class be entered against Defendants as follows:

A.    Awarding actual damages;

B.    Awarding statutory damages, at minimum, of $100 to $1000 per violation;

C.    Awarding an additional amount in punitive damages, to be determined by the Court, for intentional and malicious conduct as allowed under the Fair Credit Reporting Act.

D.    Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E.    Awarding such other and further relief against Defendants as the Court deems equitable and just.

Respectfully Submitted,

Dated: February 6, 2025                    By: */s/ Rajiv D. Parikh*

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
1 Boland Dr., Suite 101
West Orange, New Jersey 07052
Telephone: (973) 557-5700
Email: rparikh@pemlawfirm.com
        keinhorn@pemlawfirm.com
        jmerejo@pemlawfirm.com

**BOIES SCHILLER FLEXNER LLP**
Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

Mark C. Mao (admitted *pro hac vice*)
Julia Bront (admitted *pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, California 94104
Telephone: (415) 293-6800
Email: mmao@bsfllp.com
        jbront@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE Second Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 357-8434
Email: jlee@bsfllp.com

Eric Palmer (admitted *pro hac vice*)
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 377-4250
Email: epalmer@bsfllp.com

**MORGAN & MORGAN, P.A.**
Ryan J. McGee (admitted *pro hac vice*)
John A. Yanchunis (admitted *pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602

28

Telephone: (813) 223-5505
Email: rmcgee@forthepeople.com
jyanchunis@forthepeople.com