## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JOHN DOE-1 and JANE DOE-2, individually and
on behalf of all others similarly situated,

        Plaintiffs,

        vs.

LEXISNEXIS RISK SOLUTIONS INC.,
RICHARD ROES 1-10, fictitious names of
unknown individuals and ABC COMPANIES 1-
10, fictitious names of unknown entities,

        Defendants.

Civil Action No.: 1:24-cv-04566

Honorable Harvey Bartle III, U.S.D.J.

---

**BRIEF IN OPPOSITION TO DEFENDANT LEXISNEXIS RISK SOLUTIONS INC.'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

---

*Attorneys for Plaintiffs*

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
One Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Emails: rparikh@pemlawfirm.com
      keinhorn@pemlawfirm.com
      jmerejo@pemlawfirm.com

**BOIES SCHILLER FLEXNER LLP**
Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

Mark C. Mao (admitted *pro hac vice*)
Julia Bront (admitted *pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, California 94104
Telephone: (415) 293-6800
Email: mmao@bsfllp.com
      jbront@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE Second Street, Suite
2800 Miami, Florida 33131
Telephone: (305) 357-8434
Email: jlee@bsfllp.com

Eric Palmer (admitted *pro hac vice*)
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 377-4250
Email: epalmer@bsfllp.com

**MORGAN & MORGAN, P.A.**
Ryan J. McGee (admitted *pro hac vice*)
John A. Yanchunis (admitted *pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Email: rmcgee@forthepeople.com
        jyanchunis@forthepeople.com

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 3

LEGAL STANDARD............................................................................................................. 5

ARGUMENT ...................................................................................................................... 5

    I.    Plaintiffs Have Standing to Assert Their FCRA Claims .................................................. 5

        A.  Plaintiffs Adequately Pleaded Economic Harms to Support Standing....................... 7

        B.  Plaintiffs Adequately Alleged Emotional Harms to Support Standing ...................... 8

        C.  Plaintiffs Adequately Alleged Informational Harms to Support Standing ............... 10

        D.  Plaintiffs Adequately Alleged Reputational Harms to Support Standing.................. 12

    II.   Plaintiffs Adequately State Claims for Violation of The FCRA. .................................... 13

        A.  Plaintiffs State a Claim Under 1681c-1(i)(2)(A) for the Illegally Imposed Security Freezes. ............................................................................................................... 14

        B.  Plaintiffs Properly Allege LexisNexis Failed to Issue Notices of the Imposition of the Security Freezes in Five Days as Required by 15 U.S.C. § 1681c-1(i)(2)(B)(i). ....... 22

        C.  Plaintiffs Properly Allege LexisNexis Violated Section 1681c-1 by Failing to Provide the Notice Described in Section 1681m(d)(1)(D)........................................................ 22

        D.  Plaintiffs Properly Allege LexisNexis Violated Section 1681g by Failing to Issue Summaries of Rights................................................................................................ 23

        E.  Plaintiffs Properly Allege LexisNexis Failed to Issue Consumer Reports During the Security Freezes for Uses that Met Exceptions under Section 1681c-1(i)(4)............. 24

CONCLUSION................................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Abdallah v. Lexisnexis Risk Sols. Fl*, No. 19-CV-3609 (RRM) (VMS),
  2021 U.S. Dist. LEXIS 62229 (E.D.N.Y. Mar. 30, 2021)......................................... 15

*Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
  2010 WL 1931135 (D.N.J. May 12, 2010)........................................................ 19

*Baptiste-Elmine v. Richland & Falkowski, PLLC*,
  2025 WL 974346 (E.D.N.Y. Apr. 1, 2025)......................................................... 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 5

*Clemens v. ExecuPharm Inc.*,
  48 F.4th 146 (3d Cir. 2022) ................................................................... 9, 10

*Cohen v. Equifax Info. Servs., LLC*,
  2019 U.S. Dist. LEXIS 66476 (S.D.N.Y. Apr. 17, 2019). ...................................... 15

*Collins v. Experian Credit Reporting Serv.*,
  2005 WL 2042071 (D. Conn. Aug. 24, 2005)..................................................... 23

*Cortez v. Trans Union, LLC*,
  617 F.3d 688 (3d Cir. 2010) ............................................................ 11, 16, 18

*Delaware Riverkeeper Network v. Soil Safe, Inc.*,
  2017 WL 2829603 (D.N.J. June 30, 2017)......................................................... 6

*Edeh v. Equifax Info. Servs., LLC*,
  919 F. Supp. 2d 1006 (D. Minn. 2013)........................................................... 21

*Fed. Election Comm'n v. Akins*,
  524 U.S. 11 (1998) ................................................................................ 10

*Fenico v. City of Philadelphia*,
  70 F.4th 151 (3d. Cir. 2023) ..................................................................... 5

*Figueroa v. Cap. One*,
  2024 WL 209058 (D.N.J. Jan. 19, 2024).......................................................... 12

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ...................................................................... 5

*Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
   848 F. Supp. 2d 532 (E.D. Pa. 2012) ................................................................. 13

*Greene v. DirecTV, Inc.*,
   2010 WL 1506730 (N.D. Ill. Apr. 14, 2010) ..................................................... 23

*Hosp. Council of W. Pennsylvania v. City of Pittsburgh*,
   949 F.2d 83 (3d Cir. 1991) .................................................................................... 8

*Huber v. Simon's Agency, Inc.*,
   84 F.4th 132 (3d Cir. 2023) ................................................................................... 9

*In re Tower Air, Inc.*,
   416 F.3d 229 (3d Cir. 2005) ................................................................................ 24

*Individual Reference Servs. Group, Inc. v. Federal Trade Comm'n*,
   145 F. Supp. 2d 6 (D.D.C. 2001) ........................................................................ 18

*Kelly v. RealPage Inc.*,
   47 F.4th 202 (3d Cir. 2022) ........................................................................... 10, 11

*Kelly v. RealPage, Inc.*,
   539 F. Supp. 3d 374 (E.D. Pa. 2021) ................................................................. 16

*Korman v. Walking Co.*,
   503 F. Supp. 2d 755 (E.D. Pa. 2007) ................................................................. 16

*Lezark v. I.C. Sys., Inc.*,
   2023 WL 4571457 (W.D. Pa. July 18, 2023) ............................................. Passim

*Long v. Se. Pa. Transp. Auth.*,
   903 F.3d 312 (3d Cir. 2018) ........................................................................... 11, 12

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .............................................................................................. 6

*Mathews v. Verizon Commc'ns Inc.*,
   2020 WL 5201407 (D.N.J. Sept. 1, 2020) ......................................................... 13

*Miller v. Dish Network, L.L.C.*,
   326 F. Supp. 3d 51 (E.D. Va. 2018) ................................................................... 10

*Oates v. Wells Fargo Bank, N.A.*,
   880 F. Supp. 2d 620 (E.D. Pa. 2012) ................................................................. 13

