**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

JOHN DOE-1 and JANE DOE-2,          CIVIL ACTION NUMBER:
Individually and on behalf
of all others similarly             24-cv-04566-HB
situated,
                                    ORAL ARGUMENT
    Plaintiffs,                     MOTION TO DISMISS

    v.

LEXISNEXIS RISK SOLUTIONS,
INC., RICHARD ROES 1-10,
fictitious names of unknown
individuals and ABC
COMPANIES 1-10, fictitious
names of unknown entities,

    Defendants.

        Mitchell H. Cohen Building & U.S. Courthouse
        4th & Cooper Streets
        Camden, New Jersey  08101
        April 24, 2025
        Commencing at 9:56 a.m.


B E F O R E:            THE HONORABLE HARVEY BARTLE, III,
                        UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

        BOIES SCHILLER FLEXNER LLP
        BY:  ADAM R. SHAW, ESQUIRE
             JESSICA MEREJO, ESQUIRE
        30 South Pearl Street, 12th Floor
        Albany, New York 12207
        For the Plaintiffs

             Sharon Ricci, Official Court Reporter
                sharon.ricci.usdcnj@gmail.com
                     267-249-8780

    Proceedings recorded by mechanical stenography; transcript
         produced by computer-aided transcription.

**APPEARANCES:**   (Continued)


        LOWENSTEIN SANDLER LLP
        BY:  A. MATTHEW BOXER, ESQUIRE
             GAVIN J. ROONEY, ESQUIRE
        65 Livingston Avenue
        Roseland, New Jersey 07068
        For the Defendants




**ALSO PRESENT:**

Larry MacStravic, Courtroom Deputy

Margaret Hart, Judicial Law Clerk

1              (Proceedings held in open court before The Honorable

2    Harvey Bartle, III, United States District Judge, at 9:56 a.m.)

3              THE COURTROOM DEPUTY:  All rise.

4              THE COURT:  Good morning.  You may be seated.

5              The Court has before it this morning oral argument of

6    the motion to dismiss the plaintiffs' second amended complaint

7    under Rule 12(b)(1) and Rule 12(b)(6) in the case of John

8    Doe-1, et al. vs. LexisNexis, Civil Action No. 24-4566.

9              First hear from counsel for the defendants.

10             MR. BOXER:  Your Honor, Matthew Boxer from the law

11   firm of Lowenstein Sandler for the defendant LexisNexis Risk

12   Solutions.

13             May I take the podium?

14             THE COURT:  You may.

15             MR. BOXER:  May I please the Court, most fundamentally

16   here, Your Honor, the two named plaintiffs have not pled a

17   cognizable injury, and as a result, they lack standing.  There

18   are two recent U.S. Supreme Court opinions that speak to

19   standing requirements specifically in claims brought under the

20   Fair Credit Reporting Act, as in this case.

21             One is the *Spokeo* decision from 2016, which makes

22   clear that "concrete and particularized injury must be pled."

23   And the Court further noted that at the pleading stage the

24   plaintiff "must clearly allege facts demonstrating the elements

25   of standing."  The Court also noted that "bare procedural

1 violations are not enough," and as a result the Court reversed

2 the court of appeals ruling that had permitted the case to go

3 forward that involved false statements in a credit file that

4 had not been disseminated to anyone.

5          Five years later, Your Honor, in the *TransUnion vs.*

6 *Ramirez* case, the Court reiterated that background law and

7 said, among other things, in plain language, "no concrete harm,

8 no standing."  The Court noted there "must be injury in fact,

9 not just injury in law."  And the Court --

10          THE COURT:  Don't the plaintiffs allege concrete

11 particularized injury in paragraph -- I think it's paragraph 30

12 of the second amended complaint?

13          MR. BOXER:  We don't believe that they do, Your Honor.

14 If we look at paragraph 30, what they say is -- and I'll quote

15 -- "they have been unable to obtain or extend various important

16 financial, insurance and health services."  They do not state

17 whether, how, or why a creditor sought information from my

18 client, they don't state what services they're talking about or

19 how a freeze at this one consumer reporting agency caused that

20 result.

21          And so that kind of general, vague statement does not

22 pass muster under *Iqbal* and *Twombly* in our view.  The standing

23 is a doctrine that is a jurisdictional one and it needs to be

24 established plaintiff by plaintiff, claim by claim.  And this

25 sort of joint pleading, really of two different plaintiffs in

1    the same clause that says, hey, we've been unable to extend

2    various things, I don't know if that has anything to do with

3    what my client did.  I don't know what things they're talking

4    about that they haven't been able to extend or if it had

5    anything to do with a credit report.

6         THE COURT:  Let's assume for the moment that John

7    Doe-1 was trying to get liability insurance for a car, and the

8    insurance company wanted to see whether John Doe-1 was

9    creditworthy.  So the insurance company goes to LexisNexis and

10   there's a freeze, and as a result, John Doe can't get

11   automobile insurance.

12        Now, wouldn't that be a concrete injury?

13        MR. BOXER:  It might be, Your Honor, but I think Your

14   Honor's hypothetical, there's a couple of things I should note

15   there.  First off, if we're talking about automobile insurance,

16   that's not credit reporting under the Consumer Reporting Act.

17   That would be a different issue.  That would not pertain to --

18   necessarily pertain to a credit report.  But let's say that it

19   had --

20        THE COURT:  Let's assume -- again, we're talking about

21   hypotheticals here -- the insurance company wanted to find out

22   if John Doe was creditworthy, whether they are going to sell

23   him insurance, whether they are going to get paid.  And they

24   don't know, so they try to get a credit report from LexisNexis,

25   and LexisNexis has frozen the credit report.  And as a result,

1   the auto insurance company says to John Doe, sorry, we need to
2   know whether you're creditworthy and we're trying to get
3   information that's been blocked.
4           Let's assume that -- I don't know that that happened
5   obviously.  It's not stated here.
6           MR. BOXER:  Right.  Right.  And I think -- I'll answer
7   Your Honor's question directly in a moment, but I think what
8   Your Honor said at the end there is the key.  It's not stated
9   there.  I'm not really sure --
10          THE COURT:  At least it isn't stated that
11  specifically, obviously.  But if that were the set of facts, if
12  that had been pleaded specifically, would that have satisfied
13  standing?
14          MR. BOXER:  Yes, if there was a concrete harm such as,
15  hey, I went to get a car loan or insurance --
16          THE COURT:  Or what loan --
17          MR. BOXER:  Yes, went to get a car loan -- I'm not
18  trying to fight Your Honor's hypothetical but --
19          THE COURT:  We're in the same ballpark.
20          MR. BOXER:  Yes.  I went to get a car loan and I
21  couldn't get a loan, I had to go to the guy at the corner who
22  charged me three percent more interest and I've been harmed.
23  Okay.  I would still argue for my 12(b)(6) motion that there's
24  no cause of action.
25          THE COURT:  We're going to get into 12(b)(6) in a

1  little bit.  Just deal with --

2          MR. BOXER:  Understood.  But that's a plaintiff who

3  would have standing.  They would have to satisfy *Iqbal* and

4  *Twombly* in terms of the pleading requirements.  Again, here we

5  have two plaintiffs making the same general pleading, they're

6  not divided claim by claim what their harm is, but in that kind

7  of situation if that was the harm that was alleged to have been

8  caused by my client's conduct, that person had to pay more for

9  a loan, absolutely there would be standing.

10         THE COURT:  But then we get back to the off-neglected

11  Rule 1, the whole concept of the federal rules is notice

12  pleading.  Now, I understand that we do have the primary

13  plausibility, but we don't have the old-fashioned fact pleading

14  which we still have in Pennsylvania, and I don't know whether

15  New Jersey has that sort of situation or not in the state

16  courts.

17         So we don't have to have all that much specificity as

18  use to be required in pleadings, you would agree with that?

