IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JOHN DOE-1, et al.          :          CIVIL ACTION
                           :
        v.                 :
                           :
LEXISNEXIS RISK SOLUTIONS,  :          NO. 24-4566
INC., et al.               :

MEMORANDUM

Bartle, J.                                    May 7, 2025

        Plaintiffs John Doe ("Doe-1") and Jane Doe ("Doe-2"),
as set forth in their second amended complaint, bring this
putative class action against defendant LexisNexis Risk
Solutions, Inc. ("LexisNexis") and a number of presently unknown
persons and entities for violating the Fair Credit Reporting
Act, 15 U.S.C. § 1681, et seq. ("FCRA").

        Plaintiffs first claim that they were harmed when
LexisNexis without their permission imposed a credit freeze on
their accounts instead of adhering to their request simply to
delete their home addresses and unlisted phone numbers as
allowed under a New Jersey statute known as Daniel's Law.  In
the alternative, plaintiffs plead that even if LexisNexis
properly imposed a credit freeze it violated various provisions
of the FCRA to their detriment.  Plaintiffs seek actual and

punitive damages, statutory damages, and reasonable attorney's fees.[1]

Before the court is the motion of LexisNexis to dismiss the second amended complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of standing and under Rule 12(b)(6) for failure to state a claim on which relief can be granted (Doc. # 73).

I

The court must accept as true all well-pleaded facts in plaintiffs' second amended complaint when, as here, there is a motion under Rule 12(b)(1) making a facial challenge to standing and a motion under Rule 12(b)(6).  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Const. Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014).  The court may also consider "exhibits attached to the complaint and matters of public record."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing

---

1.  Plaintiffs' first amended complaint had three claims.  The first was that LexisNexis's imposition of a credit freeze on plaintiffs' accounts violated the New Jersey Identity Theft Protection Act, N.J. Stat. Ann. §§ 56:11-44, et seq. ("NJITPA") (Count I).  Count II was for intentional interference with contractual and prospective relations.  Count III sought declaratory relief.  The court dismissed this complaint in its entirety and granted plaintiffs leave to assert claims under the FCRA.  Order, Doe v. LexisNexis Risk Sols., Inc., Civ. A. No. 24-4566 (D.N.J. Jan. 27, 2025) (Doc. # 67).  Plaintiffs filed their second amended complaint on February 6, 2025.

5A Charles Allen Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1357 (2d ed. 1990)).  A document "integral to or explicitly relied upon in the complaint," may likewise be taken into account.  <u>See</u> <u>Schmidt v. Skolas</u>, 770 F.3d 241, 249 (3d Cir. 2014) (quoting <u>In re Burlington Coat Factory Secs. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1993) (quotation marks omitted)).

At the pleading stage, plaintiffs must clearly allege facts demonstrating standing for each element of a claim and each form of relief.  <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413, 431, 435 (2021); <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 338 (2016).  To withstand a Rule 12(b) motion, the plaintiff must aver sufficient facts to make their claims plausible.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  The pleading must contain more than "labels and conclusions."  <u>Twombly</u>, 550 U.S. 545.  It must set forth more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement."  <u>Ashcroft</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555) (internal quotations and alterations omitted).

                                II

Plaintiffs first allege that LexisNexis failed to comply with 15 U.S.C. § 1681c-1(i)(2)(A) by imposing security freezes on their credit files without their direct request. This subsection provides:

                               -3-

> Upon receiving a direct request from a
> consumer that a consumer reporting agency
> place a security freeze, and upon receiving
> proper identification from the consumer, the
> consumer reporting agency shall, free of
> charge, place the security freeze not later
> than . . . in the case of a request that is
> by toll-free telephone or secure electronic
> means, 1 business day after receiving the
> request directly from the consumer . . . .

As noted, plaintiffs also plead additional claims in the alternative. They allege that even if the nondisclosure requests were properly deemed requests for a security freeze LexisNexis violated the FCRA by: (1) failing to confirm to plaintiffs the placement of the security freeze within five business days after placement under § 1681c-1(i)(2)(B)(i); (2) failing to inform plaintiffs of their rights under § 1681m(d)(1) (D) within five business days of the security freeze placement; (3) failing to provide plaintiffs with a summary of their rights under § 1681g; and (4) relying on the security freezes to avoid providing consumer reports for certain uses as outlined in § 1681c-1(i)(4).

