**LOWENSTEIN SANDLER LLP**
A. Matthew Boxer
Gavin J. Rooney
Rasmeet K. Chahil
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500

*Attorneys for Defendant*
*LexisNexis Risk Solutions Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE-1 and JANE DOE-2, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LEXISNEXIS RISK SOLUTIONS INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, <br><br> Defendants. | Civil Action No.: 1:24-cv-04566 <br><br> Honorable Harvey Bartle III, U.S.D.J. |

### DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................1

BACKGROUND ......................................................................................................1

    I.   Discovery..............................................................................................1

    II.  The Proposed Amended Complaint.....................................................4

ARGUMENT ............................................................................................................9

    I.   Legal Standard .....................................................................................9

    II.  LNRS Would be Prejudiced if Plaintiffs Are Granted Leave to Amend. .....10

    III. The Proposed Amended Complaint Would be Futile. ..................................12

CONCLUSION .......................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                  **Page**

*Am. Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974)..................................................................................................13

*In re Charys Holding Co.*,
    443 B.R. 638 (Bankr. D. Del. 2011)..........................................................................11

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
    252 F.3d 267 (3d Cir. 2001) .......................................................................................10

*Dysthe v. Basic Rsch., L.L.C.*,
    273 F.R.D. 625 (C.D. Cal. 2011)................................................................................12

*Harrison Beverage Co. v. Dribeck Imps., Inc.*,
    133 F.R.D. 463 (D.N.J. 1990).......................................................................................9

*Holst v. Oxman*,
    290 F. App'x 508 (3d Cir. 2008) ..................................................................................9

*Ickes v. Borough of Bedford*,
    271 F.R.D. 458 (W.D. Pa. 2010) ................................................................................11

*Long v. Wilson*,
    393 F.3d 390 (3d Cir. 2004) .......................................................................................10

*N. Sound Cap. LLC v. Merck & Co.*,
    938 F.3d 482 (3d Cir. 2019) .......................................................................................13

*Prime Ins. Syndicate v. United Risk Mgmt. Servs., Inc.*,
    No. 03–1050, 2006 U.S. Dist. LEXIS 50670 (D.N.J. July 25, 2006) ................11

*Shane v. Fauver*,
    213 F.3d 113 (3d Cir. 2000) .......................................................................................10

*Walton v. Eaton Corp.*,
    563 F.2d 66 (3d Cir. 1977) .........................................................................................12

**Other Authorities**

Fed. R. Civ. P. 15..................................................................................................................9

Defendant LexisNexis Risk Solutions Inc. ("LNRS") respectfully submits this brief in opposition to Plaintiffs' Motion for Leave to File an Amended Complaint (the "Motion").

## PRELIMINARY STATEMENT

Plaintiffs' attempt to essentially re-start this case nearly two years into this litigation with yet another amended complaint should be rejected. With merely three months remaining in the discovery schedule, and evidently now realizing they had selected a named plaintiff who presents facts and circumstances less desirable than initially believed, Plaintiffs belatedly seek to send this case back to the discovery starting line with two new named plaintiffs. That would be prejudicial to LNRS.

It also would be futile, as the two plaintiffs sought to be added already have filed the same allegations in a separate litigation. A plaintiff has no right to maintain two separate actions involving the same subject matter against the same defendant. The proposed amendment should be rejected.

## BACKGROUND

### I. Discovery

Current Plaintiffs John Doe-1 and Jane Doe-2, proceeding anonymously on the docket, filed this putative class action ("*Doe* Class Action") in March 2024, seeking to represent a class of "'covered persons' under New Jersey's Daniel's Law" and alleging that LNRS improperly placed security freezes on their LNRS consumer

reports. (*See Doe* Dkt. 1-1 ("*Doe* Compl."); *Doe* Dkt. 47.) Plaintiff Doe-1 alleged that he suffered injury because the freeze prevented him from securing credit. (*See Doe* Compl. ¶ 30.) Following motion practice and two amended complaints, the Court set a May 22, 2026 deadline for the parties to complete "discovery, focusing on class action certification," as well as a June 5, 2026 deadline for a motion for class certification. (*See Doe* Dkt. 88 ¶ 1–2.)

