**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JANE DOE-2, JOHN DOE-3, and JOHN DOE-4, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LEXISNEXIS RISK SOLUTIONS, INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,<br><br>Defendants. | Civil Action No. 1:24-cv-04566<br>Honorable Harvey Bartle, III, U.S.D.J. |

---

### PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

---

*Attorneys for Plaintiffs*

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
1 Boland Dr., Suite 101
West Orange, New Jersey 07052
Telephone: 973-577-5500
Email: rparikh@pemlawfirm.com
         keinhorn@pemlawfirm.com
         jmerejo@pemlawfirm.com

**BOIES SCHILLER FLEXNER LLP**
Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

Mark C. Mao (admitted pro hac vice)
Julia Bront (admitted pro hac vice)
44 Montgomery Street, 41st Floor
San Francisco, California 94104
Telephone: (415) 293-6800
Email: mmao@bsfllp.com
         jbront@bsfllp.com

James Lee (admitted pro hac vice)
100 SE Second Street, Suite 2800

Miami, Florida 33131
Telephone: (305) 357-8434
Email: jlee@bsfllp.com

Eric Palmer (admitted pro hac vice)
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 377-4250
Email: epalmer@bsfllp.com

**INTRODUCTION**

1.      Daniel's Law[1] was passed unanimously by the New Jersey Legislature to provide judges, prosecutors, and law enforcement officers—and their families—with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers. This right was intended to allow these public servants to better protect themselves and their family members against a wide range of harassment and threats, including threats of physical violence and death. Recognizing the severity of the risks involved in public service, the Legislature also provided these individuals with meaningful ways for them to enforce their rights against uncooperative profit-seeking data brokers such as LexisNexis Risk Solutions, Inc. ("LexisNexis"). Plaintiffs are some of the over 18,000 "covered persons" who exercised their legal right under New Jersey's Daniel's Law to request that LexisNexis and other commercial data brokers no longer disclose or otherwise make available their home addresses or unpublished home telephone numbers.

---

[1] P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1, et seq. and N.J.S.A 56:8-166.1.

2

2.     Instead of fully complying with those requests, LexisNexis chose to engage in an unlawful campaign to intimidate and retaliate against Plaintiffs and other members of the alleged class. Rather than fully comply with Daniel's Law, as required, LexisNexis set into motion a campaign to freeze the credit reports of Plaintiffs and others, doing so in retaliation for the efforts by Plaintiffs and others to exercise their rights under Daniel's Law.

3.     The unlawful actions by LexisNexis are putting the lives and safety of these thousands of public servants at risk. The news is filled with horrific stories of law enforcement officers and judges—and their family members—being threatened, harassed, hunted down, injured, and killed by those with perceived grievances. Daniel's Law allows active and retired law enforcement officers, prosecutors, and judges—and their eligible family members—to protect their home addresses and unpublished home telephone numbers from disclosure by data brokers like LexisNexis, who regularly profit from the selling and furnishing of that information to customers willing to pay. The law is clear, and Defendants are very clearly not in compliance with the law.

4.     Instead of working to protect those who faithfully protect others by complying with Daniel's Law, LexisNexis retaliated against Plaintiffs and others by implementing unrequested unlawful, and harmful "security freezes" (also referred to as credit freezes). Plaintiffs never requested a credit report freeze (indeed, none of those words appear in the correspondences sent to LexisNexis), but LexisNexis responded to their Daniel's Law requests by doing just that— freezing Plaintiffs' credit reports. LexisNexis openly acknowledged in their letters of retribution that this credit freeze may result in Plaintiffs being denied crucial financial, insurance, and health services.

3

5.      LexisNexis's response to these Daniel's Law requests should never have been a close call, and never should have triggered any credit freezes. LexisNexis in its own public materials recognizes the difference between a Daniel's Law request and a request for a credit freeze. They are two distinct types of requests governed by different laws. Plaintiffs' experience highlights the reality that a credit freeze does not constitute compliance with Daniel's Law: Plaintiffs sent requests to LexisNexis under Daniel's Law, and LexisNexis responded by freezing their credit while ***continuing to publish and make available information with their names and home addresses, as well as comprehensive reports on other family members (including minor children as young as 13 years old) living at the same address, within which additional protected information about the Plaintiffs was unlawfully disclosed***. The following images are from a search performed on a LexisNexis "people search" product, using the last name of Officer John-Doe 1 and his city (and state) of residence as search criteria, ***after*** LexisNexis froze his credit file, and ***after*** the compliance period set by Daniel's Law had expired:

