**LOWENSTEIN SANDLER LLP**
A. Matthew Boxer
Gavin J. Rooney
Rasmeet K. Chahil
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500

*Attorneys for Defendant*
*LexisNexis Risk Solutions Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JANE DOE-2, JOHN DOE-3, and JOHN DOE-4 individually and on behalf of all others similarly situated, <br><br>            Plaintiffs, <br><br> vs. <br><br> LEXISNEXIS RISK SOLUTIONS INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, <br><br>            Defendants. | Civil Action No. 1:24-cv-04566 <br> Honorable Harvey Bartle III, U.S.D.J. |

## BRIEF OF DEFENDANT LEXISNEXIS RISK SOLUTIONS INC. IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

Defendant LexisNexis Risk Solutions Inc. ("LNRS") respectfully submits this brief in opposition to Plaintiffs' May 5, 2026 Motion to Compel (Dkt. 120) ("Motion").  The Requests for Production ("RFPs") and Interrogatories ("Rogs") at issue are overbroad, irrelevant, and unduly burdensome.  The Motion should be denied.

## A. Plaintiffs' Class-Wide Demands Are Overbroad and Unduly Burdensome (RFP Nos. 21–24, 28 and Interrogatory Nos. 15, 18–20, 24).

Plaintiffs seek documents and information regarding every inquiry made with respect to each of the 17,000 putative class members regarding credit or insurance underwriting services, including every interaction between LNRS and all third parties submitting such inquiries.  (*See* RFP Nos. 21, 22, 28 and Rog No. 15.)  As the requested discovery is unduly burdensome and requires individualized inquiries before class certification, the requests should be denied.  *See McMahon v. Chipotle Mexican Grill, Inc. Trading*, No. 2:20-1448, 2022 U.S. Dist. LEXIS 198167, at \*6 (W.D. Pa. June 1, 2022) (denying in part motion to compel in putative class action where plaintiffs sought "all specific information and data Chipotle maintains on every single Chipotle Rewards member who has made a cash purchase during the supposed class period"); *Moore v. Westgate Resorts*, No. 3:18-410, 2020 U.S. Dist. LEXIS 3194, at \*22 (E.D. Tenn. Jan. 9, 2020) (denying in part motion to compel documents for 73,000 putative class members during pre-certification discovery because "such discovery is not proportional prior to a motion for class certification and would constitute an individualized inquiry into all potential claims").

LNRS records inquiries made by creditors or others (LNRS's customers) regarding consumers for whom it maintains consumer files.  However, pulling these inquiries from voluminous records into a usable format for 17,000 individuals would require LNRS to create a bespoke process and would be a time-consuming endeavor that would take several weeks.  Further, the report generated from this process would provide only the inquiries made by potential creditors

(LNRS's customers), and not how LNRS responded to those inquiries.  We are told that LNRS's response to each inquiry can only be determined by pulling from a number of different systems/databases and then conducting a manual review.  This research would have to be done for each individual entry in the report and would require a tremendous amount of additional human effort.

Moreover, to the extent that Plaintiffs seek documents and communications with third parties in relation to these requests (*see* RFP No. 21; Rog No. 15), Plaintiffs already raised this issue in their April 7, 2026 motion to compel.  (Dkt. 110 at 4 (seeking documents concerning "what Defendant then did with the security freezes (*e.g.*, with third parties)".)  The Court denied that request.  (*See* Dkt. 118, Order.)

Through RFP No. 23, Plaintiffs seek documents and communications received by LNRS from every person who requested their security freeze be lifted.  LNRS already produced all emails it received requesting security freeze lifts.  It would, however, be highly burdensome (if it is even possible, involving hundreds of hours) to look for and collect all phone call recordings, all communications from its online web portal, and all other communications for all 17,000 putative class members in various systems. Thus, LNRS agreed to produce (and has produced) any communications from the named plaintiffs seeking a lift of a security freeze, including call recordings.  Requiring anything further would be unnecessarily burdensome.

RFP No. 24 seeks documents concerning the implementation of security freezes for each of the 17,000-plus putative class members.  LNRS already has produced a list of all individuals who sent in requests under New Jersey Daniel's Law and had a security freeze implemented in response, which provides the information sought in this RFP.  Again, requiring LNRS to pull

further individualized documents regarding security freezes for all 17,000 putative class members would be unduly burdensome at this stage.

Plaintiffs also raise issues with Interrogatories that LNRS has fully and comprehensively answered.  In response to Rog No. 18, LNRS produced relevant policies and procedures, which speak for themselves.  As to Rog No. 19, LNRS properly responded by denying that it failed to comply with 15 U.S.C. § 1681c-1(i)(4)(H).  In response to Rog No. 20, LNRS has provided the number of individuals who have a security freeze in place.  Similarly, as to Rog No. 24, LNRS answered and produced documents in response, so LNRS cannot discern why Plaintiffs are raising an issue here.

