# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JANE DOE-2, JOHN DOE-3, and JOHN DOE-4, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>LEXISNEXIS RISK SOLUTIONS INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,<br><br>    Defendants. | Civil Action No.: 1:24-cv-04566<br><br>Honorable Harvey Bartle III, U.S.D.J.<br><br>**ORAL ARGUMENT REQUESTED** |

## PLAINTIFFS' MOTION TO COMPEL

*Attorneys for Plaintiffs*

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
1 Boland Dr., Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Emails:  rparikh@pemlawfirm.com
    keinhorn@pemlawfirm.com
    jmerejo@pemlawfirm.com

**BOIES SCHILLER FLEXNER LLP**
Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

Mark C. Mao (admitted *pro hac vice*)
Julia Bront (admitted *pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, California 94104

Telephone: (415) 293-6800
Email:  mmao@bsfllp.com
            jbront@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE Second Street, Suite
2800 Miami, Florida 33131
Telephone: (305) 357-8434
Email: jlee@bsfllp.com

Eric Palmer (admitted *pro hac vice*)
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 377-4250
Email: epalmer@bsfllp.com

## PRELIMINARY STATEMENT

Plaintiffs respectfully move to compel 1) documents improperly withheld as privileged and 2) the production of documents based on reasonable search terms.

First, Defendant has improperly withheld dozens of documents as privileged where the documents primarily communicate business advice and regulatory compliance advice as opposed to primarily communicating legal advice. Defendant has also invoked the sword of a good faith defense based on counsel's communications and then improperly withheld those very communications as shielded by attorney client privilege. When the Court reviews the eighteen documents *in camera*, it will see that none are privileged and all should be produced.

Second, Defendant has also failed to conduct appropriate searches to identify responsive documents and should be compelled to run adequate searches. In addition, Plaintiffs have identified specific relevant policy and procedure documents referenced in existing documents that Defendants should be compelled to produce.

## BACKGROUND

Plaintiffs issued document requests to Defendants on December 12, 2025, March 30, 2026, and April 15, 2026. Defendant began producing documents with redactions due to privilege on April 30, 2026, produced a redaction log and wholly withheld privilege log on May 11. The parties met and conferred with only partial success on May 15. On May 26, Lexis reproduced its redaction log (excerpts

attached as Exhibit A) and wholly withheld privilege log (excerpts attached as exhibit B).

In mid-April, after Defendant's document production seemed to be missing key important documents like policies and procedures related to security freezes, Plaintiffs asked Defendant's how they searched for and identified responsive documents. Thereafter, the parties met and conferred on Defendant's insufficient search terms and Plaintiffs identified documents that Lexis failed to produce but which, on their face, appear responsive and relevant to the case. Plaintiffs also identified deficiencies in Defendant's search terms and suggested adequate terms that Defendant refused to use.

## ARGUMENT

### I.    LEXIS'S IMPROPER PRIVILEGE DESIGNATIONS

#### A.    Lexis's Improperly Redacted Documents

Lexis improperly redacted and withheld documents, primarily on the basis of privilege. Plaintiff respectfully requests that the Court require Lexis to submit the documents *in camera* along with its opposition to this motion so that the Court can conduct determine the privilege designations. *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988) ("The proper procedure for such consideration [a claim of attorney client privilege] is . . . *in camera* inspection by the court.");

2

*High 5 Games, LLC v. Marks*, 2019 WL 2067672, at \*5 (D.N.J. May 10, 2019) (court has discretion to view documents *in camera*).

    1.  *Redaction Log No. 211 Redacted Document LNRS00152693*

Defendants redacted Document LNRS00152693 (attached as Exhibit C) as an "Email chain discussing legal advice re: policies and procedures re: security freezes" protected by the attorney-client privilege.  The document is an email chain discussing Lexis's **operational** response to the Daniel's Law Nondisclosure Requests ("DLNR").  It is obvious from looking at the unredacted parts that the entirety of the communications are not privileged.  It is principally among non-lawyers, and the only lawyers on portions of email chains are compliance lawyers carrying out operational and regulatory compliance.  During deposition testimony,[1] witnesses confirmed that they themselves and the individuals on the email chain were carrying out business operations.[2]  *Fed. Trade Comm'n v. Abbvie, Inc.*, 2015 WL 8623076, at \*9 (E.D. Pa. Dec. 14, 2015) ("[A]ttorney-client privilege does not apply . . . . if the client seeks regulatory advice for a business purpose."); *Alpha Painting & Constr. Co., Inc. v. Del. River Port Auth.*, 208 F. Supp. 3d 607, 623 (D.N.J. 2016), aff'd in relevant part, 853 F.3d 671 (3d Cir. 2017) ("Communications