*Ortner v. Equifax Info. Servs., Inc.*,
  2022 WL 3566623 (D.N.J. Aug. 18, 2022) ........................................ 7, 13

*Reardon v. ClosetMaid Corp.*,
  2013 U.S. Dist. LEXIS 169821 (W.D. Pa. Dec. 2, 2013) .......................... 17

*Safeco Insurance Co. of America v. Burr*,
  551 U.S. 47 (2007) ...................................................................... 16

*Seamans v. Temple Univ.*,
  744 F.3d 853 (3d Cir. 2014) .......................................................... 13

*Smith v. Hireright Sols., Inc.*,
  711 F. Supp. 2d 426 (E.D. Pa. 2010) ............................................ 16, 18

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ...................................................................... 7

*Taksir v. Vanguard Grp.*,
  903 F.3d 95 (3d Cir. 2018) .............................................................. 5

*Thomas v. Indep. Twp.*,
  463 F.3d 285, 295 (3d Cir. 2006) ..................................................... 24

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................. 7, 8, 9, 12

*Walters v. Fast AC, LLC*,
  60 F.4th 642 (11th Cir. 2023) .......................................................... 7

## **Statutes**

15 U.S.C. § 1681 ......................................................................... 1, 6

15 U.S.C. §§ 1681(a)(3), (4) ........................................................... 12

15 U.S.C. § 1681b(b)(2)(A) ............................................................ 17

15 U.S.C. § 1681b(c)(2) ................................................................. 20

15 U.S.C. § 1681c-1 ................................................................ Passim

15 U.S.C. § 1681c-1(h)(1)(B) .......................................................... 23

15 U.S.C. §§ 1681c-1(i) and (j) ....................................................... 14

15 U.S.C. §§ 1681c-1(i)(2)(A)......................................................................... 14, 17

15 U.S.C. § 1681c-1(i)(2)(B)................................................................................ 23

15 U.S.C. § 1681c-1(i)(2)(B)(i)............................................................................ 22

15 U.S.C. § 1681c-1(i)(4)........................................................................ 12, 24, 25

15 U.S.C. §1681c-1(i)(4)(I)................................................................................... 24

15 U.S.C. § 1681c-1(i)(4)(H)................................................................................ 24

15 U.S.C. § 1681c-1(i)(4)(J)................................................................................. 24

15 U.S.C. § 1681c(d)........................................................................................... 18

15 U.S.C. § 1681g..........................................................................................Passim

15 U.S.C. § 1681g(a)(1)........................................................................................ 13

15 U.S.C. § 1681i.................................................................................................. 15

15 U.S.C. § 1681m.............................................................................................. 23

15 U.S.C. § 1681m(d)(1)(D).................................................................... 11, 22, 23

15 U.S.C. §§ 1681n and 1681o..................................................................... 13, 14

15 U.S.C. §§ 1681s-2(b) and 1681i(a)(2)............................................................ 13

N.J.S.A. 2C:20-31.1(b) ........................................................................................ 20

N.J.S.A. 56:11–28 ................................................................................................... 1

## Rules

Rule 12(b)(6)............................................................................................... 5, 16, 24

## PRELIMINARY STATEMENT

This Court is already familiar with Daniel's Law and the ongoing effort to obtain compliance with Daniel's Law to give Covered Persons the protections the State of New Jersey granted them more than four years ago. This case is about one defendant's attempts to punish and intimidate Covered Persons for exercising their rights under Daniel's Law. LexisNexis's attempt to play the victim in its Motion to Dismiss cannot be more divorced from reality. It is a global, multibillion-dollar information and analytics behemoth with more than 10,000 employees and sophisticated infrastructure that executes literally ***hundreds of millions*** of digital transactions per day. In a May 2024 press release, LexisNexis bragged about processing more than 92 billion identity-related transactions the previous year.[1] By its own math, the Daniel's Law requests LexisNexis received represent less than 17 seconds of this annual volume.

Here, in a clear demonstration of this economic and technological power over all the Covered Persons, LexisNexis embarked on an open campaign to punish the officers and their families for exercising their rights under Daniel's Law. And LexisNexis admits it—it says that in response to the Nondisclosure Requests, it willfully imposed security freezes. But no prosecutor, officer, or family member asked for a freeze or wanted such. Whether LexisNexis imposed the freeze pursuant to the New Jersey ITPA (the "NJITPA", at N.J.S.A. 56:11–28, *et seq.*), or the federal Fair Credit Reporting Act (the "FCRA", at 15 U.S.C. § 1681, *et seq.*), the law prohibits security freezes unless a consumer asks for one. As this Court already acknowledged at the last motion to dismiss hearing: "Plaintiffs have stated a claim that LexisNexis has violated the NJITPA by imposing credit freezes without their direction for such a result," and "[i]f LexisNexis did so,

---

[1] *LexisNexis Risk Solutions Cybercrime Report Reveals 19% Annual Increase in Global Human-Initiated Digital Attack Rate*, LEXISNEXIS RISK SOLUTIONS (May 22, 2024), https://risk.lexisnexis.com/about-us/press-room/press-release/20240522-cybercrime-report.

it acted contrary to the prescribed statutory procedure."  Order dating January 17, 2025 ("MTD Order"), ECF No. 67 at 11.

Because LexisNexis then claimed that it imposed the credit freezes pursuant to the FCRA, and not the NJITPA, Plaintiffs sued pursuant to the FCRA.  The FCRA, like its New Jersey counterpart, has in place numerous procedural safeguards for the consumers, with none of which LexisNexis complied.  The Court's reasoning on the NJITPA similarly applies to LexisNexis's failures with regard to the FCRA.

Worse, LexisNexis knew that imposing the security freezes would cause the very harms that befell the Plaintiffs here.  In its belated letters advising Plaintiffs about the freezes (notably, pursuant to the NJITPA according to the letters), LexisNexis warned that its unilateral, willful imposition of the freeze would prohibit the "approval of applications you make for items such as credit, benefits, or insurance" and "<u>YOU MAY BE DENIED CREDIT AS THE RESULT OF A FREEZE</u>."  Second Amended Complaint, ECF No. 68 ("SAC") ¶ 26.  These same letters fly in the face of LexisNexis's own arguments on Article III standing.

Of course, that LexisNexis would now seek the protections of the FCRA is preposterous. LexisNexis's letters about the security freezes say they were issued under the NJITPA—not the FCRA.  And LexisNexis for years has argued with the FTC and Congress that the information at issue is credit header information that is not subject to the FCRA.  Thus, not even LexisNexis thought the information at issue in Daniel's Law had anything to do with the FCRA.  It is obvious that LexisNexis's invocation of the FCRA is a post-hoc contortion devised to try to avoid liability at the last minute for its willful and illegal actions.  Regardless, Plaintiffs agree with the Court that if LexisNexis claims that it invoked the freezes because of the FCRA, then LexisNexis should be bound to comply with the law's prerequisites and safeguards.  LexisNexis simply did not do so.