19         MR. BOXER:  I agree it's notice pleading, but *Twombly*

20  and *Iqbal* do require some level of specificity so that the

21  Court is able to determine if there is a plausible claim and

22  if --

23         THE COURT:  And of course, even assuming I found that

24  standing has been pleaded, of course the plaintiffs are still

25  not off the hook.  That's only getting to first base.  They

```
 1   have to ultimately prove standing.

 2           We all agree on that?

 3           MR. BOXER:  Correct.  Standing is jurisdictional.  If

 4   it turns out later in this process that they've pled -- if, for

 5   example, they pled, hey, I had to pay more for this car loan as

 6   a result of your client's conduct, but it turned out that that

 7   was not the case, then yeah, we may be talking about this later

 8   in the matter.

 9           THE COURT:  Right.  Okay.

10           MR. BOXER:  Agreed with that.

11           Other than paragraph 30 -- I mean, paragraph 30 is

12   really it.  Other than that in this complaint -- there's

13   reference to a fear that going down the road maybe I couldn't

14   get credit.  That's not cognizable under the case law, that's a

15   possible future harm.

16           Plaintiffs in their brief, they mention reputational

17   harm, but there's no reputational harm pled actually in the

18   complaint where it needs to be.

19           THE COURT:  Right.

20           MR. BOXER:  And, you know, frankly, I think --

21           THE COURT:  Jane Doe-2, doesn't she plead emotional

22   and physical harm, that her multiple sclerosis situation is

23   exacerbated, so that would be physical harm.  And also there

24   was -- she pleads emotional harm too, doesn't she, as a result

25   of that?
```

1          That's pretty specific, isn't it?

2          MR. BOXER:  Respectfully, no, Your Honor, that's not

3    what she pleads.  In paragraph 40, I think is the key paragraph

4    here, she says she feared for her financial stability, and

5    there's certainly reference to the fact that she has a physical

6    condition.

7          THE COURT:  I think you mean 42, don't you?

8          MR. BOXER:  Let me take a look, Your Honor.  I was

9    looking at 40, but we can certainly look at 42 as well, which

10   agreed, that's what Your Honor's point really goes to.  So

11   let's look at 42.

12         THE COURT:  That's true, there's also 40 but I --

13         MR. BOXER:  She has multiple sclerosis, she has a

14   limited capacity to deal with stress.  She spent hours helping

15   another person remove their own freeze.  She has a serious

16   medical condition, she feels that the stress, having to repeat

17   the process, would have a detrimental impact.  That's future

18   harm, and the case law right up to the Supreme Court case law

19   says that's not enough; it's not standing to say, you know, I

20   was worried that down the road I would actually be injured.

21         THE COURT:  Right.

22         MR. BOXER:  Justice Alito in *Spokeo,* for example, is

23   really clear about this, that cases in controversies are where

24   courts have jurisdiction, and if there's not some harm that's

25   injury in fact that's actually pled, that that doesn't get --

```
 1          THE COURT:  Does it make a difference what relief is
 2   being asked?  In other words, if the plaintiffs here were
 3   seeking preliminary injunctive relief, you don't have to have
 4   the actual harm occur before you get injunctive relief.
 5          In other words, if it's immediate or about to happen,
 6   you're permitted to seek injunctive relief, correct?  I mean,
 7   you don't have to --
 8          MR. BOXER:  Then you would get into a whole other set
 9   of facts, because the facts here are the security freezes have
10   been lifted.  So, you know, it's -- they couldn't get
11   injunctive relief, I don't think they're seeking it, and the
12   reason --
13          THE COURT:  No.  I'm just saying the standard might be
14   different if injunctive relief were being asked for.  I think
15   in the TransUnion case there's talk about that.  So it depends
16   on what relief you're seeking.  If you're seeking damages,
17   that's one thing; if you're seeking preliminary injunctive
18   relief, I think the standard may be a little bit different.
19          MR. BOXER:  It may be.  And I guess my point is, then
20   there are other things you have to show, like something
21   imminent is about to happen, and there would be other facts
22   that would be presented to Your Honor.  I don't think the
23   plaintiffs are seeking an injunction here, but that would be
24   another -- but I understand Your Honor's point.
25          Yes, the analysis is claim specific, claim by claim,
```

1   and that's why we think these two Supreme Court decisions that

2   talk about the Fair Credit Reporting Act specifically and what

3   needs to be showed under that statute is enough because there's

4   a lot in that statute that really speaks to what is referred to

5   in the case law as procedural requirements.  You know, you have

6   to inform the other side of -- you know, you have to inform a

7   consumer of certain information by a certain time.

8           And presumably the Supreme Court didn't want the

9   courts overwhelmed with technical procedural violations in a

10  statute that has a lot of everyday application and the

11  requirements are strict.

12          THE COURT:  But if it is a procedural violation and

13  the plaintiffs have sufficient specificity as to how that

14  procedural harm affected that plaintiff, then there is

15  standing, isn't -- I mean, the fact that it's a procedural

16  violation doesn't mean you never have standing.

17          MR. BOXER:  I agree with that, Your Honor.  I think

18  the phrase that the court uses is "bare procedural violations

19  are not enough."

20          But I agree with Your Honor, if the plaintiffs had

21  come in here and said, you know, there's this informational

22  requirement that if you would have sent it to us -- you didn't,

23  but if we would have gotten it by this day, we could have done

24  this, we couldn't do it, and so we've been -- so, okay, fine,

25  then there's standing.  Again, there may be other things we

1    would fight about at that point, but then there's standing.

2         Here, however, these really are bare procedural

3    allegations.  They say that, you know, we weren't timely

4    informed of the freezes.  Well, their complaint has the letters

5    that went out, so we know that they were informed.  I'm not

6    sure exactly what their argument is, but if their argument is

7    we got the letter a day or two later than the five-day

8    requirement, again, I would --

9         THE COURT:  Unless they plead that during the late

10   period they suffered some specific harm.

11        MR. BOXER:  Exactly.  Which they have not done here,

12   and that's my point on that.  Exactly.

13        So, Your Honor, to sum up on the standing point,

14   unless Your Honor has additional questions for me, I think the

15   last thing I would say on standing specifically is just to note

16   that the complaint at times is worded in a way that has these

17   broad, streaking notions, but I'd ask that we look closely at

18   the allegations because, you know, I think paragraph 30 is a

19   perfect example.

20        Again, joint pleading by two plaintiffs that doesn't

21   even say they were denied credit.  And it doesn't say how --

22   for example, if LexisNexis had a security freeze, why they

23   couldn't simply get a credit report from another one of the

24   consumer reporting agencies, Equifax, Experian, TransUnion.

25   There's just no information there.  Perhaps they're thinking

1   like maybe we'll dredge something up in discovery, but we would

2   respectfully submit that's not a proper way to proceed.  There

3   are requirements at the pleadings stage.  And Your Honor's

4   previous opinions in other matters, Your Honor has noted that,

5   that *Twombly* and *Iqbal* must be satisfied.

6        And so in conclusion on standing --

7        THE COURT:  Let me ask you, you say that the

8   plaintiffs plead that the security freeze has been lifted?

9        MR. BOXER:  They have not pled that.

10       THE COURT:  Yes, I was wondering.  Yes, I didn't --

11       MR. BOXER:  That's one of the things we noted

12  as a footnote in our brief because I didn't want to get too

13  factual here because I understand we're here on a motion to

14  dismiss --

15       THE COURT:  On the pleadings, correct.

16       MR. BOXER:  But these freezes were lifted, on the

17  plaintiffs' request, in March of last year.  They've been

18  lifted for a year.  So I'm not even sure how they plead what

19  they do, but that's a question for another day perhaps.

20       THE COURT:  When was this complaint originally filed?

21  I mean the first complaint.

22       MR. BOXER:  The first complaint was filed in February

23  and it's since been amended a couple times.