A person that either willfully or negligently fails to comply with the obligations set forth by the FCRA may be liable to the affected consumer for damages and attorney's fees. See 15 U.S.C. §§ 1681n, 1681o.

The facts as stated in the second amended complaint are as follows. Plaintiff Doe-1 is a former police officer with

-4-

the South Plainfield, New Jersey police department and a former U.S. Marine.  Plaintiff Doe-2 is a retired New Jersey police officer who suffers from multiple sclerosis.  LexisNexis is an entity that provides data-brokering and credit-reporting services.

On January 1, 2024, Officer Doe-2 sent emails to LexisNexis with requests to remove her home address and telephone number pursuant to Daniel's Law,[2] the statutory citations to which were included in the emails.  On January 2, 2024, Officer Doe-1 did the same.  Daniel's Law provides that judges, prosecutors and other law enforcement officials as well as their immediate family members may submit a written notice to any person, business, or association ("entity") not to disclose or otherwise make available their home addresses and unpublished personal telephone numbers.  The entity must comply within 10 business days.  The law creates a civil remedy for damages and injunctive relief as well as criminal penalties for noncompliance.

Plaintiffs' first emails to LexisNexis stated:

To Whom It May Concern:

I Am a "Covered Person" as defined by New Jersey law P.L. 2023, c. 113, P.L. 2021, c.

---

2.    Daniel's Law, as amended, is codified as follows: N.J. Stat. Ann. §§ 2C:20-31.1, 17:46B-1.1, 19:31-18:1, 46:26A-12, 47:1-17, 47:1A-1.1, 47:1A-5, 47:1B-1, 47:1B-2, 47:1B-3, 47:1B-4, 56:8-166.1, 56:8-166.3.

371 (as amended, the "Act").  Pursuant to
the Act and Section 3 of New Jersey P.L.
2015, c.226 (C.56:8-166.1) (as amended)
[Daniel's Law], I hereby request that you
not disclose or re-disclose on the Internet
or otherwise make available, the following
protected information:

Name: [plaintiff's name was inserted][3]

Home Address: [plaintiff's home address was
inserted]

Within an hour of these emails, plaintiffs sent
parallel emails to LexisNexis requesting that their unlisted
phone numbers not be disclosed.  While those second emails were
not quoted in or attached to the second amended complaint,
plaintiffs submitted unredacted and undisputed copies to the
court in connection with the motion of LexisNexis to dismiss the
first amended complaint.

On January 17, 2025, LexisNexis via email acknowledged
receipt of Doe-1's January 2 requests and on January 19 receipt
of Doe-2's January 1 requests.  Instead of simply deleting their
home addresses and telephone numbers, LexisNexis communicated to
plaintiffs that their requests had been processed and that a
security freeze "will be placed on [their] file[s]."  LexisNexis
thereafter sent letters to Doe-1 and Doe-2, confirming that the

---

[3] While plaintiffs list their names in the letter as information
not to be disclosed, they contend that LexisNexis knew they were
only seeking to have their home addresses and unlisted telephone
numbers removed and not their names based on their citation to
Daniel's Law.

security freezes had been placed on their files.  The letters,

which in the record contain no dates, read in relevant part:

>RE: Security Freeze Confirmation
>
>Thank you for your request to place a
>security freeze on your file with LexisNexis
>Risk Solutions. ("LexisNexis") as provided
>by law in your state of residence.  This
>letter is to confirm that a security freeze
>has been placed on your file.
>
>Security freezes will be placed based on
>your state of residency and the customers
>use case.  Based on this information,
>LexisNexis may not release your report(s) or
>score(s) derived for those use cases.  You
>should be aware that applying a security
>freeze to your file may delay, interfere
>with, or prohibit the timely approval of
>applications you make for items such as
>credit, benefits, or insurance underwriting.
>_WARNING TO PERSONS SEEKING A CREDIT FREEZE_
>_AS PERMITTED BY THE CREDIT REPORT PROTECTION_
>_ACT: YOU MAY BE DENIED CREDIT AS A RESULT OF_
>_A FREEZE PLACED ON YOUR CREDIT FILE._  A
>security freeze does not apply to certain
>users of consumer reports, including those
>with whom you already have an existing
>account.  These users request your file for
>the purpose of reviewing that account.
>
>This security freeze is being placed on your
>file pursuant to the security freeze laws in
>your state of residence, NJ, specifically,
>N.J. Stat. Ann. § 56:11-30, 56:11-46,
>13:45F-2.7, 18:45F-5.1 as of the date of
>this letter. . . .  This security freeze
>will remain in place indefinitely until you
>decide to temporarily or permanently remove
>the security freeze.  Below you will find a
>unique Personal Identification Number (PIN)
>that you will need in the event that you
>choose to temporarily or permanently remove
>the security freeze.