Plaintiffs took no action for months thereafter. (A. Matthew Boxer Certification, dated Feb. 17, 2026 ("Boxer Cert.") ¶ 2.) LNRS served Plaintiffs with interrogatories and requests for production on October 1, 2025. (*Id.* ¶ 3.) In response, Plaintiffs provided Doe-2's interrogatory responses, written responses to document requests, and a one-page document production on December 16, 2025. (*Id.* ¶ 17.) They have provided no discovery responses as to Doe-1. On January 22, 2026, LNRS noticed Doe-1's deposition. (*Id.* ¶ 18.)

Given Doe-1's allegations that he was unable to access credit due to the security freeze on his LNRS consumer report, LNRS also sought third-party discovery. (*Id.* ¶ 4.) LNRS invested considerable time and expense on those efforts; LNRS's attorneys spent many hours drafting and serving document subpoenas, meeting and conferring with the subpoenaed parties, and analyzing their document productions. (*Id.*)

For example, on October 20, 2025, LNRS served a document subpoena on Toronto Dominion Bank, N.A. ("TD Bank"), one of the lenders at issue. (*Id.* ¶ 5.) The subpoena sought documents concerning a Home Equity Line of Credit ("HELOC") loan that Doe-1 had obtained from TD Bank. (*Id.*, Ex. 1 at 9–10.) In response, TD Bank produced 139 documents to LNRS. (Boxer Cert. ¶ 7.) The production encompassed the full history of Doe-1's HELOC loan, spanning three principal categories: (1) application materials, including the loan application, related correspondence, and required disclosure forms; (2) records of the searches TD Bank conducted in connection with the HELOC application; and (3) the underlying mortgage documents, including the HELOC agreement, mortgage agreement, and related instruments. (*Id.*) Review of those documents revealed that Doe-1 applied for a HELOC loan through TD Bank after the security freeze had been placed on his LNRS report and that the loan was approved shortly thereafter. (*Id.* ¶ 8.) Thus, it turned out that there is no evidence that the security freeze adversely impacted Doe-1 because he was able to secure the desired credit. The documents show that TD Bank simply relied on Doe-1's credit information from Equifax—not LNRS—to approve the loan. (*Id.*)

Discovery from Capital One Financial Corporation ("Capital One") yielded similar results. Following a subpoena and an ensuing meet and confer, Capital One produced documents concerning Doe-1's credit card application, including

supporting documentation, records of credit searches Capital One conducted in connection with the application, and correspondence between Doe-1 and Capital One. (*Id.* ¶ 11.) Those documents establish that Doe-1 applied for a Capital One credit card after the LNRS security freeze was implemented, and that Capital One approved the application. (*Id.* ¶ 12.) Capital One simply relied on Doe-1's credit information from Experian in providing the approval. (*Id.*) The freeze implemented at LNRS did not affect the application.

The evidence demonstrated the absence of any adverse impact on Doe-1 resulting from the security freeze at LNRS.

## II.     The Proposed Amended Complaint

On November 14, 2025, an attorney from Morgan & Morgan P.A. ("Morgan"), then-counsel for Plaintiffs, informed LNRS's counsel that both Doe-1 and Doe-2 had decided not to move forward as named plaintiffs and would therefore not be responding to Defendant's discovery requests. (*See* Boxer Cert. ¶ 13; *id.*, Ex. 3.)  Plaintiffs' counsel further stated that Plaintiffs would be amending the complaint the following week to add new plaintiffs, who he did not identify. (*Id.*, Ex. 3.)

While Plaintiffs' current Motion references "personal circumstances that impacted John Doe-1's ability to continue to act as a class representative," (Pl. Br. at 2), the Morgan attorney made no reference to that at the time, stating instead that

-4-

both named plaintiffs had decided not to move forward. (Boxer Cert. ¶ 13.) He did not mention anything regarding personal circumstances that Doe-1 was experiencing. (*Id.* ¶ 14.)

LNRS did not receive a proposed amended complaint the following week. (*Id.* ¶ 15.) Instead, weeks later, one of the other law firms representing Plaintiffs contacted counsel for LNRS and said that, contrary to what had been represented previously, Doe-2 would remain in the case as a plaintiff, that Doe-1 was still not going to proceed, and that they would be seeking to add two more plaintiffs. (*Id.*) When we noted the evolving representations and that the Morgan attorney had declined to provide discovery responses from Doe-2 based on her allegedly imminent exit from the case, we were informed that Morgan was no longer involved in the case and that the Morgan attorney was mistaken in what he had represented to us. (*Id.* ¶ 16.) Counsel agreed to provide discovery responses on behalf of Doe-2 and subsequently did so. (*Id.* ¶ 17.)