4





**LexisNexis/Accurint search results for Officer DOE-1's last name and the city where he lives.**



## Advanced Person Search Results

**Search Terms Used** - Last Name: ⬛ City: ⬛ State: **NJ**;





**The first search result is DOE-1's (under 18) minor child. LexisNexis sells a "comprehensive report" about this child, including the child's full name, home address, and other sensitive personal information.**



**LexisNexis's "comprehensive report" on Officer DOE-1's minor child - retrieved _after_ Daniel's Law request and _after_ security freeze.**

**LexisNexis report includes detailed information regarding DOE-1's minor child.**



**LexisNexis report includes _name and home address_ for DOE-1 and his wife, in violation of Daniel's Law and despite a credit freeze.**

**Numerous similar cases documented, involving children as young as 13 years old – whose parents are prosecutors and law enforcement officers.**

Instead of complying with Daniel's Law, LexisNexis doubled down with its unlawful actions.

6.      Plaintiffs are bringing this lawsuit now because they have been unable to otherwise obtain relief from these unlawful freezes. They and others requested that LexisNexis remove the credit freezes. Although the law requires that a credit freeze be promptly removed upon request, LexisNexis still has not done so. Instead, LexisNexis has engaged in a prolonged effort to thwart Plaintiffs' efforts to remove these credit freezes. Plaintiffs believe this is part of an unlawful effort by LexisNexis and others to punish and deter attempts to seek compliance with Daniel's Law, resulting in substantial and ongoing harm to Plaintiffs and others. Defendants' purposeful retribution and terrorization of our prosecutors and law enforcement officers—and their families—

should not be tolerated. Plaintiffs, on behalf of themselves and others similarly situated, respectfully seek relief from this Court.

7.    Upon receiving Plaintiffs' requests that Defendants comply with Daniel's Law, Defendants placed security freezes on Plaintiffs' consumer credit reports.  In so doing, Defendants initially cited to N.J.S.A. 56:11-44, et seq., otherwise known as the New Jersey Identity Theft Protection Act. ("NJITPA").  Plaintiffs challenged the security freezes under that statute.

8.    More recently, LexisNexis claimed that its security freezes were actually done pursuant to the Fair Credit Reporting Act ("FCRA")—notwithstanding LexisNexis's express reliance on the NJITPA in the letters informing Plaintiffs of the freezes.

9.    On January 27, 2025, this Court held that certain provisions of the FCRA preempted and therefore displaced New Jersey law with regard to the freezes at issue, and it directed the Plaintiffs to amend their complaint by stating a FCRA claim.

10.    Consistent with the Court's order, Plaintiffs filed their Second Amended Complaint and asserted claims for violations of the FCRA.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

11.    In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect them. By the time his mother, a Judge, came to the door to check on what happened, the killer was gone. But her husband was critically wounded, and Daniel tragically died from the gunshot.

12.    During the investigation, the perpetrator was found to have certain political and

personal grievances against the Judge and went to her home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

13.    Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[2] the same kind of data-broker services operated by Defendants in this case.

**New Jersey Passes Daniel's Law in 2020**

14.    In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1, et seq. and N.J.S.A 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

15.    Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade,

---

[2] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

16.    Daniel's Law was amended in 2023, as P.L. 2023, c. 113. The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023. As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:[3]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
>> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
>>
>> (2) punitive damages upon proof of willful or reckless disregard of the law;
>>
>> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
>>
>> (4) any other preliminary and equitable relief as the court determines to be appropriate.
>
> d.  For the purposes of this section:
>
>> …"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making

---

[3] https://legiscan.com/NJ/bill/S3125/2022.

available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

## Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022

17.    Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[4]

18.    The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers.  It allowed federal judges to redact their personal information displayed on federal government internet sites.

19.    The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[5] and it was signed by President Biden.[6]

## Violence Against Police Officers and Judges Has Not Stopped

20.    Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[7]

---

[4] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[5] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[6] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.
[7] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com), https://www.forbes.com/sites/jemimamcevoy/2020/09/18/shooters-open-fire-onhome-of-new-jersey-police-officers-in-targeted-attack-chief-says/?sh=764b12434e09.

21.    More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[8]  The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[9]

22.    Thus, the need for covered persons to receive the benefit of Daniel's Law's protections without fear of financial reprisal from data brokers who also act as consumer reporting agencies is both urgent and immediately apparent.

**Plaintiffs And Other Members Of The Class Sent Daniel's Law Requests; Defendants Responded by Retaliating**

23.    Plaintiffs are members and family members of various law enforcement agencies, unions, and organizations of the State of New Jersey, including the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local I05, and the New Jersey State Troopers Fraternal Association, among others. The goal of these agencies, unions, and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

24.    In December 2023 and January 2024, Plaintiffs and other members of the class— all individuals covered by Daniel's Law—sent LexisNexis written requests under the statute, expressly requesting that LexisNexis stop making available for public sale and disclosure Plaintiffs' protected information. These Daniel's Law requests specifically stated:

---

[8] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN, https://www.cnn.com/2023/l0/20/us/maryland-judge-killing-investigation-andrew-wilkinson/index.html.
[9] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN, https://www.cnn.com/2022/06/04/us/wisconsin-judge-killed-targeted-attack/index.html.