## B. This Court Already Denied Plaintiffs' Requests About "Other Privacy Laws," Which Are Not Relevant.

This Court already rejected Plaintiffs' attempt to obtain discovery regarding LNRS's compliance with "other privacy laws." (*See* Dkt. 118, Order.)  The three discovery requests at issue (RFP No. 25 and Rogs 16–17) are simply repackaged versions of requests the Court previously denied.  For example, in their April 7, 2026 motion to compel, Plaintiffs sought discovery into "how [LNRS] deals with other privacy laws that provide for nondisclosure of personal information . . . ." (Dkt. 110 at 2.)  The Court should decline Plaintiffs' invitation to revisit this issue.

Indeed, RFP No. 25 and Rog Nos. 16–17 are irrelevant because they seek discovery about LNRS's compliance with "*other* privacy laws," namely, the federal Daniel Anderl Judiciary Security and Protection Act, New Jersey Data Privacy Act, California Consumer Privacy Act, and California Privacy Rights Act.  These statutes contain express exceptions for information governed by the Fair Credit Reporting Act ("FCRA"), whereas New Jersey Daniel's Law does not.  *See, e.g.*, N.J. Stat. Ann. § 56:8-166.13(f); Cal. Civ. Code § 1798.145(d)(1)–(2); Daniel Anderl Judicial

-3-

Security and Privacy Act of 2022, Pub. L. No. 117-263, § 5933(3)(B)(v).   Thus, LNRS's compliance efforts under those frameworks shed no light on the implementation of security freezes under New Jersey Daniel's Law.  Nor does such discovery bear on LNRS's impossibility defense, which turns on the specific interplay between New Jersey's Daniel's Law and the FCRA, not on how LNRS navigates other statutes.

There is no need for this case to devolve into a series of mini-trials regarding LNRS's compliance with statutes not pled in this complaint.

## C.  LNRS's Responses to RFP Nos. 28, 30, 34, and 29 Are Proper.

LNRS properly objected to RFP No. 28, which asks for information "relating to any account" that Plaintiffs or putative class members hold with LNRS.  We simply do not know what is meant by "account" in this context.  Putative class members do not open "accounts" with LNRS.  Plaintiffs ignored LNRS's offer to meet and confer on this request and still have not explained what they mean by "account," preferring instead to rush into Court on the issue.  In any event, Plaintiffs' stated desire to determine whether LNRS provided consumer reports while the security freezes were in place is addressed by other RFPs.  (*See, e.g.*, RFP Nos. 21–22.)

RFP No. 30 is a non-issue.  In response to RFP No. 26, LNRS produced its policies regarding the implementation of security freezes.  Those documents identify the information systems used in implementing freezes.  LNRS has complied with this request.

RFP No. 34 broadly seeks "DOCUMENTS and COMMUNICATIONS related to any compliance monitoring, quality assurance activities, corrective actions, retraining, or disciplinary actions for noncompliance with respect to YOUR obligations to comply with the FCRA."  As stated in LNRS's objections, this request is overbroad and irrelevant as it seeks documents that are unrelated to the implementation of security freezes in response to Daniel's Law requests.  LNRS

-4-

has already produced documents on security freezes and Daniel's Law requests as ordered by the Court. (*See* Dkt. 118.).  Mini-trials on other, unrelated FCRA issues are not warranted.

Regarding RFP No. 29, LNRS does not have an existing document showing the organizational structure of or an organizational chart for employees involved in the implementation of security freezes in response to Daniel's Law requests.  There is therefore nothing to produce.  *See Utesch v. Lannett Co.*, No. 16-5932, 2020 U.S. Dist. LEXIS 232416, at *22 (E.D. Pa. Dec. 9, 2020) ("Defendants are of course not obligated to create documents containing certain information merely because such information is sought by [plaintiff] via its document requests.").  LNRS has provided the names and titles of relevant employees.  Plaintiffs also have obtained and may obtain responsive information via deposition testimony.

### D.  LNRS's Privilege Assertions and Redactions Are Proper.

LNRS has provided a privilege log to Plaintiffs, which shows that LNRS has properly asserted privilege.  LNRS also redacted a limited amount of confidential, proprietary information that has nothing whatsoever to do with this litigation, in circumstances where the same document addressed relevant matters.  This is an appropriate step to protect LNRS's legitimate confidential business interests.  Under Federal Rule of Civil Procedure 26(b)(1), Plaintiffs are only entitled to "nonprivileged matter that is relevant" to their claims.  LNRS properly redacted irrelevant, business-sensitive information and provided a redaction log that describes the nature of the information redacted and the reason for the redaction on a document-by-document basis.

In short, LNRS has made a comprehensive document production of 157,068 pages and 122,845 documents, has properly responded to Interrogatories, and has scheduled numerous depositions of its employees.  There is no need for the parties or the Court to be distracted by the peripheral matters raised in this Motion.  We respectfully request that the Court deny the Motion.

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**
*Attorneys for Defendant*
*LexisNexis Risk Solutions Inc.*

Dated: May 11, 2026

By: */s/ A. Matthew Boxer*
A. Matthew Boxer
Gavin J. Rooney
Rasmeet K. Chahil

-6-