---

[1] Plaintiffs included both rough and certified transcripts for the Court's convenience and to allow the Court to review the relevant testimony now given that discovery closes this week.  Please note that the rough transcript may contain errors.  Where Plaintiffs are using a rough transcript, it has been annotated.

[2] E.g., Ex. D, Johnson Dep. Tr. 226:6–227:2 (confirming that she does not opine on or discuss the legality of the FCRA).

which relate to business rather than legal matters do not fall within the protection of the [attorney-client] privilege."). The primary purpose is not to provide legal advice. *IQVIA, Inc. v. Veeva Sys., Inc.*, 2022 WL 22895629, at \*7 (D.N.J. Sept. 15, 2022), appeal denied, judgment aff'd, 2024 WL 4914486 (D.N.J. Mar. 30, 2024), opinion clarified, 2025 WL 957640 (D.N.J. Mar. 31, 2025)) ("A litigant may not shield non-privileged information from discovery by combining it with legal advice" (citing *United States v. Rockwell Int'l*, 897 F.2d 1255 (3d Cir. 1990))); *LifeScan v. Smith*, 2024 WL 4914482, at \*4 (D.N.J. May 21, 2024) ("Documents prepared in the regular course of business are not protected." (citation omitted)).

Additionally, this email chain includes non-Lexis employees—Mary Shivley and Kelly Hamilton—who are both RELX employees. Annette Gaines, the head of Lexis's compliance team within Lexis's legal department, confirmed that neither she nor Rick Gardner provide legal advice to other legal entities, including RELX.[3] This confirms that the advice being given is operational in nature, not legal. Although RELX is Lexis's parent company, "courts should treat the various members of the corporate groups as the separate corporations they are and not as one client," therefore any claim of privilege that Defendant asserts over this email and other

---

[3] Ex. E, Gaines Rough Dep. Tr. 24:14–20, 34:12–21 (confirming that neither Gaines's nor Gardner's team answer legal questions related to privacy matters for other companies, including RELX). This log number is one of numerous emails and documents which have been improperly withheld on the basis of privilege. Plaintiff respectfully requests that the Court's ruling on this issue apply in full to the other log numbers that included RELX employees, of which there are many.

4

emails containing RELX employees is not protected by attorney client privilege. *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 371 (3d Cir. 2007), *as amended* (Oct. 12, 2007); *see also Hoffmann-La Roche, Inc. v. Roxane Lab'ys, Inc.*, 2011 WL 1792791, at *6 (D.N.J. May 11, 2011) ("There is no reason to treat [two members of a corporate family] as one entity for purposes of the attorney client privilege").

2. *Redaction Log No. 12 Redacted Document LNRS00148814*

Lexis redacted Document LNRS00148814 (attached as Exhibit F) as an "Email chain discussing legal advice re: policies and procedures re: security freezes" protected by the attorney-client privilege. The document is an email from non-lawyer Elise Quadrozzi to several other non-lawyers discussing Defendant's receipt of DLNRs and the next *business* steps to take, including the conclusion that Lexis had to apply security freezes to comply with the requests. This communication is not privileged because it is a business discussion on regulatory compliance strategy. *See Fed. Trade Comm'n*, 2015 WL 8623076, at *9 (E.D. Pa. Dec. 14, 2015).