## **BACKGROUND**

Plaintiffs are individuals who each sent LexisNexis a request to stop disclosing their addresses and unlisted phone numbers pursuant to Daniel's Law ("Nondisclosure Request"). SAC ¶ 24.

In retaliation for the requests, LexisNexis imposed a security freeze on each Plaintiff's credit. *Id.* ¶ 26. LexisNexis did so willfully, and it did so even though not a single Plaintiff requested that a freeze be placed on their file. *Id.* ¶¶ 2, 25–26.

LexisNexis did so even though it knew the harmful effects that a freeze would have on these individuals. *Id.* ¶ 26. In a letter informing Plaintiffs of the freeze ("Security Freeze Notification Letter"), LexisNexis explicitly acknowledged the fact that a security freeze would "delay, interfere with, or prohibit the timely approval of applications you make for items such as credit, benefits, or insurance underwriting," and that "YOU MAY BE DENIED CREDIT AS A RESULT OF A FREEZE PLACED ON YOUR CREDIT FILE." *Id.* ¶ 26. Indeed, it appears that LexisNexis imposed the freezes precisely because Covered Persons would suffer those consequences, as those consequences would likely deter others from exercising their rights under Daniel's Law. *Id.* ¶ 45. Notably, the letters specifically stated that they were being imposed under New Jersey law. They never stated that they were being imposed under the FCRA or that any action was being taken pursuant to the FCRA.

When Officer DOE-1 tried to remove the freeze from his account, LexisNexis refused. *Id.* ¶¶ 34–35. Officer DOE-1 tried calling the phone number LexisNexis provided in the Security Freeze Notification Letter, and he spoke with a LexisNexis representative that told him the freeze could not be removed from his account, even though he had provided all of the information that was requested. *Id.* ¶ 33. Officer DOE-1 persisted. He provided LexisNexis with additional

documentation to verify his identify, *id.* ¶ 34, and, using the same email address he used to submit his Daniel's Law request, he sent LexisNexis a written request that the freeze be lifted, *id.* ¶ 35. It was all to no avail: LexisNexis continued to refuse to remove the freeze, and Officer DOE-1 remained unable to access the kinds of credit opportunities he otherwise would have as a result. *Id.* ¶ 30.

Officer DOE-2 suffered a similar fate but with heightened consequences, as the stress of the experience exacerbated the symptoms of Officer Doe-2's multiple sclerosis. *Id.* ¶¶ 37–39, 42. After spending hours trying to help another Covered Person remove an unsolicited security freeze from their LexisNexis file, Officer DOE-2 decided she could not bear the additional stress and further harm to her health that would follow from repeating this process to get her own freeze removed. *Id.* ¶ 42. The freeze has been especially harmful to Officer DOE-2, as her multiple sclerosis requires unfettered access to expensive treatments that are necessary to treat her health condition, which require equally unfettered access to credit on an ongoing basis. *Id.* Because of LexisNexis, Officer DOE-2 no longer has that.

Prior to defending against this case, LexisNexis never said that the FCRA had anything to do with their security freezes. It was not until they moved to dismiss Plaintiffs' complaint that they asserted that they had complied with the NJITPA, and further, that the NJITPA was preempted by the FCRA. ECF No. 51. This Court ruled that Plaintiffs adequately stated a claim under the NJITPA, but that because that statute's freeze requirement were similar to the FCRA's freeze requirement, the state statute could be pre-empted (e.g., if LexisNexis froze the Covered Person's credit pursuant to the FCRA). (MTD Order, ECF No. 67.) Notwithstanding the factual record, LexisNexis continues to claim that all of its actions were done pursuant to the FCRA.

Thus, Plaintiff were required to assert their claims under the FCRA.  Plaintiffs filed their Second Amended Complaint ("SAC"), alleging the FCRA violations that LexisNexis invited, consistent with the Court's previous order.  ECF No. 68.

## LEGAL STANDARD

The Court must accept as true all well-pleaded facts in Plaintiffs' Second Amended Complaint, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), as well as "all reasonable inferences that can be drawn from them." *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018).  Under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Averments are sufficient when they give notice of the basis for each claim.  *Id.* at 212.  A motion to dismiss under Rule 12(b)(6) should fail unless the court finds that the "plaintiff's claims lack facial plausibility." *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d. Cir. 2023).

## ARGUMENT

### I.    Plaintiffs Have Standing to Assert Their FCRA Claims

Whether one looks at the Plaintiffs' allegations on the face of the SAC, or by LexisNexis's own admissions on its Security Freeze Notification Letters, Plaintiffs have more than met the requirements for demonstrating Article III standing.

Plaintiffs allege that LexisNexis violated Sections 1681c-1 and 1681g of the FCRA by imposing unrequested security freezes and failing to provide required information about those

freezes.[2]  Plaintiffs allege that they suffered economic, emotional, reputational, and informational harms, each sufficient for providing standing here.

To have Article III standing, there must be an "(1) an injury-in-fact; (2) that is fairly traceable to the defendant's challenged conduct; and (3) that is likely to be redressed by a favorable judicial decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992).  LexisNexis focuses on the injury in fact.

An injury-in-fact needs to be concrete and particularized, and actual or imminent.  *Id.* at 560.  An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Id.* at 560 n.1.  And an injury is "concrete" if it is "real, and not abstract." *Lezark v. I.C. Sys., Inc.*, No. 2:20-CV-00403-CCW, 2023 WL 4571457, at *9 (W.D. Pa. July 18, 2023) (citations omitted).

Notably, at the "pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" because on a motion to dismiss the court "presum[es] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (citations omitted).  Contrary to LexisNexis's contention, Plaintiffs do not have to elaborate the severity, significance, and extent of their injuries.  "Establishing an injury-in-fact is not the same as proving a claim," and the standing inquiry should not be conflated into the more exacting merits inquiries.  *Delaware Riverkeeper Network v. Soil Safe, Inc.*, No. CV 14-1349 (RMB/KMW), 2017 WL 2829603, at *18 (D.N.J. June 30, 2017) (citations omitted).  The Third Circuit "has consistently held that even the most seemingly insignificant injuries can support standing." *Lezark*, 2023 WL 4571457, at *9.  Indeed, "[a]ll that the Article III's injury-in-fact element requires is ***'an identifiable trifle' of harm***." *Id.* at *9 (emphasis added, citations omitted).

---

[2] All statutory sections referenced herein come from the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* unless otherwise indicated.

Both tangible and intangible injuries can provide standing. Thus "traditional tangible harms," such as monetary loss and physical injury, "readily qualify as concrete injuries under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). And intangible harms "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" also support standing. *Id.* "Thus, so long as the Congress has elevated a harm that resembles in kind a historically recognized harm—even one that may seem insignificant—it is not this Court's place to reject that policy decision made by a politically accountable branch." *Lezark*, 2023 WL 4571457, at *9 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

## A. Plaintiffs Adequately Pleaded Economic Harms to Support Standing

Plaintiffs have adequately pleaded tangible economic harms that "readily qualify as concrete injuries under Article III." *TransUnion*, 594 U.S. at 425. Plaintiffs allege that "[a]s a result of Defendants' actions, Plaintiffs have been unable to obtain or extend various important financial, insurance, and health services, including those that periodically require a credit report pull or updated financial history." SAC ¶ 30. Indeed, these allegations are consistent with LexisNexis's own "warnings" to the Covered Persons in the security freeze letters. SAC ¶ 26.