24       THE COURT:  February of 2024.

25       MR. BOXER:  I believe that's right.

```
 1            THE COURT:  Was this one of the -- okay.  This case
 2   was filed here?  It was in the state court?
 3            MR. BOXER:  No.  State court, removed without
 4   objection.
 5            THE COURT:  I had forgotten.  Okay.
 6            MR. BOXER:  Yes, removed -- because it's pled as a
 7   class action, so we were entitled to remove.
 8            THE COURT:  Sure.
 9            MR. BOXER:  With Your Honor's permission, I'll turn to
10   12(b)(6).
11            THE COURT:  Sure.
12            MR. BOXER:  So in terms of 12(b)(6), Your Honor, even
13   if the plaintiffs had standing, we believe they have not stated
14   a proper FCRA claim.  Their primary substantive claim is that
15   the implementation of a security freeze was retaliatory, as
16   they put it, because -- retaliation from their Daniel's Law
17   requests.  And I know Your Honor's dealing with a whole slew of
18   those Daniel's Law cases separately.
19            THE COURT:  Yes, I am.
20            MR. BOXER:  Their allegation is -- you know, as I read
21   the complaint, the allegation is LexisNexis saw these Daniel's
22   Law requests, got very upset by them, and then in retaliation
23   implemented security freezes or maybe mistakenly implemented
24   security freezes.  That simply is not a cause of action under
25   this statute, Your Honor.
```

1          In general, starting from the most general here, the

2     courts can't imply a cause of action under a federal statute

3     like the FCRA.  The statute has to provide for it.  There's no

4     FCRA clause that provides for liability for this conduct.  But

5     what the FCRA says is a consumer reporting agency has to place

6     a freeze when one is requested.  That does not mean --

7          THE COURT:  Well, one requested by the consumer or the

8     consumer's representative, correct?

9          MR. BOXER:  Correct.

10         THE COURT:  So it can't be some stranger requesting

11    it.

12         MR. BOXER:  Correct.  Right.  What it says is if a

13    consumer requests one, they have to implement it.  That's not

14    the same thing as there's liability because you implement a

15    security freeze and they hadn't requested.  That's the inverse.

16         And in our briefing we mentioned cases that talk about

17    that as being a logical fallacy, and our conclusion on that we

18    believe makes sense for a few reasons.  One is, there's no

19    requirement under the FCRA for a consumer reporting agency to

20    provide a consumer report to anyone.  My client could exit this

21    business tomorrow without liability.

22         THE COURT:  Yes.  But simply because you don't have to

23    be in the business doesn't mean you aren't subject to certain

24    requirements if you are in the business.

25         For example, I guess there's no requirement that

1    the federal government have a postal service.  But if it does

2    have a postal service, it can't decide, well, we're not going

3    to deliver mail in Camden County, New Jersey.  I mean --

4          MR. BOXER:  I agree with that, and presumably there's

5    a law out there that says that.  In this case there's nothing

6    under the statute that does say that.  I agree with Your Honor

7    that if you do enter this business there are requirements,

8    there are dozens and dozens of pages of requirements, and there

9    have been literally 20,000 recorded decisions on the

10   requirements.

11         THE COURT:  I haven't checked that point, but I admire

12   your research.

13         MR. BOXER:  And not a one of those cases would have

14   provided notice to my client that when they got these Daniel's

15   Law requests, and we're trying to do the right thing and

16   protect this name and address information, and they made the

17   judgement, look, under the FCRA when you have a credit report,

18   the vehicle under the FCRA to not provide one is to implement a

19   security freeze.  There was --

20         THE COURT:  Well, let's take it back a step.  It's

21   clear, is it not, that the John Doe-1 and Jane Doe-2 requested

22   a freeze simply on their home address and their unlisted

23   telephone numbers and cited a New Jersey statute which is

24   properly known as Daniel's Law?  There's no question they did

25   do that, am I correct?

```
 1              MR. BOXER:  They did.
 2              THE COURT:  Okay.  Then what LexisNexis did was --
 3    well, it disregarded that or didn't follow that instruction and
 4    it went forward and implemented a broader freeze on their
 5    credit history.
 6              Isn't that what happened?
 7              MR. BOXER:  No, I would disagree with that, Your
 8    Honor.  We didn't disregard the instruction; we tried to
 9    vindicate and satisfy the instruction.
10              THE COURT:  Well, that may come to -- I'm talking
11    about what's pleaded now.  We're talking about a pleading.
12    It's plaintiffs' plead that your client didn't follow the
13    instruction, because the instruction was limited, and then
14    implemented a broad freeze, broader than what the plaintiffs
15    requested.  That's what they plead.
16              Now, what the facts are has to wait another day, but
17    that's what they plead.
18              MR. BOXER:  Well, that's what they argue.  I don't
19    know that it's fair to say that's what they plead.
20              What the complaint says is we submitted this Daniel's
21    Law request and the Daniel's Law request says please take out
22    my home address, don't provide my home address to anyone, don't
23    provide my -- that's what's in their complaint.
24              THE COURT:  And they followed up shortly thereafter
25    with the request about the unlisted telephone numbers.
```

1          MR. BOXER:  It was in the same emails.  They were sent

2     multiple times, but it's in the same email for each person.

3     Yeah, take out my home address, take out my phone number or --

4     you know, for some people it was just the address, for some

5     people it was just the phone number.

6          THE COURT:  For the Does it was both in the same

7     email; is that correct?

8          MR. BOXER:  I would have to --

9          THE COURT:  I was under the impression there was a

10    second email that requested the unlisted phone number to be

11    removed.  I think it was the same day or shortly thereafter.

12         MR. BOXER:  Yes, I would have to check on that, Your

13    Honor.

14         THE COURT:  But regardless of the mechanism, everybody

15    agrees that they did request both, not just a home address, but

16    both, and the unlisted telephone number.

17         MR. BOXER:  Correct.  Correct.

18         THE COURT:  Now, the statute states that a freeze can

19    be imposed in two ways.  Now, as a matter of statutory

20    construction, doesn't that mean that there's no other way to

21    impose a freeze under the statute?  There are two ways of doing

22    it, direct request from the consumer and direct request from

23    the consumer's representative.

24         MR. BOXER:  No, Your Honor, we do not believe those

25    are the only two ways.  And --

1          THE COURT:  But if -- let's take your point here for

2     the moment.  If in fact a consumer credit reporting agency can,

3     for whatever reason or no reason, freeze a person's credit

4     report, let's say they did it with 10,000 people, just

5     arbitrarily decided to not provide credit reports in the state

6     of New Jersey, for example.  The head of LexisNexis was mad at

7     something the State did and so he said we're going to provide

8     credit reports to the other 49 states but not in this one --

9     and the findings under the Fair Credit Reporting Act by

10    Congress talk about the importance of credit reports, credit

11    history for the banking system and Congress.

12          Now, if a -- so that would be a tremendous loophole in

13    the statute.  You would argue they could do that?

14          MR. BOXER:  I don't know that they could pick out one

15    state and do that.  There may be other reasons why they

16    couldn't in terms of, you know, interstate commerce and the

17    like --

18          THE COURT:  Where does it say it in the statute?

19    You're saying that if the statute doesn't prohibit it, then any

20    consumer would be without a remedy against the fair credit and

21    it really -- wouldn't it maturely affect the banking system in

22    the United States if that happened?

23          MR. BOXER:  No, Your Honor.

24          THE COURT:  You may say Congress forgot about it and

25    didn't legislate on it, but that's a pretty broad power if

1   you're in the business to be able to do that and just

2   willy-nilly impose credit freezes.

3        MR. BOXER:  Well, two things.  One thing in terms of

4   the breadth of the power, there are multiple consumer reporting

5   agencies, and so even if LexisNexis said tomorrow we're only

6   going to do this for people in California -- let's follow Your

7   Honor's hypothetical or something close to it.  We're only

8   going to provide this service for people in California.  Okay.

9   Then the service would be provided by the other people in the

10  industry that do it, Equifax, TransUnion, Experian.  There's

11  nothing in the statute that says you must provide this.