[plaintiff's PIN is inserted]

Should you wish to remove your security freeze, you must contact us and provide proper identification and your PIN number.

. . .

If you have any further questions, you may contact the LexisNexis Consumer Center via email at consumer.documents@LexisNexisRisk.com or by phone at 800-456-1244.

. . .

LexisNexis Consumer Center

As a result of the security freezes, both Doe-1 and Doe-2 allege that they "have been unable to obtain or extend various important financial, insurance, and health services, including those that periodically require a credit report pull or updated financial history."  Second Amended Complaint at ¶ 30 (Doc. # 68) ("SAC").

Doe-1 attempted to have LexisNexis remove the freeze on multiple occasions.[4]  He first called LexisNexis to request the lifting of the freeze.  Despite providing his identifying information, he was unable over the phone to have the freeze undone.  As a result, he uploaded multiple forms of

---

4.    Doe-1 does not allege that he provided his personal identification number to request the removal of his security freeze.  While the NJITPA requires that a consumer provide his or her PIN in order to remove a security freeze, the FCRA does not.

identification to the LexisNexis portal.  After two weeks, LexisNexis notified him in a letter that those documents were insufficient.  On February 17, 2024, he emailed LexisNexis requesting the freeze's removal.  LexisNexis has yet to respond to his request.  Doe-1 avers that he "feels that he has exhausted his options, and that LexisNexis is operating in bad faith, punishing him for exercising his rights under Daniel's Law."  SAC at ¶ 36.

Doe-2 further alleges that the security freeze "caused [her] to fear for her financial stability and her ability to access credit in case of an emergency."  Due to her multiple sclerosis, she has not attempted to have LexisNexis eliminate the freeze.  She has a "limited capacity to deal with unwarranted mental and emotional stress" and attempting to remove the security freeze from her account would cause anxiety and increase her "risk of relapses, flare-ups, and exacerbations of multiple sclerosis's most debilitating effects."  Id. at ¶ 42.  She requires "unfettered access to sophisticated and expensive treatments to moderate her medical conditions" which "requires equally unfettered access to credit on an ongoing basis."  Id. at ¶ 41.

III

LexisNexis first makes a facial challenge under Rule 12(b)(1) to plaintiffs' standing.  To have standing, a person

-9-

must have a personal stake in the outcome.  Without standing,
this court does not have subject matter jurisdiction under
Article III of the Constitution as there is no case or
controversy to decide.  TransUnion LLC v. Ramirez, 594 U.S. 413,
422-27.  As previously noted, plaintiffs must clearly plead
facts alleging standing for each element of each claim as well
as for each form of relief being sought.  Id. at 431, 435.

> To establish standing,
>
>> [A] plaintiff must show (i) that he [or she]
>> suffered an injury in fact that is concrete,
>> particularized, and actual or imminent; (ii)
>> that the injury was likely caused by the
>> defendant; and (iii) that the injury would
>> likely be redressed by judicial relief.

Id. at 423 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555,
560-61 (1992)).  Such injury cannot be conjectural or
hypothetical.  Lujan, 504 U.S. at 560.

> Traditional tangible harms, such as monetary loss or
physical injury, "readily qualify as concrete injuries under
Article III."  TransUnion, 594 U.S. at 425.  So do intangible
harms, such as emotional or psychological harm. Id.; Clemens v.
ExecuPharm Inc., 48 F.4th 146, 154 (3d Cir. 2022).  An
intangible harm is concrete either if there is a close
relationship between the injury and a harm historically
recognized as a basis for common-lawsuits or if the Constitution
or Congress has elevated the harm to the status of a legally

-10-

cognizable injury.  See TransUnion, 594 U.S. at 425; see also Long v. Se. Pa. Transp. Auth., 903 F.3d 312, 322-23 (3d Cir. 2018).  As our Court of Appeals explained in Clemens:

> [W]e hold that . . . where the asserted theory of injury is a substantial risk of identity theft or fraud, a plaintiff suing for damages can satisfy concreteness as long as he alleges that the exposure to that substantial risk caused additional, currently felt concrete harms.  For example, if the plaintiff's knowledge of the substantial risk of identity theft causes him to presently experience emotional distress or spend money on mitigation measures like credit monitoring services, the plaintiff has alleged a concrete injury.