Despite LNRS requesting such information, Plaintiffs have not yet explained to LNRS the cited personal circumstances regarding Doe-1. (*Id.* ¶ 19.) Instead, they have offered to schedule a meet-and-confer on that issue, but it has not yet been successfully scheduled. (*Id.*)

In the midst of Plaintiffs' aforementioned non-action in the *Doe* Class Action, Plaintiffs' counsel filed another, overlapping lawsuit against LNRS. (*See J.V. v.*

*LexisNexis Risk Sols. Inc.*, No. 1:25-cv-18288-HB (the "*J.V.* Case"), Dkt. 1-1 at PageID 68–115 ("*J.V.* Compl.").) In that *J.V.* Case, nine individual plaintiffs claiming to be "covered persons" under Daniel's Law allege LNRS failed to lift the same security freezes at issue in the *Doe* Class Action. (*Id.* ¶¶ 8–9, 11, 13–14.) The *J.V.* Case arises out of the same facts and underlying transactions as the *Doe* Class Action.

Plaintiffs now seek leave to file an amended complaint (the "Proposed Third Amended Complaint") that would add two plaintiffs from the *J.V.* Case as named plaintiffs in the present case. (*Doe* Dkt. 95-3 ("Proposed Third Am. Compl.") ¶¶ 38–68.) In fact, the proposed new pleading includes nearly identical factual allegations as the *J.V.* complaint. (*See generally id.*) A few examples are set forth in the comparative chart below, which quotes from the two pleadings (D.M. is Doe-3 and P.J. is Doe-4):

| *Doe* Proposed Third Amended Complaint | *J.V.* Complaint |
|---|---|
| 55. In December 2024, Officer DOE-4 sought to purchase a Toyota Tacoma. Anticipating that a credit check would be required, he called Defendants on December 10, 2024, and again requested that the security freeze be lifted to facilitate the vehicle purchase. After verifying his identity, the LexisNexis representative instructed him to upload his identifying documents again. The representative advised that processing the request | 103. In December 2024, Officer P.J. sought to purchase a Toyota Tacoma. Anticipating that a credit check would be required, he called Defendants on December 10, 2024, and again requested that the security freeze be lifted to facilitate the vehicle purchase. After verifying his identity, the LexisNexis representative instructed him to upload his identifying documents again. The representative advised that processing the request |

| | |
|---|---|
| could take up to 24 hours. Officer DOE-4 also provided the representative his PIN. | could take up to 24 hours. Officer P.J. also provided the representative his PIN. |
| 56. Following these instructions, Officer DOE-4 again uploaded copies of his identifying documents. Upon submission, Officer DOE-4 received a confirmation message via the LexisNexis web portal, indicating that the documents had been received. | 104. Following these instructions, Officer P.J. again uploaded copies of his driver's license and Social Security card. Upon submission, Officer P.J. received an automated confirmation message via the LexisNexis web portal, indicating that the documents had been received. |
| 57. Later that day, Officer DOE-4 visited a Toyota dealership, intending to place a deposit on a specific vehicle (the "Desired Tacoma"). The Desired Tacoma was in pristine condition and met all of Officer DOE-4's specifications. | 105. That same day, Officer P.J. visited the Morristown Toyota dealership, intending to place a deposit on a specific 2022 Tacoma TRD Sport for $33,873.21 ("Desired Tacoma"). The Desired Tacoma was in pristine condition and met all of Officer P.J.'s specifications. |
| 58. However, Officer DOE-4 was unable to proceed with the purchase or place a deposit on the vehicle due to the ongoing security freeze. | 106. However, Officer P.J. was unable to proceed with the purchase due to the ongoing security freeze. |

(*Id.* ¶¶ 55–58; *J.V.* Compl. ¶¶ 103–06.) In total, dozens of paragraphs in the Proposed Third Amended Complaint are copied nearly verbatim from the *J.V.* complaint. (*Compare* Proposed Third Am. Compl. ¶¶ 38–68 *with J.V.* Compl. ¶¶ 22, 24, 85–119.)

In both cases, proposed plaintiff Doe-3 alleges that as a covered person under Daniel's Law, he requested that LNRS not disclose certain personal information and that in response LNRS imposed a security freeze. (*See* Proposed Third Am.