## Data Subject Request - Redaction/nondisclosure Request

**To**        privacy@lexisnexisrisk.com
**From**      ██████████████████████████████████
**Date**      ████████████████████████████

LexisNexis
January 2, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: ██████████████████████████

Home Address: ██████████████████████████████

Sincerely,
████████████████████████████

25.    Nothing in any of the Daniel's Law correspondences sent by Plaintiffs to LexisNexis (or any other company) requested a credit freeze. No such words even appeared in the correspondences. And none of these Daniel's Law correspondences reported an identity theft.

26.    Instead of complying with Daniel's Law, Defendants proceeded to retaliate against Plaintiffs and others, with intent, design, and malice. Specifically, Defendants proceeded to freeze Plaintiffs' consumer credit reports, and, by citing N.J.S.A. 56:11-4, LexisNexis falsely implied to Plaintiffs that the freeze was based on concerns relating to identity theft.

12



**LexisNexis®**

LexisNexis® Consumer Center

Consumer Number: ▮

Case Number ▮

Dear ▮

RE: Security Freeze Confirmation

Thank you for your request to place a security freeze on your file with LexisNexis Risk Solutions, ("LexisNexis") as provided by law in your state of residence. This letter is to confirm that a security freeze has been placed on your file.

Security freezes will be placed based on your state of residency and the customers use case. Based on this information, LexisNexis may not release your report(s) or score(s) derived for those use cases. You should be aware that applying a security freeze to your file may delay, interfere with, or prohibit the timely approval of applications you make for items such as credit, benefits, or insurance underwriting. WARNING TO PERSONS SEEKING A CREDIT FREEZE AS PERMITTED BY THE CREDIT REPORT PROTECTION ACT: YOU MAY BE DENIED CREDIT AS A RESULT OF A FREEZE PLACED ON YOUR CREDIT FILE. A security freeze does not apply to certain users of consumer reports, including those with whom you already have an existing account. These users request your file for the purpose of reviewing that account.

This security freeze is being placed on your file pursuant to the security freeze laws in your state of residence, NJ, specifically, N.J. Stat. Ann. § 56:11-30, 56:11-46, 13:45F-2.1 through 13:45F-2.7, 13:45F-5.1 as of the date of this letter. If your state of residence changes, please notify LexisNexis at the number below and request an update to the applicability of your security freeze. This security freeze will remain in place indefinitely until you decide to temporarily or permanently remove the security freeze. Below you will find a unique Personal Identification Number(PIN) that you will need in the event that you choose to temporarily or permanently remove the security freeze.

Should you wish to remove your security freeze, you must contact us and provide proper identification and your PIN number.

Please note that LexisNexis does not charge for security freezes.

If you have any further questions, you may contact the LexisNexis Consumer Center via email at consumer.documents@LexisNexisRisk.com or by phone at 800-456-1244. The LexisNexis Consumer Center's hours of operation are Monday – Friday from 8:00 A.M. to 7:00 P.M. Eastern Time. In an effort to protect your privacy and deliver prompt service, please have your Consumer Number (located at the top of this letter) accessible when you call our support number.

LexisNexis Consumer Center
Attn: Security Freeze
P.O. Box 105108
Atlanta, GA 30348-5108

Total Pages 1 of 6                    Page 1

27.    Daniel's Law did not permit LexisNexis or others to respond by freezing Plaintiffs' credit, and Plaintiffs did not report an identity theft pursuant N.J.S.A. 56:11-44, et seq.[10]

28.    As demonstrated by the contents of the written letters, LexisNexis knew that its retaliation would damage Plaintiffs by disrupting their lives.  Still, Defendants proceeded to injure and disparage Plaintiffs anyways.

29.    More recently, LexisNexis claimed that they engaged in the conduct at issue pursuant to the FCRA.  However, Plaintiffs have never received any of the notices or procedural requirements necessitated by the FCRA, even if LexisNexis was actually freezing credit pursuant to the FCRA (which it was not).

30.    As a result of Defendants' actions, Plaintiffs have been unable to obtain or extend various important financial, insurance, and health services, including those that periodically require a credit report pull or updated financial history. The need for Daniel's Law "covered persons" to receive the critical protections that the law was enacted to provide without fear of financial reprisal from data brokers is urgent and immediately apparent.