The document should also be produced in full because privileges cannot be used as a sword and a shield. Here, Lexis has asserted an affirmative defense that it "acted in good faith, complied with applicable law, and employed reasonable procedures." Def.'s Answer to Plf's Third Amended Complaint, ECF No. 113, at 14. It is "fundamentally unfair" for Defendant to assert the defense that its actions were reasonable because it was following counsel's interpretation of FCRA without

5

disclosing the facts and communications that supported that interpretation. *See, e.g.,*
*IQVIA, Inc. v. Veeva Sys. Inc*, 2024 WL 4914486, at *13 (D.N.J. Mar. 31, 2025);
*Doe v. Schuylkill Cnty. Courthouse*, 343 F.R.D. 289, 295 (M.D. Pa. 2023) ("[T]o the
extent that these good faith claims are premised expressly or implicitly upon the
advice of counsel, the nature and content of those communications becomes
discoverable.").

Also, Lexis has waived privilege over the entire communication because it
revealed the subsequent business steps that were to be taken as a result of the
communication; it cannot withhold only part of it. *See IQVIA, Inc.*, 2024 WL
4914486, at *12.

3. *Redaction Log No. 103 Redacted Document LNRS00155281*

Lexis redacted Document LNRS00155281 (attached as Exhibit G) as an
"Email chain requesting and providing legal advice re: implementation of security
freezes" protected by the attorney-client privilege. It is an email chain between two
non-attorneys, [4] Ms. Quadrozzi and Laura Kampfhenkel discussing logistics for the
***business implementation*** of security freezes and an opt-out in response to DLNRs.
This email is not privileged because it reflects a business discussion between non-
legal employees.

---

[4] While there is an attorney on the email chain, Tracy Fowkes, the redactions only begin after she
is no longer present in the conversation.

6

4.  *Redaction Log No. 230 Redacted Document LNRS00155077*

Lexis redacted Document LNRS00155077 (attached as Exhibit H) as an "Email chain discussing legal advice re: removal of security freezes" protected by the attorney-client privilege.  It is an email conversation between several non-attorneys discussing the number of calls Defendant received from NJ consumers under Daniel's Law, how many security freezes were lifted as a result of those calls, and logistics to facilitate future similar calls.  This discussion, and therefore likely the redacted portion as well, pertains to business advice, not legal advice.

These redactions should also be produced because Defendant has asserted that it acted in good faith based on its lawyers' interpretation of the law and employed reasonable procedures based on those interpretations.  This defense is based in information Defendant is improperly withholding as privileged to deny that they acted negligently or willfully under 15 U.S.C. § 1681n.  *See Schuylkill*, 343 F.R.D. at 295.[5]

**B.    Lexis's Improperly Withheld Documents**

Lexis has improperly withheld complete emails, documents, and email attachments shared primarily, and often times entirely, between non-attorneys and

---

[5] In addition, Defendant's improper redactions of "unrelated confidential business information" are not only improper, *see T.F.H. Publications, Inc. v. 3M Co.*, 2012 WL 12910272, at *2 (D.N.J. Apr. 23, 2012), but also unjustifiably conceal what appears to be relevant information about Daniel's Law and FCRA compliance, e.g., LNRS00157051 (attached as Exhibit I).

that, on their face, appear to relate to business and regulatory matters.  Plaintiffs have identified over sixty examples but have selected a sampling to present to the Court.[6]

1.  *Wholly Withheld Document Log No. 379.*

Lexis has withheld the following documents in their entirety as protected by the attorney-client privilege:

ECL_Code_Daniels_Law.zip;

Legacy Suppression Gaps 20240408;

Suppression Build Process;

DanielsLaw_Services_wDids – BS gap estimate;

Daniels Law Summary Metrics Over All Files;

Daniel's Law Federal – 20240425;

Daniel's Law Federal – Current State 20240425;

Daniel's Law Federal Requirements 20240425;

NonFCRAServices2 – Ins gap estimate;

RE Daniel's Law Requirements – Documentation (Privileged and Confidential) Project Commensement Email.msg[7]; and

Daniel's Law (Documentation) Requirements – Draft v0.1.

---

[6] To the extent that any email or document includes a non-Lexis employee, as discussed *infra*, Plaintiffs respectfully request that the Court find those documents are not privileged.

[7] The inclusion of "Privileged and Confidential" in the document title is of no consequence.  Mary Shively testified in her deposition that Defendant's employees were broadly instructed to mark everything as privileged.  Ex. J, Shivley Dep. Tr. 246:14–17.