Plaintiffs also pleaded they spent hours struggling to remove these freezes so they could have access to their credit, again. *Id.* ¶¶ 33–36, 42. Inability to access one's credit or to obtain financial, insurance, and health services based on credit is an economic injury that is sufficient for standing. *See Ortner v. Equifax Info. Servs., Inc.*, No. CV212219MASTJB, 2022 WL 3566623, at *4 (D.N.J. Aug. 18, 2022) (allegation of a "loss of credit, loss of ability to purchase and benefit from credit, [and] a chilling effect on applications for future credit" particularized concrete injuries); *Walters v. Fast AC, LLC*, 60 F.4th 642, 648 (11th Cir. 2023) (lost time is a concrete injury for standing); *Baptiste-Elmine v. Richland & Falkowski, PLLC*, No. 21-CV-4994 (RPK)

7

(PK), 2025 WL 974346, at *6 (E.D.N.Y. Apr. 1, 2025) (same). No further detail or explanation is required. *See Hosp. Council of W. Pennsylvania v. City of Pittsburgh*, 949 F.2d 83, 88 (3d Cir. 1991).

LexisNexis's claim that Plaintiffs cannot assert a loss of credit because it is illegal to deny credit based on the existence of a security freeze is frivolous. Def's Motion to Dismiss, ECF No. 73 ("MTD") at 12. Again, LexisNexis's own letter to the Plaintiffs exclaims in capital letters that "YOU MAY BE DENIED CREDIT AS THE RESULT OF A FREEZE" and to expect no "approval of applications you make for items such as credit, benefits, or insurance." SAC ¶ 26. LexisNexis's arguments on lack of standing cannot be more disingenuous.

### B.    Plaintiffs Adequately Alleged Emotional Harms to Support Standing

Plaintiffs have also adequately alleged intangible emotional injuries to support standing. Intangible harms provide for standing if they bear a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 425. The analogue needs to be adequate, not "an exact duplicate." *Id.* at 424. Moreover, the alleged injury need only be "similar in kind to a historically recognized harm, it need not be similar in degree if Congress has made it legally cognizable." *Lezark*, 2023 WL 4571457, at *6.

Here, Plaintiffs have sufficiently alleged emotional harm. Officer DOE-2 alleged the security freeze "immediately caused Officer DOE-2 to fear for her financial stability and her ability to access credit in case of emergency." SAC ¶ 40. Officer DOE-2 also alleged this type of emotional distress can lead to physical harm due to her condition: "[m]ental and emotional stress increases Officer DOE-2's risk of relapses, flare-ups, and exacerbations of multiple sclerosis's most debilitating effects." *Id.* ¶ 42. Officer DOE-2 also described "the stress of" the process of helping another covered person attempt to remove the freeze and the prospect of having to do so

8

herself, in part due to the immensely difficult process LexisNexis has required for covered persons to do so. *Id.* ¶ 42.  Officer DOE-1 also described the struggles of trying to remove the freeze on his credit and of his son having to "navigate the maze of challenging - and in some cases, seemingly insurmountable" procedure LexisNexis has set to do so. *Id.* ¶ 36.

These fears and distress are similar in kind to the historically recognized tort of intentional infliction of emotional distress.  Courts in the Third Circuit have upheld standing based on similar allegations of emotional harm. *See e.g.*, *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155 (3d Cir. 2022) (holding allegations of emotional harm alleged a concrete injury); *Lezark*, 2023 WL 4571457, at *7 ("Mr. Lezark's allegation that ICS' collection letter made him feel 'overwhelmed' is analogous to the sort of 'emotional or psychological harm' actionable at common law" and "is a concrete injury for the purposes of analyzing Article III standing.")  (citing *Clemens*, 48 F.4th at 155–56).

Because Congress has made these injuries legally cognizable under Sections 1681c-1 and 1681g of the FCRA, and the directly resulting harm is analogous to a historically recognized tort, the emotional harm need not be similar in degree or severity to an actual claim for intentional infliction of emotional distress.  S*ee TransUnion*, 594 U.S. at 424–25; *Lezark*, 2023 WL 4571457, at *6.  Plaintiffs simply must allege an injury analogous to that tort, which Plaintiffs have done.

Emotional harm can constitute intangible harm for standing.  *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 148 (3d Cir. 2023).  LexisNexis's argument at MTD at 14 that "any such stress is legally irrelevant here because 'emotional and psychological harm or anxiety do not constitute injury-in-fact sufficient to confer standing'" is wrong and contrary to the law in this Circuit and elsewhere. *See Clemens*, 48 F.4th at 155–56 (holding plaintiff has alleged a concrete injury based on experience of emotional distress); *Lezark*, 2023 WL 4571457, at *7 (finding concrete injury

based on plaintiff's feeling overwhelmed; *Miller v. Dish Network, L.L.C.*, 326 F. Supp. 3d 51, 61 (E.D. Va. 2018) (collecting cases across jurisdictions).

Plaintiffs have also adequately alleged that their exposure to the risk of future harm itself caused them imminent emotional harm sufficient to support standing. A "plaintiff's knowledge that he or she is exposed to a risk of future . . . harm could cause its own current emotional or psychological harm,' which could be sufficiently analogous to the tort of intentional infliction of emotional distress." *Clemens*, 48 F.4th at 155-156 (citations omitted). Here, Plaintiffs plead they are experiencing and will imminently experience distress due to the knowledge that they risk not being able to access their credit in emergencies, SAC ¶ 40, or to obtain critical services such as insurance underwriting, *id.* ¶ 30. That satisfies concreteness. *Clemens*, 48 F.4th at 156.

### C.    Plaintiffs Adequately Alleged Informational Harms to Support Standing

Plaintiffs have also adequately alleged an informational injury to support standing. A plaintiff establishes standing for an informational injury by alleging "(1) the omission of information to which they claim entitlement, (2) 'adverse effects' that flow from the omission, and (3) the requisite nexus to the 'concrete interest' Congress intended to protect." *Kelly v. RealPage Inc.*, 47 F.4th 202, 214 (3d Cir. 2022). There is no "historical analogue requirement into the standing analysis for informational injury claims." *Kelly*, 47 F.4th at 212 n. 8. An "informational injury is sufficiently concrete where the failure to disclose is 'directly related to' to the purpose of the statute." *Kelly*, 47 F.4th at 212 (quoting *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24–25 (1998)).