12       And all of the language in the statute is phrased

13  around "may," "may provide."  And so when the -- and if you

14  look at the liability provisions that the plaintiffs are

15  invoking, they talk about and they're limited to liability

16  arising from the breach of a requirement under the FCRA.

17       THE COURT:  But isn't there well-accepted principle of

18  statutory construction that if a statute says this is the way

19  you do it, by implication it means this is the only way?  I

20  mean, isn't there well-accepted principle, the expression of

21  one is the exclusion of others?

22       MR. BOXER:  I know -- I am sorry, Your Honor.

23       THE COURT:  Yes, go ahead.

24       MR. BOXER:  I know the principle Your Honor is

25  referring to and I respectfully submit that's a little

1    different than what happened here.  Those cases which I believe

2    Your Honor is referring to talk about situations where there's

3    a list provided.  And it says, you know, if you want this to

4    happen, you need to do A, B, or C.  And what courts have said,

5    well, if D is not listed and there's a list there, then

6    evidently the legislature meant D doesn't do it, only A, B and

7    C.

8            This, it's -- this is different than that.  There's no

9    list here really.  This just says a consumer reporting agency

10   is to implement a freeze when a consumer requests it.  This is

11   talking about the inverse of that.  Does a consumer report --

12   is a consumer reporting agency only able to implement a

13   freeze --

14           THE COURT:  That's the question.

15           MR. BOXER:  Right.  And we believe -- I guess I'll say

16   two things.

17           One, we believe the answer is no, and in our brief we

18   provide support for the notion that this sort of inverse sort

19   of reading is a logical fallacy.  I'll defer to my briefing on

20   that.

21           But second, there's also a line of cases under the

22   FCRA that says essentially, look, this statute is complicated

23   stuff; unless it's pretty clear, we're not going to hoist you

24   by the ankles on this stuff, unless either the statute is clear

25   or an appellate court has said this is what it means --

```
 1              THE COURT:  So your position is the statute isn't
 2    clear?
 3              MR. BOXER:  At a minimum.  I mean, my first position
 4    is --
 5              THE COURT:  What do you think it could mean?
 6              MR. BOXER:  Yes.  What it means is, if I, Matt Boxer,
 7    call up Experian and say I have a concern about identity theft,
 8    I would like to implement a security freeze, they have to do
 9    that.  Experian can't say, you know what, Boxer, we hear you
10    but --
11              THE COURT:  No big deal, right?
12              MR. BOXER:  -- we're going to do what we want.
13              And matter of fact, tens of thousands of people had
14    these freezes implemented.  They're not like an awful thing in
15    the way that I think they've been portrayed in some of the
16    briefing here.  There are privacy protections --
17              THE COURT:  I agree.  And one of the aspects of the
18    statute is privacy protection, I agree with that.  But it's the
19    consumer that decides on the privacy; in other words,
20    whether -- the consumer has to make a decision, is privacy more
21    important than other benefits from the consumer report that may
22    inure to me.
23              So that's why the consumer has to make that decision,
24    because there may be principal's intention with one another.
25    That's why the consumer has to decide, not somebody else, not
```

1  the consumer reporting agency on behalf of the consumer or some

2  third party.

3       MR. BOXER:  Except here, where you receive 47,000

4  requests and you have ten days under the New Jersey statute to

5  implement them and there's --

6       THE COURT:  Well, that's a different issue.  Now, you

7  may have a defense that I ruled that there's a negligence

8  requirement under Daniel's Law, so if your client was not

9  negligent -- we're getting a little far afield here -- on the

10  Daniel's Law, then there is no liability.

11       So the statute, in my view, doesn't impose absolute

12  liability.  So you may have a perfectly good defense, but it's

13  a little early, though, to be dealing with that.

14       MR. BOXER:  Understood, Your Honor.  You know, I'd

15  also point the Court to the *Cohen* decision out of the Southern

16  District of New York that involved a similar situation where

17  plaintiff makes allegations very much like these and says, you

18  know, you, consumer reporting agency, you retaliated against me

19  by putting this freeze in.  And the Southern District said, no,

20  there's not a claim for that.  They had a separate claim for an

21  improper reinvestigation process that was allowed to go

22  forward.  But as to this, the court said, you know, I believe

23  what I'm saying, the court said there's just not a claim for

24  this under the statute.

25       And I understand Your Honor's reaction to some of my

1   points about some of the facts here, but even -- let's -- as

2   Your Honor said, let's put aside the facts.  There's got to

3   be --

4           THE COURT:  Not put aside the facts, put aside facts

5   other than those pleaded in the second amended complaint.

6           MR. BOXER:  Fair enough.  Fair enough.  There actually

7   are a lot of facts in the complaint that speak to these issues.

8           THE COURT:  Oh, I understand.

9           MR. BOXER:  But what the law says is before my client

10  is held to account for -- held to deal with a lengthy court

11  process and discovery that -- we know how these cases go.  You

12  know, it's going to go a while.

13          What the case law says is, A, the available case law

14  that's out there says there's not a claim for this kind of

15  thing; and B, the case law says, look, you can't be -- there's

16  no claim -- you can't be held to defend a claim unless a court

17  has previously made these issues clear enough that you

18  understood going in what the standards were.  And so --

19          THE COURT:  Well, that can't be so.  You can't say

20  that a defendant is immune from civil liability because a court

21  hasn't previously construed the statute, therefore, the first

22  person teed up who's sued has a bye, that can't possibly be

23  right.

24          MR. BOXER:  Well, not saying immunity, Your Honor, but

25  what I am saying is if you look at the cases -- and for

1    example, there's the *Marino* case out of the Ninth Circuit --

2         THE COURT:  Right.

3         MR. BOXER:  -- where what the court is saying is --

4    not immunity, but is saying, look, if the statutory text is

5    crystal clear, then we're in a different ballpark.  But we

6    believe this text is far from clear because of the -- and

7    again, going back to the case law I mentioned, going back to

8    the fact that you're not required to provide a credit report on

9    anyone -- and I mention the *Edeh* case from the District of

10   Minnesota on that point.

11        THE COURT:  Right.

12        MR. BOXER:  But because of all that, if the statute

13   were clear, fine, but where you have this amount of unclarity

14   that -- what the cases indicate is that the claim should not go

15   forward unless there's some interpretation of the statute.  And

16   again, I think that's something unique to the statute that I

17   think is a product of the complexity of it and the variety of

18   requirements under it.

19        THE COURT:  Now, they have a number of other claims.

20   Other than the one under 1681c-1(i)(2)(A), they have the

21   five-day claim, they have a claim under 1681g, they have one

22   under 1681m, and one under 1681c-1(i)(4).

23        Did I get it right?

24        MR. BOXER:  You did, Your Honor, yeah.  I'm happy to

25   speak to those.

```
 1            THE COURT:  I guess we'll take the five-day -- or
 2   whatever order you want to take it in, whichever.
 3            MR. BOXER:  I've got it in my outline first as 1681m,
 4   so --
 5            THE COURT:  All right.  Let's do that one.
 6            MR. BOXER:  -- with the Court's permission.
 7            Look, this one is clear in our minds, 1681m says
 8   there's no civil liability for violating that provision.  You
 9   know, it's crystal clear.  It says there are administrative
10   agencies --
11            THE COURT:  Give me an example of what the statute is
12   talking about here.  Is this a situation where, for example, a
13   mortgage company on its own pings a credit report and then
14   writes to me and says, okay, your credit is good enough, so if
15   you're looking for a mortgage, we're the great, wonderful
16   mortgage company that will lend you the money?
17            Is that the type of situation it deals with, where I'm
18   not initiating the commercial transaction?
19            MR. BOXER:  Yes, my understanding is --
20            THE COURT:  It's kind of convoluted, this part -- I
21   agree with this part of the statute.  You've got to read it a
22   few times to understand what it's talking about.
23            MR. BOXER:  Very convoluted.  My understanding of what
24   it says, Your Honor, in effect is in certain circumstances a
25   notice has to be provided to consumers that they have the right
```

1    to opt out of certain prescreened offers.