48 F.4th at 155-56.

Plaintiffs clearly allege facts that they have suffered tangible, concrete, and particularized monetary and physical harms because of LexisNexis's wrongfully imposed freeze on their credit reports.  In paragraph 30 of the second amended complaint, they state that as a result they "have been unable to obtain or extend various important financial, insurance, and health services, including those that periodically require a credit report pull or updated financial history."

Doe-2 clearly alleges additional concrete and particularized physical harm as well as concrete and particularized emotional harm.  The imposition of the security freeze "caused [her] to fear for her financial stability and her ability to access credit in case of an emergency."  SAC at ¶ 40.

-11-

Furthermore, any effort to attempt to unfreeze her credit file would increase "her mental and emotional stress" and "risk of relapses, flare-ups, and exacerbations of multiple sclerosis's most debilitating effects."  SAC at ¶ 42.

Both plaintiffs have clearly alleged facts demonstrating standing for their claims under § 1681c-1(i)(2)(A) for damages for the improper placement of security freezes on their credit files.

Plaintiffs make the additional claims in paragraph 68 of the second amended complaint.  LexisNexis describes them as "a series of procedural/notice violations" which, it argues, are insufficient to confer standing.  See TransUnion, 594 U.S. at 440; see also Long, 903 F.3d at 325.  Plaintiffs allege in paragraph 68:

> LexisNexis willfully violated the FCRA by:
> a.  Failing to inform Plaintiffs within 5 business days of placing the security freeze of the imposition of a freeze under 1681c-1 of the FCRA, see 15 U.S.C. § 1681c-1(i)(2)(B)(i);
> b.  Failing to inform Plaintiffs within 5 business days after placing the security freezes of their rights under section 1681m(d)(1)(D);
> c.  Failing to provide the summary of rights required under section 1681g;
> d.  Relying on the security freezes in circumstances covered by the exceptions contained in section 1681c-1(i)(4), including citing the security freeze to avoid its obligation to make a consumer report; for use of information in connection with the underwriting of

-12-

insurance; for use of information in
connection with background screening
purposes; and for use of information
for assessing, verifying, or
authenticating Plaintiffs' identities
for purposes other than granting of
credit, or for investigating or
preventing actual or potential fraud.

Plaintiffs' claims under § 1681c-1(i)(2)(B)(i),
§ 1681m(d)(1)(D), and § 1681g are based on the alternative
theory that the credit freeze was properly placed but that
LexisNexis did not timely provide them with certain information
required when a freeze has been properly placed.  Here
plaintiffs have simply not alleged any facts that they have
suffered any monetary, physical or emotional harm as a result of
these violations.  They rely primarily on informational harm to
confer standing.

Our Court of Appeals, just days ago, handed down a
decision involving informational standing.  <u>Public Interest
Legal Foundation v. Secretary Commonwealth of Pennsylvania</u>, No.
23-1590, 2025 WL 1242229 (3d Cir. Apr. 25, 2025).[5]  The Court
made clear that a plaintiff to establish informational standing
must prove "a <u>nexus</u> among the omitted information . . . , the
purported harm <u>actually caused</u> by the specific violation, and
the '<u>concrete interest</u>' that Congress identified as 'deserving

---

[5] Unlike the present action, the Court of Appeals decided the
standing issue in <u>Public Interest</u> on the record after the
District Court had ruled on summary judgment motions.

of protection' when it created the disclosure requirement." Id. at *6 (quoting Kelly v. RealPage, Inc., 47 F.4th 202, 213 (3d Cir. 2022)).  A violation of a statute with a disclosure requirement is not sufficient in and of itself to support standing.  Rather, a plaintiff must demonstrate "a nexus among a downstream consequence, his alleged harm, and the interest Congress sought to protect."  Pub. Int. Legal Found., 2025 WL 1242229, at *6.