Compl. ¶¶ 38–43; *J.V.* Compl. ¶¶ 85–89.)  He further alleges that because of the freeze, he had difficulty obtaining auto insurance. (*See* Proposed Third Am. Compl. ¶¶ 44–47; *J.V.* Compl. ¶¶ 90–93.) (In the *J.V.* Complaint, D.M./Doe-3 states that he obtained a driver's abstract from the Department of Motor Vehicles and then successfully secured the insurance, but he omits that from the Proposed Third Amended Complaint in the *Doe* Class Action. (*See J.V.* Compl. ¶ 94.))

Similarly, Doe-4 seeks to allege in both cases that he requested that LNRS refrain from disclosing his personal information and in response LNRS imposed a security freeze. (*See* Proposed Third Am. Compl. ¶¶ 49–52; *J.V.* Compl. ¶¶ 97–100.) He claims that due to the freeze, he was unable to purchase a particular vehicle and by the time LNRS lifted the freeze, that car had been sold to another buyer and he had to purchase a different vehicle. (*See* Proposed Third Am. Compl. ¶¶ 55–63; *J.V.* Compl. ¶¶ 103–113.) He further alleges that because of the security freeze, he has been unable to "co-sign on a business bank account with his wife." (Proposed Third Am. Compl. ¶ 65; *J.V.* Compl. ¶ 115.) The allegations in the two pleadings are nearly identical.

In addition to copying and pasting from the *J.V.* Complaint, the Proposed Third Amended Complaint inexplicably still contains various references to and allegations regarding Doe-1, despite Doe-1 supposedly withdrawing as a plaintiff. (*See* Proposed Third Am. Compl. ¶ 5.)

The Proposed Third Amended Complaint also strangely includes allegations that are contrary to Doe-2's sworn discovery responses. Specifically, Doe-2 alleges she "spent hours helping another 'covered person' remove their own unwanted credit freeze," while Doe-2's responses to interrogatories state that she "has not helped or attempted to help any other Covered Person with removing a security freeze." (*Id.* ¶ 37; Boxer Cert., Ex. 4.)

In light of the above, and consistent with Fed. R. Civ. P. 15, LNRS declined to provide consent to the proposed new complaint. Plaintiffs then filed this Motion.

## ARGUMENT

### I. Legal Standard

Within specified timelines, a party may file an amended complaint once; further amendments require consent of the opposing party or leave of court. Fed. R. Civ. P. 15. The Court may deny a motion for leave to amend when, for example, (1) the amendment would prejudice the non-moving party, or (2) the amendment would be futile. *Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008) (citation omitted). "[P]rejudice to the opposing party is greater where the tardy amendment will require a reopening of discovery, and it is lessened when the new issue presents solely an issue of law to be determined upon application to the existing facts." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990). The non-moving party may establish prejudice by showing, for example, that the amended

-9-

pleading would require the non-moving party to expend significant additional resources to conduct discovery or would delay the resolution of the dispute. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). With respect to futility, courts will consider whether the amended pleading states a viable claim. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted).

### II.    LNRS Would be Prejudiced if Plaintiffs Are Granted Leave to Amend.

Permitting Plaintiffs to file another amended pleading would prejudice LNRS, as only three months remain in the discovery schedule, and LNRS has spent significant time and resources taking discovery involving Doe-1. LNRS will essentially have to re-start discovery regarding two proposed new plaintiffs, each of whom have nuanced circumstances and allege different harms as a result of their security freezes. In the proposed pleading, Doe-3 alleges, for example, he was unable to timely obtain auto insurance and Doe-4 claims he was unable to purchase a particular vehicle and co-sign a bank account. (*See* Proposed Third Am. Compl. ¶¶ 44–47, 55–68.) All of these new claims will require investigation and third-party discovery, akin to the discovery LNRS already has taken regarding Doe-1.