### THE PARTIES

**Plaintiff Representatives, Officers JANE DOE-2, JOHN DOE-3, and JOHN DOE-4**

Plaintiff JANE DOE-2

31.    Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a retired veteran New Jersey police officer, suffering from multiple sclerosis.  Officer JANE DOE-2 is a resident of New Jersey.

---

[10] N.J.S.A. 56:11-44, et seq. is entitled "(the) Identity Theft Prevention Act."  N.J.S.A. 56:11-44, effective 2006 as L. 2005, c. 226, Section 1.

32.     On January 1, 2024, Officer DOE-2 sent a Daniel's Law request to LexisNexis, requesting the nondisclosure of her home address and unpublished home telephone numbers. She sought to enforce her rights under Daniel's Law because she personally received direct threats of violence and death against her and her family members during her tenure as a New Jersey law enforcement officer. At one point in her career, the severity of threats received from a particularly violent criminal prompted her to leave her hometown and relocate her family to another part of New Jersey. Officer DOE-2 did not request any security freeze from LexisNexis.

33.     Rather than complying with Daniel's Law, Defendants engaged in a deliberate and retaliatory course of conduct against Officer DOE-2, acting with intent, design, and malice.

34.     On January 19, 2024, LexisNexis replied to Officer DOE-2 via email and acknowledged her Daniel's Law request and replied that it had been processed. In that same email, LexisNexis stated that a security freeze "will be placed on your file." Officer DOE-2 then received a physical letter in the mail from LexisNexis, stating that a security freeze had been placed on her file, and that an identity theft had been reported under N.J.S.A. 56:11-44, et seq.:

15



RE: Security Freeze Confirmation

Thank you for your request to place a security freeze on your file with LexisNexis Risk Solutions, ("LexisNexis") as provided by law in your state of residence. This letter is to confirm that a security freeze has been placed on your file.

Security freezes will be placed based on your state of residency and the customers use case. Based on this information, LexisNexis may not release your report(s) or score(s) derived for those use cases. You should be aware that applying a security freeze to your file may delay, interfere with, or prohibit the timely approval of applications you make for items such as credit, benefits, or insurance underwriting. WARNING TO PERSONS SEEKING A CREDIT FREEZE AS PERMITTED BY THE CREDIT REPORT PROTECTION ACT: YOU MAY BE DENIED CREDIT AS A RESULT OF A FREEZE PLACED ON YOUR CREDIT FILE. A security freeze does not apply to certain users of consumer reports, including those with whom you already have an existing account. These users request your file for the purpose of reviewing that account.

This security freeze is being placed on your file pursuant to the security freeze laws in your state of residence, NJ, specifically, N.J. Stat. Ann. § 56:11-30, 56:11-46, 13:45F-2.1 through 13:45F-2.7, 13:45F-5.1 as of the date of this letter. If your state of residence changes, please notify LexisNexis at the number below and request an update to the applicability of your security freeze. This security freeze will remain in place indefinitely until you decide to temporarily or permanently remove the security freeze. Below you will find a unique Personal Identification Number(PIN) that you will need in the event that you choose to temporarily or permanently remove the security freeze.

Should you wish to remove your security freeze, you must contact us and provide proper identification and your PIN number.

Please note that LexisNexis does not charge for security freezes.

If you have any further questions, you may contact the LexisNexis Consumer Center via email at consumer.documents@LexisNexisRisk.com or by phone at 800-456-1244. The LexisNexis Consumer Center's hours of operation are Monday – Friday from 8:00 A.M. to 7:00 P.M. Eastern Time. In an effort to protect your privacy and deliver prompt service, please have your Consumer Number (located at the top of this letter) accessible when you call our support number.

LexisNexis Consumer Center
Attn: Security Freeze
P.O. Box 105108
Atlanta, GA 30348-5108

Total Pages 1 of 6                                    Page 1

35.     LexisNexis froze Officer DOE-2's credit report. This immediately caused Officer DOE-2 to fear for her financial stability and her ability to access credit in case of emergency, a fear confirmed by LexisNexis's credit freeze letter. Officer DOE-2 did not request a credit freeze on her consumer credit report or report any identity theft.

36.     Due to her multiple sclerosis, Officer DOE-2 requires unfettered access to sophisticated and expensive treatments to moderate her medical condition on a daily basis. To maintain unfettered access to these treatments, Officer DOE-2 requires equally unfettered access to credit on an ongoing basis. Defendants knew that their freezing of credit can cause such havoc on the lives of Plaintiffs and others, as demonstrated by the contents of the credit freeze response letters from Defendants.