8

These documents are from Chad Morton, a non-attorney, and are included as attachments to emails, or to other Lexis internal communication platforms, between non-attorneys. Based on the document titles, the author, and the subject of the email, these documents pertain to Defendant's efforts to comply with Daniel's Law and contain discussions and plans regarding business actions and regulatory compliance. The subject matter of this case is whether Lexis acted reasonably by imposing security freezes for people who did not ask for them. Documents discussing what business decisions Lexis was to take in response to the Daniel's Law requests and whether its interpretation of what it was required to do was reasonable cannot be shielded by privilege. *See, e.g.*, *Fed. Trade Comm'n.*, 2015 WL 8623076, at \*9.

2. *Wholly Withheld Document No. 36.*

Lexis has withheld the following email as being protected by attorney client privilege. This email is between two non-attorneys, Benajmin Schober and Shezlon Khan, concerning Daniel's Law and which was withheld as an "Email chain requesting legal advice re: policies and procedures re: Daniel's Law nondisclosure requests." Based on the subject of the email, "General Thoughts???? Daniels Law," and the individuals involved, this email pertains to Defendant's efforts to comply with Daniel's Law and contain discussions and plans regarding business actions and regulatory compliance. Documents discussing what business decisions Lexis was to take in response to the Daniel's Law requests and whether its interpretation of

what it was required to do was reasonable cannot be shielded by privilege. *See, e.g.,* *Fed. Trade Comm'n.*, 2015 WL 8623076, at *9.

3. *Wholly Withheld Document Log No. 39.*

Lexis withheld an email as being protected by attorney client privilege and attorney work product. Again, neither the sender, Jennifer Butts, nor the recipients are or have been identified as attorneys. It is clear from the subject of the email chain, "DPA (Data Privacy Acts)," and the individuals involved that this email is about Defendant's efforts to comply with Daniel's Law and what business actions should be taken. The primary purpose of this email is clearly operational and covers what business decisions Lexis was to take in response to the Daniel's Law requests, which is a topic that cannot be shielded by privilege. *IQVIA, Inc.*, 2022 WL 22895629, at *7.

4. *Wholly Witheld Document Log No. 41.*

Lexis also withheld the following email[8] on the basis of attorney client privilege and attorney work product. This email was sent by non-attorney, Ted Watabe, to a number recipients who are predominantly non-attorneys. The subject is entitled "RE: Monthly Global Privacy Steering Committee" demonstrating that these steering committee meetings are a monthly reoccurrence, not created or

---

[8] Out of respect for the Court's time, Plaintiffs do not include every line on the privilege log where Defendant has improperly withheld emails of these kinds: emails including non-Lexis employees, emails between non-attorneys, and emails that are operational by the very name of their subjects.

designed in anticipation of litigation, and given the predominant non-attorney presence are operationally focused. This email, and those like it, reflect monthly updates on privacy laws and Lexis's response to them. The email's primary purpose is business and therefore is not privileged. *Id.*

## II.    LEXIS SHOULD BE ORDERED TO CONDUCT A REASONABLE SEARCH FOR DOCUMENTS

Lexis failed to conduct a reasonable search for documents in this case and should be ordered to search for and produce relevant information.

First, Lexis utilized an unreasonably narrow set of search terms to purposely avoid finding, and thus withhold, relevant documents. Aside from searching for named Plaintiffs' names, ***Lexis only ran four search terms***, all of which were unnecessarily nested and complex, rendering them practically useless. For example, the only substantive searches related to Daniel's Law required the words "New Jersey" or "NJ" to appear within 10 words of "Daniel*", which would purposely exclude conversations about Daniel's Law, covered persons, or security freezes that don't mention New Jersey or do so a mere than 10 words away from Daniel's Law in the document. These deficiencies are apparent from how little Defendant actually produced. Although Defendant purports to have produced 131,595 documents, its search results only yielded 700 unique documents. 130,165 documents are just the Daniel's Law takedown requests and the Security Freeze emails themselves

11

previously exchanged between the parties.  Of the remaining 1,430, only about half of the documents are not duplicates.