Here, Plaintiffs allege LexisNexis failed to issue notices required by Sections 1681c-1 and 1681g within the statutory period, if at all. SAC ¶ 68. Section 1681c-1(i)(2)(B) requires credit reporting agencies ("CRAs") to send each consumer a confirmation of the placement of a security

freeze, information regarding the process by which the consumer may remove the security freeze, and the consumer's rights under Section 1681m(d)(1)(D) within five business days after placing a security freeze.  Plaintiffs allege they did not receive these notices within five days of having sent their Nondisclosure Notices; notices which LexisNexis argues were requests for security freezes. SAC ¶ 62; MTD at 19 ("LexisNexis reasonably interpreted Plaintiffs' Daniel's Law requests as encompassing a demand to freeze their credit files").  Section 1681g requires CRAs to issue disclosures regarding the information in consumers' LexisNexis files and the additional notice required by Section 1681c-1(i)(5) upon a consumer's request.  According to LexisNexis's interpretation of the notices, Plaintiffs made requests under Section 1681g, but LexisNexis did not issue the requisite disclosures.  *See Kelly*, 47 F.4th at 212 n. 8.

Second, Plaintiffs allege they experienced adverse effects as a result of these omissions: "As a result of Defendants' actions, Plaintiffs have been unable to obtain or extend various important financial, insurance, and health services, including those that periodically require a credit report pull or updated financial history."  SAC ¶ 30.  This has been especially harmful to Officer DOE-2, who "requires unfettered access to sophisticated and expensive treatments to moderate her medical condition on a daily basis [and to] maintain unfettered access to these treatments, Officer DOE-2 requires equally unfettered access to credit on an ongoing basis."  *Id.* ¶ 41.  These adverse effects have been recognized by other courts within this circuit as sufficient for informational injury standing.  *See Kelly*, 47 F.4th at 214.

Third, this injury has a requisite nexus to one of the concrete interests Congress intended to protect in enacting the FCRA.  The FCRA is intended to achieve "consumer oriented objectives."  *See Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 318–19 (3d Cir. 2018) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)).  "Congress found that '[c]onsumer

11

reporting agencies have assumed a vital role in assembling and evaluating . . . information on consumers.' Therefore, '[t]here is a need to ensure that [they] exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.'" *Long*, 903 F.3d at 318 (quoting 15 U.S.C. §§ 1681(a)(3), (4)). LexisNexis's failure to timely issue Plaintiffs notices informing them of the freezes and information in their LexisNexis files is neither fair nor impartial, as it kept crucial information from Plaintiffs.

### D.    Plaintiffs Adequately Alleged Reputational Harms to Support Standing

Plaintiffs have also adequately alleged they suffered reputational harm—one of the harms explicitly identified by the Supreme Court in *TransUnion* as an intangible harm sufficient to support standing.  594 U.S. at 425.  Plaintiffs allege that "[a]s a result of Defendants' actions, Plaintiffs have been unable to obtain or extend various important financial, insurance, and health services, including those that periodically require a credit report pull or updated financial history." SAC ¶ 30.  As alleged in the SAC, when Plaintiffs called LexisNexis and asked what was going on with their credit, LexisNexis told them about the freezes.  *Id.* ¶ 33.  Each time a third-party sought to access information about Plaintiffs' credit, LexisNexis communicated a message about Plaintiffs' creditworthiness—namely, that this creditworthiness was too risky to provide.  This occurred even though many Plaintiffs attempted to access their credit for purposes exempted from security freezes by the FCRA.  *See* SAC ¶ 30; 15 U.S.C. § 1681c-1(i)(4).  The moment that LexisNexis communicated something negative about Plaintiffs' creditworthiness, it inflicted a harm akin to the harms that were justiciable through suit in common law courts. *See Figueroa v.*

*Cap. One*, 2024 WL 209058, at *3 (D.N.J. Jan. 19, 2024) (citation omitted); *Ortner*, 2022 WL 3566623 at *3.[3]

## II. PLAINTIFFS ADEQUATELY STATE CLAIMS FOR VIOLATION OF THE FCRA.

To state a claim for a violation of the FCRA, a plaintiff must identify the statutory requirement that the defendant violated and allege that the defendant acted negligently or willfully. *See Mathews v. Verizon Commc'ns Inc.*, No. CV 19-21442, 2020 WL 5201407, at *5 (D.N.J. Sept. 1, 2020); *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 544–46 (E.D. Pa. 2012) (holding plaintiffs stated a claim for willful violation of Section 1681g(a)(1) because Section "1681g(a)(1) states that every CRA shall, upon request . . . clearly and accurately disclose to the consumer all information in the consumer's file," and plaintiffs alleged defendant "refused to turn over [] admission statements [from the file] upon plaintiffs' request."); *Oates v. Wells Fargo Bank, N.A.*, 880 F. Supp. 2d 620, 625 (E.D. Pa. 2012) (denying motion to dismiss claim under Sections 1681s–2(b) and 1681i(a)(2), which provide that a furnisher of information to CRAs is "liable for failing to conduct a reasonable investigation after a consumer alerts the credit reporting agency of disputed information and the agency informs the furnisher of the dispute," where plaintiff alleged he filed a dispute with defendant and CRAs, the CRAs notified defendant that plaintiff disputed the accuracy of the report, and defendant failed to reasonably investigate the dispute); *Seamans v. Temple Univ.*, 744 F.3d 853, 859–60 (3d Cir. 2014) ("15 U.S.C. §§ 1681n

---

[3] Were the Court to dismiss the SAC for lack of standing, Plaintiffs respectfully request that any such dismissal be without prejudice to replead. LexisNexis did not raise standing in its first motion to dismiss and did not tell Plaintiffs that it was going to raise that supposed pleading deficiency here, despite Plaintiffs' repeated requests for LexisNexis to tell them the basis of the impending motion to dismiss.

and 1681o[] permit private suits for damages against parties who willfully or negligently fail to comply with certain duties to consumers under FCRA.").

**A. Plaintiffs State a Claim Under 1681c-1(i)(2)(A) for the Illegally Imposed Security Freezes.**

As this Court found in its prior Order, Subsections 1681c-1(i) and (j) "detail the process by which a consumer reporting agency [like LexisNexis] shall place a security freeze on a consumer's credit file after a request by a protected consumer or his or her representative. It must do so *only upon the consumer's 'direct request.'*" MTD Order, ECF No. 67 at 16 (emphasis added).

Here, Plaintiffs allege that they never gave a direct request for a security freeze and that LexisNexis's imposition of the freeze without that direct request violated Section 1681c-1(i)(2)(A). Those allegations adequately state a claim. Indeed, the Court effectively stated as much in its prior Order, where the Court ruled that Plaintiffs stated a claim under NJITPA—the New Jersey state equivalent of the FCRA:

> The court construes the NJITPA as allowing a consumer reporting agency to implement a freeze only when the consumer makes the request. The statute provides for only one procedure to obtain a security freeze of a consumer credit report. It necessitates a request by the consumer among other steps. . . . *Here it is alleged that LexisNexis implemented a freeze even though plaintiffs did not request one. If LexisNexis did so, it acted contrary to the prescribed statutory procedure.* . . . *Plaintiffs have stated a claim that LexisNexis has violated the NJITPA by imposing credit freezes without their direction for such a result.*

MTD Order, ECF No. 67 at 10–11 (emphasis added).