2            THE COURT:  So would that be an example?  In other

3    words, if the mortgage company -- whether I'm interested in

4    buying a house or not, they think, well, maybe I'm in the

5    market or heard somewhere, so they write to me and having

6    obtained my credit report, and the law requires a person

7    obtaining the report to notify me that they got the report and

8    that I can opt out of their using it, is that --

9            MR. BOXER:  That you can opt out of these sort of --

10   you know, being hit with these offers that you don't want to

11   get.  You know, that -- yeah, like -- because these consumer

12   reporting agencies end up with a lot of data about people and

13   their name and their address, for example, and so -- but people

14   don't want to be receiving offers from various companies about,

15   you know, a mortgage opportunity.  And so, yeah, you can in

16   effect say I'm opting out of that, don't try to sell my --

17           THE COURT:  How would I know -- I may be getting a

18   little far afield.

19           How would I know whether the mortgage company who's

20   soliciting me or the insurance company, whether they have

21   gotten my credit report?  Are they supposed to tell me that

22   I've gotten your credit report from LexisNexis and you're a

23   good credit risk for up to X dollars for a mortgage?

24           MR. BOXER:  My understanding is there's certain

25   triggers that require that notice to go out.  I don't want to

1    speculate and guess about what they are.

2          THE COURT:  I think your argument is that there's no

3    private right of action regardless of --

4          MR. BOXER:  Exactly.  Yes, my argument is whether

5    LexisNexis did this properly or not, this is not something

6    people can sue over.

7          THE COURT:  Okay.  We can pass over that one then.

8          What's your next one?

9          MR. BOXER:  The next one is 1681g --

10          THE COURT:  Right.

11          MR. BOXER:  -- which calls for a summary of rights to

12    be provided where a consumer requests their own file.  So if I

13    call up Equifax and I say, hey, I want a copy of my credit file

14    that you have there, I'd like to see what information you have,

15    that Equifax, in addition to sending that, there's certain

16    rights that I need to be informed of.  But that section only

17    applies when a consumer requests their file.

18          THE COURT:  You're saying there's no request in the

19    complaint?

20          MR. BOXER:  Exactly, there's been no pleading that

21    such a request was made.

22          THE COURT:  All right.  I understand that one.

23          MR. BOXER:  The next is 1681c-1(i)(4).

24          THE COURT:  Right.

25          MR. BOXER:  And that's a part of the statute that

1    talks about exceptions.  So we were talking about security

2    freezes earlier.  This part of the statute basically says,

3    look, even if there is a freeze in place, there are certain

4    delineated times where if you've gotten one of these credit

5    reports on somebody, you need to provide it.

6            For example, to law enforcement.  The statute says

7    even if I call up and I ask for a security freeze, if the FBI

8    wants to see what Equifax has on me, they're entitled to see

9    that.

10           In this case, though, if you look at the pleading,

11   plaintiffs don't actually plead that anyone sought their

12   reports for any of the reasons specified in the exceptions.  So

13   it's, you know, just sort of like tossed into the complaint

14   like, hey, LexisNexis also violated this but --

15           THE COURT:  Well, what about paragraph 30?  Didn't

16   they talk about -- of the second amended complaint.  Don't they

17   talk about insurance --

18           MR. BOXER:  In the most general of ways.  I mean, I --

19           THE COURT:  Insurance is an exception, isn't it?

20           MR. BOXER:  I recall that it is, yes.  So, look,

21   again, under *Iqbal* and *Twombly*, if this complaint said, hey,

22   there was -- you know, there was this company that came to you

23   and asked you for this information and you were required to

24   provide it and you didn't, okay, now we can defend ourselves,

25   now I know what they're talking about.

```
 1              THE COURT:  Aren't they pleading now -- I guess we'll
 2    ask Mr. Shaw about that, but they said they couldn't get
 3    insurance, or something or other, and there's an exception
 4    under Subsection 4 of 1681c-1(i)(4), so that if an insurance
 5    company -- my understanding of the statute -- rather, let's go
 6    back.
 7              John Doe-1 was seeking auto insurance and the
 8    insurance company wanted a credit report.  Even if there is a
 9    freeze, LexisNexis is obligated to supply it to the insurance
10    company.
11              Is that your understanding of the statute?
12              MR. BOXER:  I would want to look at the statute on
13    that, Your Honor, and see exactly what the circumstances are
14    where that would qualify as the exception because I don't know
15    that it's in every case where somebody says the magic word
16    "insurance" and I've got to turn it over.
17              THE COURT:  Right.
18              MR. BOXER:  So I would want to look back at the
19    statute on that, and I can certainly do that when I sit down.
20    But we don't know exactly what was asked.
21              I have every reason to believe that if one of the
22    exceptions applies and -- you know, for example, I'll use law
23    enforcement just because in my mind it's an easier example.  I
24    have every reason to believe that if the FBI called LexisNexis
25    and asked them for information and they were required under the
```

1    statute to provide it, they would have.

2         If somebody is saying that there was such a request

3    and that it wasn't provided -- like, okay, just give me a

4    little -- just give me enough of the facts so that we can see

5    if *Twombly* and *Iqbal* are satisfied and if plausibility is

6    established.  Because if you -- I understand Your Honor's

7    point.  I'm pointing to paragraph 30.  But if you look at

8    paragraph 68 where this is alleged, all they say is relying on

9    the security freeze is in circumstances covered by the

10   exceptions -- well, I don't want to read the whole thing, but

11   it's very generic.

12        But even in their brief, let alone in the pleading,

13   when we said in effect we're not really sure what you're

14   alleging here, can you explain this, even in their brief it's

15   very summary to a point that we believe does not satisfy the

16   Supreme Court's case law on it.

17        I think, look, if the pleading were a couple levels

18   more specific, I think then we could have a fulsome discussion

19   about whether it qualifies as an exception or not.  But you

20   know, we really don't know what's being argued.  What we do

21   know is just tossing out just a sort of general moniker of

22   insurance, the case law indicates that's not enough in terms of

23   pleading.

24        The last issue that Your Honor referenced is the five

25   days.  And you know, my point is similar on that one.  It's

1    just very conclusory.  They say basically a little more than

2    you were late.  The letters are in their complaint so we know

3    that the letters went out.  They're saying they're late.  We

4    believe they're required to do --

5              THE COURT:  But my understanding is that the statute

6    requires the consumer to be notified within five days or no

7    later than five days after the security freeze is in place.

8              MR. BOXER:  That's my understanding as well.

9              THE COURT:  And the complaint I don't think ever says

10    when the security freeze is in place and when the

11    notification -- we just don't know.

12              LexisNexis says we will be imposing it, we don't know

13    exactly when, so it's hard -- I agree with you, it's hard to

14    delineate what is the five-day period that we're talking about.

15    It's not five days after you request the freeze, it's five days

16    after a freeze is in place, and then the five days begins to

17    run.

18              Is that your understanding?

19              MR. BOXER:  Yes, it is, Your Honor.  And that's

20    exactly the issue here, that you have to have a good-faith

21    basis to assert a claim like this.  If you're a plaintiff and

22    you believe that something is late, it has to be a basis for

23    you to bring a lawsuit to believe it's late.

24              And this has -- you know, this is just pled in the

25    most conclusory of ways.  You know, again, that puts aside --

1    that's not even talking about is there even civil liability

2    under the section.  Because we ran a search for this section.

3    There's not one case that says there's liability in a civil

4    case for this.

5            But put that to the side and put standing to the

6    side -- because again, going back to what I said before, I

7    don't know how you could have standing to bring a claim like

8    this, certainly not on these facts when -- again, the letters

9    are in the complaint.  We know they received the notice.  So

10   what's your injury in fact?  Are you saying you got it a day

11   late?  If that's your claim, then, you know, you have a burden

12   to show how you were harmed by that.