In Public Interest, the plaintiff was a "public interest organization" seeking to obtain information from the Pennsylvania Secretary of the Commonwealth under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.  Id. at *1.  Plaintiff there maintained that a computer glitch at the Pennsylvania Department of Transportation had resulted in the registration of ineligible persons to vote when they applied for or sought to renew their drivers' licenses or vehicle registrations.  Id.  The Court ruled that the aim of the statute was to increase citizen participation in federal elections.  Id. at *7.  While the statute contains a provision for public inspection of records related to the accuracy of official voter lists and a right to sue, the Court concluded that plaintiff, an out-of-state organization, did not show that its desire to protect voting rights was hindered by the refusal of the

Secretary of the Commonwealth to turn over records.  Id. at *8-9.

The Court emphasized that NVRA had a broader purpose than the access to records.  It explained that "if disclosure of information is the essence of a statute, as it is in [the Freedom of Information Act], standing would easily be met because public availability of information is itself the interest that Congress seeks to protect under such statutes."  Id. at *5.

Here Doe-1 and Doe-2 have not clearly pleaded that the absence of information required to be furnished under the FCRA caused them any harm.  Even if they have done so, they have not pleaded a nexus among the harm, the consequence, and the interest Congress sought to protect.

The FCRA is designed to insure "fair and accurate credit reporting" and the exercise by consumer reporting agencies of "their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy."  See 15 U.S.C. § 1681(a).  In essence, the purpose of the FCRA is to require fair, impartial and accurate credit reports and to protect the consumer's privacy when directed to do so by the consumer.  While the FCRA requires disclosure of specified information to a consumer under certain circumstances, it is not

the essence of the statute so as to create informational standing without more.

The plaintiffs' position that they suffered informational harm is undermined not only by what they do not allege but also by what they do. According to the second amended complaint, they had information at the outset from LexisNexis as to the adverse consequences that may occur from the imposition of a security freeze. In its letters to plaintiffs, LexisNexis advised:

> You should be aware that applying a security freeze to your file may delay, interfere with, or prohibit the timely approval of applications you make for items such as credit, benefits, or insurance underwriting. WARNING TO PERSONS SEEKING A CREDIT FREEZE AS PERMITTED BY THE CREDIT REPORT PROTECTION ACT: YOU MAY BE DENIED CREDIT AS A RESULT OF A FREEZE PLACED ON YOUR CREDIT FILE. A security freeze does not apply to certain users of consumer reports, including those with whom you already have an existing account. These users request your file for the purpose of reviewing that account.

The letters further advised them on the steps to take to remove the freeze.

These letters reveal that plaintiffs had significant information. Plaintiffs do not state what material information was omitted so as to cause them harm. As noted, omitted information is a necessary ingredient for informational standing. In sum, plaintiffs have not pleaded what is required

for informational standing for claims under § 1681c-1(i)(2)(B)(i), § 1681m(d)(1)(D), and § 1681g.

Finally, plaintiffs assert a claim under § 1681c-1(i)(4). Under this provision, a consumer reporting agency is still required to supply a credit report for certain uses notwithstanding the placement of a security freeze by the consumer. Plaintiffs maintain that LexisNexis wrongfully relied on the freeze when it should have supplied their credit reports to third parties. Among other situations, the freeze does not control when a credit report is sought by "a person using information in connection with the underwriting of insurance." See 15 U.S.C. § 1681c-1(i)(4)(H). The facts pleading a concrete and particularized harm fit only this situation among the situations enumerated under § 1681c-1(i)(4). In paragraph 30 of the second amended complaint, plaintiffs allege that as a result of the actions of LexisNexis, they have been unable to obtain or extend insurance services. Accordingly, plaintiffs have properly pleaded standing for their claim under § 1681c-1(i)(4)(H).

IV

Even if plaintiffs have standing, LexisNexis maintains that this action should be dismissed under Rule 12(b)(6) as plaintiffs have not stated any claim upon which relief can be granted. To avoid dismissal, plaintiff must state facts that

-17-

make the claims plausible.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

First, LexisNexis argues that plaintiffs have no claim against it for the imposition of a credit freeze without the permission of the consumer because neither § 1681c-1(i)(2)(A) nor any other provision of the FCRA prohibits it from doing so. The FCRA provides that a consumer reporting agency may place a security freeze on a consumer's account "[u]pon receiving a direct request from" either a consumer or his or her representative.  15 U.S.C. §§ 1681c-1(i)(2)(A), 1681c-1(j)(2)(A).