The addition of two entirely new plaintiffs at this late stage will force LNRS to incur costs that are excessive and prejudicial to LNRS. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 274–75 (3d Cir. 2001) (holding that trial court did not abuse its discretion in denying motion for leave to amend when "the

proposed amendment would essentially force the [defendant] to begin litigating this case again") (citation omitted); *Ickes v. Borough of Bedford*, 271 F.R.D. 458, 461 (W.D. Pa. 2010) ("Beginning another round of discovery would be quite burdensome of the Defendants, as well as the Court, and constitute an undue prejudice."). Additionally, granting leave to amend would delay resolution of the case. *See Prime Ins. Syndicate v. United Risk Mgmt. Servs., Inc.*, No. 03-1050 (SRC), 2006 U.S. Dist. LEXIS 50670, at *13 (D.N.J. July 25, 2006). As noted, class certification discovery and motion deadlines are rapidly approaching in May and June 2026, respectively. (*Doe* Dkt. 88 ¶¶ 1–3.) LNRS thus requests that if the Court grants the Motion, the class certification discovery schedule be extended. *See In re Charys Holding Co.*, 443 B.R. 638, 644 (Bankr. D. Del. 2011).

If the Court is inclined to grant the Motion, LNRS should at a minimum be permitted to depose Doe-1, who possesses unique facts and circumstances relevant to class certification. For example, third-party discovery indicates that Doe-1 applied for and *received* credit while the LNRS security freeze was in place, with that freeze having no impact on his ability to obtain a loan and credit card. (Boxer Cert. ¶¶ 8, 12.) In contrast, Doe-3 and Doe-4 do not claim an inability to access consumer credit; rather, their claims appear primarily to be related to insurance underwriting. (*See* Proposed Third Am. Compl. ¶¶ 38–68.) Doe-1's situation demonstrates that each member of the proposed class has unique circumstances that

make it impossible to adjudicate issues on a class-wide basis, including whether the individual applied for credit, whether that creditor obtained a consumer report from LNRS, and whether that creditor obtained consumer reports from other sources. *See, e.g.*, *Dysthe v. Basic Rsch., L.L.C.*, 273 F.R.D. 625, 629 (C.D. Cal. 2011) (holding that plaintiff in consumer class action was still subject to deposition after dismissal as named plaintiff, where defendants had properly noticed the deposition).

### III. The Proposed Amended Complaint Would be Futile.

During the pendency of the *Doe* Class Action, Plaintiffs' counsel filed the overlapping *J.V.* Case against LNRS. Not only do the two cases involve identical underlying transactions and facts and essentially the same legal claims, but Doe-3 and Doe-4 in the Proposed Third Amended Complaint are ***already plaintiffs in the J.V. Case***. Indeed, the complaints in the two cases include nearly identical allegations.

Plaintiffs' tactics are procedurally fatal. A plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). In such circumstances, dismissal is a potential remedy. *Id.* at 70. By filing the *J.V.* Case (originally in state court, prior to removal to federal court by LNRS) while also seeking leave to amend the *Doe* Complaint to include plaintiffs

from the *J.V.* Case, Plaintiffs are improperly attempting to litigate this case on two fronts for strategic reasons.

These maneuvers are contrary to class action case law and procedures. In class actions, potential class members may either: 1) participate in the class; or 2) opt out and file a separate lawsuit. *See N. Sound Cap. LLC v. Merck & Co.*, 938 F.3d 482, 492–93 (3d Cir. 2019). They must choose one of those options; they cannot do both. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 549 (1974) (noting that putative class members "are either nonparties to the suit and ineligible to participate in a recovery or to be bound by a judgment, or else they are full members who must abide by the final judgment, whether favorable or adverse").

The *J.V.* Case is essentially an opt-out case as it contains claims that overlap with those in the *Doe* case, but is brought on behalf of nine individual plaintiffs. (*See J.V.* Compl.) Yet, the Plaintiffs in the *J.V.* Case now seek to become named plaintiffs in the *Doe* Class Action, which would create a situation where class action representatives are simultaneously plaintiffs in a separate action against the same defendant based on the same underlying transactions and facts. This is improper. The plaintiffs in the proposed amended complaint are not viable plaintiffs in this proceeding. *E.g.*, *Am. Pipe & Constr. Co.*, 414 U.S. at 549; *N. Sound Cap. LLC*, 938 F.3d at 492–93.

## CONCLUSION

For the reasons set forth herein, LNRS respectfully requests that Plaintiffs' Motion be denied.

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

*Attorneys for Defendant
LexisNexis Risk Solutions Inc.*

Dated: February 17, 2026

*s/ A. Matthew Boxer*
A. Matthew Boxer, Esq.
Gavin J. Rooney, Esq.
Rasmeet K. Chahil, Esq.