37.     Also due to her multiple sclerosis, Officer DOE-2 has a limited capacity to deal with unwarranted mental and emotional stress. Mental and emotional stress increases Officer DOE-2's risk of relapses, flare-ups, and exacerbations of multiple sclerosis's most debilitating effects. Officer DOE-2 spent hours helping another "covered person" remove their own unwanted credit freeze, by responding to LexisNexis' unremitting requests for additional verification - including a trip to the local library to use a high-grade scanner after LexisNexis rejected clear photographs of identity documents taken from their phones. Given her serious medical condition, Officer DOE-2 feels that the stress of having to repeat that process in an attempt to unfreeze her own credit file - especially when there is no guarantee of success - would have an immediate and detrimental impact on her health.

Plaintiff JOHN DOE-3

38.     Plaintiff JOHN DOE-3, whose name has been anonymized for security reasons, serves as the Chief of Police with a New Jersey Police Department. He has served as a police officer for approximately 40 years, and as chief for 20 years.

39.     Seeking to protect himself and his family from threats received during the course of his career, on around January 2, 2024, Officer JOHN DOE-3 sent a Daniel's Law request to

17

LexisNexis, requesting the nondisclosure of his home address and unpublished home telephone number. Officer DOE-3 is a resident of New Jersey.

40.     At no point did Officer DOE-3 request a security freeze on his consumer report. Nothing in the Nondisclosure Request sent by Officer DOE-3 to Defendants—or any other entity—contained a request for a security freeze or any report of identity theft.

41.     Rather than complying with Daniel's Law, Defendants engaged in a deliberate and retaliatory course of conduct against Officer DOE-3, acting with intent, design, and malice.

42.     A few weeks after Officer DOE-3 sent a Daniel's Law request to LexisNexis, Defendants responded via email, acknowledging receipt of Officer DOE-3's Nondisclosure Request and confirming that it had been processed. In that same email, Defendants unilaterally imposed a security freeze on Officer DOE-3's consumer report without authorization.

43.     Subsequently, Officer DOE-3 received a physical LexisNexis Security Freeze Notification Letter in the mail from Defendants, similar to the letter sent to Officer DOE-2, formally notifying him that a security freeze had been placed on his file. The letter further stated that an identity theft had been reported under N.J.S.A. 56:11-44, et seq.—a complete fabrication, as Officer DOE-3 had never made such a report.

44.     Officer DOE-3 and his spouse own a business to which a vehicle is titled. Because the vehicle was rarely used for business purposes, Officer DOE-3 and his spouse decided they wanted to make personal use of the vehicle for the benefit of their family.

45.     In or around March 2025, Officer DOE-3 contacted his automobile insurance provider, who advised him that to do so, the vehicle should be retitled under Officer DOE-3's name. Officer DOE-3 retitled the vehicle and attempted to add it to his insurance. However, Officer

DOE-3's insurance provider denied this request, stating that they were unable to verify Officer DOE-3's and his spouse's driver's licenses.

46.    Now fearing that he may lose access to his vehicle insurance altogether, Officer DOE-3 sought to contact Defendants to ensure his insurance provider's inability to verify his driver's license was not due to a security freeze on his credit file. Officer DOE-3 contacted the phone number that Defendants provided online approximately 50 times but was never able to speak to a LexisNexis representative.

47.    Officer DOE-3 then attempted to contact Defendants at a different phone number. Almost every time Officer DOE-3 called the phone number, the call would disconnect before he was able to reach a live representative. Officer DOE-3 was able to reach a LexisNexis representative a few times, but after identifying himself and stating that he was a law enforcement officer seeking to remove a security freeze, each representative would place Officer DOE-3 on hold, and the call would disconnect shortly thereafter. Despite significant time and effort, Officer DOE-3 was never able to discuss removing the freeze with a representative.

48.    As far as Officer DOE-3 is aware, the security freeze is still in place. Fearing for his family's financial well-being, Officer DOE-3 became concerned that the security freeze on his credit file resulted from his Nondisclosure Request to Defendants and even considered rescinding that request to ensure Defendants cease interfering with his credit file. Officer DOE-3 decided against this course of action, and he is still anxious about the future financial implications of Defendants' security freeze.

Plaintiff JOHN DOE-4

49.    Plaintiff JOHN DOE-4, whose name has been anonymized for security reasons, serves as a Detective in Somerset County. Seeking to protect himself and his family from threats

19

received during the course of his career, around early 2024, Officer JOHN DOE-4 sent a Daniel's Law request to LexisNexis, requesting the nondisclosure of his home address and unpublished home telephone number. Officer DOE-4 is a resident of New Jersey.

50.    At no point did Officer DOE-4 request a security freeze on his consumer report, nor did he report an instance of identity theft pursuant to N.J.S.A. 56:11-44, et seq. Nothing in the Nondisclosure Request sent by Officer DOE-4 to Defendants—or any other entity—contained a request for a security freeze or any report of identity theft.