Lexis initially told Plaintiffs it would run additional search terms, however, after weeks of emails, Lexis stated it would be too burdensome and informed Plaintiffs it has conducted a reasonable document search, despite the known existence and identification of thousands of documents that are likely responsive and relevant to this case (attached as Exhibit K).  *Cf. News Am. Mktg. In-Store Svs., LLC v. Floorgraphics, Inc.*, 2012 WL 1986493, at *1 (D.N.J. May 30, 2012).

Plaintiff recognizes that it is late in the discovery schedule and that any documents produced now cannot be used in the depositions that already took place. However, it was Lexis's obligation under Federal Rules 26 and 34 to conduct a reasonable search to produce relevant documents in the first place.  Lexis did not tell Plaintiffs about their inadequate search methods until recently and they should not be able to immunize their inadequate discovery because the end date for discovery is approaching.

Finally, Plaintiffs identified significant policy documents which Defendant had omitted from its productions, yet Defendant still refuses to produce them. Plaintiffs identified internal standard operating procedures referenced in a Defendant's security freeze policy (attached as Exhibit L) and in a requirements document (attached as Exhibit M) that Defendant refuses to produce.  Lexis argues

policies and procedures referenced in Lexis's security freeze policy are "far afield" from being relevant to this case.  The FCRA requires proper identification to implement a security freeze.  15 U.S.C. § 1681c-1(i)(2)(A).  Lexis's security freeze policy also requires a consumer to be authenticated to implement a security freeze, and that policy references another policy providing specifics of authenticating a consumer, which a Lexis witness, Shezlon Khan, confirmed exists and relates to security freezes.[9]  This policy is clearly relevant and should be produced as it directly addresses an element of Plaintiffs' claim.

In addition, Defendant produced a draft requirements document labeled as version 0.3 which proposed a redaction procedure to address Daniel's Law nondisclosure requests, but Defendant did not produce crucial related documents such as prior or subsequent versions of the document.  Neither Johnson, a witness who was familiar with the document, nor Defendant's 30(b)(6) witness was able to identify other iterations of the document or confirm whether the proposal was ever finalized, or speak to Lexis's technical ability to implement such a procedure.  Ex. D, Johnson Dep. Tr. 96:5–13; Ex. O, 30(b)(6) Dep. Tr. 180:21–181:16.  The draft also references other internal policies and procedures that are relevant and necessary

---

[9] Ex. N, Shezlon Dep. Tr. 71:13–25 (identifying the authentication policy in the Security Freeze policy); id. at 73:17–23 (confirming that employees would reference the authentication policy to authenticate a consumer for a security freeze); id. at 97:18–20 (confirming that authentication is required to implement a security freeze).

to understand the underlying document.  E.g., 30(b)(6) Dep. Tr. 132:11–134:13.

Lexis agreed to consider producing these documents but failed to do so.  Due to the

lack of information Defendant provided regarding this document, and the relevance

of the proposed redaction procedure to Defendant's willfulness and its impossibility

defense, these documents should also be produced.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant

the motion in its entirety.

Respectfully submitted,

Dated: June 2, 2026                    By:  */s/ Rajiv D. Parikh*
                                       RAJIV D. PARIKH

**BOIES SCHILLER FLEXNER LLP**     **PEM LAW LLP**
Adam Shaw (admitted *pro hac vice*)    Rajiv D. Parikh
30 South Pearl Street, 12th Floor      Kathleen Barnett Einhorn
Albany, New York 12207                 Jessica A. Merejo
Telephone: (518) 434-0600              1 Boland Dr., Suite 101
Email: ashaw@bsfllp.com                West Orange, New Jersey 07052
                                       Telephone: (973) 577-5500
Mark C. Mao (admitted *pro hac vice*)  Emails:  rparikh@pemlawfirm.com
Julia Bront (admitted *pro hac vice*)           keinhorn@pemlawfirm.com
44 Montgomery Street, 41st Floor                jmerejo@pemlawfirm.com
San Francisco, California 94104
Telephone: (415) 293-6800
Email:  mmao@bsfllp.com
        jbront@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE Second Street, Suite

2800 Miami, Florida 33131
Telephone: (305) 357-8434
Email: jlee@bsfllp.com

Eric Palmer (admitted *pro hac vice*)
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 377-4250
Email: epalmer@bsfllp.com

*Attorneys for Plaintiffs*

15