LexisNexis argued before (Def's Supp. Br., ECF No. 64 at 1–2), and the Court agreed (MTD Order, ECF No. 67 at 10–11), that the freeze requirements of NJITPA were the same as the freeze requirements under the FCRA. Because the requirements are the same and because the Court

14

already ruled that Plaintiffs stated a claim based on LexisNexis's imposition of the freezes without a direct request, Plaintiffs adequately state a claim here.

LexisNexis's citation to *Cohen v. Equifax Info. Servs., LLC*, No. 1:18-CV-6210, 2019 U.S. Dist. LEXIS 66476, at *9 (S.D.N.Y. Apr. 17, 2019) (report and recommendation adopted in full in 2019 U.S. Dist. LEXIS 84587), does not help them because *Cohen* actually ***permitted*** the plaintiff there to amend the complaint to add a claim for willful violation of the FCRA based on Equifax's imposition of litigation lock procedure, a procedure that is similar to a security freeze. While ruling that there was no independent claim for retaliation under the FCRA, the *Cohen* Court explained that "Section 1681i [w]as sufficiently broad to include Plaintiff's allegations concerning a 'litigation lock.'" 2019 U.S. Dist. LEXIS 66476, at *9. Plaintiffs here are not bringing a separate claim for retaliation—that is the motive and evidence of willfulness – they are bringing a claim based on LexisNexis's failure to comply with Sections 1681c-1 and 1681g. While Plaintiffs certainly do not disagree with LexisNexis that its motives were retaliatory, what *Cohen* actually illustrates is that Section 1681c-1 and 1681g claims are viable, where a defendant fails to comply with the prescribed procedures it evokes pursuant to the FCRA.

LexisNexis's reliance on *Abdallah v. Lexisnexis Risk Sols. Fl*, No. 19-CV-3609 (RRM) (VMS), 2021 U.S. Dist. LEXIS 62229, at *29 (E.D.N.Y. Mar. 30, 2021) is also inapposite. That court merely held that the FCRA provision that plaintiff sued under (different than the provisions at issue here) did not apply to security freezes: "Abdallah complained via telephone about the erroneous credit freeze on his account, but this is not covered by Section 1681i." *Id.* This case says nothing about a properly pled claim under Section 1681c-1(i).

Plaintiffs also properly allege LexisNexis violated the FCRA. Willful violations of the FCRA include not only knowing violations, but also reckless ones. *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007). A "credit reporting agency may act in reckless disregard of a statute's requirements by adopting an objectively unreasonable interpretation of the law." *Cortez*, 617 F.3d at 721. Whether a defendant acted recklessly should not be decided on a motion to dismiss. *See, e.g.*, *Smith v. Hireright Sols., Inc.*, 711 F. Supp. 2d 426, 435 (E.D. Pa. 2010) ("[In *Safeco*], the Supreme Court was operating under a summary judgment standard of review. . . . In this matter, however, the Court is guided by the Rule 12(b)(6) standard of review, meaning that Defendant bears the burden of proving, not simply that its interpretation was plausible, but that Plaintiff could not prevail under any reasonable alternative reading of the Complaint."); *Korman v. Walking Co.*, 503 F. Supp. 2d 755, 761 (E.D. Pa. 2007) ("Defendant's imploration of the Court to determine whether Defendant's interpretation was 'reasonable' is inappropriate here: at the motion to dismiss stage, the Court's only role is to determine whether the complaint is sufficient."). Here, Plaintiffs' pleadings and the statutory language sufficiently allege that LexisNexis's interpretation of the statute is unreasonable.

LexisNexis also misstates the standard for determining willful violations of the FCRA. In the Third Circuit, there is a three-factor test used to determine whether a defendant has reasonably interpreted the law under *Safeco* as to avoid FCRA liability: "(1) the clarity of the statutory text as it relates to offending conduct, where 'less-than-pellucid' text favors the finding that the company acted reasonably; (2) whether the company's proposed interpretation has 'a foundation in the statutory text;' and (3) whether the company had the benefit of judicial and/or agency guidance." *Kelly v. RealPage, Inc.*, 539 F. Supp. 3d 374, 378 (E.D. Pa. 2021).

The SAC and the plain language of Section 1681c-1 show LexisNexis's unauthorized imposition of security freezes were objectively unreasonable. Section 1681c-1 provides that "[u]pon receiving a direct request from a consumer that a consumer reporting agency place a security freeze, and upon receiving proper identification from the consumer, the consumer reporting agency shall, free of charge, place the security freeze." 15 U.S.C. § 1681c-1(i)(2)(A).

First, this language is plain and clearly ascertainable. It unambiguously requires "a direct request from a consumer" asking for a freeze before one can be imposed. *Id.* On the prior motion, the Court had no problem determining the clear meaning of the statute. MTD Order, ECF No. 67 at 16 ("Subsections 1681c-1(i) and (j) detail the process by which a consumer reporting agency shall place a security freeze on a consumer's credit file after a request by a protected consumer or his or her representative. It must do so *only* upon the consumer's 'direct request.'").

Second, LexisNexis's interpretation of the statute as permitting CRAs to unilaterally impose security freezes without request from consumers has no "foundation in the statutory text." The text creates a clear requirement: a direct request for a security freeze from a consumer. 15 U.S.C. § 1681c-1(i)(2)(A). LexisNexis placed freezes without complying with this requirement. LexisNexis's actions cannot be based in the statutory text when they evoke the FCRA out of thin air, in contravention of their own credit freeze letters, and then directly contravene these same procedures it evoked. *See* MTD Order, ECF No. 67 at 10 ("The one specific procedure outlined in the [FCRA] to obtain a freeze necessarily eliminates all other means for obtaining or implementing a freeze."); *see also Reardon v. ClosetMaid Corp.*, No. 2:08-cv-01730, 2013 U.S. Dist. LEXIS 169821, at *30–31 (W.D. Pa. Dec. 2, 2013) ("the language of section 1681b(b)(2)(A) is plain and clearly ascertainable" because the statute listed several required elements which were "unambiguous and not susceptible of differing interpretations").

17

Third, contrary to LexisNexis's argument, the lack of judicial guidance is not much weight in determining reasonableness. *Cortez*, 617 F.3d at 709 ("Cortez correctly notes that the lack of definitive authority does not, as a matter of law, immunize Trans Union from potential liability."). In any event, the scarcity of case law on the issue of unauthorized imposition of security freezes only demonstrates that no other credit reporting agency has exhibited such brazen and exploitative behavior. "[W]here statutory language is clear, mere absence of appellate or regulatory authority does not justify an objectively unreasonable interpretation of statute." *Smith v. Hireright Sols., Inc.*, 711 F. Supp. 2d 426, 436 (E.D. Pa. 2010); *see also id.* (no dismissal under 12(b)(6) "where defendant's reading of the statute had no basis in the statutory text, where the statute was clear, and where defendant's reading had not garnered the support of even one court"). Here, LexisNexis failed to identify even one case supporting their interpretation of the statute.