13           THE COURT:  All right.

14           MR. BOXER:  That's my argument, Your Honor.

15           THE COURT:  Thank you very much.

16           Mr. Shaw?

17           MR. SHAW:  Good morning, Your Honor.  Adam Shaw for

18   the Doe plaintiffs, from Boies Schiller Flexner.  Thank you,

19   Your Honor.

20           Frankly, I feel like I felt like Alice's fall through

21   the looking glass because this is not a blank slate we're

22   riding on here and a lot of the things that they're bringing up

23   now are curious or incurious.

24           Look, we know what happened here.  There was Daniel's

25   Law requests sent out, they chose to treat those as security

34

1   freezes even though no one asked for a broad security freeze.

2   Okay?  They said they did it under the New Jersey statute.

3   Everywhere in all of their letters, we're doing this pursuant

4   to the New Jersey statute, we're doing this under New Jersey

5   law, security freeze law.

6          In their letters, which are in the complaint, they say

7   this will cause you credit harm.  They put it in all capital

8   letters, this will cause you credit harm, this will prevent

9   people from approving credit, extending credit.  They put it in

10  their letters.

11         Guess what?  That's exactly what happened.  This Court

12  already ruled that by imposing security freezes when someone

13  doesn't ask for it is contrary to the terms of the statute,

14  albeit the New Jersey statute, but this Court already

15  determined that the New Jersey statute and the federal statute

16  were the same in that regard.

17         In fact, they came into this court and argued that.

18  They came and stood in front of Your Honor, they wrote in their

19  briefs and said the New Jersey statute is the same as the

20  federal statute, therefore, you have to preempt New Jersey

21  statute.  And they said on this particular issue, the security

22  freeze issue, they said those are exactly the same.

23         Your Honor looked at that, evaluated the terms of the

24  statute and said there's only one way to do it; you did it the

25  wrong way.  If, in fact, the allegations prove out, you've done

1   it the wrong way, Lexis.  But for purposes of where we are now,

2   that has stated a violation of the statute.

3          They've come in on their brief now and said this is

4   some kind of strange -- I'm not sure of the -- sounds like a

5   debating term to me, but it's fallacy of the inverse.  Well,

6   guess what, they're saying you did that, Your Honor, that your

7   analysis of the statute was some kind of fallacy of the

8   inverse.  But that's the law of this case, that's what you

9   already determined.  Now, if you want to go back on that,

10  that's a different scenario.  If they want to make some kind of

11  reconsideration motion, that's a different scenario.

12         Your Honor already determined, looking at the statute,

13  there's one clear way to do it; they did it the wrong way.

14  Okay?

15         Now here we are.  And by the way, we asked them --

16  before they made this motion, we asked them, can you tell us

17  what you are going to allege, make your motion on for your

18  motion to dismiss, because if it's something to do with the

19  allegations, we will adjust it so that the Court doesn't have

20  to deal with it, and they refused.

21         But in any event, let's deal with the standing issue.

22  My colleague here suggests that we didn't put in all of the

23  things that they need to have.  Who's the one that denied the

24  credit?  Which creditors?  Why don't they say whether Equifax

25  or somebody else is going to submit a report?

1          Frankly, Your Honor, none of the cases require that.

2    That's the merits of the action.  You don't have to get into

3    that level of detail.  They conspicuously don't talk about the

4    standard in this circuit, which as we've seen --

5          THE COURT:  Well, you have to plead concrete and

6    particularized harm.

7          MR. SHAW:  Exactly.

8          THE COURT:  So it turns on paragraph 30.

9          MR. SHAW:  I do have to say, though, that the

10   standard -- I think one quote in there jumped out at me from

11   one of the Third Circuit cases.  It said you just have to prove

12   a trifling.  Remember, this is standing.  This is not the

13   merits.  Standing only requires that you have a concrete injury

14   in a sense that it fits within the types of harms that the

15   statute -- that the lawsuit can address.  And the Third Circuit

16   said very clearly that you don't have to discuss the severity

17   or the degree of that harm, it just has to be the type of harm.

18          Now, let's go -- so we think we do that in spades.

19   Paragraph 30, as a result of defendant's actions, plaintiffs

20   have been -- and I'm going to just paraphrase the specific

21   words here -- or I'm going to say -- ellipses out some.  As a

22   result of the defendant's actions, plaintiffs have been unable

23   to obtain or extend financial insurance health services.

24   That's what they say.  They didn't get credit, that's what that

25   says.

1    Credit means that they weren't able to get these

2    services, they weren't able to get credit extended to them.

3    That's both plaintiffs are saying that there.

4    Now, paragraphs 33 through 36 are Doe-1.  He discusses

5    all of the time that he spent dealing with the security freeze.

6    We discussed in our cases that the time spent on dealing with

7    credit reporting issues is a harm for standing under the FCRA.

8    We cite a case for that.

9    Doe-2 -- by the way, that's paragraphs 33 through 36.

10    Doe-2, paragraph 40:  This immediately, immediately

11    caused Doe-2 to fear.

12    That is emotional harm.  I don't know where my

13    colleagues here came to this court in their brief and said

14    emotional harm is not harm for standing?  Well, guess what, the

15    Third Circuit says the exact opposite.  We cite cases.

16    Emotional harm is proper harm for standing.

17    We cite a case, a *LeZark* case from the District of New

18    Jersey where someone felt overwhelmed.  I think it's *LeZark*,

19    someone felt overwhelmed.  The Court said that's an emotional

20    harm sufficient for standing.  They come in here and quote the

21    line that says overwhelmed is not.  That's the exact opposite

22    of what the case says.  So that's paragraph 40.

23    Paragraph 42:  The mental and emotional stress

24    increases officer's risks of relapses.  Given her serious

25    mental conditions, officer 2 feels that the stress of having to

1  repeat the process would have an immediate and detrimental

2  impact on her health.

3         They focus on the word "would," but she says -- in

4  that sentence she's talking about a current impact on her

5  emotion, paragraph 42.  We think under the statute, we think

6  under the case law that we've cited that have interpreted the

7  Supreme Court cases that they've cited, that we've done enough

8  to allege and demonstrate standing here.

9         Again -- and I think -- you know, I commend the Court

10  to look at the cases we've cited, because again, you just have

11  to allege a -- you just have to be within -- it's not the right

12  word to say "zone of interest," but you have to have the type

13  of harm that's redressable, and we've alleged it here.

14         And by the way, again, going back to -- what is it

15  that they're asking us to do?  They're asking us to tell us

16  which creditor?  You don't have to do that.  That's the merits.

17  That's discovery.  They'll find out.

18         THE COURT:  So that's the question, they say that

19  *Iqbal* and *Twombly* requires you to be more specific.  So I'm

20  going to have to decide whether or not you've been specific

21  enough with respect to standing.