The FCRA specifies only two circumstances when a consumer reporting agency may impose a security freeze: (1) when it receives a direct request from the consumer or (2) when it receives a direct request from the consumer's representative. The FCRA authorizes no other instance for the placement of a security freeze.  By enumerating two circumstances, Congress is necessarily excluding all others.  In interpreting § 1681c-1(i)(2)(A), it is appropriate for the court to apply the well-established canon of statutory construction that the expression of one thing means the exclusion of other things (expressio unius est exclusio alterius).  See United States v. Nasir, 17 F.4th 459, 471-72 (3d Cir. 2021); Collinsgru v. Palmyra Bd. of Educ., 161 F.3d 225, 232 (3d Cir. 1998), abrogated on other

-18-

grounds, <u>Winkelman v. Parma City Sch. Dist.</u>, 550 U.S. 516
(2007); <u>Moyer v. Showboat Casino Hotel</u>, 56 F. Supp. 2d 498, 502
(D.N.J. 1999).  Black's Law Dictionary contains an apt
illustration: "[w]hen a car dealer promises a low financing rate
to 'purchasers with good credit,' it is entirely clear that the
rate is not available to purchasers with spotty credit."
Expressio unius est exclusion alterius, <u>Black's Law Dictionary</u>
(12th ed. 2024) (quoting Antonin Scalia & Bryan A. Garner,
<u>Reading Law: The Interpretation of Legal Texts</u> 107 (2012)).

  The argument of LexisNexis that plaintiffs have not
stated a claim under § 1681c-1(i)(2)(A) also runs counter to the
findings of Congress incorporated into the FCRA.  These findings
recognize that:

> (1) The banking system is dependent upon
> fair and accurate credit reporting.
> Inaccurate credit reports directly
> impair the efficiency of the banking
> system, and unfair credit reporting
> methods undermine the public confidence
> which is essential to the continued
> functioning of the banking system.
>
> ...
>
> (3) Consumer reporting agencies have
> assumed a vital role in assembling and
> evaluating consumer credit and other
> information on consumers.
>
> (4) There is a need to insure that consumer
> reporting agencies exercise their grave
> responsibilities with fairness,
> impartiality, and a respect for the
> consumer's right to privacy.

15 U.S.C. § 1681(a).

A person's credit history is essential information for the proper functioning of the banking system and commerce in general. Freezing a consumer's credit report without the consumer's approval impedes this system. It would be an unreasonable reading of the FCRA to allow consumer reporting agencies, which are in the business of providing credit reports, to block access to a consumer's credit reports with impunity when the consumer's permission has not been obtained. It would also constitute an "unfair credit reporting method." Such action would be contrary to a consumer reporting agency's "vital role in assembling and evaluating consumer credit and other information on consumers." Such action would also undermine the purpose of the FCRA "to insure that consumer reporting agencies exercise their grave responsibilities with <u>fairness</u>, <u>impartiality</u> and a <u>respect for the consumer's right to privacy</u>." <u>Id.</u> at § 1681(a)(4) (emphasis added). Defendant's position that it cannot be liable for placing a credit freeze without the request of the consumer lacks merit.

LexisNexis further argues that the law does not mandate that it supply credit reports and therefore that cannot be held liable if it does not do so because of a credit freeze it has unilaterally imposed. It is, of course, true that LexisNexis is not mandated to undertake the business of a consumer reporting agency. Nonetheless, once it enters the

-20-

business, it must act within the bounds set by the FCRA.  It must exercise its grave responsibilities impartially.  Again, it cannot negligently or willfully freeze a consumer's credit file as alleged here.

The court has held that plaintiffs do not have standing for their claims under § 1681c-1(i)(2)(B)(i), § 1681m(d), and § 1681g of the FCRA.  Even if standing does exist, plaintiffs have not stated claims upon which relief can be granted under these provisions.