51.    Rather than complying with Daniel's Law, Defendants engaged in a deliberate and retaliatory course of conduct against Officer DOE-4, acting with intent, design, and malice.

52.    A few weeks after Officer DOE-4 sent a Daniel's Law request to LexisNexis, Defendants responded via email, acknowledging receipt of Officer DOE-4's Nondisclosure Request and confirming that it had been processed. In that same email, Defendants unilaterally imposed a security freeze on Officer DOE-4's consumer report without authorization.

53.    Subsequently, Officer DOE-4 received a physical LexisNexis Security Freeze Notification Letter in the mail from Defendants, similar to the letter sent to Officer DOE-2, formally notifying him that a security freeze had been placed on his file. The letter further stated that an identity theft had been reported under N.J.S.A. 56:11-44, et seq.—a complete fabrication, as Officer DOE-4 had never made such a report.

54.    In July of 2024, Officer DOE-4 called Defendants using the phone number provided in the LexisNexis Security Freeze Notification Letter to request the security freeze on his credit report be lifted. At that time, he needed financing to purchase a new mattress. In accordance with the process outlined by Defendants, Officer DOE-4 provided his PIN, verified his personal information, and uploaded copies of his identifying documents to the LexisNexis Dropbox.

20

Defendants did not lift the freeze right away. After approximately two days, Defendants lifted the security freeze, allowing Officer DOE-4 to obtain financing and complete the purchase of the mattress. However, shortly thereafter, Defendants reinstated the security freeze.

55.     In December 2024, Officer DOE-4 sought to purchase a Toyota Tacoma. Anticipating that a credit check would be required, he called Defendants on December 10, 2024, and again requested that the security freeze be lifted to facilitate the vehicle purchase. After verifying his identity, the LexisNexis representative instructed him to upload his identifying documents again. The representative advised that processing the request could take up to 24 hours. Officer DOE-4 also provided the representative his PIN.

56.     Following these instructions, Officer DOE-4 again uploaded copies of his identifying documents. Upon submission, Officer DOE-4 received a confirmation message via the LexisNexis web portal, indicating that the documents had been received.

57.     Later that day, Officer DOE-4 visited a Toyota dealership, intending to place a deposit on a specific vehicle (the "Desired Tacoma"). The Desired Tacoma was in pristine condition and met all of Officer DOE-4's specifications.

58.     However, Officer DOE-4 was unable to proceed with the purchase or place a deposit on the vehicle due to the ongoing security freeze.

59.     The following morning, Officer DOE-4 again called Defendants, seeking an update on the removal of the security freeze. The LexisNexis representative informed him that the security freeze could be lifted in approximately two days.

60.     Due to the urgency of the situation, Officer DOE-4 requested expedited processing. The LexisNexis representative denied this request, stating that the documents he previously

submitted could not be located and Officer DOE-4's profile could not be found in the system. When Officer Doe-4 escalated the matter to a supervisor, the supervisor recounted similar issues.

61.     The next morning, the dealership contacted Officer DOE-4 and informed him that the Desired Tacoma had been sold to another buyer.

62.     That evening, after multiple other calls with LexisNexis representatives, another LexisNexis representative called Officer DOE-4 and informed him that the security freeze had been lifted. However, the representative noted that there were still unresolved issues with Officer DOE-4's profile.

63.     Now left without his desired vehicle, Officer DOE-4 had no choice but to purchase a different vehicle. The alternative vehicle he was able to find was inferior in condition and cost more than the Desired Tacoma. Additionally, it lacked several features that were included in the Desired Tacoma, forcing Officer DOE-4 to incur additional expenses to obtain those features separately. Shortly after purchasing the replacement vehicle, Officer DOE-4 began experiencing electrical system issues with the vehicle.

64.     Because Defendants again only temporarily lifted the security freeze, Officer DOE-4 continues to face difficulties accessing his credit.

65.     On April 8, 2025, Officer DOE-4 called Defendants again to request another lift of his security freeze to co-sign on a business bank account with his wife. Once again, the LexisNexis representative could not find Officer DOE-4's profile in their system. The representative directed Officer DOE-4 to upload his identifying documents to verify his identity yet again.

66.     Officer DOE-4 uploaded the documents to the LexisNexis portal the next morning, and again a few days later.  The portal ultimately confirmed receipt and informed Officer DOE-4 that his submission was under review.

67.     Since then, Officer DOE-4 has not received any communication from Defendants regarding the status of his request to lift the freeze.