Since none of the factors weigh in favor of a reasonable interpretation, Plaintiffs have sufficiently pled LexisNexis willfully and negligently failed to comply with Section 1681c-1.

LexisNexis nonetheless argues that its actions were reasonable because "New Jersey's Daniel's Law, unlike other privacy laws, does not contain a carve-out for information regulated by the FCRA." MTD at 19–20. Setting aside how this argument has no bearing on whether LexisNexis actually followed FCRA prescribed procedures, this argument fails for several other reasons. Initially, the information under Daniel's Law (addresses and unlisted home phone numbers) that LexisNexis says it was dealing with is credit header information that is not regulated by the FCRA. Thus, there is no need for a carve-out for FCRA regulated information. The statute governing credit reports specifically does not include a credit header in the information required to be disclosed in a consumer report. *See e.g.*, 15 U.S.C. § 1681c(d). Definitive FTC guidance also says credit header data is not regulated by the FCRA. *Individual Reference Servs. Group, Inc.*

*v. Federal Trade Comm'n*, 145 F. Supp. 2d 6, 17 (D.D.C. 2001), *aff'd sub nom. Trans Union LLC v. FTC*, 295 F.3d 42 (D.C. Cir. 2002) ("In 2000, the FTC stated that the 'credit header' data at issue in this litigation—the name, address, social security number, and phone number of the consumer—was not subject to the FCRA because it 'does not bear on creditworthiness, credit capacity, credit standing, character, general reputation, personal characteristics, or mode of living, unless such terms are given an impermissibly broad meaning.'").

And LexisNexis itself argued to this very Court that such information is not regulated by the FCRA. *Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. CIV.08-4708 (RMB/KW), 2010 WL 1931135, at *11 (D.N.J. May 12, 2010) ("Lexis also notes in its brief that information obtained from consumer reporting agencies constituting 'credit header' information is not regulated by the FCRA."). A close look at LexisNexis's new-found arguments and sources reveals that they do not support LexisNexis's argument. Both sources list addresses and phone numbers as the "kind of information [that] appears on a credit report," ***not information that is required to be in one***.[4]

Next, LexisNexis misinterprets Section 1681b(c)(2). This provision sets the ceiling, not the floor, for information that may be included in consumer reports. It regulates the "[l]imits on information received under paragraph (1)(B)," stating "[a] person *may* receive pursuant to paragraph (1)(B) only. . . " and then proceeds to list the only information that a person *may* receive.

---

[4] *What Is a Credit Report?*, Consumer Fin. Prot. Bureau, https://www.consumerfinance.gov/ask-cfpb/what-is-a-credit-report-en-309/ (Jan. 29, 2024); Credit Reports and Credit Scores, Bd. of Governors of the Fed. Rsrv. Sys., https://www.federalreserve.gov/creditreports/pdf/credit_reports_scores_2.pdf (last visited Feb. 26, 2025); *see* MTD at 3–4.

15 U.S.C. § 1681b(c)(2) (emphasis added).  Therefore, this information is not required in any consumer report.

LexisNexis is simply not required to include addresses and unlisted home phone numbers in its consumer reports.  LexisNexis can easily issue credit reports without the optional header information, or it can easily redact that information from the reports.  LexisNexis has made this argument numerous times before Congress and the FTC, it has never denied this inconsistency, and LexisNexis cannot have it both ways.

Finally, LexisNexis creates a red herring when they claim that the Daniel's Law Nondisclosure Requests sought to prohibit the disclosure of names and justified the imposition of the security freezes.  Plaintiffs *have never sought to have their names* redacted from credit reports. Plaintiffs' Nondisclosure Requests very clearly asked for "***protected information***" to be taken down.  SAC ¶ 24.  Protected information under Daniel's Law only means addresses and unpublished home phone numbers, not names.  *See* N.J.S.A. 2C:20-31.1(b).  LexisNexis knows this about Daniel's law.  And LexisNexis knew that the Nondisclosure Requests referred only to addresses and phone numbers as protected information, and not names, because the Nondisclosure Requests specifically stated that the requests were being made pursuant to Daniel's Law and provided the citation to Daniel's Law and its requirements.  *See* SAC ¶ 24.  LexisNexis should not be allowed to immunize its behavior as a matter of law based on its tortured and contrived interpretation of the Nondisclosure Requests.

LexisNexis's conduct in imposing the freezes was unreasonable under the FCRA and clearly willful.  Plaintiffs' Nondisclosure Requests did not mention freezes, identity theft, or fraud, nor did they cite any statutes related to freezes, identity theft, or fraud.  *See* SAC ¶ 24.  And it is clear that LexisNexis's argument that it was under the FCRA is a post-hoc contrivance to try to

20

escape liability. LexisNexis's Security Freeze Notification Letters do not even mention the FCRA; they explicitly say they were issued under the New Jersey statute. *Id.* ¶ 26. It was not until the arguments on the motion to dismiss that LexisNexis concocted its claim that it acted under the FCRA.

LexisNexis's fanciful argument that security freezes are inherently good and could not possibly be harmful is nonsensical. Plaintiffs have pleaded about the harms and stress they have experienced due to these freezes. Further, LexisNexis's Security Freeze Notification Letters explicitly warned Plaintiffs in all capital letters of the issues the freezes may cause, including denial of credit for crucial services. SAC ¶ 40.

Finally, LexisNexis's reliance on *Edeh v. Equifax Info. Servs., LLC*, 919 F. Supp. 2d 1006, 1016 (D. Minn. 2013) is not helpful here. That case does not hold that a refusal to provide credit reports is generally acceptable. Rather, the court found no evidence an offline policy "which prevent[ed] the release of disputed information to third parties" was "improper or that the policy was applied improperly in this particular situation." *Id.* Importantly, unlike Plaintiffs here, the plaintiff in "Edeh *requested* that a 'credit freeze' (or 'security freeze') be placed on his Equifax consumer credit file." *Id.* at 1009 (emphasis added). He later requested that Equifax remove the freeze, which Equifax failed to do. *Id.* at 1013. The Court ended up dismissing the plaintiff's claim regarding inaccurate credit reports, ruling that because the plaintiff had initially elected to place the freeze, "the notice of a credit freeze within Edeh's file was technically accurate, although perhaps the presence of the freeze was no longer desired." *Id.* at 1013. Those facts are far different from the facts here.