22         Isn't that really the issue?

23         MR. SHAW:  Yes, although I don't know that *Iqbal* and

24  *Twombly* refer to the standing -- set the plausibility for

25  standing.

```
 1          THE COURT:  But there does have to be sufficient
 2   specificity, and the question is whether -- it may be different
 3   for standing versus a 12(b)(6) issue.
 4          MR. SHAW:  Yes, that's the point I'm trying to make,
 5   it is different for those two things, and we think we've done
 6   it for that.
 7          THE COURT:  Understood.
 8          MR. SHAW:  Now, getting to the 12(b)(6) argument.
 9   Again, this Court's already -- if they want to argue that what
10   they did was reasonable, if they want to argue that somehow
11   this giant Lexis, which we put in our thing --
12          THE COURT:  Is this the first case that you know that
13   has ruled this way, this one right here?  Has there ever been a
14   case specifically like this one?
15          MR. SHAW:  I haven't found one, Your Honor.  But I
16   don't think that's a detriment to us, that's a --
17          THE COURT:  I'm not saying it's a detriment.  I'm just
18   asking whether -- somebody has got to be first, right?
19          MR. SHAW:  Somebody's got to be first.  And we said --
20          THE COURT:  I always like it when parties come in and
21   said, well, this expert has never done this before.  Well,
22   there's always got to be a first time.  Every surgeon has to
23   have his first surgery, every lawyer has to have his first
24   case.
25          Go ahead.
```

40

```
 1          MR. SHAW:  Yeah.  But we did cite some other cases
 2   that floated around the edge of it.  They say all those cases
 3   show you can't have a retaliation claim.  Well, this isn't a --
 4   I mean, retaliation is the motive, we know it.  They said it.
 5   They came in and said it, we got the Daniel's Law requests so
 6   we froze your credit.  They said why they did it.
 7          Some of these cases out there kind of float around the
 8   edge and talk about --
 9          THE COURT:  Well, you know one of the issues with the
10   Fair Credit Reporting Act is assuming there's a cause of
11   action, is whether or not the defendant acted negligently or
12   willfully.
13          MR. SHAW:  Exactly.  And that's for later on.  We
14   allege that they have.  We allege that they've done that.  They
15   want to say, well, we can't be held responsible because it's
16   unclear or we acted reasonable.  That's for later on, that's
17   not for now.  It's not a get-out-of-the-case-free card.
18          Again, we think Your Honor has already stated in this
19   very case that the way to do a security freeze is set forth.
20   If you didn't do it that way, you violated a clear part of the
21   statute.
22          Now, the -- so that's what we think under the main
23   part of imposing a security freeze and our primary claim.
24          THE COURT:  Then you plead in the alternative.
25          MR. SHAW:  And then we plead in the alternative or in
```

1   addition other types of --

2          THE COURT:  Well, it really isn't in the alternative

3   if you didn't -- all right.  We won't quibble over that, but

4   let's go through all the other causes of action.

5          MR. SHAW:  Yes.  The other causes of action are like

6   -- we didn't put ourselves here.

7          THE COURT:  How about the 1681m?  There's no cause of

8   action, private cause of action.

9          MR. SHAW:  That's true, but we're not bringing it

10  under that.

11         THE COURT:  You reference that in the complaint.

12         MR. SHAW:  Correct.  So there's a section under the

13  FCRA that says if you impose a security freeze under the FCRA.

14  And by the way, this is our Alice in Wonderland because nobody

15  thinks -- you know, we're here under the FCRA because now all

16  of a sudden they're saying you have to put us in the FCRA.  And

17  by the way, they want to put us in the FCRA box so they can

18  kick us out so that these people have no recourse --

19         THE COURT:  No, no.  I gave you an opportunity to

20  plead under the FCRA, so you're under the FCRA.

21         MR. SHAW:  Fair enough.

22         These other sections refer to what happens if you

23  impose a security freeze under the FCRA.  So under -- and it's

24  such a confusing list of numbers here, but it's under

25  1681c-1(i)(4).

1          THE COURT:  Okay.  That's the excerpts that they
2    didn't comply with the exceptions under the statute to supply
3    credit reports even though there was a freeze, isn't that what
4    that's all about?
5          MR. SHAW:  It is but...
6          THE COURT:  Okay.
7          MR. SHAW:  Correct.  So if you are -- if in fact what
8    they did was put a security freeze under the FCRA, then they
9    needed to comply with that statute, and they didn't.
10         THE COURT:  Well, which ones --
11         MR. SHAW:  I apologize, Your Honor, because I thought
12   the reference to M was in that section.
13         THE COURT:  No, M is something else.  1861m is the
14   question of whether there's a private right of action.  You've
15   talked about that.
16         MR. SHAW:  Sorry.  But under 1681c-1, which is the
17   main statute, 15 U.S.C. 1681c-1, then you go to little I, and
18   then go to 2, and then that would be capital B.
19         THE COURT:  You're talking about the five-day issue
20   now.
21         MR. SHAW:  Right.  But it says within five days you
22   have to give the information under 1681m.  So if you bear with
23   me here, Your Honor, 1681c-1(i)(2) --
24         THE COURT:  Right, but the point is --
25         MR. SHAW:  -- (B) --

1           THE COURT:  -- if you violate that, there's no private

2    right of action -- only the FTC or a governmental agency can

3    enforce that.

4           Isn't that your point, Mr. Boxer?

5           MR. BOXER:  Yes, Your Honor.

6           THE COURT:  I thought their point was that under 1681m

7    there's no private right of action, but we're saying that under

8    1681c-1 you have to supply the information that comes from M.

9           THE COURT:  No, well --

10          MR. SHAW:  Well, that's our position, Your Honor.  I

11   thought we cited a case for that, but if that's -- that's where

12   we stand on that.

13          And the other elements of the statute.  I mean, the

14   five days, counsel comes in here and says that I have to allege

15   the harm that occurred within the time period after the five

16   days.

17          THE COURT:  Sure.  Why not?

18          MR. SHAW:  I am sorry?

19          THE COURT:  Well, then if you don't, then there's no

20   standing, is there?

21          You have to be harmed.  Let's assume they're late,

22   they don't give it to you for ten days and nothing happened.

23   You've got to be harmed by that.  It may be a violation, a

24   procedural violation, but if there's no harm to you, you have

25   no right to sue them.

1          Correct?

2          MR. SHAW:  The same harms that we allege in

3    the --

4          THE COURT:  Well, you have to say during that period

5    certain things happened.  It's not -- that during that -- let's

6    say they were ten days late.  You have to allege that during

7    that ten-day period something adverse happened, some monetary

8    harm, some physical harm, some psychological harm, some

9    emotional harm, some reputational harm.  And their argument is

10   that you haven't pleaded that.  We don't even know what the

11   dates are.

12         MR. SHAW:  What we're alleging -- first of all, I

13   think what you're imposing is a causation requirement.  At the

14   standing, that doesn't exist.

15         I don't think injury in fact --

16         THE COURT:  No, no, you have to show harm.

17         MR. SHAW:  Our allegations of harm that we have in the

18   paragraphs that I went over occurred, in our assessment, before

19   the letter was received.  In other words, they didn't do it in

20   five days so --

21         THE COURT:  Am I correct they have to notify you of

22   the imposition of the freeze five days after it's implemented,

23   don't they?  Is that right?

24         MR. SHAW:  That's right, yes.

25         THE COURT:  Okay.  So we have to know the date the

```
 1   freeze was implemented and we have to know the date when the
 2   confirmation was sent or received.  So isn't that lacking here
 3   in the complaint?
 4           If you can show me where that is, what date did they
 5   impose the freeze?
 6           MR. SHAW:  Your Honor, I don't think that it can be --
 7           THE COURT:  Let's do this, does the complaint say the
 8   date the freeze was imposed?
 9           MR. SHAW:  No, it does -- I don't believe it does
10   because that's the defendant's actions.  We don't know when
11   they did the freeze.
12           THE COURT:  Okay.
13           MR. SHAW:  I mean, all we know is when they did the
14   Daniel's Law requests.
15           THE COURT:  Mr. Shaw, I'm just asking you if the
16   complaint set forth the date when the freeze was imposed.
17           MR. SHAW:  It does not.
18           THE COURT:  Okay.  And it doesn't -- and I guess at
19   some point they say that it's been confirmed, correct?
20           MR. SHAW:  Correct.  They send a letter eventually.
21           THE COURT:  But we don't know what the time frame
22   was between the date the freeze was placed and the date
23   the confirmation letter went out, we just don't know what that
24   was?
25           MR. SHAW:  Correct.
```

1    THE COURT:  So we don't know whether it was less than

2  five days, we don't know whether it was ten days or what it

3  was.

4    And if we don't know what the period was, how do we

5  know that your clients were harmed during that period?

6    MR. SHAW:  We know because we issued the Daniel's Law

7  requests and eventually we found out that there was a security

8  freeze, so somewhere in between that time period they imposed

9  the freeze.  We don't know exactly when they did it, but the

10  dates we know are those.