Subsection 1681c-1(i)(2)(B)(i) requires that "[n]ot later than 5 business days after placing a security freeze under subparagraph (A), a consumer reporting agency shall--(i) send confirmation of the placement to the consumer . . . ."  LexisNexis asserts that this claim fails because the second amended complaint does not set forth facts that the freezes were placed more than 5 business days before LexisNexis confirmed the freezes to the plaintiffs.

Plaintiffs do not allege either the date LexisNexis imposed the security freezes or the date they received notice confirming the security freezes.  They merely plead that LexisNexis informed them that a security freeze "will be placed on [their] files" and that at some unidentified point thereafter they received notice that such freezes were imposed.  Absent is any detail on the timing of the imposition and the timing of the

confirmation.  Thus, it is speculation as what the time interval was.  Plaintiffs do not meet the plausibility test. Accordingly, plaintiffs have not stated a claim under § 1681c-1(i)(2)(B)(1).

Subsection 1681m(d)(1) imposes requirements on persons such as insurance companies, lenders, or employers when they use a consumer report in connection with a credit or insurance transaction not initiated by the consumer.[6]  When providing a consumer with any written solicitation, these persons must include "clear and conspicuous" statements informing the consumer that he or she has the right to prohibit information contained in his or her credit file from being used in connection with such transactions.

LexisNexis maintains there is no private right of action under § 1681m.  It is correct.  Subsection 1681m(h)(8) of the FCRA provides that § 1681m may not be enforced by § 1681n and § 1681o of the FRCA, which impose civil liability for willful or negligent noncompliance.  Rather, § 1681m may only be enforced by the Federal Trade Commission, other federal administrative agencies, and state officials or agencies

---

6.  Such persons may receive credit information from a consumer reporting agency in order to solicit business from certain consumers.  For example, a telephone company may send an offer for a "free phone" to certain consumers after reviewing their credit reports.  See, e.g., Murray v. New Cingular Wireless Servs., Inc., 523 F.3d 719, 722 (7th Cir. 2008).

pursuant to § 1681s of the FCRA.  Because plaintiffs have no private right of action for any purported violation of § 1681m, their claim under § 1681m(d)(1)(D) is not viable.[7]

LexisNexis next contends that plaintiffs fail to state a claim under § 1681g of the FCRA.  This section compels consumer reporting agencies to provide a summary of rights to consumers when they either request information regarding their credit file or when they express a belief that they have been a victim of identity theft.  See 15 U.S.C. §§ 1681g(a); (d)(2).

Plaintiffs do not allege any request.  Their emails on January 1 and 2 did not request the disclosure of any information under § 1681g(a).  Nor do they aver a belief that they have been the victim of identity theft.  Plaintiffs do not state claims under § 1681g.

Lastly, LexisNexis asserts that plaintiffs do not state a claim under § 1681c-1(i)(4) which obligates a consumer reporting agency to supply a credit report under certain circumstances even if a consumer had requested a freeze.  This obligation on the part of the consumer reporting agency exists

---

[7] Even if a private right of action existed, Plaintiffs fail to allege any facts to state that LexisNexis was obligated to provide such a clear and conspicuous statement to plaintiffs. There are no allegations in the second amended complaint to show that LexisNexis "use[d] a consumer report on any consumer in connection with any credit or insurance transaction that is not initiated by the consumer."  Id. at § 1681m(d)(1).

when a person requests a report in connection with the underwriting of insurance.  See 15 U.S.C. § 1681c-1(i)(4)(H). Plaintiffs allege that LexisNexis improperly relied on the security freeze in not providing their credit reports in this situation.  Plaintiffs aver in paragraph 30 of the second amended complaint that as a result of the actions of LexisNexis, they "have been unable to obtain or extend . . . insurance . . . ."  This is a viable claim.

V

The motion of LexisNexis to dismiss the second amended complaint will be granted in part and denied in part. Plaintiffs have standing and state viable claims under § 1681c-1(i)(2)(A) and § 1681c-1(i)(4)(H) of the FCRA.  To this extent the motions of LexisNexis under Rule 12(b)(1) and Rule 12(b)(6) will be denied.  The motion of LexisNexis under Rule 12(b)(1) will otherwise be granted.  Plaintiffs' allegations that LexisNexis violated § 1681c-1(i)(2)(B)(i), § 1681m(d)(1)(D), and § 1681g of the FCRA will be dismissed for lack of standing.

BY THE COURT:

/s/  Harvey Bartle III
                                                    J.

-24-