68.     This time, the freeze interfered with Officer Doe-4 and his wife's ability to generate income for their family.

Other Plaintiffs

69.     Thousands of other similarly situated individuals have sent correspondences directly to LexisNexis demanding that LexisNexis remove the unlawful and unauthorized security freezes. Further, hundreds of Plaintiffs called LexisNexis directly, including LexisNexis's call center, requesting that LexisNexis remove the illegal freezes.

70.     To date, Defendants continue their attempts to undermine Daniel's Law and chill the exercise of its critical privacy rights, by insisting on the credit freeze and misreporting an identity theft, for anyone who sent them a Daniel's Law request.

71.     Defendants intend to keep some of the unauthorized security freezes in place to coerce Plaintiffs into abandoning their claims for redress under Daniel's Law. And to date, Plaintiffs are not aware of Defendants correcting their disparaging statements regarding how Plaintiffs allegedly suffered identity thefts—if that damage can ever be repaired at all.

**Plaintiffs Meet Rule 23's Requirements for Certification as a Class[11]**

72.     Plaintiffs JANE DOE-2, JOHN DOE-3, and JOHN DOE-4 seek to represent the following class of "covered persons" under New Jersey's Daniel's Law:

---

[11] This matter originated in New Jersey state court and, accordingly, New Jersey Rules of Civil Procedure governed that complaint at the time of filing.  Rule 4:32 mirrors Rule 23 of the Federal Rules of Civil Procedure concerning class actions.

a.  Persons who submitted a written Daniel's Law request to cease the disclosure of their home address or unpublished home telephone number, upon whom Defendants thereafter imposed a credit freeze.

73.  The proposed class consists of at least 18,000 members; accordingly, the class is so numerous that joinder is impracticable.

74.  Questions of law or fact are common to the class. Common legal questions include:

a.  Why LexisNexis purported to convert requests for compliance with Daniel's Law into requests for imposition of a security freeze on Plaintiffs' accounts;

b.  Whether LexisNexis's conduct was motivated by a desire to retaliate against Plaintiffs exercising their rights under Daniel's Law;

c.  Whether LexisNexis acted willfully with respect to its various violations of the FCRA; and

d.  Whether LexisNexis acted negligently with respect to its various violations of the FCRA.

75.  The claims or defenses of the representative parties are typical of the claims or defenses of the class in that:

a.  All the representative parties are "covered persons" under Daniel's Law;

b.  All were subjected to Defendants' unauthorized credit freezes in retaliation for their efforts to bring Defendants into compliance with Daniel's Law; and

c.  All are exposed to the same harm of obstructed access to credit.

24

76.    The representative parties will fairly and adequately protect the interests of the class because their interests are aligned in that the harm caused by Defendants' actions. Additionally, the representative parties have retained counsel with substantial experience litigating class actions.

77.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because without a class action most class members would find the cost of litigating their claims to be prohibitively high, and they would accordingly be left with no effective remedy at law or equity and would continue to incur damages. A class action is also superior because it will conserve the resources of both the courts and the litigants while promoting consistency in the adjudication of the class's claims.

78.    Defendants have also acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

79.    Plaintiffs may seek partial certification under Rule 23(c)(4) in that questions of law and fact common to the class exist as to all class members.  Such a partial certification would be an alternative to certification under Rule 23(b)(3).

**Defendants, ROES, and ABC Companies**

80.    Defendant LexisNexis Risk Solutions, Inc. is an entity that provides data-brokering and credit-reporting services and is an entity involved in the violations described in this Complaint. LexisNexis Risk Solutions, Inc., is a corporation with its principal place of business located at 1000 Alderman Drive, Alpharetta, Georgia.

81.    Defendants Richard ROES 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this

25

Complaint who have not yet been identified in part due to what appears to be intentional efforts to conceal the specific entities involved in and jointly responsible for Defendants' actions.

82.    Plaintiffs are informed, and on that basis allege, that some of these ROES and ABC Companies may be data-industry, advertisement-industry, and other interest-based/self-regulatory organizations, who are mobilizing and coordinating their members to continue harming and exacting retribution on the judges, prosecutors, and law enforcement officers seeking protections under Daniel's Law. Such concerted efforts may include punishing "covered persons" for sending further nondisclosure requests, including by perpetuating credit freezes and reporting instances of "identity theft" that were never requested or reported by the persons themselves.

83.    These ROES and ABC Companies may also include other consumer reporting agencies, who also know that Plaintiffs never requested a credit freeze or reported an identity theft, but whom nevertheless are perpetuating a fraud and intimidation campaign to further industry financial interests, instead of the very important safety of the public servants of this State and their families.

## JURISDICTION AND VENUE

84.    This Court has jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq., as ordered by the Court, and 28 U.S.C. § 1331, because the claim arises under federal law.