21

**B. Plaintiffs Properly Allege LexisNexis Failed to Issue Notices of the Imposition of the Security Freezes in Five Days as Required by 15 U.S.C. § 1681c-1(i)(2)(B)(i).**

The SAC alleges "LexisNexis has not provided appropriate notice under the FCRA (if that is indeed the statute under which they acted) because more than five (5) days have passed since the imposition of those credit freezes." SAC ¶ 62 (citing 15 U.S.C. § 1681c-1(i)(2)(B)(i)). This allegation is sufficient.

The allegation that more than five days had passed since the imposition of the security freezes without confirmation thereof is sufficient on its own to put LexisNexis on notice of the particular claim and its detail. It is a simple, independent fact, that properly states how LexisNexis violated Section 1681c-1(i)(2)(B)(i). The date on which Plaintiffs did receive the notices, if they did at all, is not relevant so long as it is beyond the five-day period, which Plaintiffs allege it was. SAC ¶ 68(b). Of course, because these letters are in LexisNexis's records, LexisNexis knows if and when the letters were sent. In addition, Plaintiffs provided LexisNexis with the unredacted letters when LexisNexis requested them, so LexisNexis knows the dates. If there is a discovery issue to be had here, that is one to be tested in discovery, not on the pleadings.

**C. Plaintiffs Properly Allege LexisNexis Violated Section 1681c-1 by Failing to Provide the Notice Described in Section 1681m(d)(1)(D).**

LexisNexis also failed to timely inform Plaintiffs of their rights to prohibit information contained in their files with LexisNexis from being used for any credit or insurance transaction the consumer did not initiate. SAC ¶ 68. In fact, LexisNexis never issued these notices. In failing to do so while claiming it imposed the freezes pursuant to the FCRA, LexisNexis violated Section 1681c-1.

Section 1681c-1 provides that "[n]ot later than 5 business days after placing a security freeze under subparagraph (A), a consumer reporting agency shall. . . inform the consumer of. . .

the consumer's right described in section 1681m(d)(1)(D) of this title." 15 U.S.C. § 1681c-1(i)(2)(B). Section 1681m(d)(1)(D) in turn describes the consumers' rights that are required to be provided.

LexisNexis's argument that Section 1681m does not provide for a private right of action for civil liability is irrelevant. *See* MTD at 21–22. The notice requirement was triggered by LexisNexis's imposition of a security freeze, and security freezes are only regulated by Section 1681c-1.

The separate civil liability comes from Section 1681c-1, and unlike Section 1681m, Section 1681c-1 does not contain any language prohibiting a private right of action. LexisNexis does not challenge Plaintiffs' ability to bring suit under Section 1681c-1 and other district courts have upheld claims brought under Section 1681c-1. *E.g.*, *Greene v. DirecTV, Inc.*, No. 10 C 117, 2010 WL 1506730, at *3 (N.D. Ill. Apr. 14, 2010) (denying motion to dismiss as to claim under 15 U.S.C. § 1681c-1(h)(1)(B)); *Collins v. Experian Credit Reporting Serv.*, No. 3:04CV1905(MRK), 2005 WL 2042071, at *2 (D. Conn. Aug. 24, 2005) (denying motion to dismiss as to claim under 15 U.S.C. § 1681c-1 regarding fraud alerts). Plaintiffs' allegations of a violation of Section 1681c-1 for failure to issue the notice described in Section 1681m are sufficient.

### D. Plaintiffs Properly Allege LexisNexis Violated Section 1681g by Failing to Issue Summaries of Rights.

Section 1681g clearly requires LexisNexis to provide a summary of rights upon request from a consumer, if LexisNexis was following the FCRA. Here, Plaintiffs made certain requests to LexisNexis, and LexisNexis failed to provide the summaries of rights required. SAC ¶ 68.

### E. Plaintiffs Properly Allege LexisNexis Failed to Issue Consumer Reports During the Security Freezes for Uses that Met Exceptions under Section 1681c-1(i)(4).

Plaintiffs alleged they were unable to access or obtain services and contracts that required access to their credit reports as a result of the unauthorized freezes.  SAC ¶ 30.  Plaintiffs also alleged that at least some of these services or contracts fell under the exceptions laid out in Section 1681c-1(i)(4), and that as a result, LexisNexis violated this provision.

In the FCRA claim, Plaintiffs list out each specific exception with which they allege LexisNexis failed to comply: § 1681c-1(i)(4)(H) ("for use of information in connection with the underwriting of insurance"); §1681c-1(i)(4)(I) ("for use of information in connection with background screening purposes"); and § 1681c-1(i)(4)(J) ("for use of information for assessing, verifying, or authenticating Plaintiffs' identities for purposes other than granting of credit, or for investigating or preventing actual or potential fraud").  SAC ¶ 68.

The allegations throughout the SAC show that Plaintiffs attempted to take actions that required access to their consumer reports and fell under these exceptions.  First, the SAC alleges that the exempted circumstances apply broadly to Plaintiffs: "[a]s a result of Defendants' actions, Plaintiffs have been unable to obtain or extend various important financial, insurance, and health services, including those that periodically require a credit report pull or updated financial history." *Id.* ¶ 30.  In addition to explicitly mentioning insurance, all three of these services often require background screening and verification or authentication of identity.  This is sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Thomas v. Indep. Twp.*, 463 F.3d 285, 295 (3d Cir. 2006) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 237 (3d Cir. 2005) ("[A] plaintiff will not be thrown out of court on a Rule 12(b)(6) motion for lack of detailed facts.").

24

Second, the SAC provides examples of some of the specific types of exempted uses Officer DOE-2 had for her consumer report: "[d]ue to her multiple sclerosis, Officer DOE-2 requires unfettered access to sophisticated and expensive treatments to moderate her medical condition on a daily basis.  To maintain unfettered access to these treatments, Officer DOE-2 requires equally unfettered access to credit on an ongoing basis."  SAC ¶ 41.  Accordingly, Plaintiffs have sufficiently pleaded violations of Section 1681c-1(i)(4).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny LexisNexis's Motion to Dismiss in its entirety.

Respectfully submitted,

Dated: 4/7/2025

By:  /s/ *Rajiv D. Parikh*
RAJIV D. PARIKH

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
1 Boland Dr., Suite 101
West Orange, New Jersey 07052
Telephone: (973) 557-5700
Email: rparikh@pemlawfirm.com
           keinhorn@pemlawfirm.com
           jmerejo@pemlawfirm.com

**BOIES SCHILLER FLEXNER LLP**
Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

Mark C. Mao (admitted *pro hac vice*)
Julia Bront (admitted *pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, California 94104

Telephone: (415) 293-6800
Email: mmao@bsfllp.com
        jbront@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE Second Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 357-8434
Email: jlee@bsfllp.com

Eric Palmer (admitted *pro hac vice*)
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 377-4250
Email: epalmer@bsfllp.com

**MORGAN & MORGAN, P.A.**
Ryan J. McGee (admitted *pro hac vice*)
John A. Yanchunis (admitted *pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
 Email: rmcgee@forthepeople.com
        jyanchunis@forthepeople.com

*Attorneys for Plaintiffs*