11    And based on those dates -- we put in the date of when

12  we asked for the Daniel's Law request, and we have information

13  about when the letter came out.  And then we make allegations

14  about what happened during that interim period.

15    I don't think it's -- first of all, for standing

16  purposes I don't think we have to allege causation.  But even

17  if we did, these are fair notice pleadings as to what the harms

18  are and what the cause of actions are.  We don't know when they

19  imposed the freeze; they do.  All we know is that we issued the

20  Daniel's Law requests and they say they implemented it.

21    I think it would be impossible without precomplaint

22  discovery to determine when they imposed a freeze, unless they

23  otherwise told us.  So otherwise, you could never have a claim

24  on that -- you would never be able to have a claim on that part

25  of the statute.

```
 1              THE COURT:  Do you cite any cases that deal with the
 2    violation of that section of the statute?
 3              MR. SHAW:  I don't believe we do, Your Honor.
 4              THE COURT:  All right.
 5              How about 1681g?  Doesn't the statute require that
 6    request be made for that information?
 7              MR. SHAW:  It does, Your Honor.
 8              THE COURT:  And does the amended complaint state that
 9    there were requests made?
10              MR. SHAW:  It does, Your Honor.  So I think we're
11    going to stand on our papers on 1681g.
12              THE COURT:  Anything further?
13              MR. SHAW:  Nothing further, Your Honor.
14              THE COURT:  All right.
15              Mr. Boxer, do you wish to make any responses?
16              MR. BOXER:  Yes, if I may, Your Honor.
17              THE COURT:  You may.
18              MR. BOXER:  I would just like to respond to a few
19    disagreed points that Mr. Shaw made.
20              THE COURT:  Sure.
21              MR. BOXER:  He said something about law of the case
22    and Your Honor's previous ruling, so I would like to say
23    something about that.
24              THE COURT:  Go ahead.
25              MR. BOXER:  That was a different situation than this
```

1    one.  I've certainly read Your Honor's ruling carefully.

2         First and foremost, Your Honor was looking at a

3    different statute that had zero case law associated with it,

4    really was a blank slate, and this situation is very different.

5    I won't repeat myself, but I talked before about the plethora

6    of FCRA case law that talks about what claims are viable under

7    that statute and which are not.

8         We also have the U.S. Supreme Court's case law talking

9    about not implying a cause of action that's not already there.

10   And so, for example, we have the *Cohen* case, which counsel had

11   indicated is a different kind of situation than this one, but

12   in *Cohen* the plaintiff was arguing liability under the exact

13   same FCRA provisions, 1681n and 1681o, that talk about if you

14   violate a requirement negligently or if you violate a

15   requirement willfully, and the Southern District said it's just

16   not a thing, it's not a cause of action.

17        And so this situation is different.  We're also here

18   on this motion dealing with case law that talks about there

19   should be some clarity for a defendant to be held to a count.

20        And I may have heard counsel make a point about this

21   being at the pleading stage and so I do want to provide another

22   citation for a motion similar to this one that was dismissed at

23   the pleading stages that was upheld by the Third Circuit.  The

24   case is *Long vs. Tommy Hilfiger*, 671 F.3d 371.  I mention that

25   only because if there's an argument being made that this

1    analysis that we're talking about is too soon to make this

2    analysis, I think the *Long* case, Third Circuit makes clear that

3    even at the pleading stage these are requirements.

4            And so the NJ ITPA ruling, again, the language of the

5    statute is a little different, the case law is different, the

6    rules are different, and so we believe it's apples and oranges,

7    certainly not law of the case.

8            Second item, there was a note about we didn't tell

9    them our grounds on which we were going to move to dismiss, or

10   something like that.  I'll speak quickly to that.  I remember

11   there was a phone call, we were asked the basis for our motion

12   to dismiss, and I answered the question.  I didn't answer the

13   question with a 15-paragraph answer, but we explained our

14   basis.

15           You know, if the idea was, well, if you just would

16   have told us what you were going to move based on, we would

17   have changed our complaint, I mean, to me one of the things

18   that's telling here is -- in their response to this motion,

19   they haven't proffered an amended complaint.  It would have

20   been very easy for them to say, you know, you're saying there's

21   not enough specificity here, so here's an amended pleading with

22   some specificity.  Lawyers do that all the time in response to

23   a motion to dismiss, here's a proposed amended complaint.  We

24   didn't see any of that here and I think that that's telling.

25           With respect to standing and the test for standing,

 1    one point I wanted to emphasize is the Supreme Court has

 2    annunciated very particular standing requirements in FCRA

 3    cases.  And so there may be all sorts of case law about what's

 4    enough, what's not enough, but the Supreme Court has said in

 5    FCRA cases, I'll quote, "no concrete harm, no standing."

 6              With regard to some of the specific --

 7              THE COURT:  Well, that's really the general rule,

 8    isn't it, for standing?  You have to have concrete,

 9    particularized harm?

10              MR. BOXER:  I think that's accurate.  I think that's

11    accurate.

12              But I also would say that if you look at *Ramirez* and

13    you look at *Spokeo*, to me at least, you see the Court being

14    very careful to weed out claims where there's not a case of

15    controversy.

16              In terms of the specific paragraphs of the complaint

17    that were pointed to, maybe we could go back just very briefly

18    to paragraph 30 because there was an argument made that the

19    plaintiffs did not receive credit.  Again, that's not pled.

20    This, as I read it, it does not say that they were denied

21    credit.

22              You know, again, the fact that we're looking at a

23    joint pleading from two different -- a group pleading I think

24    is telling in and of itself, but just further to my point of

25    suggesting that we read the pleadings carefully because it does

1    not quite say that.

2            Paragraph 40 talks about -- well, there was an

3    argument made about emotional harm, and certainly no one on our

4    side of the aisle here is denying that emotional harm can, in

5    certain cases, in right cases be the basis for standing, but

6    the language that was pointed to was "caused her to fear."

7    Fear is not standing.

8            And the case that was mentioned is the *LeZark* case,

9    and I think actually --

10           THE COURT:  You say fear is not what?

11           MR. BOXER:  Fear is not enough for standing.  You

12   don't have standing to file a lawsuit because you had fear.  If

13   that's all that there is, that's not enough.

14           THE COURT:  Well, isn't fear an emotional

15   reaction?

16           MR. BOXER:  It is an emotional reaction, but it is

17   not -- under the case law, it's not enough for standing unless

18   there's something else beyond that.

19           So for example, if you look at the *LeZark* case, which

20   counsel mentioned, that there was a false letter that made

21   allegations about the plaintiff, and the Court analogized it to

22   defamation and said, yeah, okay, we're comfortable with the

23   notion of standing here, one of the things that the courts do

24   in looking at standing in FCRA cases is, is there a common law

25   tort, that seems analogous.

1          And in *LeZark,* the Court said, yeah, this feels like

2  defamation because there was a false letter -- a false letter,

3  by the way, that resulted in the plaintiff filing for

4  bankruptcy.  And so the notion that, you know, that *LeZark*

5  indicates that these pleadings in our case are enough, I mean,

6  I feel like they couldn't be more different.  Obviously,

7  there's no allegation here that anyone filed for bankruptcy or

8  had concrete harm.

9          That's my position, Your Honor.  Thank you.

10          THE COURT:  All right.  Mr. Shaw, anything further?

11          MR. SHAW:  We'll stand on our arguments, Your Honor.

12          THE COURT:  All right.  Thank you very much.  This has

13  been very helpful.

14          MR. BOXER:  Thank you, Your Honor.

15          THE COURTROOM DEPUTY:  All rise.

16          (Matter adjourned at 11:14 a.m.)

17

18          - - - - - - - - - - - - - - - -

19

20          I certify that the foregoing is a correct transcript

21  from the record of proceedings in the above-entitled matter.

22

23  */S/ Sharon Ricci, RMR, CRR*
   *Official Court Reporter*

24

25  *April 24, 2025*
        *Date*

*United States District Court*
*District of New Jersey*