85.    This Court also has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from

26

Defendants.   Plaintiffs are residents of New Jersey and therefore diverse from Defendant

LexisNexis Risk Solutions, Inc., which has its principal place of business in Georgia.

86.     Venue is proper pursuant to 28 U.S.C. § 1391, in that Bergen County is the county

in which one or more of the parties reside and/or conduct business.  In addition, many of the events

giving rise to this action occurred in this County.

### CLAIMS AGAINST DEFENDANTS

### COUNT ONE

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT ("FCRA"), 15 U.S.C. § 1681c-1(i)(2)(A)

87.     The allegations of the Complaint set forth above in paragraphs 1 through 86 are

included herein as if set forth at length.

<u>Failing to Comply with FCRA Procedural Requirements</u>

88.     Section 1681c-1(i)(2)(A)(i) of the FCRA requires that:

Upon receiving a direct request from a consumer that a consumer reporting agency
place a security freeze, and upon receiving proper identification from the consumer,
the consumer reporting agency shall, free of charge, place the security freeze not
later than . . . in the case of a request that is by toll-free telephone or secure
electronic means, 1 business day after receiving the request directly from the
consumer."

89.     Section 1681c-1(i)(2)(A)(i) of the FCRA sets forth the conditions under which a

Consumer Reporting Agency may place a security freeze on a consumer's account.  Notably,

section 1681c-1(i)(2)(A)(i) requires that the consumer submit a "direct request" to "place a security

freeze" before a Consumer Reporting Agency may act.

90.     None of the Plaintiffs ever sent such a request, pursuant to the FCRA or otherwise.

91.     However, it is clear from a plain review of the takedown requests sent by Plaintiffs

(and Class members) that these were not requests for security freezes, but rather a Daniel's Law

27

request not to disclose discrete bits of information: home addresses and phone numbers. The takedown requests did not mention the words "credit," "freeze," "security," or other terms that could be construed as a "direct request" to place a "security freeze."

92.    By placing a credit freeze on Plaintiffs accounts without a direct request, LexisNexis willfully violated the FCRA.

93.    Moreover, even if the nondisclosure requests were somehow deemed requests for a security freeze, LexisNexis willfully violated the FCRA by:

    a.  Relying on the security freezes in circumstances covered by the exceptions contained in section 1681c-1(i)(4), including citing the security freeze to avoid its obligation to make a consumer report for use of information in connection with the underwriting of insurance.

Willful Violations

94.    Section 1681n of the FRCA states that any person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer for: (1) any actual damages sustained by the consumer as a result of the failure or damages not less than $100 and not more than $1000; (2) such amount of punitive damages as the court may allow; and (3) the costs of any successful action to enforce liability under Section 1681n as well as reasonable attorney's fees as determined by the court.

Negligent Violations

95.    In the alternative, by its above-described wrongful actions, inaction and omissions, want of ordinary care, and the resulting failure to comply with the requirements of the Fair Credit Reporting Act, LexisNexis negligently violated the FCRA and is liable to Plaintiffs for actual damages sustained by Plaintiffs, as well as the costs of this action and reasonable attorney's fees.

96.     As a result of LexisNexis's negligent conduct (in addition or as an alternative to what was willful), Plaintiffs have suffered actual damages.

97.     Section 1681o of the FCRA provides that any person who negligently fails to comply with any requirement of the FCRA is liable to any consumer for any actual damages as well as the costs of an action under the FCRA and reasonable attorney's fees.

## PRAYER

**WHEREFORE**, Plaintiffs request that the Court certify a Class pursuant to Fed. R. Civ. P. 23(b)(3) or, in the alternative, 23(c)(4).

**FURTHER**, Plaintiffs request that Judgment for the certified Class be entered against Defendants as follows:

A.     Awarding actual damages;

B.     Awarding statutory damages, at minimum, of $100 to $1000 per violation;

C.     Awarding an additional amount in punitive damages, to be determined by the Court, for intentional and malicious conduct as allowed under the Fair Credit Reporting Act;

D.     Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E.     Awarding such other and further relief against Defendants as the Court deems equitable and just.

Respectfully Submitted,

Dated: March 30, 2026

By: */s/ Rajiv D. Parikh*

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo

29

1 Boland Dr., Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
      keinhorn@pemlawfirm.com
      jmerejo@pemlawfirm.com

**BOIES SCHILLER FLEXNER LLP**
Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

Mark C. Mao (admitted *pro hac vice*)
Julia Bront (admitted *pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, California 94104
Telephone: (415) 293-6800
Email: mmao@bsfllp.com
      jbront@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE Second Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 357-8434
Email: jlee@bsfllp.com

Eric Palmer (admitted *pro hac vice*)
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 377-4250
Email: epalmer@bsfllp.com